IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| LORENA LYNN NAILLIEUX | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 7:16-CV-00193 |
| | ) | |
| | ) | |
| CAROLYN W. COLVIN | ) | |
| ACTING COMMISSIONER OF | ) | |
| SOCIAL SECURITY | ) | |
| | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |
| | ) | |

## CERTIFICATION

The undersigned, as Chief, Court Case Preparation and Review Branch 3, Office of Appellate Operations, Office of Disability Adjudication and Review, Social Security Administration, hereby certifies that the documents annexed hereto constitute a full and accurate transcript of the entire record of proceedings relating to this case.

_____
ROXIE RASEY NICOLL

Date: September 29, 2016

Certified Administrative Records (CAR) are not compatible with Optical Character Recognition (OCR), therefore the Agency cannot provide a OCR searchable CAR.

# Court Transcript Index

Civil Action Number:  7:16-CV-00193
Claimant:  Lorena Lynn Naillieux
Account Number:  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

| Court Transcript Index | Page No. | No. of Pages |
|---|---|---|
| AC Correspondence (ACCORR), dated 08/03/2016 | 1-2 | 2 |
| AC Denial (ACDENY), dated 07/12/2016 | 3-5 | 3 |
| AC Correspondence (ACCORR), dated 05/24/2016 | 6-7 | 2 |
| Request for Review of Hearing Decision/Order (HA 520), dated 05/03/2016 | 8-9 | 2 |
| ALJ Hearing Decision (ALJDEC), dated 05/03/2016 | 10-29 | 20 |
| Transcript of Oral Hearing (TRANHR), dated 02/26/2016 | 30-61 | 32 |

Exhibits

| Exhibit No. | Description | Page No. | No. of Pages |
|---|---|---|---|
| 1A | Initial Disability Determination by State Agency, Title II, dated 09/10/2008 | 62 | 1 |
| 2A | Reconsideration Disability Determination by State Agency, Title II, dated 12/01/2008 | 63 | 1 |
| 3A | ALJ Hearing Decision, dated 01/27/2009 | 64-73 | 10 |
| 4A | Disability Determination by State Agency, Title II - revises 831 dated 11/24/2008, dated 02/07/2009 | 74 | 1 |
| 5A | AC Order, dated 08/25/2015 | 75-79 | 5 |
| 1B | T2 Notice of Disapproved Claim, dated 09/11/2008 | 80-83 | 4 |
| 2B | Request for Reconsideration, dated 09/25/2008 | 84-85 | 2 |
| 3B | T2 Disability Reconsideration Notice, dated 12/03/2008 | 86-88 | 3 |
| 4B | Request for Hearing by ALJ, dated 12/15/2008 | 89-90 | 2 |
| 5B | Request for Hearing Acknowledgement Letter, dated 12/22/2008 | 91-97 | 7 |
| 6B | Appeals Council Review / Reopening Notice, dated 05/18/2015 | 98-103 | 6 |
| 7B | AC Correspondence, dated 06/18/2015 | 104-107 | 4 |
| 8B | Request for Hearing Acknowledgement Letter, dated 08/28/2015 | 108-122 | 15 |
| 9B | Hearing Notice, dated 10/07/2015 | 123-137 | 15 |
| 10B | Notice Of Hearing Reminder, dated 10/21/2015 | 138 | 1 |
| 11B | Appointment of Representative, dated 10/22/2015 | 139 | 1 |
| 12B | Request for Postponement, dated 10/29/2015 | 140 | 1 |
| 13B | Hearing Notice, dated 01/12/2016 | 141-166 | 26 |
| 14B | Acknowledge Notice of Hearing, undated | 167 | 1 |
| 15B | Notice Of Hearing Reminder, dated 02/12/2016 | 168-173 | 6 |
| 16B | Notice Of Hearing Reminder, dated 02/18/2016 | 174-178 | 5 |
| 1D | Application for Disability Insurance Benefits, dated 06/20/2008 | 179-181 | 3 |

DATE: September 30, 2016

The documents and exhibits contained in this administrative record are the best copies obtainable.

# Court Transcript Index

Civil Action Number:  7:16-CV-00193
Claimant:                    Lorena Lynn Naillieux
Account Number:        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

## Exhibits

| Exhibit No. | Description | Page No. | No. of Pages |
|---|---|---|---|
| 2D | WHAT - Work History Assistant Tool, dated 09/02/2015 | 182-192 | 11 |
| 3D | New Hire, Quarter Wage, Unemployment Query (NDNH), dated 09/02/2015 | 193 | 1 |
| 4D | Certified Earnings Records, dated 09/02/2015 | 194-195 | 2 |
| 5D | Detailed Earnings Query, dated 09/02/2015 | 196-198 | 3 |
| 6D | Summary Earnings Query, dated 09/02/2015 | 199 | 1 |
| 7D | WHAT - Work History Assistant Tool, dated 02/16/2016 | 200-208 | 9 |
| 8D | New Hire, Quarter Wage, Unemployment Query (NDNH), dated 02/16/2016 | 209 | 1 |
| 1E | Claimant questionnaire (generic), dated 06/19/2008, from Lorena Naillieux | 210 | 1 |
| 2E | Pain Questionnaire / Report, dated 06/19/2008, from Lorena Naillieux | 211-212 | 2 |
| 3E | Function Report - Adult, dated 06/19/2008, from Lorena Naillieux | 213-220 | 8 |
| 4E | Disability Report - Field Office, dated 06/20/2008 | 221-223 | 3 |
| 5E | Disability Report - Adult, dated 06/20/2008 | 224-231 | 8 |
| 6E | Medical Evaluation/Case Analysis, dated 09/10/2008, from Jim Hoppin | 232 | 1 |
| 7E | Disability Report - Field Office, dated 10/02/2008 | 233-235 | 3 |
| 8E | Disability Report - Appeals, dated 10/02/2008 | 236-242 | 7 |
| 9E | Disability Report - Field Office, dated 12/18/2008 | 243-245 | 3 |
| 10E | Disability Report - Appeals, dated 12/18/2008 | 246-253 | 8 |
| 11E | Programmatic Fraud Report Form/OIG Referal, dated 05/12/2015 | 254 | 1 |
| 12E | Work History Report, dated 06/20/2015 | 255-260 | 6 |
| 13E | Exhibit List to Rep PH2E, dated 09/03/2015 | 261-272 | 12 |
| 14E | Work Background, dated 09/14/2015 | 273 | 1 |
| 15E | Recent Medical Treatment, dated 09/14/2015 | 274 | 1 |
| 16E | Medications, dated 09/14/2015 | 275 | 1 |
| 17E | Resume of Vocational Expert, undated | 276-277 | 2 |
| 18E | Resume of Vocational Expert, dated 02/02/2016, from Mitch Veeder | 278-280 | 3 |
| 1F | Office Treatment Records, dated 05/09/2006, from MICHAEL BOLAND, MD | 281-289 | 9 |
| 2F | Office Treatment Records, dated 01/18/2002 to 05/01/2008, from EAST KY EYE EARS NOSE&THROAT SPECIALISTS | 290-295 | 6 |
| 3F | Office Treatment Records, dated 10/24/2006 to 06/30/2008, from MOUNTAIN COMP EXTENDED SERVICES | 296-305 | 10 |

DATE: September 30, 2016
The documents and exhibits contained in this administrative record are the best copies obtainable.

# Court Transcript Index

Civil Action Number:  7:16-CV-00193
Claimant:                    Lorena Lynn Naillieux
Account Number:       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

## Exhibits

| Exhibit No. | Description | Page No. | No. of Pages |
|---|---|---|---|
| 4F | Office Treatment Records, dated 06/01/2006 to 07/08/2008, from ARH TRI CITY MEDICAL CENTER | 306-333 | 28 |
| 5F | CE Psychiatry, dated 08/22/2008, from JEANNE M BENNETT PSYD | 334-341 | 8 |
| 6F | CE Internal Medicine, dated 08/27/2008, from TRI STATE OCCUPATIONAL MEDICINE INC | 342-348 | 7 |
| 7F | Psychiatric Review Technique, dated 09/10/2008, from Laura Cutler, PhD | 349-362 | 14 |
| 8F | Office Treatment Records, dated 06/10/2008 to 11/06/2008, from ARH TRI CITY MEDICAL CENTER | 363-392 | 30 |
| 9F | Psychiatric Review Technique, dated 11/20/2008, from Jay Athy, PhD | 393-406 | 14 |
| 10F | Physical RFC Assessment, dated 12/01/2008, from Amanda Lange, MD | 407-414 | 8 |
| 11F | Office Treatment Records, dated 06/05/2015 to 06/15/2015, from Quantum Healthcare of Cumberland | 415-418 | 4 |
| 12F | Radiology Report, dated 08/22/2014 to 08/14/2015, from Tri City Medical Center Radiology | 419-423 | 5 |
| 13F | Medical Evidence of Record - DISREGARDED - FSF, dated 01/02/2009 to 01/02/2009, from Dr. Huffnagle | 424-431 | 8 |

DATE: September 30, 2016

The documents and exhibits contained in this administrative record are the best copies obtainable.

SOCIAL SECURITY ADMINISTRATION

**Refer to:** Lorena Lynn Naillieux

Office of Disability Adjudication
  and Review
5107 Leesburg Pike
Falls Church, VA 22041-3255
Telephone:  (877) 670-2722
Date:  August 3, 2016

Charnel M. Cornett
600 High St Ste 101
Hazard, KY 41702

Dear Ms. Cornett:

Re:  Lorena Lynn Naillieux, 85 Barlow Branch, Partridge, KY 40862

We are returning the X-rays that you submitted with your request for review. Please be advised that the Appeals Council does not interpret X-rays; however, the Council will accept as evidence a report detailing and interpreting the X-ray findings from a radiologist or licensed physician qualified to interpret the X-rays. Please send the written report of the X-ray findings.

**You May Send More Information**

You may send us more evidence or a statement about the facts and the law in this case.

Any more evidence must be new *and* material to the issues considered in the hearing decision dated April 28, 2016.

**We Will Not Act For 25 Days**

If you have more information, you must send it to us within 25 days of the date of this letter. We will not allow more time to send information except for very good reasons.

Our address and FAX number are:

**ADDRESS:**          Appeals Council
                              Office of Disability Adjudication and Review
                              ATTN:  Branch 45,
                              5107 Leesburg Pike
                              Falls Church, VA  22041-3255

**FAX:**                   (877)310-0025 (must include barcode)

**1**

See Next Page

Lorena Lynn Naillieux                                         Page 2 of 2

*Put the claimant's Social Security Number on your request.*

*If you send us anything by fax, please do not send duplicates by mail. That may delay processing your claim.*

## What Happens Next

If we do not hear from you within 25 days, we will assume that you do not want to send us more information. We will then proceed with our action based on the record we have.

## If You Have Any Questions

If you have any questions, you may call or write the Appeals Council. Our telephone number and address are shown at the top of this letter. If you do call, please have this notice with you.

Cozette A Stone
Legal Assistant

Enclosure(s):
Electronic Disability Claims Processing Insert
Barcode Sheets

cc:
Lorena Lynn Naillieux
85 Barlow Branch
Partridge, KY 40862

**2**

SOCIAL SECURITY ADMINISTRATION

**Refer to:** TLC
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

Office of Disability Adjudication
  and Review
5107 Leesburg Pike
Falls Church, VA 22041-3255
Telephone: (877) 670-2722
Date: July 12, 2016

## NOTICE OF APPEALS COUNCIL ACTION

Ms. Lorena Lynn Naillieux
85 Barlow Branch
Partridge, KY 40862

This is about your request for review of the Administrative Law Judge's decision dated May 3, 2016.

### We Have Denied Your Request for Review

We found no reason under our rules to review the Administrative Law Judge's decision. Therefore, we have denied your request for review.

This means that the Administrative Law Judge's decision is the final decision of the Commissioner of Social Security in your case.

### Rules We Applied

We applied the laws, regulations and rulings in effect as of the date we took this action.

Under our rules, we will review your case for any of the following reasons:

- The Administrative Law Judge appears to have abused his or her discretion.

- There is an error of law.

- The decision is not supported by substantial evidence.

- There is a broad policy or procedural issue that may affect the public interest.

- We receive new and material evidence and the decision is contrary to the weight of all the evidence now in the record.

### What We Considered

**Suspect Social Security Fraud?**
**Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline
at 1-800-269-0271 (TTY 1-866-501-2101).**

**3**

**See Next Page**

In looking at your case, we considered the reasons you disagree with the decision.

We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

**If You Disagree With Our Action**

If you disagree with our action, you may ask for court review of the Administrative Law Judge's decision by filing a civil action.

If you do not ask for court review, the Administrative Law Judge's decision will be a final decision that can be changed only under special rules.

**How to File a Civil Action**

You may file a civil action (ask for court review) by filing a complaint in the United States District Court for the judicial district in which you live. The complaint should name the Commissioner of Social Security as the defendant and should include the Social Security number(s) shown at the top of this letter.

You or your representative must deliver copies of your complaint and of the summons issued by the court to the U.S. Attorney for the judicial district where you file your complaint, as provided in rule 4(i) of the Federal Rules of Civil Procedure.

You or your representative must also send copies of the complaint and summons, by certified or registered mail, to the Social Security Administration's Office of the General Counsel that is responsible for the processing and handling of litigation in the particular judicial district in which the complaint is filed. The names, addresses, and jurisdictional responsibilities of these offices are published in the Federal Register (70 FR 73320, December 9, 2005), and are available on-line at the Social Security Administration's Internet site, http://policy.ssa.gov/poms.nsf/links/0203106020.

You or your representative must also send copies of the complaint and summons, by certified or registered mail, to the Attorney General of the United States, Washington, DC 20530.

**Time To File a Civil Action**

- You have 60 days to file a civil action (ask for court review).

- The 60 days start the day after you receive this letter. We assume you received this letter 5 days after the date on it unless you show us that you did not receive it within the 5-day period.

- If you cannot file for court review within 60 days, you may ask the Appeals Council to extend your time to file. You must have a good reason for waiting more than 60 days to

**4**

ask for court review.  You must make the request in writing and give your reason(s) in the request.

You must mail your request for more time to the Appeals Council at the address shown at the top of this notice.  Please put the Social Security number(s) also shown at the top of this notice on your request.  We will send you a letter telling you whether your request for more time has been granted.

## About The Law

The right to court review for claims under Title II (Social Security) is provided for in Section 205(g) of the Social Security Act.  This section is also Section 405(g) of Title 42 of the United States Code.

The right to court review for claims under Title XVI (Supplemental Security Income) is provided for in Section 1631(c)(3) of the Social Security Act.  This section is also Section 1383(c) of Title 42 of the United States Code.

The rules on filing civil actions are Rules 4(c) and (i) in the Federal Rules of Civil Procedure.

## If You Have Any Questions

If you have any questions, you may call, write, or visit any Social Security office.  If you do call or visit an office, please have this notice with you.  The telephone number of the local office that serves your area is (877)405-0491.  Its address is:

> Social Security Administration
> 122 Reynolds Lane
> Hazard, KY 41701-9976

/s/ *Dominick Sfregola*
_____
Dominick Sfregola
Appeals Officer

cc:  Charnel M. Cornett
      600 High St Ste 101
      Hazard, KY 41702

**5**

SOCIAL SECURITY ADMINISTRATION

**Refer to:** Lorena Lynn Naillieux

Office of Disability Adjudication
and Review
5107 Leesburg Pike
Falls Church, VA 22041-3255
Telephone:  (877) 670-2722
Date:  May 24, 2016

Charnel M. Cornett
600 High St Ste 101
Hazard, KY 41702

Dear Ms. Cornett:

Re:  Lorena Lynn Naillieux, 85 Barlow Branch, Partridge, KY 40862

We have granted your request for more time before we act on your case.

**You May Send More Information**

You may send us more evidence or a statement about the facts and the law in this case.

Any more evidence must be new *and* material to the issues considered in the hearing decision dated April 28, 2016.

**We Will Not Act For 25 Days**

If you have more information, you must send it to us within 25 days of the date of this letter. We will not allow more time to send information except for very good reasons.

Our address and FAX number are:

**ADDRESS:**          Appeals Council
              Office of Disability Adjudication and Review
              ATTN:  Branch 45,
              5107 Leesburg Pike
              Falls Church, VA  22041-3255

**FAX:**          (877)310-0025 (must include barcode)

*Put the claimant's Social Security Number on your request.*

*If you send us anything by fax, please do not send duplicates by mail.  That may delay*

Lorena Lynn Naillieux                                          Page 2 of 2

*processing your claim.*

**What Happens Next**

If we do not hear from you within 25 days, we will assume that you do not want to send us more information.  We will then proceed with our action based on the record we have.

**If You Have Any Questions**

If you have any questions, you may call or write the Appeals Council.  Our telephone number and address are shown at the top of this letter.  If you do call, please have this notice with you.




                                        Cozette A Stone
                                        Legal Assistant


Enclosure(s):
Electronic Disability Claims Processing Insert
Barcode Sheets



cc:
Lorena Lynn Naillieux
85 Barlow Branch
Partridge, KY 40862

**7**

SOCIAL SECURITY ADMINISTRATION

Form Approved
OMB No. 0960-0277

# REQUEST FOR REVIEW OF HEARING DECISION/ORDER

See
Privacy Act
Notice

**(Do not use this form for objecting to a recommended ALJ decision.)**
*(Either mail the signed original form to the Appeals Council at the address shown below, or take or mail the signed original to your local Social Security office, the Department of Veterans Affairs Regional Office in Manila, or any U.S. Foreign Service Post and keep a copy for your records.)*

| 1. CLAIMANT NAME | 2. CLAIMANT SSN | 3. CLAIM NUMBER (If different than SSN) |
|---|---|---|
| Lorena Lynn Naillieux | 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 | |

4. I request that the Appeals Council review the Administrative Law Judge's action on the above claim because:
it is not accurate based on my conditions; there is no way that I could work at that time

[X] Please grant me an extension of time to submit evidence or argument.

## ADDITIONAL EVIDENCE

If you have additional evidence that relates to the period on or before the date of the hearing decision, you must inform the Appeals Council about it or submit it. If you have a representative, then your representative must help you obtain the evidence unless the evidence falls under an exception. You may also submit any other additional evidence to the Appeals Council. If you need additional time to submit evidence or legal argument, you must request an extension of time in writing now. This will ensure that the Appeals Council has the opportunity to consider the additional evidence before taking its action. If you submit neither evidence nor legal argument now or within any extension of time the Appeals Council grants, the Appeals Council will take its action based on the evidence currently in your file.

**IMPORTANT: WRITE YOUR SOCIAL SECURITY NUMBER ON ANY LETTER OR MATERIAL YOU SEND US. IF YOU RECEIVED A BARCODE FROM US, THE BARCODE SHOULD ACCOMPANY THIS DOCUMENT AND ANY OTHER MATERIAL YOU SUBMIT TO US.**

**SIGNATURE BLOCKS:** You should complete No. 5 and your representative (if any) should complete No. 6. If you are represented and your representative is not available to complete this form, you should also print his or her name, address, etc. in No. 6.

**I declare under penalty of perjury that I have examined all the information on this form, and on any accompanying statements or forms, and it is true and correct to the best of my knowledge.**

| 5. CLAIMANT'S SIGNATURE | DATE 05/03/2016 | 6. REPRESENTATIVE'S SIGNATURE | DATE 05/03/2016 |
|---|---|---|---|
| PRINT NAME | | PRINT NAME [X] ATTORNEY    [ ] NON-ATTORNEY | |
| Lorena Lynn Naillieux | | Charnel M. Burton | |
| ADDRESS          CITY, STATE, ZIP | | ADDRESS          CITY, STATE, ZIP | |
| 85 Barlow Branch, Partridge, KY 40862 | | 600 High St., Ste. 101, Hazard, KY 41701 | |
| TELEPHONE NUMBER | FAX NUMBER | TELEPHONE NUMBER | FAX NUMBER |
| 606-589-6607 | | 606-439-2315 | 606-439-4364 |

| THE SOCIAL SECURITY ADMINISTRATION STAFF WILL COMPLETE THIS PART |
|---|
| 7. Request received for the Social Security Administration on _____ by: _____ |

|  (Date) | (Print Name) |

| (Title) | (Address) | (Servicing FO Code) | (PC Code) |

8. Is the request for review received within 65 days of the ALJ's Decision/Dismissal?   [ ] Yes   [ ] No

9. If "No" checked:
[ ] (1) attach claimant's explanation for delay; and
[ ] (2) attach copy of appointment notice, letter or other pertinent material or information in the Social Security Office.

10. Check one:
[ ] Initial Entitlement
[ ] Termination or other

11. Check all claim types that apply:
| | |
|---|---|
| [ ] Retirement or survivors | (RSI) |
| [ ] Disability-Worker | (DIWC) |
| [ ] Disability-Widow(er) | (DIWW) |
| [ ] Disability-Child | (DIWC) |
| [ ] SSI Aged | (SSIA) |
| [ ] SSI Blind | (SSIB) |
| [ ] SSI Disability | (SSID) |
| [ ] Title VIII Only | (SVB) |
| [ ] Title VIII/Title XVI | (SVB/SSI) |
| [ ] Other - Specify: | |

APPEALS COUNCIL
OFFICE OF DISABILITY ADJUDICATION
AND REVIEW, SSA
5107 Leesburg Pike
FALLS CHURCH, VA 22041 - 3255

Form HA-520-U5 (01-2016) UF (01-2016)
Destroy Prior Editions

TAKE OR SEND ORIGINAL TO SSA AND RETAIN A COPY FOR YOUR RECORDS

**8**

OAO MAILROOM

RECEIVED MAY 09 2016

APPALACHIAN RESEARCH & DEFENSE FUND OF KENTUCKY, INC.

600 High Street Suite 101
Hazard, KY 41701

KNOXVILLE
TN 377
04 MAY '05
PM 4 L



UNITED STATES POSTAGE
PITNEY BOWES
02 1P
0001792962      $ 000.46⁵
            MAY 03 2016
MAILED FROM ZIP CODE 41701

*Appeals Council*
*ODAR, SSA*
*5107 Leesburg Pike*
*Falls Church, VA 22041-3255*

22041322275

**9**

**SOCIAL SECURITY ADMINISTRATION**

Office of Disability Adjudication and Review
SSA ODAR NHC
Bldg. 110, 2nd Floor
4300 Goodfellow Blvd
Saint Louis, MO 63120

Date: May 3, 2016

Lorena Lynn Naillieux
85 Barlow Branch
Partridge, KY 40862

## Notice of Decision – Unfavorable

I carefully reviewed the facts of your case and made the enclosed decision. Please read this notice and my decision.

**If You Disagree With My Decision**

If you disagree with my decision, you may file an appeal with the Appeals Council.

**How To File An Appeal**

To file an appeal you or your representative must ask in writing that the Appeals Council review my decision. You may use our Request for Review form (HA-520) or write a letter. The form is available at www.socialsecurity.gov. Please put the Social Security number shown above on any appeal you file. If you need help, you may file in person at any Social Security or hearing office.

Please send your request to:

> **Appeals Council**
> **Office of Disability Adjudication and Review**
> **5107 Leesburg Pike**
> **Falls Church, VA 22041-3255**

**Time Limit To File An Appeal**

You must file your written appeal **within 60 days** of the date you get this notice. The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

The Appeals Council will dismiss a late request unless you show you had a good reason for not filing it on time.

Form HA-L76-OP2 (03-2010)

**Suspect Social Security Fraud?**
**Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline**
**at 1-800-269-0271 (TTY 1-866-501-2101).**

**10**

See Next Page

**What Else You May Send Us**

You or your representative may send us a written statement about your case. You may also send us new evidence. You should send your written statement and any new evidence **with your appeal**. Sending your written statement and any new evidence with your appeal may help us review your case sooner.

**How An Appeal Works**

The Appeals Council will consider your entire case. It will consider all of my decision, even the parts with which you agree. Review can make any part of my decision more or less favorable or unfavorable to you. The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 404 (Subpart J).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do. If the Appeals Council denies your appeal, my decision will become the final decision.

**The Appeals Council May Review My Decision On Its Own**

The Appeals Council may review my decision even if you do not appeal. If the Appeals Council reviews your case on its own, it will send you a notice within 60 days of the date of this notice.

**When There Is No Appeals Council Review**

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final. A final decision can be changed only under special circumstances. You will not have the right to Federal court review.

**New Application**

You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision. If you disagree with my decision and you file a new application instead of appealing, you might lose some benefits or not qualify for benefits at all. My decision could also be used to deny a new application for benefits if the facts and issues are the same. If you disagree with my decision, you should file an appeal within 60 days.

Lorena Lynn Naillieux (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)                                    Page 3 of 3

**If You Have Any Questions**

We invite you to visit our website located at www.socialsecurity.gov to find answers to general questions about social security.  You may also call (800) 772-1213 with questions.  If you are deaf or hard of hearing, please use our TTY number (800) 325-0778.

If you have any other questions, please call, write, or visit any Social Security office.  Please have this notice and decision with you.  The telephone number of the local office that serves your area is (877)405-0491.  Its address is:

> Social Security
> 122 Reynolds Lane
> Hazard, KY 41701-9976


> John M. Dowling
> Administrative Law Judge


Enclosures:
Decision Rationale
Form HA-L39 (Exhibit List)


cc:     Charnel M. Cornett
        A R D F Of Kentucky
        600 High St Ste 101
        Hazard, KY 41702

**SOCIAL SECURITY ADMINISTRATION**
**Office of Disability Adjudication and Review**

**DECISION**

| | |
|---|---|
| **IN THE CASE OF** | **CLAIM FOR** |
| | Period of Disability and Disability Insurance Benefits |
| Lorena Lynn Naillieux | |
| (Beneficiary) | |
| | 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 |
| (Wage Earner) | (Social Security Number) |

## JURISDICTION AND PROCEDURAL HISTORY

On June 20, 2008, the beneficiary filed a Title II application for a period of disability and disability insurance benefits. In that application, the beneficiary alleged disability beginning October 15, 2005. That claim was denied initially on September 10, 2008, and upon reconsideration on December 1, 2008. Thereafter, the beneficiary filed a written request for hearing on December 15, 2008 (20 CFR 404.929 *et seq.*). Another Administrative Law Judge found the beneficiary was disabled beginning October 15, 2005 on the strength of the record and without a hearing. At that time, the beneficiary was represented by Eric C. Conn, an attorney.

The Office of the Inspector General notified the Social Security Administration (SSA), as required by section 1129(l) of the Social Security Act, that there was reason to believe fraud was involved in certain cases involving evidence from Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D., Frederic Huffnagle, M.D., or David P. Herr, D.O., dated between January 2007 and May 2011, and submitted to SSA by representative Eric C. Conn or other representatives associated with Mr. Conn's law office.

Under Section 205(u) of the Social Security Act, SSA must redetermine an individual's disability case when there is reason to believe fraud or similar fault was involved in that individual's application for benefits. In conducting a redetermination, SSA must disregard any evidence from one of the medical providers above, dated between January 2007 and May 2011, and submitted by representative Eric C. Conn or other representatives associated with Mr. Conn's law office.

The prior Administrative Law Judge decision relied on evidence from one or more of these providers to find the beneficiary disabled. Therefore, the Appeals Council disregarded the evidence from these providers and, on August 25, 2015, found the prior decision was not supported by a preponderance of the remaining evidence. The Appeals Council then remanded the case to the undersigned for a new hearing and further redetermination proceedings under Section 205(u) of the Social Security Act. The undersigned must determine whether the beneficiary was entitled to benefits on January 27, 2009, the date SSA initially allowed the claim. By law, the undersigned is unable to consider evidence signed by one of the medical

**13**

providers named above, dated between January 2007 and May 2011, and submitted by representative Eric C. Conn or other representatives associated with Mr. Conn's law office.

This case is before the undersigned Administrative Law Judge on remand from the Appeals Council. On February 26, 2016, the undersigned held a video hearing (20 CFR 404.936(c)). The beneficiary appeared in Hazard, Kentucky, and the undersigned presided over the hearing from St. Louis, Missouri. Mitch Veder, an impartial vocational expert, also appeared at the hearing. The beneficiary is represented by Charnel M. Cornett, an attorney.

The beneficiary is alleging disability since October 15, 2005.

Under Section 205(u) of the Social Security Act, the undersigned must disregard the following evidence as instructed by the Appeals Council:

> Report of Frederic Huffnagle, M.D., dated January 2, 2009

The undersigned considered all other evidence relating to the period prior to the original allowance date of January 27, 2009, including new and material evidence reasonably related to the period at issue.

With regard to the remaining evidence, the undersigned used the procedures in SSR 00-2p to determine whether other evidence should be disregarded due to fraud or similar fault. Upon review, the undersigned determined that no additional evidence must be disregarded due to fraud or similar fault.

## ISSUES

The issue is whether the beneficiary was entitled to benefits on January 27, 2009, the date SSA initially found the beneficiary disabled under Sections 216(i) and 223(d) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act were met. The beneficiary's earnings record shows that the beneficiary acquired sufficient quarters of coverage to remain insured through December 31, 2010. Thus, the period at issue for the beneficiary's entitlement to a period of disability and disability insurance benefits ended on this date.

## APPLICABLE LAW

The Office of the Inspector General notified the Social Security Administration, as required by section 1129(l) of the Social Security Act, that there was reason to believe fraud was involved in

**14**

certain cases involving evidence from Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D., Frederic Huffnagle, M.D., or David P. Herr, D.O.

Under Section 205(u) of the Social Security Act, SSA must redetermine an individual's disability case when there is reason to believe fraud or similar fault was involved in that individual's application for benefits. In conducting a redetermination, SSA must disregard any evidence from one of the medical providers identified above when the information was submitted by representative Eric C. Conn or other representatives associated with Mr. Conn's law office.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a)). The steps are followed in order. If it is determined that the beneficiary is disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the beneficiary was engaging in substantial gainful activity (20 CFR 404.1520(b)) on January 27, 2009. Substantial gainful activity is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA (20 CFR 404.1574 and 404.1575). If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, and work experience. If the individual did not engage in SGA on January 27, 2009, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the beneficiary had a medically determinable impairment that was "severe" or a combination of impairments that was "severe" (20 CFR 404.1520(c)) on January 27, 2009. An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the beneficiary did not have a severe medically determinable impairment or combination of impairments on January 27, 2009, she was not disabled. If the beneficiary had a severe impairment or combination of impairments on January 27, 2009, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the beneficiary's impairment or combination of impairments was of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526) on January 27, 2009. If the beneficiary's impairment or combination of impairments was of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509), the beneficiary was disabled on January 27, 2009. If it does not, the analysis proceeds to the next step.

**15**

Before considering step four of the sequential evaluation process, the undersigned must first determine the beneficiary's residual functional capacity (20 CFR 404.1520(e)) as of January 27, 2009. An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, the undersigned must consider all of the beneficiary's impairments alleged at the time of her original allowance, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96-8p).

Next, the undersigned must determine at step four whether the beneficiary had the residual functional capacity to perform the requirements of her past relevant work (20 CFR 404.1520(f)). The term past relevant work means work performed (either as the beneficiary actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the beneficiary to learn to do the job and have been SGA (20 CFR 404.1560(b) and 404.1565). If the beneficiary had the residual functional capacity to do her past relevant work, the beneficiary was not disabled as of January 27, 2009. If the beneficiary is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g)), the undersigned must determine whether the beneficiary was able to do any other work considering her residual functional capacity, age, education, and work experience as of January 27, 2009. If the beneficiary was able to do other work, she was not disabled as of January 27, 2009. If the beneficiary was not able to do other work and meets the duration requirement, she was disabled as of January 27, 2009. Although the beneficiary generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual was not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work existed in significant numbers in the national economy that the beneficiary could do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g) and 404.1560(c)) as of January 27, 2009.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Under Section 205(u) of the Social Security Act, SSA must disregard any evidence from Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D., Frederic Huffnagle, M.D., or David P. Herr, D.O., dated between January 2007 and May 2011, when the evidence was submitted by representative Eric C. Conn or other representatives associated with Mr. Conn's law office. The undersigned also used the procedures in SSR 00-2p to determine whether other evidence should be disregarded due to fraud or similar fault. The undersigned did not consider the following evidence:

    Report of Frederic Huffnagle, M.D., dated January 2, 2009

After careful consideration of the entire record, the undersigned makes the following findings:

**16**

1.    **The beneficiary last met the insured status requirements of the Social Security Act on December 31, 2010.**

2.    **The beneficiary did not engage in substantial gainful activity during the period from her alleged onset date of October 15, 2005 through January 27, 2009, the date of the prior decision (20 CFR 404.1571 *et seq.*).**

3.    **Through January 27, 2009, the date of the prior decision, the beneficiary had the following severe impairments: obesity, cervical degenerative disc disease, and lumbar degenerative disc disease (20 CFR 404.1520(c)).**

The beneficiary alleged that she was limited in her ability to work because of her hypertension, upper back osteoarthritis, and knee osteoarthritis.  Impairments must cause a limitation on the beneficiary's ability to perform basic work activities to be severe (SSRs 85-28 & 96-3p).  The undersigned finds that the beneficiary's obesity, cervical degenerative disc disease, and lumbar degenerative disc disease were established by the medical evidence and were "severe" within the meaning of the Regulations.  Notably, the undersigned has given consideration to Social Security Ruling 02-1p, which instructs adjudicators to consider the effects of obesity not only under the listings, but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.  When obesity is identified as a medically determinable impairment, consideration will be given to any functional limitation resulting from the obesity in the residual functional capacity assessment in addition to any limitation resulting from any other physical or mental impairment identified.

Still, there is no evidence of record that the beneficiary's sleep apnea, hypercholesterolemia, gastroesophageal reflux disease, history of carpal tunnel release, or short-term sinus/respiratory ailments significantly limited the beneficiary's ability to perform basic work activities.  The longitudinal medical evidence exhibits a history of the above physical impairments, but these conditions are either short-lived or they are well controlled with medications.  Notably, while the beneficiary was noted to have a history of carpal tunnel release, the beneficiary sought little treatment for this condition for the period at issue.  Similarly, the beneficiary's obstructive sleep apnea was found to be stable and controlled and her sinus problems (including sinusitis, rhinitis, bronchitis) only last for short periods of time and improved with medications (Exhibits 2F, 4F).  Likewise, the beneficiary's GERD and hypercholesterolemia did not cause significant functional limitations created by related symptoms. Therefore, the undersigned finds that the beneficiary's sleep apnea, hypercholesterolemia, gastroesophageal reflux disease, history of carpal tunnel release, and short-term sinus/respiratory ailments were non-severe impairments.

Moreover, a medically determinable impairment may not be established solely based on a beneficiary's allegations regarding symptoms (20 CFR 404.1508, 404.1529; SSR 96-4p).  In order for an impairment to be severe, there must be evidence from an "acceptable medical source" establishing the existence of a medically determinable impairments that can reasonably be expected to produce the alleged symptoms (20 CFR 404.1513(a); SSR 06-3p).  The beneficiary told the consultative examiner, Barry Burchett, M.D., that she had pain in all her joints, which was suggesting that she had fibromyalgia.  However, Dr. Burchett found that while

**17**

the beneficiary had "possible fibromyalgia," she only had one tender point out of eighteen possible tender points.  In addition, the beneficiary retained full strength, sensation, and range of motion in her extremities other than a report of left knee pain (Exhibit 5F).  Subsequent treatment notes do not show any evidence to support a diagnosis of fibromyalgia.  Therefore, the undersigned finds that the beneficiary's possible fibromyalgia is not a medically determinable impairment.

Additionally, the beneficiary's medically determinable mental impairment of mood disorder did not cause more than minimal limitation in the beneficiary's ability to perform basic mental work activities and was therefore nonsevere.  In making this finding, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1).  These four broad functional areas are known as the "paragraph B" criteria.

The beneficiary asserted that she experienced anxiety, depression, and nervousness, which caused problems remembering and concentrating.  Despite these impairments, the beneficiary did not assert mental limitations regarding her personal care activities, cooking, cleaning, driving, shopping, handling money, painting, socializing, or going to church (Exhibit 3E).  Moreover, the beneficiary did not seek any treatment for her mental impairments during the period at issue.  Additionally, in August 2008, the consultative examiner, Jeanne Bennett, Psy.D., found that the beneficiary retained normal concentration/attention, normal psychomotor activity, and normal memory, despite the beneficiary's reported depression.  Dr. Bennett determined that the beneficiary had a mood disorder, but had only mild symptoms (Exhibit 5F).  Dr. Bennett further opined that the beneficiary's mental impairment would cause, at worst, a slight impairment in any functional area.  Similarly, the State agency psychological consultants opined that the beneficiary has no more than mild functional impairment and her mood disorder was not severe (Exhibits 7F, 9F).  The undersigned agrees with both of these opinions, as they are consistent with the medical evidence including Dr. Bennett's findings and the beneficiary's activities of daily living.

Therefore, based on the evidence of record, the undersigned finds that the beneficiary had the following degree of limitation in the broad areas of functioning: mild restriction in activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation, each of extended duration.  Because the beneficiary's medically determinable mental impairment caused no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, it was nonsevere (20 CFR 404.1520a(d)(1)).

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process.  The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p).  Therefore, the following

**18**

residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

**4.   Through January 27, 2009, the date of the prior decision, the beneficiary did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**

The decision of whether any of the beneficiary's impairments met the criteria of any listed impairment described in Appendix 1 of the Regulations (20 CFR Part 404, Subpart P, Appendix 1, Part A) was made in view of the listings as of January 27, 2009, the date of the prior award (a list of obsolete adult listings may be found at https://secure.ssa.gov/poms.nsf/lnx/0434100000, last accessed April 5, 2016).

Although the beneficiary has "severe" impairments, they do not meet the requirements under any listed impairment described in Appendix 1 to Subpart P, Regulations No. 4.  Listing 1.04 is not met because the record does not demonstrate compromise of a nerve root or the spinal cord with additional findings of nerve root compression, evidence of spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication.  Additionally, the record does not document medical findings that the beneficiary's impairments, individually or in combination, equal the level of severity and duration contemplated under any listed impairment.

**5.   After careful consideration of the entire record, the undersigned finds that, through January 27, 2009, the date of the prior decision, the beneficiary had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the beneficiary could only occasionally climb ladders, ropes, or scaffolds.  She could frequently climb ramps or stairs.  She could frequently balance, stoop, kneel, crouch, and crawl.  She could occasionally reach overhead with her right upper extremity.  She needed to avoid concentrated exposure to extreme cold and excessive vibration.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 96-4p.  The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the beneficiary's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to have produced the beneficiary's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to have produced the beneficiary's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the beneficiary's symptoms to determine the extent to which they limit the beneficiary's functioning. For this purpose,

**19**

whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the beneficiary's symptoms limit the ability to do work-related activities.

As stated above, the undersigned has determined that the beneficiary has the following severe impairments: obesity, cervical degenerative disc disease, and lumbar degenerative disc disease. The beneficiary reported that she cannot work due to her severe back and neck pain, but she admitted that she stopped working in 2005 when she and her husband moved and she lost her cleaning contract.  She stated that she did not try to work again since she knew she had done something to her neck that would prevent her from cleaning again.  She asserted that her neck and back hurt when lifting and she could not raise her right arm above shoulder level. Additionally, she alleged that she sometimes has pain when walking despite anti-inflammatory medications.  She admitted that she did not receive pain injections, attending physical therapy, or visit a pain specialist for her back or neck pain.

In terms of her activities of daily living, the beneficiary testified that she lived with her husband, who worked full-time, during the period at issue.  She stated that she was able to drive during the time.  She admitted that she cooked quick meals, performed general cleaning on a daily basis, shopped in stores twice a week, painted, attended church, and socialized with others daily.  Still, she reported having some trouble dressing and caring for her hair (Exhibit 3E).

After careful consideration of the evidence, the undersigned finds that the beneficiary's medically determinable impairments could reasonably be expected to have caused the alleged symptoms; however, the beneficiary's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

Turning to the medical evidence, the objective findings in this case fail to provide strong support for the beneficiary's allegations of disabling symptoms and limitations and they do not support the existence of limitations greater than those reported in the above residual functional capacity. The beneficiary complained of neck tenderness and pain in May 2006 and a cervical MRI showed moderate left paracentral disc herniation at C5-6 (Exhibit 1F, 2).  Despite this report, the record does not contain significant complaints of neck or back pain again until June 2008.  At that time, a cervical x-ray showed cervical degenerative disc disease with neural foramina encroachment (Exhibit 4F, 10, 24).  A cervical MRI on July 3, 2008, showed moderate-sized left pareacentral herniated nucleus polposus at C5-6 (Exhibit 4F, 26).  Still, conservative treatment was recommended.

On August 27, 2008, the beneficiary was examined by Dr. Burchett, a consultative physician. Dr. Burchett noted that the beneficiary complained of pain throughout her neck, back, joints, and muscles.  Still, the beneficiary retained a normal gait and stable station.  Additionally, the beneficiary did not have swelling or limitations in her upper extremities or hands.  Similarly, Dr. Burchett noted that the beneficiary's lower extremities did not have tenderness.  Likewise, the beneficiary did not have cervical or lumbar tenderness or muscle spasm.  She could still squat two thirds of the expected ability and she had full range of motion of all joints, no muscle

**20**

atrophy, normal muscle strength, and intact sensation despite her pain complaints (Exhibit 6F). Overall, these findings suggest minimal physical functional limitation.

Subsequently, the beneficiary complained of neck and low back pain in September 2008 and she was prescribed Flexeril and Motrin. A lumbar x-ray showed degenerative disc disease (Exhibit 8F, 9, 10, 28). A subsequent lumbar MRI from October 2008 confirmed degenerative disc disease at L3-4 and L5-S1 with mild disc bulging (Exhibit 8F, 29). Neurosurgeon Smith, M.D., examined the beneficiary on November 6, 2008. Dr. Smith noted that the beneficiary admitted that her neck pain was long-standing, but tolerable and only exacerbated by overhead activity. She had not attended physical therapy or received any injections. Moreover, she told Dr. Smith that her pain does not limit her overall daily activity. Dr. Smith noted that the beneficiary had full range of motion of her neck, head, upper extremities, and lower extremities and she retained full muscle strength. The beneficiary was prescribed anti-inflammatory medication and Ibuprofen (Exhibit 8F, 16).

The longitudinal medical evidence detailed above shows that the beneficiary's pain is tolerable and does not considerably limit the beneficiary's daily activities. Numerous physical examination findings including range of motion, gait, and strength are normal. Therefore, the undersigned concludes that the beneficiary could perform work at least at a reduced range of the light exertional level. Still, due to her reports that overhead activity can exacerbate her pain, she should only occasional climb ladders, ropes, or scaffolds and she should only occasionally reach overhead. Additionally, in order to avoid aggravating her pain, the undersigned finds that the beneficiary was limited to frequent balancing, stooping, kneeling, crouching, crawling, and climbing ramps and stairs, as well as having only concentrated exposure to extreme cold and excessive vibration.

While the beneficiary asserted that her impairments prevented her from working as of the alleged onset date through January 27, 2009, the beneficiary's daily activities, conservative treatment, and examination findings detailed above support a conclusion that she could work at a reduced range of the light exertional level. The beneficiary admitted that she did not attend physical therapy or receive any injections. This treatment is consistent with at most moderate limitations. Moreover, she consistently reported that she could at least do light activities around her house without limitation. Furthermore, the beneficiary testified that she stopped working because she moved due to her husband's job. She added that she stayed home because they could survive on her husband's salary. These reports are not consistent with a finding of disability, but rather they support a conclusion that the beneficiary could work at a reduced range of the light exertional level.

Thus, as discussed above, the objective medical evidence does not provide a basis for finding limitations greater than those determined in this decision. In addition, consideration of the factors described in 20 CFR 404.1529(c)(3) also leads to a conclusion that the beneficiary's allegations of disabling symptoms and limitations cannot be accepted, and that the residual functional capacity finding in this case is justified.

As for the opinion evidence, the residual functional capacity conclusion reached by Amanda Lange, M.D., a State agency medical consultant, supports a finding of "not disabled" (Exhibit

**21**

10F).  After a review of the evidence of record, Dr. Lange opined that the beneficiary could occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds.  In addition, Dr. Lange stated that the beneficiary could stand and/or walk about six hours in an eight-hour workday day and sit about six hours in an eight-hour workday.  Dr. Lange also noted that the beneficiary could perform unlimited pushing and/or pulling.  Dr. Lange added that the beneficiary could frequently balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, but she could only occasionally climb ladders, ropes or scaffolds.  In addition, Dr. Lange opined that the beneficiary needed to avoid concentrated exposure to vibration.

Accordingly, in view of all of the factors discussed above, including the evaluation of the evidence of record and the beneficiary's testimony at the hearing, the undersigned finds that the beneficiary retained the residual functional capacity to perform less than a full range of work at the light exertional level with the limitations as described earlier in the decision.

**6.    Through January 27, 2009, the date of the prior decision, the beneficiary was capable of performing past relevant work as a housekeeper and dental assistant.  This work did not require the performance of work-related activities precluded by the beneficiary's residual functional capacity (20 CFR 404.1565).**

Consistent with Social Security Ruling 82-62 and based on the evidence of record including the testimony of the impartial vocational expert, the undersigned finds that beneficiary's past work was as follows: housekeeper, which was unskilled (SVP 2) work performed at the light exertional level; and dental assistant, which was skilled (SVP 6) work performed at the light exertional level.

In comparing the beneficiary's residual functional capacity with the physical and mental demands of her past relevant work, the undersigned posed a hypothetical question to the vocational expert in which he was to assume an individual of the beneficiary's age, education, and work experience, and who had the specific capacity and limitations set forth above in the beneficiary's residual functional capacity.  The vocational expert testified that such an individual would be able to perform the beneficiary's past relevant work as a housekeeper and a dental assistant as generally performed in the national economy and as the beneficiary actually performed.  Pursuant to Social Security Ruling 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.  Therefore, based on the evidence of record, the undersigned finds that the beneficiary is able to perform his past work as a housekeeper and a dental assistant as generally performed in the national economy and as actually performed.

Thus, the undersigned concludes that the exertional and non-exertional requirements of the beneficiary's prior work were consistent with the beneficiary's residual functional capacity as determined in this decision, and, therefore, the beneficiary retained the capacity to perform "past relevant work."  As such, the undersigned finds that the beneficiary was not disabled within the meaning of the Social Security Act.

Although the beneficiary was capable of performing past relevant work, there are other jobs existing in the national economy that she is also able to perform.  Therefore, the Administrative

**22**

Law Judge makes the following alternative findings for step five of the sequential evaluation process.

The beneficiary was born on July 31, 1962 and was 46 years old, which is defined as a younger individual age 18-49, on the date of the prior decision (20 CFR 404.1563). The beneficiary had at least a high school education and is able to communicate in English (20 CFR 404.1564). Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the beneficiary was "not disabled," whether or not the beneficiary had transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

In the alternative, considering the beneficiary's age, education, work experience, and residual functional capacity, there were other jobs that existed in significant numbers in the national economy that the beneficiary also could have performed (20 CFR 404.1569 and 404.1569(a)).

In determining whether a successful adjustment to other work could have been made, the undersigned must consider the beneficiary's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the beneficiary can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the beneficiary's specific vocational profile (SSR 83-11). When the beneficiary could not have performed substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the beneficiary had solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

Through January 27, 2009, the date of the prior decision, if the beneficiary had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the beneficiary's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations. To determine the extent to which these limitations eroded the unskilled light occupational base, through January 27, 2009, the date of the prior decision, the Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual with the beneficiary's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of the following representative occupations:

| Job Title | DOT Number | Exertional Level | Skill Level | Approximate Number of Jobs Existing |
|---|---|---|---|---|
| Cashier II | 211.462-010 | Light | Unskilled (SVP 2) | National: 764,000 |
| Cafeteria Attendant | 311.677-010 | Light | Unskilled (SVP 2) | National: 57,000 |

**23**

Lorena Lynn Naillieux (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)                                   Page 12 of 12

| Fast Food Worker | 311.472-010 | Light | Unskilled (SVP 2) | National: 1,140,000 |

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, the undersigned concludes that, through January 27, 2009, the date of the prior decision, considering the beneficiary's age, education, work experience, and residual functional capacity, the beneficiary was capable of making a successful adjustment to other work that existed in significant numbers in the national economy.  A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**7.   The beneficiary was not under a disability, as defined in the Social Security Act, at any time from October 15, 2005, the alleged onset date, through January 27, 2009, the date of the prior decision (20 CFR 404.1520(f)).**

## DECISION

The undersigned concludes that there was insufficient evidence to support a finding of disability as of January 27, 2009.  Therefore, the beneficiary's benefits are terminated, and SSA may treat any benefits previously received as an overpayment.  The provisions of Subpart F – Overpayments, Underpayments, Waiver of Adjustment or Recovery of Overpayments, and Liability of a Certifying Officer will apply (20 CFR Chapter III Subpart F).  The beneficiary will receive a separate notice regarding how much she was overpaid by SSA.  The beneficiary may request that SSA waive that overpayment, and SSA will consider such a request under its rules.


/s/ *John M. Dowling*
John M. Dowling
Administrative Law Judge

May 3, 2016
Date

**24**

# LIST OF EXHIBITS

### Payment Documents/Decisions

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO 1A | Initial Disability Determination by State Agency, Title II | | 09/10/2008 | 1 |
| HO 2A | Reconsideration Disability Determination by State Agency, Title II | | 12/01/2008 | 1 |
| HO 3A | ALJ Hearing Decision | | 01/27/2009 | 10 |
| HO 4A | Disability Determination by State Agency, Title II - revises 831 dated 11/24/2008 | | 02/07/2009 | 1 |
| HO 5A | AC Order | | 08/25/2015 | 5 |

### Jurisdictional Documents/Notices

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO 1B | T2 Notice of Disapproved Claim | | 09/11/2008 | 4 |
| HO 2B | Request for Reconsideration | | 09/25/2008 | 2 |
| HO 3B | T2 Disability Reconsideration Notice | | 12/03/2008 | 3 |
| HO 4B | Request for Hearing by ALJ | | 12/15/2008 | 2 |
| HO 5B | Request for Hearing Acknowledgement Letter | | 12/22/2008 | 7 |
| HO 6B | Appeals Council Review / Reopening Notice | | 05/18/2015 | 6 |
| HO 7B | AC Correspondence | | 06/18/2015 | 4 |
| HO 8B | Request for Hearing Acknowledgement Letter | | 08/28/2015 | 15 |
| HO 9B | Hearing Notice | | 10/07/2015 | 15 |
| HO 10B | Notice Of Hearing Reminder | | 10/21/2015 | 1 |
| HO 11B | Appointment of Representative | | 10/22/2015 | 1 |

Lorena Lynn Naillieux (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)                                    Page 2 of 5

| | | | |
|---|---|---|---|
| HO 12B | Request for Postponement | 10/29/2015 | 1 |
| HO 13B | Hearing Notice | 01/12/2016 | 26 |
| HO 14B | Acknowledge Notice of Hearing | | 1 |
| HO 15B | Notice Of Hearing Reminder | 02/12/2016 | 6 |
| HO 16B | Notice Of Hearing Reminder | 02/18/2016 | 5 |

### Non-Disability Development

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO 1D | Application for Disability Insurance Benefits | | 06/20/2008 | 3 |
| HO 2D | WHAT - Work History Assistant Tool | | 09/02/2015 | 11 |
| HO 3D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 09/02/2015 | 1 |
| HO 4D | Certified Earnings Records | | 09/02/2015 | 2 |
| HO 5D | Detailed Earnings Query | | 09/02/2015 | 3 |
| HO 6D | Summary Earnings Query | | 09/02/2015 | 1 |
| HO 7D | WHAT - Work History Assistant Tool | | 02/16/2016 | 9 |
| HO 8D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 02/16/2016 | 1 |

### Disability Related Development

| Component No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|
| HO 1E | Claimant questionnaire (generic) | | Lorena Naillieux | to 06/19/2008 | 1 |
| HO 2E | Pain Questionnaire / Report | | Lorena Naillieux | to 06/19/2008 | 2 |
| HO 3E | Function Report - Adult | | Lorena Naillieux | to 06/19/2008 | 8 |

Lorena Lynn Naillieux (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)                                      Page 3 of 5

| | | | |
|---|---|---|---|
| HO 4E | Disability Report - Field Office | | 3 |
| | | to 06/20/2008 | |
| HO 5E | Disability Report - Adult | | 8 |
| | | to 06/20/2008 | |
| HO 6E | Medical Evaluation/Case Analysis | Jim Hoppin | 1 |
| | | to 09/10/2008 | |
| HO 7E | Disability Report - Field Office | | 3 |
| | | to 10/02/2008 | |
| HO 8E | Disability Report - Appeals | | 7 |
| | | to 10/02/2008 | |
| HO 9E | Disability Report - Field Office | | 3 |
| | | to 12/18/2008 | |
| HO 10E | Disability Report - Appeals | | 8 |
| | | to 12/18/2008 | |
| HO 11E | Programmatic Fraud Report Form/OIG Referal | | 1 |
| | | to 05/12/2015 | |
| HO 12E | Work History Report | | 6 |
| | | to 06/20/2015 | |
| HO 13E | Exhibit List to Rep PH2E | | 12 |
| | | to 09/03/2015 | |
| HO 14E | Work Background | | 1 |
| | | to 09/14/2015 | |
| HO 15E | Recent Medical Treatment | | 1 |
| | | to 09/14/2015 | |
| HO 16E | Medications | | 1 |
| | | to 09/14/2015 | |
| HO 17E | Resume of Vocational Expert | | 2 |
| HO 18E | Resume of Vocational Expert | Mitch Veeder | 3 |
| | | to 02/02/2016 | |

Lorena Lynn Naillieux (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)                                    Page 4 of 5

## Medical Records

| Component No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|
| HO 1F | Office Treatment Records | | MICHAEL BOLAND, MD | to 05/09/2006 | 9 |
| HO 2F | Office Treatment Records | | EAST KY EYE EARS NOSE&THROAT SPECIALISTS | 01/18/2002 to 05/01/2008 | 6 |
| HO 3F | Office Treatment Records | | MOUNTAIN COMP EXTENDED SERVICES | 10/24/2006 to 06/30/2008 | 10 |
| HO 4F | Office Treatment Records | | ARH TRI CITY MEDICAL CENTER | 06/01/2006 to 07/08/2008 | 28 |
| HO 5F | CE Psychiatry | | JEANNE M BENNETT PSYD | to 08/22/2008 | 8 |
| HO 6F | CE Internal Medicine | | TRI STATE OCCUPATIONAL MEDICINE INC | to 08/27/2008 | 7 |
| HO 7F | Psychiatric Review Technique | | Laura Cutler, PhD | to 09/10/2008 | 14 |
| HO 8F | Office Treatment Records | | ARH TRI CITY MEDICAL CENTER | 06/10/2008 to 11/06/2008 | 30 |
| HO 9F | Psychiatric Review Technique | | Jay Athy, PhD | to 11/20/2008 | 14 |
| HO 10F | Physical RFC Assessment | | Amanda Lange, MD | to 12/01/2008 | 8 |
| HO 11F | Office Treatment Records | | Quantum Healthcare of Cumberland | 06/05/2015 to 06/15/2015 | 4 |
| HO 12F | Radiology Report | | Tri City Medical Center Radiology | 08/22/2014 to 08/14/2015 | 5 |

Lorena Lynn Naillieux (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)                    Page 5 of 5

| HO 13F | Medical Evidence of Record - DISREGARDED - FSF | Dr. Huffnagle | 01/02/2009 to 01/02/2009 | 8 |

**Social Security Administration**
**Office of Disability Adjudication and Review**

Claimant: Lorena Lynn Naillieux
Social Security Number: 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

Claim Type: Disability

Hearing Date: February 26, 2016
Hearing Site: St. Louis, MO & Kentucky

Administrative Law Judge: John M. Dowling

Parties Present:
Lorena Lynn Naillieux, claimant
John M. Dowling, judge
Sharon Burton [phonetic], claimant attorney
Mitch Beater [phonetic], vocational expert

**30**

Transcript in the case of:
Lorena Lynn Naillieux, claimant
SSN: 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

Contents:

Testimony of Lorena Lynn Naillieux, claimant        3

Testimony of Mitch Beater, vocational expert        23

**31**

(The following is a transcript of the hearing held
before John M. Dowling, Administrative Law Judge,
Office of Disability Adjudication and Review, Social
Security Administration, on February 26, 2016, in St.
Louis, MO, in the case of Lorena Lynn Naillieux, Social
Security Number 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.  The claimant appeared via
video teleconference from Kentucky and was represented
by Sharon Burton.  Also present were Mitch Beater,
vocational expert, via telephone; and David Lundsford
[phonetic], hearing monitor.)

(The hearing commenced at 2:09 p.m. on February 26,
2016.)

**Opening Statement by Administrative Law Judge**

ALJ: Next I'll open the case of Ms. Lorena Naillieux,

Social Security Number 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.  The hearing's being

held in [INAUDIBLE], Kentucky on February 26, 2016.  I am

Judge Dowling from the Office of Disability Adjudication

and Review and I've been assigned to hear your case.  The

gentleman sitting across from you there, his name's David

Lundsford.  Mr. Lundsford is a hearing reporter.  It's his

job to make sure we get an accurate record today.  We also

have a vocational expert who will testify on the telephone.

His name is Mitch Beater.  Now, you're here today because

you filed a claim for benefits back on June 20th of 2008

claiming disability pursuant to Title II of the Social

Security Act.  Now although you received a favorable

decision in that claim, I've been instructed by a remand

order, which can be found at Exhibit 5A to re-determine

your case based upon provisions of the Social Security Act
that require evidence of a claim for benefits be
disregarded if there's reason to believe that fraud or
similar fault was involved in providing that particular
evidence.   So I've been instructed to disregard the
evidence from a Doctor Fredrick Huffnagle [phonetic].   So
I'm going to consider all of the other evidence that's
relevant to this case in your file.   And then I will
consider whether or not you were disabled between the dates
of October 15th of 2005, which is your alleged onset and
the date that you received that favorable decision which is
January 27th of 2009.   I can only consider to evidence that
relates to that particular time frame.   And, I'm not bound
by any prior decisions made by the Social Security
Administration.   I'm going to go ahead and make an
independent decision based upon the evidence and the
testimony I hear today during this hearing.   Now I see you
are represented by Ms. Sharon Burton.   Counsel, have you
had an opportunity to discuss the issues here with your
client?   And do you waive reading of those issues?

ATTY: Yes, your honor.

ALJ: Okay.   Great.   Thanks.   Okay.   Currently I have
exhibits marked 1A though 5A, 1B through 16B, 1D through

**33**

8D, 1E through 18E, and 1F through 13F.  Ms. Burton, any

objection to any of those documents being admitted?

ATTY: No, your honor.

ALJ: Okay.  Are you aware of any additional relevant

documents that we don't currently have?

ATTY: No, your honor.

ALJ: Great.  All right.  We'll admit all those documents

into the record as evidence.

>    (Exhibits 1A though 5A, 1B through 16B, 1D through 8D,
>    1E through 18E, and 1F through 13F, previously
>    identified, were received into evidence and made a
>    part of the record thereof.)

ALJ: No you're good.  Yeah.  Just move yourself up a little

bit.  I'll be easy.  If you could just scoot up a little

bit.  Very good.  Okay.  Thanks.  Counsel, any procedural

matters we need to discuss?

ATTY: No, your honor.

ALJ: Okay.  Great.

>    (The claimant, LORENA LYNN NAILLIEUX, having been
>    first duly sworn, testified as follows:)

**Examination of Claimant by Administrative Law Judge**

Q Okay, ma'am, I'm going to ask you some background

questions and then I'll turn it over to Ms. Burton and she

can kind of walk you through your impairments that limit

your ability to work.  Okay?  You are -- your birthday is

July 31st, 1962?

**34**

4

A Yes, sir.

Q Okay.  So you're 53, right now.

A Yes.

Q 46 at the time that decision was rendered in January of 2009.  At -- and we need to put ourselves back to that time period.  I know that's a little difficult.  But that's what we're instructed to do.  So if we go back to January 27th of 2009, were you married back then?

A Yes, sir.

Q Okay.  Any kids at home?

A I think they were both already in college.  But --

Q Okay.  But they came home for breaks and such?

A Mm-mm.

Q Okay.  Was your husband working at the time?

A Yes.

Q Okay.  Was it full time work?

A Yes, sir.

Q Okay.  Day shift?

A He has changed jobs off and on so much, I -- at that time I'm thinking that he may have been on night shift.

Q Okay.  Were you folks receiving any benefits at all prior to what, you know, you're receiving now?

A No.

**35**

5

Q Back then were you receiving food stamps, or Medicaid, or anything like that?

A No, sir.

Q Do you have a driver's license?

A Yes, I do.

Q Do you drive?

A I do.

Q Okay.  You're a high school grad and you have one year of college?

A Yes, sir.

Q Okay.  Was that one year -- did it end up some kind of diploma or degree?

A It was through a training course to become a dental assistant.

Q And you got some kind of certificate of completion?

A Yes.

Q Okay.  You said a dental assistant?

A Yes, sir.

Q Okay.  Okay.  I look back at your work record here.  My evidence indicates your last work was in 2005.  Does that sound right to you?

A Yes, sir.

Q Okay.  It looks like all this work is self-employment?

A I worked at the weather station.  Cleaning.

**36**

Q Oh, okay.  And they hired you as a sub-contractor?

A Yes.

Q Okay.  So you were a janitor?

A Yes, sir.

Q I think that's what the record says.  Okay.  And then you did some dental assisting before that.  Right, with Holder and Courtney [phonetic]?

A Yes, sir.  I did.

Q Okay.  And that dental assisting you did, it looks like you didn't last very long.

A I lived in Arkansas and I worked there for two years, I think.  Then I moved, my husband was in the service, we moved --

Q Oh, okay.

A -- to Cumberland.  And I went to work there for a year. Due to no work there we moved again.  And I got the job at the -- it's the NOAA Weather Service.

Q The weather station?

A Mm-hmm.

Q Okay.  So in 2005 you stopped working over at the weather station.  It looks like the hours were kind of all over the place.  Could you -- your salary kind of went up and down and up and down.  What happened with that?

**37**

A I was able to work when I needed to work, when they

needed me.  Sometimes --

Q Sometimes it was full time, sometimes it wasn't?

A Yes.

Q Okay.  So why did you stop doing that in 2005?

A We moved again.  And I lost the contract.

Q Was your husband still in the Army back then?

A No.  He's, he's in the coal industry here.

Q Oh, okay.

A We moved, again.  And he moved for another job.  And --

Q So where did you move too?

A We moved to Cumberland, Kentucky.  From Jackson,

Kentucky.

Q Okay.  So you lost your job there.  Did you apply for

other work after that?

A When I got to Cumberland I did not apply for, for any

jobs there.  There was really nothing in the area beyond,

you know, beyond working at a grocery store or something

like that.  And that would have been fine too.  But he was

working and had a good job then.  So I didn't apply.

Q So you didn't have to?

A No.  I didn't.

Q So you were able to just do all right on his income?

A We were able to do okay on his income then.

Q Okay.  Did you ever apply for work after that?

A No.  I don't think I did.  I worked -- I took care of my mother before me moved there.  We had her at home and I really -- I kept her while I was working.  She was on a respirator at home for almost two years.  And then when she passed, and God just brought us closer to where my dad is, I believe.  That's more than you asked.  I'm sorry.  But --

Q No, that's fine.

A That's how we ended up here?

Q Your dad's here in Cumberland?

A Yes, he is.

Q So were you taking care of your dad at that point?

A I am not taking care of him.  I keep an eye on him.  He's still okay.  He's 76 years old.  We live close to one another.

Q Okay.  Well, so it sounds like you stopped your employment because you moved and then because your husband had enough income where you didn't have to and you could spend your time kind of taking care of your mom.  And --

A I took care of my mom when I was working, in Jackson.

Q So you just took care of your kids?

A Yeah.  My kids were grown.  I didn't --

Q Okay.  So I'm just trying to figure out what is it now that -- or what was it back then that made it so you

**39**

couldn't get work.  Besides the fact that there wasn't a

whole lot of jobs available in that area?

A Well, the kind of work that I had done after the dental

assisting was the cleaning.  And I cleaned for years when I

lived, when we were in the military.  And I knew I had done

something to my neck.  I'd gone off and on to the doctors

to see what that was.  It made it difficult to be able to

do the kind of work that I needed to do.  To bend, --

Q To clean?

A Yeah.  And to lift.  And then when I got to Cumberland

there really wasn't anything there that, in that little

area, that I didn't have to go retrain for.  I don't think

I could do nursing.  That's a big thing in the area.  I'm

smart enough to do it.  I don't think my body would stand

up to it.

Q How come?

A Because of the pulling and lifting with my back.

Q Is it your neck or your back?

A It's both.  I have -- when I bend, and stand back up -- I

can sit and it's pretty comfortable sitting.  When I get up

to walk, it, it clicks in my back.  It's like a nerve that

catches.  And the same with my arm.  My arm won't raise.

Up, my right arm, where I -- I think it's where I cleaned

**40**

so many years.  But they say I have a blown disc in my neck and a blown disc in the lower part of my back.

Q [INAUDIBLE].

A I thought it was my hips.  The MRI that I had, I had paperwork back then, but the recent paperwork shows it also.  It's in the same spot.  It's just that the recent MRI and I don't know if you consider that or not.

Q Well, I certainly am looking at the one during this relevant time period.  So, you can't lift your right arm up over your head at all?  Or --

A I can go --

Q -- does it cause pain to get it up?

A Yeah.  I can do okay with the left.  But, it's painful to go up above a certain --

Q Okay.  And your lower back gives you problems when you do too much bending or lifting or?

A Sometimes just to walk.  There's --

Q Just to walk?

A It's not every day.  It's off and on.  Some days it's okay.  Somedays it's not.

Q And did they, did they provide you any treatment back then?

**41**

A They just -- dyclophinac [phonetic], which is an anti-
inflammatory.  And, you know, back then that's the things
that they did.  Now, they'll do a --

Q Did you do a consult to a surgeon or anything like that?
Or to a back doctor?  An orthopedic doctor?

A I'm thinking I went to one in Lexington.  It's so hard
for me to remember back.  The date --

Q Now that I see it, you do have a consult in 2008 for a
Doctor Smith.

A Oh, that was in -- is that the doctor -- I do remember
now.  I went -- I'm nervous.  I went to a doctor in
Kingsport, Tennessee.

Q Okay.

A I'd forgotten about him.  And he did a test on my back.
And he's the first person that told me there was narrowing,
I think, and a --

Q Right.

A He said it was pushing in on the spine a little bit but
he didn't want to do --

Q So did he give you some more of the medicine we just
talked about?  The Ibuprofen and the --

A Dyclophinac.  Yes, sir.

Q Thanks.  But that seems to be it.

A Yeah.

**42**

Q It said, it asked you to keep an appointment with rheumatology and he recommended a myelogram, but I don't see that one was ever done.

A Yes.  They did a myelogram.

Q Okay.  I'll have to take a look at that one.  I don't -- I took notes.  I didn't see it, but -- what did the myelogram say?

A He showed me the area in my neck where the disc was -- at that time I think he called it a bulging -- and the narrowing of the, where the spinal cord is.  And there was a bone spur that was pushing toward that.  And he, he said he didn't want to do surgery then.  You wait until you have to do the surgery.

Q Okay.  So instead he just gave you medicine.  Did you give you injections or physical therapy or anything like that?

A He didn't do anything as far as physical therapy or anything like that on my back.

Q Well not him, but your other doctor?  Did your just family doctor refer you to physical therapy or to a pain specialist to maybe give you some injections or anything like that?

A No.  I've had injections since then.  But not back then I didn't.

**43**

13

Q Okay.  Okay.  Thanks.

ALJ: All right counsel, go ahead.

**Examination of Claimant by Claimant's Attorney**

Q Ms. Naillieux -- I had a question here and now I've lost it.  Hang on just a second here.  When you worked as a dental assistant, how long did you do that?

A I worked in Arkansas for two years.

Q Okay.

A And then I moved and worked in Cumberland for a year.

Q So all together you did that type of work for about three years?

A About three years.  I filled in some when I lived in Jackson also.

Q What's the difference between a dental assistant and a dental hygienist?

A The hygienists are allowed to do the actual cleaning.

Q Okay.

A An assistant takes x-rays.  Assists the dentist in whatever he's doing.  Gets everything ready.  Puts everything up.  And you assist while he's doing the actual work.  You suction and --

Q Okay.

A -- and --

Q And so did that involve a lot of time on your feet?

**44**

A Yeah.  It was a lot of time on my feet.  Cleaning.  It's a -- you know, you clean everything up.  Get everything ready to see the patient.  And then while you're working on the patient you're sitting.

Q Okay.  And then I assume when you were doing the janitorial work that there was a lot of standing involved in that as well?

A Yes, ma'am.

Q What sort of cleaning did you have to do when you doing janitorial?

A You emptied all the garbage.  It was a big, it was a big building.  You emptied the garbage.  You did the sweeping, mopping, vacuuming, dusting, cleaning windows.  You'd do the -- you had to do the floors.  Sometimes I had -- it wasn't very often, but sometimes I did have to do the stripping and waxing of the floors, with the machine.

Q So now, all of those things that you were just then talking about involves you being on your feet?

A Yes, ma'am.

Q And doing a lot of reaching with the mop and the broom and all that sort of thing?

A Yes.  And I've -- I had good days and bad days.  It just --

Q Were you able -- did you have a supervisor there with you or were you pretty much on your own?

A Pretty much on my own.  There was people that worked there that I'd talk with and ask what needed, you know, if anything special needed to be done.

Q Would you have been able to take breaks as you needed them?

A Yes.  I could, I could take as long as -- I went to work at night, in the afternoon, when most of the day shift was gone.  And I could work as long as I needed to get the job done.  If I wanted to work all night, I could.  Just so it was done by the next day.

Q And were you able to keep up with that?  To do everything that was required of you?

A I was able to do it.  I could do what I wanted and I could sit and rest.  And I could -- and I was able to do the work.  At times when I needed help, I hired someone to help me do the work.

Q What kinds of things did you need help with?

A The waxing and doing the floors.  I usually needed help with.  Cleaning the windows, I usually needed help with.

Q The cleaning of the windows, was that inside windows, outside?

A Both.

**46**

Q Inside and out?

A Yes.

Q Okay.  Did you have to get on a ladder to do that?

A I did not get on a ladder because I had equipment that
was on long poles that I could do it with.

Q Was that then -- did that involve reaching over your
head?

A It did.  It did.

Q Was that something that required you to use both hands to
operate the --

A Usually that right arm.

Q The right --

A You know, because I'm right-handed.  So --

Q Okay.  And that was the last job that you had before you
all moved?

A Yes it was.

Q Is that correct?

A It was.

Q Okay.  Do you think you would have been able to return to
that type of work if it had been available in 2005?

A I probably could have done it some.  But it had gotten to
where it was harder and harder and I was having to hire
people to help me --

Q Okay.

**47**

A -- at the job.

Q So even if you had been able to get a job you would have had to hire help?

A I think so.  The light weight stuff, the sweeping with a push mop and the vacuuming and the dusting I could probably do that.  But the harder work, the -- that's what I did.  I hired somebody to help me.

Q And so, that would have been somebody you would have had to pay out of what you were being paid?

A Out of what I was being paid, yes, ma'am.

Q About how long would it take you to do everything that you were required to do at your cleaning job?

A It was kind of like your housework.  If you could get it all done up, then it didn't take too long for a day or two.  And then it would take -- I never spent less than two to three hours there a night.  Sometimes I spent six.  According to what I had to do and if I had somebody there with me or not.

Q The nights that it took six hours was that because of additional things that you had to do or was that because you were needing to take more breaks?

A Well, I would take breaks but it was because I had more to do also.  Yes.

**48**

Q Okay.  Now, I have in my notes -- and tell me if these are things are things that you actually had at that time or this may be some of the things that you're dealing with now.   IBS.

A Oh yes, I did.

Q You did have that then?

A Yes, ma'am.

Q Okay.  And you said at one point you had had IBS with diarrhea and then developed later on IBS with constipation?

A Yes.  At that time --

Q At that time --

A -- it was diarrhea.

Q -- it was diarrhea.

A Debilitating sometimes.  Just --

Q Explain what you mean by debilitating.

A If I had to go somewhere I just didn't eat anything.  Because I knew -- and it was -- I would just have to stop what I was doing until I had medication that I could take and it would stop the cramping and the diarrhea.  It just -- it wouldn't have mattered what it was, you had to stop.

Q So, if you had had an attack of diarrhea while you were working, you would have had to stop working while it passed?

**49**

A And went home.  And then come back later, after it was

better.  I usually had to go to bed.  Sometimes that was

just for 30 minutes.  Sometimes it was for a couple hours.

But then I would get to feeling better and get back up.

Q Did that ever happen while you were working?

A I don't want to lie, I'm trying to think if I can

remember a time.

Q Well, let me ask you this, you worked mainly in the

evenings, is that correct?

A What time of day did you have the most problem with your

IBS?

Q IBS is triggered by, by your emotions, and your nerves,

and stress.  And I never knew.

Q So it was just unpredictable?

A Yeah.  It was very unpredictable.  If I had to go

somewhere I just didn't eat until I was done.  If I worked

in the evening -- a lot of time I would do dinner for the

children and I would go on and do my work and then I would

come back home.

Q And what about fibromyalgia, when did you develop -- was

that during this time period?  It was.  There was doctor

here in Hazard and -- I can't remember his name -- that

told me that -- he did all the tests for arthritis and it

all came back that -- he said that I didn't have arthritis.

**50**

He did all these tests and ruled everything else out and told me it was fibromyalgia. At that time, I didn't even know what it was. That was also part of the [INAUDIBLE].

Q And how did that affect your ability to work? If it did.

A It did. It did. There was, there was, again, times that I remember going to work and thinking I'm getting the flu, I must be getting the flu. And it would take me a little while to realize that no, it's, the weather's bad or -- and it would just make -- it just makes you feel, you just can't function for a while. The anti-inflammatory medication helps that a lot. The fibromyalgia.

Q When your fibromyalgia was bothering you, you said like you were getting the flu. Specifically, I mean, were you sick at your stomach, or was it --

A No, it's -- you ache all over.

Q Okay.

A To the point of -- you feel like you have a temperature, but you don't. Chilling and just body aches mostly. Just hurting all over. To the point of almost like you can't move. And you go lay down for a while. The anti-inflammatory, as long as I take it, it helps with that. But it causes my liver enzymes to go up so I'm very careful about, you know, maybe every other day taking that

**51**

medication because it is -- I've been taking it now for, 20, 30 years.  It's been a long time.

Q Did you ever have to miss work because of your either your IBS or your fibromyalgia?

A Yes.  I have.  I just -- they were very good and I could hire somebody too.  To go work for me when I needed not to go.

Q How often would you say you had to miss work because of those things?

A It's so hard too --

Q And if you don't know, that's fine.

A I really don't know because I don't want to say something that's not true.  But I did, I did miss work because of it. But it was just hit and miss.  You never knew.

Q It just depended on how --

A Mm-hmm.

Q Okay.  What about diabetes?  Is that something you had at that time?

A No.  They didn't tell me that I had diabetes then.

Q Okay.  High blood pressure, was that back then?

A No.  The Lisinopril is for the diabetes too.

Q Okay.  Diverticulitis.  Is that something new or did you have that back then?

A Well, they never told me that then either, but it's the same symptoms that --

Q Yes.  As the IBS.

A -- come with the IBS, yes.

Q All right.

A I've been so sick before that I've had to -- when my kids were little -- they just had to, I had to take them to bathroom and they had to stay on the floor until I could --

Q They had to go to the bathroom with you?

A Yeah, they were little and I would just -- I couldn't watch them any other way.

Q How long ago was that do you think?

A I lived in Arkansas.  That was 30 years ago.  I cleaned houses back then also.  I lived on a military base.  And that's when the pain really started bad in my, in my arm.

ATTY: That's all I have, judge.

ALJ: Okay.  Ma'am, we're going to talk to our vocational expert at this point, okay?  I'm going to come back to you after that.  If there's anything else that pops into your head you think is important for me to know, we haven't talked about it yet, just let me know at that point, all right?

CLMT: Okay.  Thank you.

**53**

ALJ: Great.  Your welcome.  Mr. Beater, state your name for the record, please?

VE: Yes.  My name is Mitch Beater.

ALJ: And your resume that you submitted to us, is that accurate and up to date

VE: Yes, sir, it is.

ALJ: Ms. Burton, do you have any objection to Mr. Beater's qualifications to testify today as a vocational expert?

ATTY: No, your honor.

ALJ: Okay, thanks.  Mr. Beater, I'm going to be asking for national numbers.  I'm going to assume that your testimony will be consistent with the guidance from the Dictionary of Occupational Titles and the SCO.  If you have to divert from those publications at all and rely on other authority such as your own background or experience, just let me know when you do that and explain why, okay?

VE: Yes, sir.

> (The vocational expert, MITCH BEATER, having been first duly sworn, testified as follows:)

> **Examination of Vocational Expert by Administrative Law Judge**

Q From what I can see, two prior relevant jobs would be a janitor, performed at the light level and a dental assistant performed at the light level.  Can you go ahead and classify that work for me, please?

A Yes, sir.  The claim of the janitorial job, I am characterizing under the occupational titles on housekeeping/cleaner.  That DOT number is 323.687-014. That SVP is 2.  And the DOT's exertional level is listed as light.  That's how Ms. Naillieux described her job as well. And then the dental assistant -- that's the occupational title, dental assistant.  The DOT number 079.361-018.  That SVP is 6.  It is certified for light.  And according to the record, that job was performed at the light level, your honor.

Q Okay.  All right.  Assume a person of claimant's age, education, and work experience who is able to perform the exertional demands of light work defined by social security regulations.  Additionally, the person can frequently climb ramps or stairs.  Can only occasionally climb ladders, ropes, or scaffolds.  Can frequently balance, stoop, kneel, crouch, or crawl.  Would have to avoid concentrated exposure too extreme cold.  Must avoid concentrated exposure to excessive vibration.  Based upon those limitations would the individual be able to perform any of the claimant's past work as it was actually performed or as it is customarily performed per the DOT?

A Yes, sir.  Both occupations as described by the DOT and as described by Ms. Naillieux.

55

Q Okay.  Now if I add a limitation that the individual
could only occasionally reach overhead with the right upper
extremity, how would that affect those two jobs?

A I'm going to look that up.

Q Okay.

A You said occasional overhead reaching, correct?

Q Right.

A Okay, so with the housekeeping, it lists reaching in
general as frequent.  Now, in terms of reaching overhead on
a more than occasional basis, I don't think that in my, in
my professional opinion, this is going outside of what the
DOT provides, I -- my experience is that they could
continue to do that job reaching overhead on an occasional
basis.  Reaching in general, now that will be frequent, but
overhead I think occasional fits the bill.

Q What about the other job?

A Yeah.  I don't want to make an assumption.  I'm want to
look it up.

Q Okay.

A Okay.  We're in the same situation.  It's a frequently
reaching job.  But in terms of doing dental assistant work,
once again, I'm going on my professional opinion on this,
reaching above the head on a more than occasional basis, I
don't think that's necessary to be a dental assistant.  I

**56**

[INAUDIBLE] reaching would be, you know, between the waist and shoulder level.  So with the occasional restriction in the hypothetical would fit the bill of dental assisting as well.  My experience is based on 29 years of working various levels as a vocational rehabilitation counselor, consultant, and as a return to work consultant.

Q Well what if -- would there be other jobs aside from these two that would accommodate those limitations?  If so, could you give me some examples?

A Let me take a look, your honor.  Now what we're going to be looking at are similar situations that I just described. Where we're going to have frequent reaching, but in my opinion the reaching will not exceed the occasional as far as over-head reaching is concerned.

Q Okay.

A Okay.  So, I would suggest cashier II.  That DOT number is 211.462-010.  The SVP is 2.  Strength factor light. We're in 2009, your honor?

Q Yes.

A That -- the 2009 national employment estimate is 754,000. I would suggest cafeteria attendant.  That DOT number 311.677-010.  The SVP is 2.  The strength factor light. And it has an estimate of 57,000.  I would also suggest fast food worker.  That DOT number 311.472-010.  That SVP

**57**

is 2.  The strength factor light.  The 2009 national

employment estimate of 1,140,000.  Now I should point out

with fast food worker, whereas the other two, the other

occupations I was describing, those have frequent reaching

requirements.  But as I said, you know, only occasional

basis overhead.  With fast food worker the general reaching

requirement is constant but there again they're not

reaching overhead on a more than occasional basis in my

opinion.

Q Okay.  What about if I reduced the exertional demand too

sedentary and left everything else the same?

A If we take it down to sedentary?

Q Right.

A Including the occasional reaching?

Q Yes.

A Okay.  We take it down too sedentary, I would suggest the

surveillance system monitor.  That DOT number 379.267-010.

The SVP is 2, strength factor sedentary.  The 2009 national

employment estimate of 9,500.  On that job the DOT lists

reaching as none.  The call out operator.  The DOT number

227.367-014.  SVP 2, strength factor sedentary.  The 2009

national employment estimate, 41,000.  The general reaching

requirement for that job is listed as occasional.  And then

there's the document preparer.  That might also be known as

**58**

scanner.  That DOT number 249.587-018.  The SVP 2, the
strength factor sedentary.  The 2009 national employment
estimate of 220,000.  That job does have a frequent general
reaching requirement.  As a sedentary job, in my
professional opinion, I think the occasional limitation on
reaching overhead would be met.

Q Okay.  What if somebody's having a bad day and they just
can't get to work.  And they're going to have those bad
days once in a while because of the impairments that
they're unfortunately stuck with.  How many days absent,
how many absences in your opinion were tolerated by
employers in the unskilled work environment during that
time period?

A Yeah, of course this is information that's not provided
for in the DOT.  So this is based on my professional
opinion again as previously described.  Especially the
lower skilled jobs, on average one day a month consistently
over time is going to be unacceptable for the vast majority
of employers that I've been in contact with.

Q Okay.  And if somebody's got to take excessive breaks
because of a problem their dealing with and it takes them
off task for periods of the day, how much off task
behavior, in your opinion, is going to be tolerated?

**59**

A Yeah.  My opinion, in my professional opinion 10 percent
unscheduled breaks.  Above and beyond normal breaks.
Unexpected, unscheduled breaks of, you know take them off
task 10 percent or more is unacceptable of the vast
majority of employers I've been in contact with.

Q Okay.  Thank you.

ALJ: Counsel, do you have any questions of our VE?

ATTY: No, I don't.

ALJ: Thank you.  Ma'am, did we miss anything that you think
I need to know.  I'm not saying there is.  I just ask.

CLMT: I don't think so.  It's hard for me to --

ALJ: Okay.  We have all your records so that's always good.
Okay.  I'm going to look at all those records and my notes
from your testimony and the testimony of our VE.  And then
I'll issue a decision.  Send you a copy and your counsel a
copy as well.  In the meantime, nice talking to you, okay?

CLMT: Thank you.

ALJ: Good luck to you and your family.  And I hope things
get better for you.

CLMT: You have a good day.

ALJ: Yeah.  You too.

    (The hearing concluded at 2:53 p.m. on February 26,
    2016.)

30

Certification

I have read the foregoing and hereby certify that this is a
true and complete transcription of the testimony recorded
at the hearing in the case of Lorena Lynn Naillieux, held
before Administrative Law Judge John M. Dowling.

_____
Transcriber, National Capitol Contracting

_____
Proofreader, National Capitol Contracting

**61**

SOCIAL SECURITY ADMINISTRATION

# DISABILITY DETERMINATION AND TRANSMITTAL

| 1. DESTINATION | 2. DDS CODE | 3. FILING DATE | 4. SSN | BIC (if CDB or DWB CLAIM) |
|---|---|---|---|---|
| DDS ☐ ODO ☐ DRS ☐ DQB ☐ INTPSC ☐ | S20 | 06/20/2008 | 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 | 00 |

**5. NAME AND ADDRESS OF CLAIMANT (include ZIP Code)**
LORENA LYNN NAILLIEUX
85 BARLOW BRANCH
PARTRIDGE KY 40862
067 LETCHER

**6. WE'S NAME (if CDB or DWB CLAIM)**

**7. TYPE CLAIM (Title II)**

| DIB | FZ | DWB | CDB-R | CDB-D | RD-R | RD-D | RD | P-R | P-D | MQFE |
|---|---|---|---|---|---|---|---|---|---|---|
| ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**8. TYPE CLAIM (Title XVI)**

| DI | DS | DC | BI | BS | BC |
|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

| 9. DATE OF BIRTH | 10. PRIOR ACTION | 11. REMARKS |
|---|---|---|
| 07/31/1962 | PD ☐ PT ☐ | Clmt Phone: 606-589-4149  DDS Received 06/23/2008 |

**12. DISTRICT-BRANCH OFFICE ADDRESS (include ZIP Code)**
SOCIAL SECURITY ADMINISTRATION
1897 KY RT 321
PRESTONSBURG, KY 41653

**DO-BO CODE** B24

| 13. DO-BO REPRESENTATIVE | 14. DATE | 11A. Presumptive Disability | 11B. Impairment _____ |
|---|---|---|---|

## DETERMINATION PURSUANT TO THE SOCIAL SECURITY ACT, AS AMENDED

| 15. CLAIMANT DISABLED | 16A. PRIMARY DIAGNOSIS | BODY SYS. | CODE NO. | 16B. SECONDARY DIAGNOSIS | CODE NO. |
|---|---|---|---|---|---|
| A. ☐ Disability Began | AFFECTIVE (MOOD) DISORDERS | 12 | 2960 | DISORDERS OF BACK DISCOGENIC & DEGENERATIVE | 7240 |
| B. ☐ **Disability Ceased** | | | | | |

| 17. DIARY TYPE | MO./YR. | REASON |
|---|---|---|

**18. CASE OF BLINDNESS AS DEFINED IN SEC. 1614(a)(2)/(216)(i)**

| A. ☐ Not Disab. for Cash Bene. Purp. | B. ☐ Disab for Cash Benefit Purp. Beg. |
|---|---|

**19. CLAIMANT NOT DISABLED**

| A. ☒ Through Date of Current Determination | B. ☐ Through _____ | C. ☐ Before Age 22 (CDB only) |
|---|---|---|

| 20. VOCATIONAL BACKGROUND | OCC YRS. | ED YRS. | 21. VR ACTION | | |
|---|---|---|---|---|---|
| JANITOR | 12 | 13  COLL 1 | SCIN. ☐ A. | SCOUT ☒ B. | Prev Ref ☐ C. |

| 22. REG-BASIS CODE | 23. MED LIST NO. | 24. MOB CODE | 25. REVISED | Initial | Recon | DHU | ALJ Hearing | Appeals Council | U.S. District Court |
|---|---|---|---|---|---|---|---|---|---|
| F1 | | | DET ☐ | ☒ A. | ☐ B. | ☐ C. | ☐ D. | ☐ E. | ☐ F. |

| 26. LIST NO. | ► A. | B. | C. | D. | E. | F. |
|---|---|---|---|---|---|---|

**27. RATIONALE**  ☐ See Attached SSA-4268-U4/C4    ☐ Check if Vocational Rule Met. Cite Rule  ►

**28.**

| A. ☐ Period of Disability | B. ☐ **Disability Period** | C. ☐ Estab Beg _____ | AND D. ☐ Continues | E. ☐ Term _____ |
|---|---|---|---|---|

| 29. LTR/PAR NO. | 30. DISABILITY EXAMINER-DDS | 31. DATE | 32. PHYSICIAN OR MEDICAL SPEC. SIGNATURE | 33. DATE |
|---|---|---|---|---|
| DDS/DL | A5 HOP   Jim Hoppin | 09/10/2008 | | |

| 32A. PHYSICIAN OR MEDICAL SPEC. NAME   (Stamp, Print or Type) | 32B. SPEC. CODE |
|---|---|
| | 47 |

**34. REMARKS**
ERIC CHRISTOPHER CONN
PO BOX 308
STANVILLE KY 41659
SDM Case

**MULTIPLE IMPAIRMENTS CONSIDERED**

34A. COMBINED MULTIPLE NONSEVERE -SEVERE

34B. COMBINED MULTIPLE NONSEVERE -NONSEVERE

| 35. BASIS CODE | 36. REV. DET. CODES | 37. SSA REPRESENTATIVE | SSA CODE | 38. DATE |
|---|---|---|---|---|

Form SSA-831-C3 (5/89)    Oper HOP    Date 09/10/2008    Case # 1413020    Dec DE    ☐ DECISION   ☐ CASE CONTROL

**62**

SOCIAL SECURITY ADMINISTRATION

# DISABILITY DETERMINATION AND TRANSMITTAL

| 1. DESTINATION | 2. DDS CODE | 3. FILING DATE | 4. SSN | BIC (if CDB or DWB CLAIM) |
|---|---|---|---|---|
| DDS ☐ ODO ☐ DRS ☐ DQB ☐ INTPSC ☐ | S20 | 06/20/2008 | 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 | 00 |

**5. NAME AND ADDRESS OF CLAIMANT (include ZIP Code)**
LORENA LYNN NAILLIEUX
85 BARLOW BRANCH
PARTRIDGE KY 40862
067 LETCHER

**6. WE'S NAME (if CDB or DWB CLAIM)**

**7. TYPE CLAIM (Title II)**

| DIB | FZ | DWB | CDB-R | CDB-D | RD-R | RD-D | RD | P-R | P-D | MQFE |
|---|---|---|---|---|---|---|---|---|---|---|
| ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**8. TYPE CLAIM (Title XVI)**

| DI | DS | DC | BI | BS | BC |
|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

| 9. DATE OF BIRTH | 10. PRIOR ACTION | 11. REMARKS |
|---|---|---|
| 07/31/1962 | PD ☒  PT ☐ | Clmt Phone: 606-589-4149 Recon filed 09/25/2008 Recon received 10/03/2008 |

**12. DISTRICT-BRANCH OFFICE ADDRESS (include ZIP Code)**
SOCIAL SECURITY ADMINISTRATION
1897 KY RT 321
PRESTONSBURG, KY 41653

**DO-BO CODE** B24

| 13. DO-BO REPRESENTATIVE | 14. DATE | 11A. Presumptive Disability _____ | 11B. Impairment _____ |
|---|---|---|---|

## DETERMINATION PURSUANT TO THE SOCIAL SECURITY ACT, AS AMENDED

| 15. CLAIMANT DISABLED | 16A. PRIMARY DIAGNOSIS | BODY SYS. 01 | CODE NO. 7240 | 16B. SECONDARY DIAGNOSIS | CODE NO. 2960 |
|---|---|---|---|---|---|
| A. ☐ Disability Began | DISORDERS OF BACK DISCOGENIC & DEGENERATIVE | | | AFFECTIVE (MOOD) DISORDERS | |
| B. ☐ **Disability Ceased** | | | | | |

| 17. DIARY TYPE | MO./YR. | REASON |
|---|---|---|

**18. CASE OF BLINDNESS AS DEFINED IN SEC. 1614(a)(2)/(216)(i)**

| A. ☐ Not Disab. for Cash Bene. Purp. | B. ☐ Disab for Cash Benefit Purp. Beg. |
|---|---|

**19. CLAIMANT NOT DISABLED**

| A. ☒ Through Date of Current Determination | B. ☐ Through _____ | C. ☐ Before Age 22 (CDB only) |
|---|---|---|

| 20. VOCATIONAL BACKGROUND | OCC YRS. 09 | ED YRS. 13  1 YEAR O | 21. VR ACTION | SCIN. ☐ | SC OUT ☒ | Prev Ref |
|---|---|---|---|---|---|---|
| | | | A. ☐ | B. ☒ | C. ☐ | |

| 22. REG-BASIS CODE H1 | 23. MED LIST NO. | 24. MOB CODE | 25. REVISED DET ☒ | Initial ☐ | Recon ☒ | DHU ☐ | ALJ Hearing ☐ | Appeals Council ☐ | U.S. District Court ☐ |
|---|---|---|---|---|---|---|---|---|---|

| 26. LIST NO. ▶ | A. | B. | C. | D. | E. |
|---|---|---|---|---|---|

**27. RATIONALE**
☐ See Attached SSA-4268-U4/C4    ☐ Check if Vocational Rule Met. Cite Rule ▶

**28.**

| A. ☐ Period of Disability | B. ☐ **Disability Period** | C. ☐ Estab Beg _____ AND D. ☐ Continues | E. ☐ Term _____ |
|---|---|---|---|

| 29. LTR/PAR NO. DDS/DL | 30. DISABILITY EXAMINER-DDS B3 SMD  Suzanne Wilson | 31. DATE 11/24/2008 | 32. PHYSICIAN OR MEDICAL SPEC. SIGNATURE *Amanda Lange M.D* | 33. DATE 12/01/2008 |
|---|---|---|---|---|

**32A. PHYSICIAN OR MEDICAL SPEC. NAME (Stamp, Print or Type)**
AMANDA LANGE M.D. 19

**32B. SPEC. CODE** 19

**34. REMARKS**
ERIC CHRISTOPHER CONN
PO BOX 308
STANVILLE KY 41659
Recon Affirmation.

**MULTIPLE IMPAIRMENTS CONSIDERED**

**34A. COMBINED MULTIPLE NONSEVERE -SEVERE**

**34B. COMBINED MULTIPLE NONSEVERE -NONSEVERE**

| 35. BASIS CODE | 36. REV. DET. CODES | 37. SSA REPRESENTATIVE | SSA CODE | 38. DATE |
|---|---|---|---|---|

Form SSA-831-C3 (5/89)   Oper  AXL   Date  12/01/2008   Case #  1439686   Dec  DE   ☐ DECISION   ☐ CASE CONTROL

**63**

**SOCIAL SECURITY ADMINISTRATION**

Refer To: 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

Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc
Second Floor
301 Ninth Street
Huntington, WV 25701

Date: January 27, 2009

Lorena Lynn Naillieux
85 Barlow Branch
Partridge, KY 40862

### NOTICE OF DECISION – FULLY FAVORABLE

I have made the enclosed decision in your case. Please read this notice and the decision carefully.

**This Decision is Fully Favorable To You**

Another office will process the decision and send you a letter about your benefits. Your local Social Security office or another may first ask you for more information. If you do not hear anything for 60 days, contact your local office.

**The Appeals Council May Review The Decision On Its Own**

The Appeals Council may decide to review my decision even though you do not ask it to do so. To do that, the Council must mail you a notice about its review within 60 days from the date shown above. Review at the Council's own motion could make the decision less favorable or unfavorable to you.

**If You Disagree With The Decision**

If you believe my decision is not fully favorable to you, or if you disagree with it for any reason, you may file an appeal with the Appeals Council.

**How to File an Appeal**

To file an appeal you or your representative must request that the Appeals Council review the decision. You must make the request in writing. You may use our Request for Review form, HA-520, or write a letter.

You may file your request at any local Social Security office or a hearing office. You may also mail your request right to the **Appeals Council, Office of Disability Adjudication and Review, 5107 Leesburg Pike, Falls Church, VA 22041-3255**. Please put the Social Security number shown above on any appeal you file.

**64**

**Time to File an Appeal**

To file an appeal, you must file your request for review **within 60 days** from the date you get this notice.

The Appeals Council assumes you got the notice 5 days after the date shown above unless you show you did not get it within the 5-day period.  The Council will dismiss a late request unless you show you had a good reason for not filing it on time.

**Time to Submit New Evidence**

You should submit any new evidence you wish to the Appeals Council to consider **with** your request for review.

**How an Appeal Works**

Our regulations state the rules the Appeals Council applies to decide when and how to review a case.  These rules appear in the Code of Federal Regulations, Title 20, Chapter III, Part 404 (Subpart J) .

If you file an appeal, the Council will consider all of my decision, even the parts with which you agree.  The Council may review your case for any reason.  It **will** review your case if one of the reasons for review listed in our regulation exists.  Section 404.970 of the regulation lists these reasons.

Requesting review places the entire record of your case before the Council.  Review can make any part of my decision more or less favorable or unfavorable to you.

On review, the Council may itself consider the issues and decide your case.  The Council may also send it back to an Administrative Law Judge for a new decision.

**If No Appeal and No Appeals Council Review**

If you do not appeal and the Council does not review my decision on its own motion, you will not have a right to court review.  My decision will be a final decision that can be changed only under special rules.

**65**

Lorena Lynn Naillieux (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)                                    Page 3 of 3

**If You Have Any Questions**

If you have any questions, you may call, write or visit any Social Security office.  If you visit an office, please bring this notice and decision with you.  The telephone number of the local office that serves your area is (606)886-8525.  Its address is Www.Socialsecurity.Gov, Social Security, 1897 Ky Rt 321, Prestonsburg, KY 41653.


David B. Daugherty
Administrative Law Judge


cc:     Eric C. Conn
        Po Box 308
        Stanville, KY 41659

**66**

# SOCIAL SECURITY ADMINISTRATION
## Office of Disability Adjudication and Review

## ORDER OF ADMINISTRATIVE LAW JUDGE

| | |
|---|---|
| **IN THE CASE OF** | **CLAIM FOR** |

Lorena Lynn Naillieux

(Claimant)

(Wage Earner)

Period of Disability and Disability Insurance Benefits

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

(Social Security Number)

I approve the fee agreement between the claimant and her representative subject to the condition that the claim results in past-due benefits. My determination is limited to whether the fee agreement meets the statutory conditions for approval and is not otherwise excepted. I neither approve nor disapprove any other aspect of the agreement.

**YOU MAY REQUEST A REVIEW OF THIS ORDER AS INDICATED BELOW**

**Fee Agreement Approval:** You may ask us to review the approval of the fee agreement. If so, write us within 15 days from the day you get this order. Tell us that you disagree with the approval of the agreement and give your reasons. Your representative also has 15 days to write us if he or she does not agree with the approval of the fee agreement. Send your request to this address:

> Jasper J. Bede
> Regional Chief Administrative Law Judge
> SSA ODAR Regional Ofc
> 4th Floor East
> 300 Spring Garden St
> Philadelphia, PA 19123

**Fee Agreement Amount:** You may also ask for a review of the amount of the fee due to the representative under this approved fee agreement. If so, please write directly to me as the deciding Administrative Law Judge within 15 days of the day you are notified of the amount of the fee due to the representative. Your representative also has 15 days to write me if he/she does not agree with the fee amount under the approved agreement.

**67**

Lorena Lynn Naillieux (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)                                    Page 2 of 2

You should include the social security number(s) shown on this order on any papers that you
send us.

/s/ *David B. Daugherty*
_____
David B. Daugherty
Administrative Law Judge

January 27, 2009
_____
Date

**68**

## SOCIAL SECURITY ADMINISTRATION
### Office of Disability Adjudication and Review

### DECISION

**IN THE CASE OF**

Lorena Lynn Naillieux
_____
(Claimant)

_____
(Wage Earner)

**CLAIM FOR**

Period of Disability and Disability Insurance Benefits
_____

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
_____
(Social Security Number)

### JURISDICTION AND PROCEDURAL HISTORY

This case is before the undersigned on a request for hearing dated December 15, 2008 (20 CFR 404.929 *et. seq.*). The evidence of record supports a fully favorable decision; therefore no hearing has been held (20 CFR 404.948(a)). The claimant is represented by Eric C. Conn, an attorney.

The claimant is alleging disability since October 15, 2005.

### ISSUES

The issue is whether the claimant is disabled under sections 216(i) and 223(d) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

There is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2010. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful review of the entire record, the undersigned finds that the claimant has been disabled from October 15, 2005 through the date of this decision. The undersigned also finds that the insured status requirements of the Social Security Act were met as of the date disability is established.

### APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a)). The steps are followed in order. If it is determined that the

**69**

claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 404.1509), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e)). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of her past relevant work (20 CFR 404.1520(f)). If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g)), the undersigned must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience. If the claimant is able to do other work, she is not disabled. If the claimant is not able to do other work and meets the duration requirement, she is disabled. Although the claimant generally continues to have the burden of proving disability

**70**

at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration.  In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g) and 404.1560(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1.    The claimant's date last insured is December 31, 2010.**

**2.    The claimant has not engaged in substantial gainful activity since October 15, 2005, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).**

**3.    The claimant has the following severe impairment(s): cervical radiculitis, stenosis, cancer and chronic pain (20 CFR 404.1520(c)).**

**4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)).**

**5.    The claimant has the residual functional capacity to lift 5-10 pounds occasionally and 5 pounds frequently, stand/walk 1-2 hours per work day, sit 4-5 hours per work day, only occasionally balance, stoop, crouch or crawl and never climb.**

In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p.  The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-6p and 06-3p.

Having considered all of the evidence, I am satisfied that the information provided by Dr. Huffnagle most accurately reflects the claimant's impairments and limitations.  Therefore, the claimant is limited to less than sedentary work at best.

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms, and that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are generally credible.

**71**

Lorena Lynn Naillieux (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)                                                    Page 4 of 5

The State agency medical consultants' physical assessments are given little weight because another medical opinion is more consistent with the record as a whole and evidence received at the hearing level shows that the claimant is more limited than determined by the State agency consultants.

**6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565).**

The demands of the claimant's past relevant work exceed the residual functional capacity.

**7.   The claimant was a younger individual age 18-44 on the established disability onset date (20 CFR 404.1563).**

**8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).**

**9.   The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 CFR 404.1568).**

**10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

If the claimant had the residual functional capacity to perform the full range of sedentary work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.28. However, the additional limitations so narrow the range of work the claimant might otherwise perform that a finding of "disabled" is appropriate under the framework of this rule.

**11.   The claimant has been under a disability as defined in the Social Security Act since October 15, 2005, the alleged onset date of disability (20 CFR 404.1520(g)).**

**72**

## DECISION

Based on the application for a period of disability and disability insurance benefits filed on June 20, 2008, the claimant has been disabled under sections 216(i) and 223(d) of the Social Security Act since October 15, 2005.

/s/ *David B. Daugherty*
_____
David B. Daugherty
Administrative Law Judge

January 27, 2009
_____
Date

**73**

DEPARTMENT OF HEALTH AND HUMAN SERVICES–SOCIAL SECURITY ADMINISTRATION

## DISABILITY DETERMINATION AND TRANSMITTAL

| 1. DESTINATION | 2. DDS CODE | 3. FILING DATE | 4. SSN | BIC (If CDB or DWB) |
|---|---|---|---|---|
| DDS  ODO  DRS  DQB  INTPSC | | 06/20/2008 | 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 | |

**5. NAME & ADDRESS OF CLAIMANT** (Include ZIP Code)

LORENA LYNN NAILLIEUX
85 BARLOW BRANCH
PARTRIDGE, KY 40862

**6. WE'S NAME** (If CDB or DWB)

**7. TYPE CLAIM (Title II)**
◉ DIB  ○ FZ  ○ DWB  ○ CDB-D  ○ RD-R
○ RD-D  ○ RD  ○ PR  ○ P-D  ○ MQFE

**8. TYPE CLAIM (Title XVI)**
○ DI  ○ DS  ○ DC  ○ BI  ○ BS  ○ BC

| 9. DATE OF BIRTH | 10. PRIOR ACTION | |
|---|---|---|
| 07/31/1962 | ○ PD | ○ PT |

**11. REMARKS**
BTN (606) 589-4149

| 12. DISTRICT OFFICE ADDRESS (SCC - 18350A) | DO CODE |
|---|---|
| 1897 KY RT 321, PRESTONSBURG, KY 41653 | B24 |

| 13. DO REPRESENTATIVE | 14. DATE |
|---|---|

11A. ○ PRESUMPTIVE DISABILITY
11B. ○ IMPAIRMENT

## DETERMINATION PURSUANT TO THE SOCIAL SECURITY ACT, AS AMENDED

| 15. CLAIMANT DISABLED | 16A. PRIMARY DIAGNOSIS | BODY SYS. | CODE NO. | 16B. SECONDARY DIAGNOSIS | CODE NO. |
|---|---|---|---|---|---|
| A. ☑ Disability Began  10/15/2005 | | 01 | 7240 | | |
| B. ☐ Disability Ceased | Disorders of Back (discogenic and degenerative) | | | | |

| 17. DIARY TYPE | MM/DD/YY | REASON |
|---|---|---|
| MRN | 01/01/12 | 3 |

**18. CASE OF BLINDNESS AS DEFINED IN SEC 1614(a)(2)(216)(I)**
A. ○ Not Disab. for Cash Bene. Purp.
B. ○ Disabled for Cash Benefit Purp. Beg.

**19. CLAIMANT NOT DISABLED**
A. ○ Through Date of Current Determination
B. Through
C. ○ Before Age 22 (CDB only)

| 20. VOCATIONAL BACKGROUND | OCC. YRS. 09 | ED. YRS. 13 | 21. VR ACTION | SC IN ○ A. | SC OUT ○ B. | Prev. Ref. ○ C. |
|---|---|---|---|---|---|---|
| 22. REG-BASIS CODE | 23. MED. LIST NO. | 24. MOB CODE | 25. REVISED DET. ◉ | 25A. ○ Init. ◉ ALJ | ○ Recon. ○ APP COUN | ○ DHU ○ US DIST CT |

| 26. LIST NO. ▶ A. | B. | C. | D. | E. | F. |
|---|---|---|---|---|---|

| 27. RATIONALE ○ | See Attached SSA-4268-U4/C4 | Check if Vocational ○ Rule Met, Cite Rule ▶ | | See remarks- Item 34 |
|---|---|---|---|---|

**28. A.** ☑ Period of Disability  **B.** ☐ Disability Period  **C.** ☑ Estab. Beg. 10/15/2005  **And D.** ☑ Continues  **E.** ☐ Term.

| 29. LTR/PAR NO. | 30. DISABILITY EXAMINE-DDS | 31. DATE | 32. PHYSICIAN OR MEDICAL SPEC. SIGNATURE | 33. DATE |
|---|---|---|---|---|
| | 32A. PHYSICIAN OR MEDICAL SPEC. NAME (Stamp, Print, or Type) | | 32B. SPEC. CODE | |

**34. REMARKS**  Decision of ALJ,  David B Daugherty  ,dated  01/27/2009
This determination revises the SSA-831 dated  11/24/2008

MULTIPLE IMPAIRMENTS CONSIDERED
○ 34A. COMBINED MULTIPLE  NONSEVERE-SEVERE
○ 34B. COMBINED MULTIPLE

Atty Eric C Conn  Fee Agreement

| 35. BASIS CODE | 36. REV. DET. CODES | 37. SSA REPRESENTATIVE | SSA CODE | 38. DATE |
|---|---|---|---|---|
| | D-5 | K. Smith  CTE MOD 26 | 07 | 2/7/2009 |

FORM SSA-831 (3/89)        ☐ Data Copy          ELECTRONIC INPUT ☐    DECISION ☐    CASE CONTROL ☐

SOCIAL SECURITY ADMINISTRATION

**Refer to:** TLC
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

Office of Disability Adjudication
  and Review
5107 Leesburg Pike
Falls Church, VA 22041-3255
Telephone: (877) 670-2722
Date: August 25, 2015

## NOTICE OF ORDER OF APPEALS COUNCIL
## REMANDING CASE TO ADMINISTRATIVE LAW JUDGE

Lorena Lynn Naillieux
85 Barlow Branch
Partridge, KY 40862

Dear Ms. Naillieux:

In a letter dated May 18, 2015, we told you that the Social Security Act requires us to redetermine the Administrative Law Judge's decision that granted benefits to you.  We have to look at your case again because there is reason to believe fraud or similar fault was involved in your application for benefits.

The Social Security's Office of Inspector General sent your case to us.  The Inspector General told us there was a reason to believe fraud was involved in the application of benefits in certain cases involving evidence from Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D., Frederic Huffnagle, M.D., or David P. Herr, D.O.  In each case, representative Eric C. Conn or other representatives associated with Mr. Conn's office submitted the evidence.

One or more of these individuals provided evidence in your case, and the Administrative Law Judge used that evidence to find you disabled.  We explained that we had to disregard the evidence from those doctors and decide if the remaining evidence showed that you were entitled to benefits as of the date of the Administrative Law Judge's decision.  We told you that we had looked at your case and that there was not enough evidence to support the Administrative Law Judge's decision.

We said you could send us evidence or statements to support your original application for benefits.  We explained that we would send your case to another Administrative Law Judge for the opportunity for a hearing and a new decision on your original application for benefits, but that we would not send the case to the Administrative Law Judge until the expiration of the period for you to send us evidence or statements to support your original application for benefits.

**Suspect Social Security Fraud?**
**Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline**
**at 1-800-269-0271 (TTY 1-866-501-2101).**

**75**

**See Next Page**

We have considered any evidence or statements you gave us.  There is still not enough
evidence to support the Administrative Law Judge's decision.  We are sending your case
to another Administrative Law Judge for the opportunity for a hearing and new decision.
Until you have the opportunity for a hearing and an Administrative Law Judge final
decision is issued, we will not suspend or terminate benefits as part of the
redetermination process.

We have attached our Order sending your case to an Administrative Law Judge.

**What The Order Means**

The Order explains that we have sent your case to an Administrative Law Judge for
the opportunity for a hearing.  We tell the Administrative Law Judge why we sent
the case back.  We also tell the Administrative Law Judge what to do in your case.

**What Happens Next**

We will schedule your case for a hearing.  We will send you a notice about the
opportunity for a hearing and any steps you need to take.

You may give more evidence or statements about your original application for
benefits to the Administrative Law Judge.

**If You Have Any Questions**

If you have any questions, you may call, write, or visit any Social Security office.  If
you do call or visit an office, please have this notice with you.  The telephone
number of the local office that serves your area is (877)405-0491.  Its address is:

Social Security
122 Reynolds Lane
Hazard, KY 41701-9976

Brough A Jones
Administrative Appeals Judge

cc:

**76**

**SOCIAL SECURITY ADMINISTRATION**
OFFICE OF DISABILITY ADJUDICATION AND REVIEW

## ORDER OF APPEALS COUNCIL

REMANDING CASE TO ADMINISTRATIVE LAW JUDGE

**In the case of**

Lorena Lynn Naillieux
_____
(Claimant)

**Claim for**

Period of Disability and
Disability Insurance Benefits
_____

_____
(Wage Earner) (Leave Blank if same as above)

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
_____
(Social Security Number)

We previously sent to the claimant a Notice of Appeals Council Action advising that the Appeals Council is redetermining the Administrative Law Judge's decision issued on January 27, 2009, pursuant to sections 205(u) and 1631(e)(7) of the Social Security Act (Act). These sections provide that the Social Security Administration must redetermine an individual's disability case when there is reason to believe fraud or similar fault was involved in that individual's application for benefits.

The Office of the Inspector General notified the Social Security Administration, as required by section 1129(1) of the Act, that there was reason to believe fraud was involved in certain cases involving evidence from Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D., Frederic Huffnagle, M.D., or David P. Herr, D.O.

In conducting a redetermination, the Social Security Administration must disregard any evidence from one of the medical providers identified above when that evidence was submitted by Eric C. Conn or an individual associated with his law firm. One or more of these medical sources provided evidence in this case and the Administrative Law Judge relied on that evidence to find the claimant disabled. In particular, the Administrative Law Judge relied upon evidence from Frederic Huffnagle, M.D., in finding the claimant disabled. After disregarding this evidence, the Appeals Council found the remaining evidence of record, if any, does not support a finding of disability. However, the Appeals Council also determined that further proceedings were required.

In its notice, the Council also advised the claimant of its intention to remand this case for further proceedings and offered an opportunity to submit evidence and statements in response to that proposed action. Comments were received and considered but the information provided does not provide a basis for the Appeals Council to change its proposed action to remand the case.

Under the authority of the Act, the Appeals Council vacates the hearing decision and remands this case for further proceedings.

**77**

See Next Page

Lorena Lynn Naillieux (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)                                      Page 2 of 5

Upon remand, the Administrative Law Judge will:

- Disregard the evidence from Frederic Huffnagle, M.D., in the evaluation of the medical evidence of record.

- Consider evidence related to the relevant period discussed below; such evidence may be provided by the claimant up to and including the hearing date.

- Offer the claimant the opportunity for a hearing related to the relevant period discussed below.

- If warranted, the Administrative Law Judge may obtain evidence from a medical expert to assist in clarifying the nature, severity, and limiting effects of the claimant's impairment(s) during the relevant period.

- If warranted, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base during the relevant period discussed below (Social Security Ruling 83-14). The hypothetical questions should reflect the specific residual functional capacity established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence, the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

- Take any additional action that is not inconsistent with this remand order.

In compliance with the above, the Administrative Law Judge will issue a new decision on the issue of disability for the relevant period, which is the period through January 27, 2009, the date of the previous Administrative Law Judge's decision.

APPEALS COUNCIL

/s/ *Brough A Jones*
_____
Brough A Jones
Administrative Appeals Judge

/s/ *Joel Krafsur*
_____
Joel Krafsur
Administrative Appeals Judge

**78**

EXHIBIT NO. 5A
PAGE: 5 OF 5

Lorena Lynn Naillieux (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)                                    Page 3 of 5

Date: August 25, 2015

**79**

DuPlEx


SOCIAL SECURITY ADMINISTRATION
RETIREMENT, SURVIVORS, AND DISABILITY INSURANCE
Notice of Disapproved Claim

DATE:   September 11, 2008
Claim Number: 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


LORENA LYNN NAILLIEUX
85 BARLOW BRANCH
PARTRIDGE KY 40862


We are writing about your claim for Social Security disability benefits. Based on a review of your health problems you do not qualify for benefits on this claim. This is because you are not disabled under our rules.

**THE DECISION ON YOUR CASE**
The following reports were used to decide this claim:

DR MICHAEL BOLAND response received 09/08/2008
ARH TRI CITY MEDICAL CENTER response received 07/31/2008
EAST KY EYE EARS NOSE & THROAT SPECIALISTS response received 07/14/2008
MOUNTAIN COMP EXTENDED SERVICES response received 07/23/2008
JEANNE M BENNETT PSYD, PSYCHIATRIC exam of 08/22/2008
TRI STATE OCCUPATIONAL MEDICINE INC, INTERNIST exam of 08/27/2008

You said that you became disabled on 10/15/2005 because of your back pain and problems, sleep apnea, arthritis, hernia, swelling in legs and feet, stomach problems, high liver enzymes, sinus problems, nervousness, anxiety and depression.
The medical evidence shows treatment for your conditions. Although you report discomfort, the evidence shows you have adequate strength and movement in you back, legs, feet and other joints for your normal activities. You are able to sit, stand and move about in a normal manner. There is no severe muscle weakness or loss of control due to nerve damage. Your sleep apnea and sinus problems have been treated and do not significantly limit your activities. Your reported hernia and liver problems are not severe enough to limit your activities. You may become nervous, anxious and depressed at times, but other reports show you are able to think clearly, to understand and follow basic instructions, to communicate and to act in your own interest. Therefore, based on the evidence, your conditions are not severe enough to keep you from performing basic work related activities.


We have determined that your condition is not severe enough to be considered disabling. In deciding this, we considered the medical records, your statements, and how your condition affects your ability to work.


If your condition gets worse and keeps you from working, write, call or visit any Social Security office about filing another application.

**ABOUT THE DECISION**

Doctors and other trained staff looked at this case and made this decision. They wor

**80**

XXX-XX-8762        NAILLIEUX, LORENA LYNN

for the state but used our rules.

Please remember that there are many types of disability programs, both government and private, which use different rules. A person may be receiving benefits under another program and still not be entitled under our rules. This may be true in this case.

## RULES FOR SOCIAL SECURITY DISABILITY

You must meet certain rules to qualify for disabled worker's Social Security benefits. You must have the required work credits and your health problems must:

- keep you from doing any kind of substantial work (described below), and

- last, or be expected to last, for at least 12 months in a row, or result in death.

## INFORMATION ABOUT SUBSTANTIAL WORK

Generally, substantial work is physical or mental work a person is paid to do. Work can be substantial even if it is part-time. To decide if a person's work is substantial, we consider the nature of the job duties, the skills and experience needed to do the job, and how much the person actually earns.

Usually, we find that work is substantial if gross earnings average over $940 per month after we deduct allowable amounts. This monthly amount is higher for Social Security disability benefits due to blindness.

A person's work may be different than before his/her health problems began. It may not be as hard to do and the pay may be less. However, we may still find that the work is substantial under our rules.

If a person is self-employed, we consider the kind and value of his/her work, including his/her part in the management of the business, as well as income, to decide if the work is substantial.

## IF YOU DISAGREE WITH THE DETERMINATION

If you disagree with this determination, you have the right to appeal. We will review your case and consider any new facts you have. A person who did not make the first decision will decide your case.

- You have 60 days to ask for an appeal.

- The 60 days start the day after you get this letter. We assume you got this letter 5 days after the date on it unless you show us that you did not get it within the 5-day period.

- You must have a good reason for waiting more than 60 days to ask for an appeal.

- You have to ask for an appeal in writing. We will ask you to complete a form SSA-561-U2, called. "Request for Reconsideration". You may contact one of our offices or call 1-800-772-1213 to request this form.  Or you may complete this form online at http://www.socialsecurity.gov/disability/appeal.  Contact one of our offices if you want help.

- In addition, you should complete a "Disability Report - Appeal" to tell us about your medical condition since you filed your claim. You may contact one

**81**

our offices or call 1-800-772-1213 to request this form. Or, you may request this report online after you complete the online Request for Reconsideration.

Please read the enclosed pamphlet, "Your Right to Question the Decision Made on Your Social Security Claim." It contains more information about the appeal.

**NEW APPLICATION**

You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision. If you disagree with this decision and you file a new application instead of appealing:

- you might lose some benefits, or not qualify for any benefits, and

- we could deny the new application using this decision, if the facts and issues are the same.

So, if you disagree with this decision, you should ask for an appeal within 60 days.

**IF YOU WANT HELP WITH YOUR APPEAL**

You can have a friend, lawyer, or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your local Social Security office has a list of groups that can help you with your appeal.

If you get someone to help you, you should let us know. If you hire someone, we must approve the fee before he or she can collect it. And if you hire a lawyer, we will withhold up to 25 percent of any past due Social Security benefits to pay toward the fee.

**OTHER INFORMATION**

In addition, you are not entitled to any other benefits based on this application. If you have applied for other benefits, you will receive a separate notice when a decision is made on that claim.

**INFORMATION ABOUT VOCATIONAL REHABILITATION**

You may be eligible for Vocational Rehabilitation Services. The Kentucky Department of Vocational Rehabilitation Program provides a variety of services to assist individuals with disabilities to become employed. If you are interested in becoming employed, you may contact the Kentucky Department of Vocational Rehabilitation at 1-800-372-7172 Voice/TTY for a referral to an office in your area.

**IF YOU HAVE ANY QUESTIONS**

If you have any questions, you may call us toll-free at 1-800-772-1213, or call your local Social Security office at (606) 886-8525. We can answer most questions over the phone. You can also write or visit any Social Security office. The office that serves your area is located at:

SOCIAL SECURITY ADMINISTRATION
1897 KY RT 321
PRESTONSBURG, KY 41653

If you do call or visit an office, please have this letter with you. It will help us answer your questions. Also, if you plan to visit an office, you may call ahead to make an appointment. This will help us serve you more quickly.

**82**

XXX-XX-8762     NAILLIEUX, LORENA LYNN

**EXHIBIT NO. 1B**
**PAGE: 4 OF 4**

Paul Barnes
Regional Commissioner

Enclosure: SSA Pub. No. 05-10058

HOP/rej/0001

B24SiMpLeX

CC:      ERIC CHRISTOPHER CONN

**83**

XXX-XX-8762      NAILLIEUX, LORENA LYNN

EXHIBIT NO. 2B
PAGE: 1 OF 2

```
                                                September 26, 2008, 15:20
                                                            PAGE   1

       NH 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



                                        --------------------
                                        : UNIT: JSLAPL     :
                                        :                  :
                                        :                  :
                                        :                  :
                                        :                  :
                                        :                  :
                                        :                  :
                                        --------------------



                       REQUEST FOR RECONSIDERATION

       On September 25, 2008, we talked with you and completed your REQUEST FOR
       RECONSIDERATION for SOCIAL SECURITY BENEFITS. We stored your REQUEST FOR
       RECONSIDERATION information electronically in our records and attached a
       summary of your statements.

       What You Need To Do

           o  Review your REQUEST FOR RECONSIDERATION to ensure we recorded your
              statements correctly.

           o  If you agree with all your statements, you may retain the REQUEST FOR
              RECONSIDERATION for your records.

           o  If you disagree with any of your statements, you should contact us within
              10 days after the date of this notice to let us know.

       MY NAME IS LORENA LYNN NAILLIEUX.

       MY SOCIAL SECURITY NUMBER IS 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.

       I REQUEST A RECONSIDERATION. I DISAGREE WITH THE DETERMINATION MADE ON MY CLAIM
       FOR DISABILITY-WORKER OR CHILD BENEFITS BECAUSE I AM TOTALLY DISABLED FOR
       SUBSTANTIAL GAINFUL ACTIVIT Y

       I HAVE NO ADDITIONAL EVIDENCE TO SUBMIT.

       I AM REPRESENTED BY ERIC CONN, WHO IS AN ATTORNEY.


       ---------------------------------------------------
       SIGNATURE                        REPRESENTATIVE

       MY ADDRESS IS PO BOX 308
                        STANVILLE KY 41659

       MY PHONE NUMBER IS 606-478-5100.

       DATE September 25, 2008.
```

**84**

**EXHIBIT NO. 2B**
**PAGE: 2 OF 2**

September 26, 2008, 15:20
PAGE   2

NH 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

Witnesses are required only if this REQUEST FOR RECONSIDERATION has been signed
by mark (X) above. If signed by mark (X), two witnesses to the signing who know
the person making the statement must sign below, giving their full addresses.


_____          _____
SIGNATURE OF WITNESS                      SIGNATURE OF WITNESS


_____          _____
NUMBER AND STREET ADDRESS                 NUMBER AND STREET ADDRESS


_____          _____
CITY, STATE AND ZIP CODE                  CITY, STATE AND ZIP CODE

DuPlEx
**SOCIAL SECURITY**
**NOTICE OF RECONSIDERATION**
--------------------------------------------------------------------------------
From: Social Security Administration
--------------------------------------------------------------------------------

                                        DATE:    December 3, 2008
                                        Claim Number: 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
                                        Claim for: Disability Insurance Benefits

LORENA LYNN NAILLIEUX
85 BARLOW BRANCH
PARTRIDGE KY 40862

Upon receipt of your request for reconsideration we had your claim independently
reviewed by a physician and disability examiner in the State agency which works with
us in making disability determinations. The evidence in your case has been thoroughly
evaluated; this includes the medical evidence and the additional information received
since the original decision. We find that the previous determination denying your
claim was proper under the law.

**THE DECISION ON YOUR CASE**
The following report was used to decide this claim in addition to those listed on our
previous notice:

ARH TRI CITY MEDICAL CENTER response received 11/14/2008

You said that you became disabled on 10/15/2005 because of problems with your back,
arthritis, swelling in your legs and feet, stomach, a hernia, sinus problems, your
liver enzymes being too high, sleep apnea, anxiety, depression and nervousness.
The medical evidence shows that you have been treated for your conditions. Although
you report problems with your back, arthritis and swelling in your legs and feet, the
medical evidence shows that you have adequate strength and movement in your back and
joints and that you are still able to walk and move about satisfactorily. Although you
report problems with your stomach and a hernia, the evidence shows that you are still
able to maintain an adequate weight. Although you report problems with your sinus, the
evidence does not show that this condition has any severe affect on your overall
health. Although you report problems with elevated liver enzymes, the evidence shows
that your liver is currently functioning satisfactorily. Although you report problems
with sleep apnea, the evidence shows that you are still able to breathe satisfactorily
and does not show that your daily activities are significantly impacted by any daytime
sleepiness. Although you report problems with anxiety, depression and nervousness, the
evidence shows that you are still able to think and act in your own interest.
Based on your description of your past work as a dental assistant, we have concluded
that you have the ability to perform this job.

To be considered disabled, a person must be unable to do any substantial gainful work
due to a medical condition which has lasted or is expected to last for at least 12
months in a row. The condition must be severe enough to keep a person from working not
only in his or her usual job, but in any other substantial gainful work. We look at

**86**

XXX-XX-8762        NAILLIEUX, LORENA LYNN

the person's age, education, training and work experience when we decide whether he or she can work.

The determination on your claim was made by an agency of the State. It was not made by your own doctor or by other people or agencies writing reports about you. However, any evidence they gave us was used in making this determination. Doctors and other people in the State agency who are trained in disability evaluation reviewed the evidence and made the determination based on Social Security law and regulations.

**IF YOU DISAGREE WITH THE DETERMINATION**

If you believe that the reconsideration determination is not correct, you may request a hearing before an administrative law judge of the Office of Disability Adjudication and Review. If you want a hearing you must request it not later than 60 days from the date you receive this notice. You may make your request through any Social Security office or on the Internet at http://www.socialsecurity.gov/disability/appeal.  As part of the appeal process, you also need to tell us about your current medical condition. We provide a form for doing that, the Disability Report - Appeal. You may contact one of our offices or call 1-800-772-1213 to request this form. Or, you may complete the report online after you complete the online Request for Hearing by Administrative Law Judge. (Title II) Read the enclosed leaflet for a full explanation of your right to appeal. (Title XVI) Read the enclosed leaflet and the reverse of this notice for a full explanation of your right to appeal.

**IF YOU WANT HELP WITH YOUR HEARING**

You can have a friend, lawyer, or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your local Social Security office has a list of groups that can help you with your appeal.

If you get someone to help you, you should let us know. If you hire someone, we must approve the fee before he or she can collect it. And if you hire a lawyer, we will withhold up to 25 percent of any past-due benefits to pay toward the fee.

**NEW APPLICATION**

You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision. If you disagree with this decision and you file a new application instead of appealing:

- you might lose some benefits, or not qualify for any benefits, and
- we could deny the new application using this decision, if the facts and issues are the same.

So, if you disagree with this decision, you should ask for an appeal within 60 days.

**OTHER INFORMATION**

This decision refers only to your claim for benefits under the Social Security Disability Insurance Program. If you applied for other benefits, you will receive a separate notice when a decision is made on that claim(s).

**INFORMATION ABOUT VOCATIONAL REHABILITATION**

You may be eligible for Vocational Rehabilitation Services. The Kentucky Department of Vocational Rehabilitation Program provides a variety of services to assist individuals

**87**

XXX-XX-8762      NAILLIEUX, LORENA LYNN

with disabilities to become employed. If you are interested in becoming employed, you may contact the Kentucky Department of Vocational Rehabilitation at 1-800-372-7172 Voice/TTY for a referral to an office in your area.

**IF YOU HAVE ANY QUESTIONS**

If you have any questions, you may call us toll-free at 1-800-772-1213, or call your local Social Security office at (606) 886-8525. We can answer most questions over the phone. You can also write or visit any Social Security office. The office that serves your area is located at:

```
                    SOCIAL SECURITY ADMINISTRATION
                         1897 KY RT 321
                    PRESTONSBURG, KY 41653
```

If you do call or visit an office, please have this letter with you. It will help us answer your questions. Also, if you plan to visit an office, you may call ahead to make an appointment. This will help us serve you more quickly.

```
                              Paul Barnes
                              Regional Commissioner
```

Enclosure: SSA Pub. No. 70-10281

SMD/jef/0088
SiMpLeX
CC:      ERIC CHRISTOPHER CONN

                                                              B24

**88**

December 16, 2008, 10:25
PAGE   1

NH 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

```
                                        --------------------
                                        : UNIT: APLAPL    :
                                        :                 :
                                        :                 :
                                        :                 :
                                        :                 :
                                        :                 :
                                        --------------------
```

          LORENA LYNN NAILLIEUX
          85 BARLOW BRANCH
          PARTRIDGE KY 40862


          REQUEST FOR HEARING BY ADMINISTRATIVE LAW JUDGE

On December 15, 2008, we talked with you and completed your REQUEST FOR HEARING
for SOCIAL SECURITY BENEFITS. We stored your REQUEST FOR HEARING information
electronically in our records and attached a summary of your statements.

What You Need To Do

    o  Review your REQUEST FOR HEARING to ensure we recorded your statements
       correctly.

    o  If you agree with all your statements, you may retain the REQUEST FOR
       HEARING for your records.

    o  If you disagree with any of your statements, you should contact us within
       10 days after the date of this notice to let us know.

MY NAME IS LORENA LYNN NAILLIEUX.

MY SOCIAL SECURITY NUMBER IS 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.

I REQUEST A HEARING BEFORE AN ADMINISTRATIVE LAW JUDGE. I DISAGREE WITH THE
DETERMINATION MADE ON MY CLAIM FOR DISABILITY-WORKER OR CHILD BENEFITS BECAUSE
I AM TOTALLY DISABLED FOR ANY SUBSTANTIAL GAINFUL A CTIVITY

I HAVE NO ADDITIONAL EVIDENCE TO SUBMIT.

I WISH TO APPEAR AT A HEARING. I UNDERSTAND THAT AN ADMINISTRATIVE LAW JUDGE OF
THE OFFICE OF DISABILITY ADJUDICATION AND REVIEW WILL BE APPOINTED TO CONDUCT
THE HEARING OR OTHER PROCEEDINGS IN MY CASE. I ALSO UNDERSTAND THAT THE
ADMINISTRATIVE LAW JUDGE WILL SEND ME NOTICE OF THE TIME AND PLACE OF A HEARING
AT LEAST 20 DAYS BEFORE THE DATE SET FOR A HEARING.

IT COULD BE ESPECIALLY USEFUL IN MY CASE SINCE THE ADMINISTRATIVE LAW JUDGE
WOULD HAVE AN OPPORTUNITY TO HEAR AN EXPLANATION AS TO HOW MY IMPAIRMENTS
PREVENT ME FROM WORKING AND RESTRICT MY ACTIVITIES.

**89**

December 16, 2008, 10:25

PAGE   2

NH 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

I AM REPRESENTED BY ERIC CONN, WHO IS AN ATTORNEY.

MY PHONE NUMBER IS 606-478-5100.

DATE December 15, 2008.

**90**

**SOCIAL SECURITY ADMINISTRATION**

Refer To:                                    Office of Disability Adjudication and Review
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                                  Second Floor
Lorena Lynn Naillieux                        301 Ninth Street
                                             Huntington, WV 25701
                                             Tel: (866)592-1607

                                             December 22, 2008

Eric C. Conn
Po Box 308
Stanville, KY 41659

Dear Eric C. Conn:

Thank you for your client's request for a hearing before an Administrative Law Judge (ALJ).
This response explains the hearing process and things that you should do now to prepare for the
hearing. We will mail a Notice of Hearing to you and your client at least 20 days before the date
of the hearing to tell you its time and place.

**The Hearing**

At the hearing, you and your client may present her case to the ALJ who will hear and decide
it. The ALJ will consider the issue(s) you or your client has raised and the evidence now in
her file and any additional evidence you provide. The ALJ may consider other issues as well
and, if necessary, change parts of the previous decision that were favorable to your client.
The Notice of Hearing will state the issues the ALJ plans to consider at the hearing.

Because the hearing is the time to show the ALJ that the issues should be decided in your
client's favor, we need to make sure that her file has everything you want the ALJ to consider.
You and your client are responsible for submitting needed evidence. After the ALJ reviews
the evidence in the file, he or she may request more evidence to consider at the hearing.

**Providing Additional Evidence**

If there is more evidence you want the ALJ to see, please submit it to us as soon as possible.
If you need help, please contact us immediately. Evidence you cannot submit to us before the
hearing may be brought to the hearing, but earlier submission of evidence can often prevent
delays in reviewing your client's case. If a physician, expert or other witness is not
cooperating with the production of documents important to your client's case, you may ask
the ALJ to issue a subpoena that requires a person to submit documents or testify at your
hearing.

Form HA-L2 (03-2007)
Claimant

**91**

**You May See The Evidence In Your File**

If you wish to see the evidence in your client's file, you may do so on the date of the hearing or before that date.  If you wish to review the file before the date of the hearing, please call us, as soon as you reasonably can.

**If You Have Any Questions Or Your Client's Address Changes**

If you have any other questions please call or write us.  Our rules require you to notify us if there is a change in your client's address.  For your convenience, our telephone number and address are shown on the first page of this letter.

Sincerely yours,


Gregory Hall
Hearing Office Director


Enclosures:




cc: Lorena Lynn Naillieux
    85 Barlow Branch
    Partridge, KY 40862

**SOCIAL SECURITY ADMINISTRATION**

Refer To:                                        Office of Disability Adjudication and Review
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                                       Second Floor
Lorena Lynn Naillieux                             301 Ninth Street
                                                  Huntington, WV 25701
                                                  Tel: (866)592-1607

                                                  December 22, 2008

Eric C. Conn
Po Box 308
Stanville, KY 41659

Dear Eric C. Conn:

Thank you for your client's request for a hearing before an Administrative Law Judge (ALJ).
This response explains the hearing process and things that you should do now to prepare for the
hearing.  We will mail a Notice of Hearing to you and your client at least 20 days before the date
of the hearing to tell you its time and place.

**The Hearing**

At the hearing, you and your client may present her case to the ALJ who will hear and decide
it.  The ALJ will consider the issue(s) you or your client has raised and the evidence now in
her file and any additional evidence you provide.  The ALJ may consider other issues as well
and, if necessary, change parts of the previous decision that were favorable to your client.
The Notice of Hearing will state the issues the ALJ plans to consider at the hearing.

Because the hearing is the time to show the ALJ that the issues should be decided in your
client's favor, we need to make sure that her file has everything you want the ALJ to consider.
You and your client are responsible for submitting needed evidence.  After the ALJ reviews
the evidence in the file, he or she may request more evidence to consider at the hearing.

**Providing Additional Evidence**

If there is more evidence you want the ALJ to see, please submit it to us as soon as possible.
If you need help, please contact us immediately.  Evidence you cannot submit to us before the
hearing may be brought to the hearing, but earlier submission of evidence can often prevent
delays in reviewing your client's case.  If a physician, expert or other witness is not
cooperating with the production of documents important to your client's case, you may ask
the ALJ to issue a subpoena that requires a person to submit documents or testify at your
hearing.

Form HA-L2 (03-2007)
Representative

**93**

Lorena Lynn Naillieux (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)                                          Page 2 of 2

**You May See The Evidence In Your File**

If you wish to see the evidence in your client's file, you may do so on the date of the hearing or before that date.  If you wish to review the file before the date of the hearing, please call us, as soon as you reasonably can.

**If You Have Any Questions Or Your Client's Address Changes**

If you have any other questions please call or write us.  Our rules require you to notify us if there is a change in your client's address.  For your convenience, our telephone number and address are shown on the first page of this letter.

Sincerely yours,


Gregory Hall
Hearing Office Director


Enclosures:
Form SSA-L1697-U3 (Acknowledgement of Representation)
Form HA-L32 (Electronic Disability Claims Processing Insert)
Barcode Sheet




cc: Lorena Lynn Naillieux
    85 Barlow Branch
    Partridge, KY 40862




Form HA-L2 (03-2007)
Representative                **94**

NOTICE TO REPRESENTATIVE OF CLAIMANT BEFORE                                    TOE 420
THE SOCIAL SECURITY ADMINISTRATION

Eric C. Conn                                          Date: December 22, 2008
Po Box 308
Stanville, KY 41659                                   Claimant: Lorena Lynn Naillieux

                                                      Wage Earner:

                                                      Social Security Number: 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

We have received written notice that the claimant has appointed you to act as the representative in connection with this claim(s) under the Social Security Act (the Act).  We will, therefore, be dealing directly with you on matters pertaining to this claim(s).

Generally, to charge a fee for services, you must use one of two, mutually exclusive fee approval processes.  You must file either a fee petition or a fee agreement with us.  In either case, you cannot charge more than the fee amount we approve.

### Fee Petition Process

You may ask for approval of a fee by giving us a fee petition when you have completed your services to the claimant.  This written request must describe in detail the amount of time you spent on each service provided and the amount of fee you are requesting.

### Fee Agreement Process

If you and the claimant have a written fee agreement, that you have not already submitted, either of you must give   it to us before we decide the claim(s).  We usually will approve the agreement if you both sign it; the fee you agreed  on is no more than 25 percent of the past-due benefits, or $5,300 (or a higher amount we set and announce in the Federal Register), whichever is less; we approve the claim(s); and the claim results in past-due benefits.

If you do not file a fee agreement, you must use form **SSA-1560-U5 (PETITION TO OBTAIN APPROVAL OF A FEE FOR REPRESENTING A CLAIMANT BEFORE THE SOCIAL SECURITY ADMINISTRATION)** to petition for approval of the fee you wish to charge.  File the SSA-1560-U5 when the proceedings are complete and your services have ended.  If you are an attorney or a non-attorney whom SSA has found eligible to receive direct payment and you seek direct payment from the claimant's title II or title XVI past-due benefits, you must file the SSA-1560-U5, or a notice of intent to petition for a fee within 60 days of the notice of the favorable determination.  Further information and instructions for completion are given on the form itself.

After we approve a fee, you must look to the claimant for payment, except when you are an attorney or non-attorney who is eligible to receive direct payment and there are past-due benefits payable under title II or title XVI of the Act as a result of a favorable determination on the claim.  In such cases, we will pay up to 25 percent of such past-due benefits directly to you toward payment of the approved fee and charge you the assessment required by section 206(d) and 1631(2)(2)(c) of the Social Security Act.  You cannot charge or collect this expense from the claimant.

If you wish to waive either a fee or direct payment of a fee and you have not already done so, you should sign and date the appropriate box below or send us a letter with an appropriate statement.  Early filing of the waiver will enable us to prevent the automatic withholding of past-due benefits for a possible direct payment.

- **WAIVER OF FEE** - I waive my right to charge and collect a fee under sections 206 and 1631(d)(2) of the Social Security Act.  I release my client (the claimant) from any obligation, contractual or otherwise, which may be owed to me for services I have provided in connection with my client's claim(s) or asserted right(s).

| Signature (Representative) | Date |
|---|---|
| | |

- **WAIVER OF DIRECT PAYMENT BY ATTORNEY OR NON-ATTORNEY ELIGIBLE TO RECEIVE DIRECT PAYMENT** - I waive only my right to direct payment of a fee from the withheld past-due retirement, survivors, disability insurance or supplemental security income benefits of my client (the claimant).  I do not waive my right to request fee approval and to collect a fee directly from my client or a third party.

| Signature (Representative) | Date |
|---|---|
| | |

Social Security Administration                        Form **SSA-L1697-U3** (2-2005)
                                                      Destroy Prior Editions

**95**

### Electronic Disability Claims Processing

Social Security is changing from a paper to an electronic disability claims process in order to improve the quality and timeliness of our decisions.  Your client's disability claim file is being processed electronically.  Your claimant's rights under the Social Security Act remain the same.

When your client's case is exhibited, we will forward a copy of the file to you on a compact disc (CD).  We will also provide you a copy of the file on CD on the day of the hearing.  Should you require a copy of the file at any other time, please contact the hearing office.

Additional evidence should be submitted within the timeframes for the submission of evidence discussed in the cover letter.  **The preferred way to submit evidence to the electronic folder is by using one of the following three methods:**

- **Send the evidence using the Electronic Records Express (ERE) website.  If you have not registered to use the ERE website, contact your local hearing office.**

- **Fax the evidence using this fax number -- (304)529-5120.  Remember that the enclosed barcode must be the first page for <u>each document</u> being faxed.**

- **Send the evidence to the contract scanner listed below.  The barcode must be the first page of each document.  DO NOT SEND ORIGINAL DOCUMENTS. DOCUMENTS ARE NOT RETURNED.**

   **Huntington, WV ODAR**
   **P.O. Box 8774**
   **London, KY 40742-8774**

**You may also send the evidence by mail or deliver it to the hearing office but there may be a delay in associating the evidence with the electronic file.**

**NOTE:**  The attached barcode pertains to your client's disability claim file only.  Please keep the original barcode sheet for submitting all documents on this case.  Bar codes may be used more than once when faxing evidence into the electronic file.

 INSERT THIS END FIRST 

**Please include this barcode cover sheet with any documents returned.**



```
RQID:00000000000000023110168 SITE:X04 DR:S
SSN:401088762 DOCTYPE:5032 RF:D CS:e01c
```

**Claimant:  Lorena Lynn Naillieux**
**SSN:  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**

97

**SOCIAL SECURITY ADMINISTRATION**

**Refer to:** TLC
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

Office of Disability Adjudication
 and Review
5107 Leesburg Pike
Falls Church, VA  22041-3255
Telephone  (877) 670-2722
Date.

MAY 1 8 2015

## NOTICE OF APPEALS COUNCIL ACTION

Lorena Lynn Nailheux
85 Barlow Branch
Partridge, KY 40862

This is about the Administrative Law Judge's decision dated January 27, 2009.

The Office of the Inspector General notified the Social Security Administration (SSA), as required by section 1129(l) of the Social Security Act, that there was reason to believe fraud was involved in certain cases involving evidence from Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D.; Frederic Huffnagle, M.D., or David P. Herr, D.O

Under section 205(u) of the Social Security Act (Act), SSA must redetermine an individual's disability case when there is reason to believe fraud or similar fault was involved in that individual's application for benefits.  In conducting a redetermination, SSA must disregard any evidence from one of the medical providers above when the information was submitted by representative Eric C. Conn or other representatives associated with Mr. Conn's law office

One or more of these individuals provided evidence in your case, and we used that evidence to find you disabled

**We Are Redetermining the Decision**

We are writing to tell you that we looked at your case again to see if the decision was supported after disregarding the evidence signed by one of the medical providers named above.  After reviewing all of the relevant information, we plan to send your case back to an Administrative Law Judge for more action and a new decision

See Next Page

98

Lorena Lynn Naillieux (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)                              Page 2 of 4

## How Our Redetermination May Affect Your Benefits

This notice tells you of the action we plan to take. It is important that you read the following information carefully and follow the instructions because our final decision may result in the loss of your benefits.

### Rules We Applied

Under section 205(u) of the Act, we must redetermine your case if there is reason to believe that fraud or similar fault was involved in the application for benefits.

### What We Considered

We considered the written record that was before the Administrative Law Judge. By law, we were not able to consider evidence from:
- Bradley Adkins, Ph.D. dated between July 2007 and May 2011;
- Srinivas Ammisetty, M.D. dated after July 2007;
- Frederic Huffnagle, M.D. dated between January 2007 and May 2011; or
- David P. Herr, D.O dated between December 2009 and April 2011.

However, we considered all other evidence in the written record that related to the period on or before the original allowance date.

### What We Plan To Do

Frederic Huffnagle, M.D., provided evidence in your case that the Administrative Law Judge used to find you disabled in the fully favorable hearing decision. We have determined that, disregarding the evidence from Dr. Huffnagle, the other evidence in your file does not establish that you were disabled on or before January 27, 2009, the date the Administrative Law Judge initially allowed the claim.

We plan to set aside the favorable decision and send your case back to a different Administrative Law Judge for more action and a new decision.

### Why We Are Taking This Action

In the favorable hearing decision dated January 27, 2009, the Administrative Law Judge found you disabled because, in pertinent part, you could not perform even sedentary exertional work on a full-time basis (Finding 5). In support of these findings, the Administrative Law Judge cited only to the evidence from Dr. Huffnagle (Decision, page 3), which we must now disregard for the reasons discussed above. The decision does not include an evaluation of the evidence or opinions of all of the other treating, non-treating, or non-examining medical and psychological sources of record, which represents an error of law (20 CFR 404.1520b and 404.1527). Although the evidence from those sources indicates you have physical and mental impairments that reasonably could be expected to cause some work-related limitations, a preponderance of the non-disregarded evidence of

record does not support the residual functional capacity finding or, more generally, the finding of disability set forth in the favorable hearing decision. Therefore, a new decision that is based on all of the non-disregarded evidence is needed.

**You May Send More Information**

You may send us more evidence or a statement about the facts and the law in your case within 10 days of the date of this letter. Generally, we will not grant any extensions of time to submit the evidence to the Appeals Council unless the information you submit shows that a remand is not necessary. However, if you cannot obtain the information within 10 days, you will have additional time to submit evidence, as described below, to the Administrative Law Judge.

We will consider more evidence if:
- It is new and material;

AND

- It is about "disability" starting on or before January 27, 2009, the date of the Administrative Law Judge's decision.

**We Will Not Act For 10 Days**

As explained above, if you have more information, you must send it to us within 10 days of the date of this letter.

Our address and FAX number are:

**ADDRESS:**          Appeals Council
                      Office of Disability Adjudication and Review
                      ATTN: Executive Director's Office, Suite 1400
                      5107 Leesburg Pike
                      Falls Church, VA 22041-3255

**FAX:**              703-605-7101, Attn: Redetermination Staff

*Be sure to put the Social Security Number shown at the top of this letter on the information*

*If you send us anything by fax, do not send duplicates by mail  That may delay processing*

See Next Page

## What Happens Next

If we do not hear from you within 10 days, we will assume that you do not want to send us more information.  We will then send your case back to an Administrative Law Judge.

## You Have the Right to Representation

It is important to understand that while Mr. Conn or one of his associates was your appointed representative at the time of your initial allowance, his representation, or the representation of one of his associates, ended after we initially allowed your claim.  This means that if you would like the assistance of a representative during the redetermination proceedings, you must reappoint a representative to assist you.  We have attached information about your right to representation.

## If You Have Any Questions

If you have any questions, you may call or write the Appeals Council.  Our telephone number and address are shown at the top of this letter.  If you do call, please have this notice with you.


/s/ *Brough A. Jones*

Brough A. Jones
Administrative Appeals Judge


/s/ *Joel Krafsur*

Joel Krafsur
Administrative Appeals Judge


Enclosure(s):
Self-addressed envelope
Hearing decision dated January 27, 2009
Right to Representation Information

**101**

EXHIBIT NO. 6B

# Your Right To Representation



You can have a representative, such as an attorney, help you when you do business with Social Security. We will work with your representative, just as we would with you.

For your protection, in most situations, your representative cannot charge or collect a fee from you without first getting written approval from us. However, your representative may accept money from you in advance as long as it is held in a trust or escrow account.

Both you and your representative are responsible for providing us with accurate information. It is illegal to furnish false information knowingly or willfully. If you do, you may face criminal prosecution.

## What a representative can do

Once you appoint a representative, he or she can act on your behalf before Social Security by:

- Getting information from your Social Security file;
- Helping you get medical records or information to support your claim;
- Coming with you, or for you, to any interview, conference or hearing you have with us;
- Requesting a reconsideration, hearing or Appeals Council review; and
- Helping you and your witnesses prepare for a hearing and questioning any witnesses.

Your representative also will receive a copy of the decision(s) we make on your claim(s).

## Choosing a representative

You can choose an attorney or other qualified individual to represent you. You also can have more than one representative. However, you cannot have someone who has been suspended or disqualified from representing others before the Social Security Administration or who may not, by law, act as a representative.

Some organizations can help you find a representative or give you free legal services if you qualify. Some representatives do not charge unless you receive benefits. Your Social Security office has a list of organizations that can help you find a representative.

You can appoint one or more people in a firm, corporation or other organization as your representatives, but you **may not** appoint the firm, corporation or organization itself.

After you choose a representative, you must tell us **in writing** as soon as possible. To do this, get Form SSA-1696-U4, *Appointment of Representative*, from our website at **www.socialsecurity.gov** or from any Social Security office.

You must give the name of the individual you are appointing and sign your name. If the individual is **not** an attorney, he or she also must sign the form.

## What your representative may charge you

To charge you a fee for services, your representative first must file either a fee agreement or a fee petition with us.

Your representative **cannot** charge you more than the fee amount we authorize. If you or your representative disagree with the fee we authorize, either of you can ask us to look at it again.

A representative who charges or collects a fee without our authorization, or charges or collects too much, may be suspended or disqualified from representing anyone before the Social Security Administration and also may face criminal prosecution.

### Filing a fee agreement

If you and your representative have a written fee agreement, your representative may ask us to approve it any time before we decide your claim. Usually, we will approve the agreement and tell you in writing how much your representative may charge as long as:

- You both signed the agreement;
- Your claim was approved and resulted in past-due benefits; and

(over)

- The fee you agreed on is no more than 25 percent of past-due benefits or $6,000, whichever is less.

If we do not approve the fee agreement, we will notify you and your representative in writing.

## Filing a fee petition

Your representative may give us a fee petition after completing the work on your claim(s). This written request should describe in detail the amount of time spent on each service your representative provided. Your representative must give you a copy of the fee petition and each attachment. If you disagree with the fee requested or the information shown, contact us within 20 days. We will consider the reasonable value of the representative's services and tell you, in writing, the amount of the fee we authorize.

## How much you pay

The amount of the fee we decide your representative may charge is the most you owe for his or her services even if you agreed to pay your representative more. However, your representative can charge you for out-of-pocket expenses, such as medical reports, without our approval.

If an attorney or non-attorney whom Social Security has found eligible for direct payment represents you, we usually withhold 25 percent (but never more) of your past-due benefits to pay toward the fee. We pay all or part of the representative's fee from this money and send you any money left over.

Sometimes you must pay your representative directly:

- You must pay the rest you owe if the amount of the approved fee is more than the amount of money we withheld and paid your representative for you.
- You must pay the entire fee amount if:
  —Your representative is not eligible for direct payment;
  —We did not withhold 25 percent from your past-due Social Security or Supplemental Security Income benefits, or both; or
  —Your representative made a timely request for a fee and we sent you the money that we should have withheld.

You must pay for out-of-pocket expenses your representative incurs or expect(s) to incur (for example, the cost of getting your doctor's or hospital records).

## If someone else pays your representative

Even when someone else will pay the fee for you (for example, an insurance company), we must approve the fee unless:

- You and any auxiliary beneficiaries are free of direct or indirect liability to pay the fee or expenses, either in whole or in part, to a representative or to someone else; and
- It is a nonprofit organization or federal, state, county or city agency that will pay the fee and any expenses from government funds; and
- Your representative gives us a written statement that you will not have to pay any fee or expenses.

## If you appeal your claim to the federal court

The court can allow a reasonable fee for your attorney. We do not need to authorize that fee. The fee will not exceed 25 percent of all past-due benefits that result from the court's decision. Your attorney cannot charge any additional fee for services before the court.

## Contacting Social Security

For more information and to find copies of our publications, visit our website at **www.socialsecurity.gov** or call toll-free, **1-800-772-1213** (for the deaf or hard of hearing, call our TTY number, **1-800-325-0778**). We treat all calls confidentially. We can answer specific questions from 7 a.m. to 7 p.m., Monday through Friday. We can provide information by automated phone service 24 hours a day.

We also want to make sure you receive accurate and courteous service. That is why we have a second Social Security representative monitor some telephone calls.



**Social Security Administration**
SSA Publication No 05-10075
ICN 468000
Unit of Issue - HD (one hundred)
February 2010 (June 2009 edition may be used)

**103**

 **INSERT THIS END FIRST**

| | |
|---|---|
| Claimant Name | **Lorena Lynn Naillieux** |
| Document Description. | **AC Correspondence** |
| Note | **EOT** |
| Document date | **06/18/2015** |
| Undated | **N** |
| Sensitive | **N** |



RQID:0000000000000000158086256 SITE:LF6 DR:S
SSN:********* DOCTYPE:2202 RF:D CS:5605

SOCIAL SECURITY ADMINISTRATION

**Refer to:** TLC
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

Office of Disability Adjudication
and Review
5107 Leesburg Pike
Falls Church, VA 22041-3255
Telephone. (877) 670-2722
Date

JUN 1 8 2015

Lorena Lynn Naillieux
85 Barlow Branch
Partridge, KY 40862

Dear Ms. Naillieux:

In a letter dated May 18, 2015, we explained that:

- The Social Security Act requires us to redetermine the Administrative Law Judge's decision that granted benefits to you;

- We planned to send your case to an Administrative Law Judge for the opportunity for a hearing and a new decision on your original application for benefits;

- We would not send your case to an Administrative Law Judge for 10 days;

   AND

- During that 10-day period, you could send us evidence or statements about your original application for benefits.

You asked us to give you more time to send us evidence or statements.

We have granted your request and are providing you with an additional 30 days to send us evidence or statements.

**When Does the 30-day Period Start?**

The 30-day period starts on the day after you get this letter. We assume you got this letter 5 days after the date on it unless you show us that you did not get it within the 5-day period.

**What Should You Do?**

If you have evidence or statements to support your original application for benefits, you should send it to us as soon as possible.

See Next Page

**105**

Our address and FAX number are:

**ADDRESS:**      Appeals Council
                  Office of Disability Adjudication and Review
                  ATTN: Executive Director's Office, Suite 1400
                  5107 Leesburg Pike
                  Falls Church, VA 22041-3255

**FAX:**          703-605-7101, Attn: Redetermination Staff

*Be sure to put the Social Security Number shown at the top of this letter on the information.*

*If you send us anything by fax, do not send duplicates by mail. That may delay processing.*

**What If You Want More Time**

If you want more time to get evidence or statements to support your original application for benefits, you can ask us for more time. You will need to provide us with a good reason.

**What Happens Next**

If we decide that the evidence or statements you send us supports your original application for benefits, we will decide that you are entitled to benefits. We will send you a notice of our decision.

If we decide that the evidence or statement you send us does not support your original application for benefits, we will send your case to an Administrative Law Judge for the opportunity for a hearing. We will send you a notice when we send your case to an Administrative Law Judge. We also will send you a copy of the Order that we will send to the Administrative Law Judge.

If we send your case to an Administrative Law Judge, you can send more evidence or statements to the Administrative Law Judge. The Administrative Law Judge will issue a decision.

See Next Page

**106**

**If You Have Any Questions**

If you have any questions, you may call us.

Our telephone number is (877) 670-2722. If you do call, please have this notice with you.

*Patricia A. Jonas*

Patricia A. Jonas
Administrative Appeals Judge

Enclosure:
Self-addressed envelope

**SOCIAL SECURITY ADMINISTRATION**

Refer To: 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
Lorena Lynn Naillieux

Office of Disability Adjudication and Review
Federal Center
4300 Goodfellow Blvd.
Bldg. 110, 2nd Floor
Saint Louis, MO 63120
Tel: (877)409-4579

August 28, 2015

Lorena Lynn Naillieux
85 Barlow Branch
Partridge, KY 40862

Dear Ms. Naillieux:

The Appeals Council returned your case to us for further action. This letter explains the hearing process and things that you should do now to get ready for your hearing.  We will send you a notice after we schedule your hearing. We will notify you at least 20 days before the date of your hearing. The notice will provide you with the time and place of your hearing.  We generally process requests for hearing by date order, with the oldest receiving priority.  However, we expedite cases returned from the Appeals Council. We will schedule your hearing as soon as we can, which may take several months.

**Use of Video Teleconferencing (VTC) At Your Hearing**

In certain situations, we hold your hearing by VTC rather than in person. We will let you know ahead of time if we schedule your hearing by VTC.

If we schedule your appearance by VTC, you and the ALJ will be at different locations during the hearing. A large, color monitor will enable you and the ALJ to see, hear, and speak to each other. The ALJ will also be able to see, hear, and speak to anyone who comes with you to the hearing. This may include your representative (if you have one), a friend, or a family member. We will provide someone at your location to run the equipment and provide any other help you may need.

**You must let us know within 30 days after the date you receive this notice if you do not want to appear at your hearing by VTC.** (We may extend the 30-day period if you

Form HA-L2 (04-2015)
Claimant

**Suspect Social Security Fraud?**
**Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline**
**at 1-800-269-0271 (TTY 1-866-501-2101).**

**108**

See Next Page

Lorena Lynn Naillieux (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)                                    Page 2 of 3

show you had good cause for missing the deadline.) **Please let us know by completing and returning the attached form in the envelope we sent you.** We will arrange for you to appear in person.

If you move before we hold your hearing, we retain the right to decide how you will appear at your hearing, even if you objected to appearing by VTC. For us to consider your change of residence when we schedule your hearing, you must submit evidence proving your new residence.

**The Hearing**

At your hearing, you may present your case to the ALJ who will make the decision on your claim(s). The ALJ will consider the issue(s) you raise, the evidence now in your file, and any additional evidence you provide. The ALJ may also consider other issues, including issues that were decided in your favor in the decision you appealed. The Notice of Hearing will list the issues the ALJ plans to consider at the hearing.

Your file contains information from Dr. Frederic Huffnagle. You will see this evidence, as well as the other evidence in your file, if you decide to look at the file before the hearing or on the date of the hearing. However, this information was disregarded and will not be considered in your case, as will be explained in a later notice.

Your hearing is the time to explain why you believe the ALJ should decide the issues in your favor.

**Your Right to Representation**

You may choose to have a representative help you. We will work with this person just as we would work with you. If you decide to have a representative, you should find one quickly so that person can start preparing your case.

Many representatives charge a fee only if you receive benefits. Others may represent you for free. Usually, your representative may not charge a fee unless we approve it. We are enclosing a list of groups that can help you find a representative.

If you get a representative, you or that person must notify us in writing. You may use our Form SSA 1696 U4 Appointment of Representative.  Any local Social Security office can give you this form.

**Submitting Evidence**

We need to make sure that your file has everything that the ALJ will need to decide your case. After the ALJ reviews the evidence in your file, he or she may request more evidence to consider at your hearing.

Form HA-L2 (04-2015)
Claimant **109**

You are required to inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled. Giving us evidence early can often help us review your case sooner. If there is evidence you cannot give to us before the hearing, you may bring it to the hearing.

We can help you get evidence. If you need help, contact our office, your local Social Security office, or your representative (if you appoint one) immediately.

If a physician, expert, or other person is not providing documents important to your case, you may ask the ALJ to issue a subpoena. A subpoena is a special document that requires a person to submit documents or to testify at your hearing. The ALJ will issue a subpoena only if he or she thinks the evidence is necessary to decide your case, and the evidence cannot be obtained another way. You must ask the ALJ to issue a subpoena at least 5 days before your hearing date. Send your request in writing to the address at the top of the first page of this letter.

**You May See The Evidence In Your File**

If you wish to see the evidence in your file, you can see it on or before the date of your hearing. If you wish to see your file before the date of your hearing, please call us as soon as you reasonably can at the number at the top of the first page of this letter.

**If You Have Any Questions Or Your Address Changes**

If you have any questions, please call or write us. You must tell us if you change your address. For your convenience, we gave you our telephone number and address on the first page of this letter.

Sincerely yours,

Kathy S. Waggoner
Hearing Office Director

Enclosures:
HA-55 (Objection to Appear by Video Teleconferencing)
SSA Publication No. 05-10075 (Your Right To Representation)
HA-L1 (Important Notice Regarding Representation)
SSA Publication No. 70-067 (Why You Should Have Your Hearing By Video)
HA-827 (Medical Release Notice)
SSA-827 (Authorization to Disclose Information to SSA)

## OBJECTION TO APPEARING BY VIDEO TELECONFERENCING

Name:  Lorena Lynn Naillieux

Social Security Number:  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

Wage Earner:

Hearing Office:  NHC St Louis

```
RQID:0000000000000162577836 SITE:T1U DR:S
SSN:401088762 DOCTYPE:3267 RF:D CS:27b9
```

[  ]    **I do not want to appear at my hearing by video teleconference.  Please schedule my hearing so that I may appear in person.**

**<u>Please return this form only if you object to a hearing by video teleconference.</u>**

Additional Comments:_____

_____

_____

_____

| Signature: | Date: | Area Code and Telephone Number: |
|---|---|---|

**Privacy Act Statement**
**Collection and Use of Personal Information**

Sections 205(b)(1), 205(d) and 1631(c) of the Social Security Act, as amended, authorize us to collect this information.  We will use the information you provide to acknowledge you are opting-out of an appearance via video teleconferencing.  Furnishing us this information is voluntary.  However, failing to provide us with all or part of the information may prevent an accurate and timely decision on any claim filed.

We rarely use the information you supply us for any purpose other than to make a determination regarding benefits eligibility.  However, we may use the information for the administration of our programs including sharing information:

1.  To comply with Federal laws requiring the release of information from our records (e.g., to the Government Accountability Office and Department of Veterans Affairs); and,

2.  To facilitate statistical research, audit, or investigative activities necessary to ensure the integrity and improvement of our programs (e.g., to the Bureau of the Census and to private entities under contract with us).

A complete list of when we may share your information with others, called routine uses, is available in our Privacy Act System of Records Notice 60-0089, entitled Claims Folder System.  Additional information about this and other system of records notices and our programs are available online at www.socialsecurity.gov or at your local Social Security office.

We may share the information you provide to other health agencies through computer matching programs.  Matching programs compare our records with records kept by other Federal, State or local government agencies.  We use the information from these programs to establish or verify a person's eligibility for federally funded or administered benefit programs and for repayment of incorrect payments or delinquent debts under these programs.

**Paperwork Reduction Act Statement -** This information collection meets the requirements of 44 U.S.C. § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995.  You do not need to answer these questions unless we display a valid Office of Management and Budget control number.  We estimate that it will take about 5 minutes to read the instructions, gather the facts, and answer the questions.  *You may send comments on our time estimate above to:  SSA, 6401 Security Blvd, Baltimore, MD  21235-6401.*  **Send <u>only</u> comments relating to our time estimate to this address, not the completed form.**

**111**

Form HA-55 (04-2015)

# Your Right To Representation

You can have a representative, such as an attorney, help you when you do business with Social Security. We will work with your representative, just as we would with you.

For your protection, your representative cannot charge or collect a fee from you without first getting written approval from us. However, your representative may accept money from you in advance as long as it is held in a trust or escrow account.

Both you and your representative are responsible for providing us with accurate information. It is illegal to furnish false information knowingly and willfully. If you do, you may face criminal prosecution.

## What a representative can do

Once you appoint a representative, he or she can act on your behalf in most Social Security matters by:

- Getting information from your Social Security file;
- Helping you get medical records or information to support your claim;
- Coming with you, or for you, to any interview, conference or hearing you have with us;
- Requesting a reconsideration, hearing or Appeals Council review; and
- Helping you and your witnesses prepare for a hearing and questioning any witnesses.

Your representative also will receive a copy of the decision(s) we make on your claim(s).

## Choosing a representative

You can choose an attorney or other qualified person to represent you. You also can have more than one representative. However, you cannot have someone who has been suspended or disqualified from representing others before the Social Security Administration or who may not, by law, act as a representative.

Some organizations can help you find an attorney or give you free legal services if you qualify. Some representatives do not charge unless you receive benefits. Your Social Security Office has a list of organizations that can help you find a representative.

You can appoint one or more people in a firm, corporation or other organization as your representative, but you **may not** appoint the firm, corporation or organization itself.

After you choose a representative, you must tell us **in writing** as soon as possible. To do this, get Form SSA-1696-U4, *Appointment of Representative*, from our website at *www.socialsecurity.gov* or from any Social Security office.

You must give the name of the person you are appointing and sign your name. If the person is **not** an attorney, he or she must give his or her name, in writing, state that he or she accepts the appointment, and sign the form.

## What your representative may charge you

To charge you a fee for services, your representative first must file either a fee agreement or a fee petition with us.

Your representative **cannot** charge you more than the fee amount we approve. If you or your representative disagree with the fee we approve, either of you can ask us to look at it again.

A representative who charges or collects a fee without our approval, or charges or collects too much, may be suspended or disqualified from representing anyone before the Social Security Administration and also may face criminal prosecution.

## Filing a fee agreement

If you and your representative have a written fee agreement, your representative may ask us to approve it any time before we decide your claim. Usually, we will approve the agreement and tell you in writing how much your representative may charge as long as:

- You both signed the agreement;
- Your claim was approved and resulted in past-due benefits; and

(over)
Your Right To Representation

- The fee you agreed on is no more than 25 percent of past-due benefits or $6,000, whichever is less.

If we do not approve the fee agreement, we will notify you and your representative in writing that your representative must file a fee petition.

## Filing a fee petition

Your representative may give us a fee petition after completing the work on your claim(s). This written request should describe in detail the amount of time spent on each service your representative provided. Your representative must give you a copy of the fee petition and each attachment. If you disagree with the fee requested or the information shown, contact us within 20 days. We will consider the reasonable value of the representative's services and tell you, in writing, the amount of the fee we approve.

## How much you pay

The amount of the fee we decide your representative may charge is the most you owe for his or her services even if you agreed to pay your representative more. However, your representative can charge you for out-of-pocket expenses, such as medical reports, without our approval.

If an attorney or non-attorney whom Social Security has found eligible for direct payment represents you, we usually withhold 25 percent (but never more) of your past-due benefits to pay toward the fee. We pay all or part of the representatives from this money and send you any money left over.

Sometimes you must pay your representative directly:

- You must pay the rest you owe if the amount of the approved fee is more than the amount of money we withheld and paid your representative for you.
- You must pay the entire fee amount if:
  - Your representative is not eligible for direct payment;
  - We did not withhold 25 percent from your past-due Social Security or Supplemental Security Income benefits, or both; or

- Your representative did make a timely request for a fee and we sent you the money which we should have withheld.

You must pay for out-of-pocket expenses your representative incurs or expect(s) to incur (for example, the cost of getting your doctor's or hospital records).

## If someone else pays your representative

Even when someone else will pay the fee for you (for example, an insurance company), we must approve the fee unless:

- It is a nonprofit organization or federal, state, county or city agency that will pay the fee and any expenses from government funds; and
- Your representative gives us a written statement that you will not have to pay any fee or expenses.

## If you appeal your claim to the federal court

The court can allow a reasonable fee for your attorney. The fee usually will not exceed 25 percent of all past-due benefits that result from the court's decision. Your attorney cannot charge any additional fee for services before the court.

## Contacting Social Security

For more information, visit our website at *www. socialsecurity.gov* or call toll-free **1-800-772-1213** (for the deaf or hard of hearing, call or TTY number, **1-800-325-0778**). We can answer specific questions from 7 a.m. to 7 p.m. Monday through Friday. We can provide information by automated phone service 24 hours a day.

We treat all calls confidentially. We also want to make sure you receive accurate and courteous service. That is why we have a second Social Security representative monitor some telephone calls.



Social Security Administration
SSA Publication No. 05-10075
ICN 468000
Unit of Issue – HD (one hundred)
June 2009 (Destroy prior editions)

## Important Notice About Representation

You may choose to have a representative help you. You may appoint an attorney or other person to act as your representative. Some representatives may represent you for free. We will work with this person just as we would work with you.

Most representatives do not charge a fee unless your claim is successful and you receive benefits. **Usually, your representative may not charge a fee unless we approve it**.

If you get a representative, you or that person must notify us in writing. You may use our Form SSA-1696-U4 Appointment of Representative. Any local Social Security office can give you this form.

**If you want an attorney to help you**, you may contact the organization(s) listed below. The organization you contact should give you the name and number of an attorney with experience representing people at Social Security hearings.

| Organizations | Address | Telephone |
|---|---|---|
| Kentucky Bar Association Referral Services | | 1-800-372-2999 |
| National Association of Disability Representatives | 1615 L St, NW Suite 650 Washington, DC 20036 | 1-800-747-6131 |
| No. KY Bar Association | 522 Nunn Hall Louis B. Nunn Drive Highland Heights, KY 41075 | (859) 781-1300 |
| National Organization of Social Security Clmt Reps | 560 Sylvan Ave Englewood Cliffs, NJ 07632 | 800-431-2804 |
| Clinton County Bar Association | Larence County Library Ironton, OH 45538 | (614) 533-0582 |
| Ohio Lawyers Referal Service | East 6th St Suite 506 Cincinnati, OH 45202 | (513) 381-8359 |

Lorena Lynn Naillieux (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)                                                    Page 2 of 3

**If you cannot pay for legal representation** and you think you might qualify for free legal help, you may contact the organization(s) listed below. If they cannot help you, they may refer you to someone else.

| Organization | Address | Telephone |
|---|---|---|
| Lawyers Services Organization of Indiana | Plaza Square S. Suite 5<br>3303 Plaza Drive<br>New Albany, IN 47150 | 800-892-2776 |
| Legal Services Organization of Indiana | PO Box 904<br>Columbus, IN 47202 | (812) 372-6918 |
| Legal Services Organization of Indiana | 402 W 6th St<br>Marion, IN 46953 | (812) 372-6918 |
| Appalachian Research & Defense Fund of KY | 100 S. Central Ave<br>PO Box 1334<br>Somerset, KY 42502 | (606) 679-7313 |
| Appalachian Research & Defense Fund of KY | 301 Greensburg St<br>PO Box 460<br>Columbia, KY 42728 | |
| Appalachian Research & Defense Fund of KY | 109 S Main St<br>Suite #1<br>Harlan, KY 40831 | (606) 573-6301 |
| Appalachian Research & Defense Fund of KY | PO Box 7220<br>Hazard, KY 41702 | (606) 439-2315 |
| Appalachian Research & Defense Fund of KY | 460 Court Square<br>Barbourville, KY 40906 | (606) 546-5115 |
| Appalachian Research & Defense Fund of KY | 1267 Main St<br>PO Box 725<br>Jackson, KY 41339 | (606) 666-4941 |
| Appalachian Research & Defense Fund of KY | PO Box 613<br>Manchester Square Shopping Center<br>Manchester, KY 40962 | (606) 598-6188 |
| Appalchian Research & Defense Fund of KY | 218 W. Main St<br>PO Box 567<br>Richmond, KY 40475 | (859) 624-1394 |
| Central KY Legal Services | PO Box 12947<br>498 Georgetown St<br>Lexington, KY 40583 | 1-800-928-4556 |
| Legal Aid Society | 425 W Muhammad Ali Blvd<br>Louisville, KY 40202 | 1-800-292-1862 |
| Northeast Kentucky Legal Services | PO Box 1147<br>1213 Highway St<br>Ashland, KY 41101 | |
| Northeast KY Legal Services Program | PO Box 1040<br>320 East Main St<br>Morehead, KY 40351 | (606) 784-8921 |

Form HA-L1 (08-2012)  **115**

Lorena Lynn Naillieux (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)                    Page 3 of 3

| Northern KY Legal Aid Society | 320 Greenup Street<br>Covington, KY 41011 | 1-800-888-8189 |
|---|---|---|
| Legal Aid Society of Greater Cincinnati | 215 E 9th St<br>Suite 200<br>Cincinnati, OH 45202 | 800-582-2682 |
| Southeastern Ohio Legal Services | 800 Gallia St<br>Suite 700<br>Portsmouth, OH 45662 | 800-837-2508 |
|  |  |  |
|  |  |  |
|  |  |  |

**If you want someone who is not an attorney to help you**, you may contact the organization(s) listed below. The organization you contact should give you the name and number of someone with experience representing people at Social Security hearings.

| Organization | Address | Telephone |
|---|---|---|
|  |  |  |

Form HA-L1 (08-2012) **116**

EXHIBIT NO. 8B
PAGE: 10 OF 15

# Why You Should Have Your Hearing By Video

If you are getting ready for a hearing before an administrative law judge, Social Security offers an efficient method using new technology—video hearings. With video hearings, we can make the hearing more convenient for you. Often an appearance by video hearing can be scheduled faster than an in-person appearance.

## What is a video hearing?

A video hearing allows you and the other hearing participants to see and hear each other through large color television screens. The judge remains in his or her office, and you go to a site that can be more convenient to where you live. A technician is there to make sure the equipment works smoothly.

## How is a video hearing different?

Except for the equipment, a video hearing is no different than a hearing at which you appear in person. The judge can see you and speak with you and anyone who comes to the hearing with you, such as your representative or any witnesses. You can see the judge and anyone who is with the judge—or anyone at another video teleconference site, such as a medical or vocational expert. Transmission of the hearing is secure, and your privacy is protected. We do not videotape hearings, but we do make audio recordings—as we do for all hearings.

## What are the advantages of a video hearing?

Often an appearance by video hearing can be scheduled faster than an in-person appearance. That means less waiting time. Also, a video hearing location may be closer to your home. That might make it easier for you to have witnesses or other people accompany you.

## How is a video hearing scheduled?

If we are using video hearing equipment in your area, we will contact you to schedule a video appearance for you at a convenient time. The judge will consider any preference you may have expressed for or against appearing by video teleconferencing when setting the time and place of your hearing. You will have an opportunity to object to the set time or place.

If you have any questions or want more information, please contact your hearing office when you receive your acknowledgment of your request for a hearing.


Social Security Administration
SSA Publication No. 70-067
ICN 443300
Unit of Issue – HD (one hundred)
October 2004

www.socialsecurity.gov

**SOCIAL SECURITY ADMINISTRATION**

Refer To: 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
Lorena Lynn Naillieux

Office of Disability Adjudication and Review
Federal Center
4300 Goodfellow Blvd.
Bldg. 110, 2nd Floor
Saint Louis, MO 63120
Tel: (877)409-4579

August 28, 2015

Lorena Lynn Naillieux
85 Barlow Branch
Partridge, KY 40862

Dear Ms. Naillieux:

In order to obtain records to update your file we need a current Authorization to Release
Information.  Please sign the enclosed form(s) and return it to our office within ten (10) days.  A
return envelope is enclosed for your convenience.

Sincerely,

Kathy S. Waggoner
Administrative Officer

Enclosure (SSA-827)

**EXHIBIT NO. 8B**
**PAGE: 12 OF 15**

| WHOSE *Records to be Disclosed* | Form Approved<br>OMB No. 0960-0623 |
|---|---|
| NAME *(First, Middle, Last, Suffix)*<br>Lorena Lynn Naillieux | |

| SSN<br>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 | Birthday *(mm/dd/yy)*<br>07/31/1962 |
|---|---|

# AUTHORIZATION TO DISCLOSE INFORMATION TO
# THE SOCIAL SECURITY ADMINISTRATION (SSA)

**\*\* PLEASE READ THE ENTIRE FORM, BOTH PAGES, BEFORE SIGNING BELOW \*\***

I voluntarily authorize and request disclosure (including paper, oral, and electronic interchange):
__OF WHAT__   *All my medical records;* also education records and other information related to my ability to perform tasks. This includes specific permission to release:

1. **All records and other information regarding my treatment, hospitalization, and outpatient care for my impairment(s)** *including,* and **not limited to** :
   - Psychological, psychiatric or other mental impairment(s) (excludes "psychotherapy notes" as defined in 45 CFR 164.501)
   - Drug abuse, alcoholism, or other substance abuse
   - Sickle cell anemia
   - Records which may indicate the presence of a communicable or noncommunicable disease; and tests for or records of HIV/AIDS
   - Gene-related impairments (including genetic test results)
2. **Information about how my impairment(s) affects my ability to complete tasks and activities of daily living, and affects my ability to work.**
3. **Copies of educational tests or evaluations, including Individualized Educational Programs, triennial assessments, psychological and speech evaluations, and any other records that can help evaluate function; also teachers' observations and evaluations.**
4. **Information created within 12 months after the date this authorization is signed, as well as past information.**

| __FROM WHOM__ | THIS BOX TO BE COMPLETED BY SSA/DDS (__as needed__) Additional information to identify the subject (e.g., other names used), the specific source, or the material to be disclosed: |
|---|---|
| • **All medical sources** (hospitals, clinics, labs, physicians, psychologists, etc.) including mental health, correctional, addiction treatment, and VA health care facilities<br>• All educational sources (schools, teachers, records administrators, counselors, etc.)<br>• Social workers/rehabilitation counselors<br>• Consulting examiners used by SSA<br>• Employers, insurance companies, workers' compensation programs<br>• Others who may know about my condition (family, neighbors, friends, public officials) | |

__TO WHOM__   **The Social Security Administration and to the State agency authorized to process my case** (usually called "disability determination services"), **including contract copy services, and doctors or other professionals consulted during the process.** [Also, for international claims, to the U.S. Department of State Foreign Service Post.]

__PURPOSE__   Determining my **eligibility for benefits**, including looking at the combined effect of any impairments that by themselves would not meet SSA's definition of disability; and whether I can manage such benefits.
☐ Determining whether I am **capable of managing benefits ONLY** (check only if this applies)

__EXPIRES WHEN__   This authorization is good for 12 months from the date signed (below my signature).

- I authorize the use of a copy (including electronic copy) of this form for the disclosure of the information described above.
- I understand that there are some circumstances in which this information may be redisclosed to other parties (see page 2 for details).
- I may write to SSA and my sources to revoke this authorization at any time (see page 2 for details).
- SSA will give me a copy of this form if I ask; I may ask the source to allow me to inspect or get a copy of material to be disclosed.
- **I have read both pages of this form and agree to the disclosures above from the types of sources listed.**

| __PLEASE SIGN USING BLUE OR BLACK INK ONLY__ | IF not signed by subject of disclosure, specify basis for authority to sign |
|---|---|
| __INDIVIDUAL__ authorizing disclosure | ☐ Parent of minor   ☐ Guardian   ☐ Other personal representative (explain) |

| SIGN ▶ | (Parent/guardian/personal representative sign here if two signatures required by State law) ▶ |
|---|---|

| Date Signed | Street Address<br>85 Barlow Branch | | |
|---|---|---|---|
| Phone Number (with area code)<br>(606)589-4149 | City<br>Partridge | State<br>KY | ZIP<br>40862 |

__WITNESS__   *I know the person signing this form or am satisfied of this person's identity:*

| SIGN ▶ | IF needed, second witness sign here (e.g., if signed with "X" above)<br>SIGN ▶ |
|---|---|
| Phone Number (or Address) | Phone Number (or Address) |

*This general and special authorization to disclose was developed to comply with the provisions regarding disclosure of medical, educational, and other information under P.L. 104-191 ("HIPAA"); 45 CFR parts 160 and 164; 42 U.S. Code section 290dd-2; 42 CFR part 2; 38 U.S. Code section 7332; 38 CFR 1.475; 20 U.S. Code section 1232g ("FERPA"); 34 CFR parts 99 and 300; and State law.*

Form SSA-827 (11-2012) ef (11-2012)  Use 4-2009 and Later Editions Until Supply is Exhausted                                                        Page 1 of 2

**119**

**Explanation of Form SSA-827,
"Authorization to Disclose Information to the Social Security Administration (SSA)"**

We need your written authorization to help get the information required to process your claim, and to determine your capability of managing benefits. Laws and regulations require that sources of personal information have a signed authorization before releasing it to us. Also, laws require specific authorization for the release of information about certain conditions and from educational sources.

You can provide this authorization by signing a form SSA-827. Federal law permits sources with information about you to release that information if you sign a single authorization to release all your information from all your possible sources. We will make copies of it for each source. A covered entity (that is, a source of medical information about you) may not condition treatment, payment, enrollment, or eligibility for benefits on whether you sign this authorization form. A few States, and some individual sources of information, require that the authorization specifically name the source that you authorize to release personal information. In those cases, we may ask you to sign one authorization for each source and we may contact you again if we need you to sign more authorizations.

You have the right to revoke this authorization at any time, except to the extent a source of information has already relied on it to take an action. To revoke, send a written statement to any Social Security Office. If you do, also send a copy directly to any of your sources that you no longer wish to disclose information about you; SSA can tell you if we identified any sources you didn't tell us about. SSA may use information disclosed prior to revocation to decide your claim.

It is SSA's policy to provide service to people with limited English proficiency in their native language or preferred mode of communication consistent with Executive Order 13166 (August 11, 2000) and the Individuals with Disabilities Education Act. SSA makes every reasonable effort to ensure that the information in the SSA-827 is provided to you in your native or preferred language.

**Privacy Act Statement
Collection and Use of Personal Information**

Sections 205(a), 233(d)(5)(A), 1614(a)(3)(H)(i), 1631(d)(l) and 1631(e)(l)(A) of the Social Security Act as amended, [42 U.S.C. 405(a), 433(d)(5)(A), 1382c(a)(3)(H)(i), 1383(d)(l) and 1383(e)(l)(A)] authorize us to collect this information. We will use the information you provide to help us determine your eligibility, or continuing eligibility for benefits, and your ability to manage any benefits received. The information you provide is voluntary. However, failure to provide the requested information may prevent us from making an accurate and timely decision on your claim, and could result in denial or loss of benefits.

We rarely use the information you provide on this form for any purpose other than for the reasons explained above. However, we may use it for the administration and integrity of Social Security programs. We may also disclose information to another person or to another agency in accordance with approved routine uses, including but not limited to the following:

1. To enable a third party or an agency to assist us in establishing rights to Social Security benefits and/or coverage;

2. To comply with Federal laws requiring the release of information from our records (e.g., to the Government Accountability Office, General Services Administration, National Archives Records Administration, and the Department of Veterans Affairs);

3. To make determinations for eligibility in similar health and income maintenance programs at the Federal, State, and local level; and

4. To facilitate statistical research, audit, or investigative activities necessary to assure the integrity and improvement of our programs (e.g., to the U.S. Census Bureau and to private entities under contract with us).

We may also use the information you provide in computer matching programs. Matching programs compare our records with records kept by other Federal, State, or local government agencies. We use the information from these programs to establish or verify a person's eligibility for Federally funded or administered benefit programs and for repayment of incorrect payments or delinquent debts under these programs.

A complete list of routine uses of the information you gave us is available in our Privacy Act Systems of Records Notices entitled, Claims Folder System, 60-0089; Master Beneficiary Record, 60-0090; Supplemental Security Income record and Special Veterans benefits, 60-0103; and Electronic Disability (eDIB) Claims File, 60-0340. The notices, additional information regarding this form, and information regarding our systems and programs, are available on-line at www.socialsecurity.gov or at any Social Security office.

**Paperwork Reduction Act Statement** - This information collection meets the requirements of 44 U.S.C. § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget control number. We estimate that it will take about 10 minutes to read the instructions, gather the facts, and answer the questions. **SEND OR BRING THE COMPLETED FORM TO YOUR LOCAL SOCIAL SECURITY OFFICE.** You can find your local Social Security office through SSA's website at **www.socialsecurity.gov.** Offices are also listed under U.S. Government agencies in your telephone directory **or you may call Social Security at 1-800-772-1213 (TTY 1-800-325-0778).** *You may send comments on our time estimate above to: SSA, 6401 Security Blvd, Baltimore, MD 21235-6401. Send only comments relating to our time estimate to this address, not the completed form.*

AUG-03-2015 17:31   From:6068863704                                        Page:2/3

## APPALRED LEGAL AID

Appalachian Research & Defense Fund of Ky., Inc.



Need a Lawyer in a civil case but cannot afford one?

You may qualify for
*FREE LEGAL HELP!*

Call APPALRED

# 1-866-277-5733

LSC

*FUNDED BY THE LEGAL SERVICES CORPORATION, THE COMMONWEALTH OF KENTUCKY, KENTUCKY IOLTA FUNDS, OTHER FEDERAL FUNDS AND PRIVATE DONATIONS*

---

## What kind of cases does AppalReD accept?

Foreclosures/Unfair Loans
Social Security/SSI
Landlord Tenant
Public Housing
KTAP/Food Stamps
Medicare/Medicaid
Disability Rights
Consumer Protection
Family Law
Employment Discrimination
Unemployment Denials
Education
Senior Citizen Rights
Civil Rights
Bankruptcy
Tax Issues

If you need a language interpreter, we can now provide this service.

If you are deaf or have trouble hearing, call 711 or dial 1-800-648-6056.

Visit us online at *www.ardlky.org*

follow us on facebook

*Serving Eastern and South Central Kentucky since 1970*

---

## Where are AppalReD offices located?

**BARBOURVILLE**
(Serving Bell, Clay, Harlan, Knox, Laurel & Whitley Counties)
460 Court Square
Barbourville, KY 40906
Toll Free: 1-800-441-5115 or locally (606) 546-6115

**HAZARD**
(Serving Leslie, Letcher & Perry Counties)
800 High Street, Suite 101
Hazard, KY 41701
Toll Free: 1-800-896-2315 or locally (606) 439-2315

**PIKEVILLE**
(Serving Pike County)
(By Appointment Only)
148 Main Street
Pikeville, KY 41501
Toll Free: 1-800-556-3876 or Locally (606) 437-3446

**PRESTONSBURG**
(Serving Floyd, Johnson, Knott, Lawrence, Magoffin, Martin & Pike Counties)
120 North Front Ave.
Prestonsburg, KY 41653
Toll Free: 1-800-556-3876 or locally (606) 886-3876

**RICHMOND**
(Serving Breathitt, Clark, Estill, Garrard, Jackson, Lee, Madison, Owsley, Powell, & Wolfe Counties)
114 North Third Street
Richmond, KY 40475
Toll Free: 1-800-477-1394 or locally (859) 624-1394

**SOMERSET**
(Serving Lincoln, McCreary, Pulaski, Rockcastle, Wayne, Adair, Casey, Clinton, Cumberland, Monroe & Russell Counties)
106 College Street
Somerset, KY 42501
Toll Free: 1-800-866-7313 or locally (606) 679-7313

# APPALACHIAN RESEARCH AND DEFENSE FUND OF KY., INC.

## What is AppalReD?

Appalachian Research and Defense Fund of Kentucky, Inc. (AppalReD Legal Aid) provides FREE civil legal help for people and groups who cannot afford a private attorney. *We cannot help in criminal matters.*

AppalReD Legal Aid charges no fees. However, sometimes a client might have to pay court costs.

## How do I get help?

Call us at:

### 1-866-277-5733

You will be asked a few questions for eligibility purposes. If you qualify, you will talk to an attorney who will give you advice and may refer you to your local office for extended service. The local office will determine whether AppalReD can accept your case.

## Who is eligible for help?

To be eligible for free civil legal help from AppalReD you must:

1. Have an income that meets our income eligibility guidelines.
2. Be a US Citizen or eligible alien.
3. Have a type of civil case that AppalReD accepts.
4. Have a legal issue in one of the 37 counties highlighted below.

| | | |
|---|---|---|
| Adair | Jackson | McCreary |
| Bell | Johnson | Monroe |
| Breathitt | Knott | Owsley |
| Casey | Knox | Perry |
| Clark | Laurel | Pike |
| Clay | Lawrence | Powell |
| Clinton | Lee | Pulaski |
| Cumberland | Leslie | Rockcastle |
| Estill | Letcher | Russell |
| Floyd | Lincoln | Wayne |
| Garrard | Madison | Whitley |
| Harlan | McCrary | Wolfe |
| | Martin | |

*We are committed to providing high quality civil legal services in a manner that promotes equal access to justice, encourages self-sufficiency and empowers and improves the lives of low income individuals and families in eastern and south central Kentucky.*

122

**SOCIAL SECURITY ADMINISTRATION**

Refer To:                                    Office of Disability Adjudication and Review
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                                  Federal Center
Lorena Lynn Naillieux                        4300 Goodfellow Blvd.
                                             Bldg. 110, 2nd Floor
                                             Saint Louis, MO 63120
                                             Tel: (877)409-4579 / Fax: (314)263-8589

                                             October 7, 2015


Lorena Lynn Naillieux
85 Barlow Branch
Partridge, KY 40862

**NOTICE OF HEARING**

**Please bring this notice of hearing with you to the hearing.**

I have scheduled your hearing for:

| **Day:** | Monday | **Date:** | November 2, 2015 | **Time:** 11:45 AM |
|---|---|---|---|---|
| | | | | Eastern (ET) |

| **Room:** | 2 | **Address:** | 825 High Street |
|---|---|---|---|
| | | | Hazard, KY 41701 |

**It Is Important That You Attend Your Hearing**


The Office of the Inspector General notified the Social Security Administration (SSA), as required by section 1129(l) of the Social Security Act, that there was reason to believe fraud was involved in certain cases involving evidence from Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D., Frederic Huffnagle, M.D., or David P. Herr, D.O.

Under section 205(u) of the Social Security Act, SSA must redetermine an individual's disability case when there is reason to believe fraud or similar fault was involved in that individual's application for benefits. In conducting a redetermination, SSA must disregard any evidence from one of the medical providers above when the information was submitted by representative Eric C. Conn or other representatives associated with Mr. Conn's law office.

After reviewing all of the relevant information, SSA sent your case back to me for a new hearing and a new decision. I have set aside this time for you to tell me about your case.


Form HA-83 (04-2015)
Claimant

**Suspect Social Security Fraud?**
**Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline
at 1-800-269-0271 (TTY 1-866-501-2101).**

**123**

See Next Page

You may ask us if you want to appear by telephone. I will grant your request if I find that extraordinary circumstances prevent you from appearing in person or by video teleconferencing.

You **must** bring valid picture identification (ID) to your hearing. Examples of acceptable picture ID include a:

- **Current and valid U.S. State driver's license;**
- **U.S. State-issued identity card;**
- **Current U.S. passport; or**
- **U.S. military ID/dependent military ID.**

If you do not have any of these forms of ID, please bring another form of picture ID with you. Proper ID is also required for your representative (if you have one), a friend, or a member of your family who comes with you to the hearing. Without proper ID, you may not be able to enter the building where your hearing is being held. This could stop or delay your hearing.

Benefits will not be suspended or terminated as a result of the redetermination process until you have an opportunity for a hearing and I make a new decision.

**Complete the Enclosed Form**

Please complete and return the enclosed acknowledgement form at the earliest possible opportunity. Please use the enclosed envelope to return the form to us. We assume you received this notice 5 days after the date on it unless you show us that you did not get it within the 5-day period.

**I Plan To Use Video Teleconferencing (VTC) At Your Hearing**

You are scheduled to appear at your hearing by VTC. You will be at the location shown above during the hearing, and I will be at another location. A large, color monitor will allow us to see, hear, and speak to each other. I will also be able to see, hear, and speak to anyone who comes with you to the hearing. This may include your representative (if you have one), a friend, or a member of your family. A person will be at your location to operate the equipment and provide any other help you may need.

**If You Cannot Attend Your Scheduled Hearing**

If you are not able to attend your hearing at the time and place I have set, please call this office immediately.

Lorena Lynn Naillieux (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)                                            Page 3 of 7

If you wish to change the time or place of your hearing, you must ask for a change. Your request must be in writing to tell me why you need the change and the time and place you would like the hearing held.

You must ask for this change before the earlier of the two dates described below. The first date is 30 days after you receive this notice. The second date is 5 days before the date of your hearing. If you delay in asking for a change, I will also decide whether you have a good reason for the delay. I will rule on your request based on our standards for deciding if there is a good reason for changing the time and place of your hearing.

I will decide whether you have a good reason for requesting the change. If I find you have a good reason for your request, I will set a new time and place for your hearing. I will also send another notice giving you the new time and place of your hearing at least 20 days before the new date of the hearing.

**If You Want Help With Your Appeal**

It is important to understand that while Mr. Conn or one of his associates was your appointed representative at the time of your initial allowance, his representation, or the representation of one of his associates, ended after we initially allowed your claim.  This means that if you would like the assistance of a representative during the redetermination proceedings, you must reappoint a representative to assist you. We will work with this person just as we would work with you. If you decide to have a representative, you should find one quickly so that person can start preparing your case.

Many representatives charge a fee.  Others may represent you for free. In these redetermination proceedings, there will be no past due benefits.  Usually, your representative may not charge a fee unless we approve it. Any appointed or previously appointed representative can submit a fee petition for the services he or she provided, and I will evaluate the request using the applicable procedures in HALLEX I-1-2 in determining a reasonable fee.  If you get a representative, you or that person must notify us in writing.

**Submitting More Evidence and Reviewing Your File**
We will consider more evidence if:

- It is new and material;

AND

- It is about "disability" starting on or before January 27, 2009, the date of the Administrative Law Judge's decision.

Form HA-83 (04-2015)
Claimant **125**

Case: 7:16-cv-00193-JMH   Doc #: 12-1   Filed: 12/09/16   Page: 130 of 435 - Page ID#: 200   **EXHIBIT NO. 9B**
**PAGE: 4 OF 15**

Lorena Lynn Naillieux (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)                                    Page 4 of 7

You should have already received a copy of your claims file on a compact disc. If you have not received a copy of your claims file, please call this office and we will send you a replacement copy. You may also review your file on the day of your hearing if you come in at least 30 minutes before the time set for your hearing. Please call us in advance if you will need more than 30 minutes to review your file.

**Issues I Will Consider**

Section 205(u) of the Act requires that evidence in a claim for benefits be disregarded if there is reason to believe that fraud or similar fault was involved in providing that evidence. In reviewing your case, I am disregarding the evidence from Frederic Huffnagle, M.D., dated from January 2007 to May 2011. As required by section 1129(l) of the Act, the Office of the Inspector General notified the Social Security Administration (SSA) that there was reason to believe fraud was involved in certain cases involving medical source statements from Frederic Huffnagle, M.D., submitted to SSA on behalf of claimants represented by Eric C. Conn or an individual associated with his law firm. Under section 205(u) of the Act, I must disregard this evidence because there is reason to believe that fraud or similar fault was involved in providing the evidence. Although I will consider the other issues in this notice, I cannot reconsider whether this evidence will be disregarded. After redetermining your case, I may find that there is insufficient evidence supporting your entitlement to benefits on or before January 27, 2009, the date we initially allowed the claim. My decision may result in the loss of your benefits and you may be determined to have received an overpayment. If your benefits are terminated, and an overpayment is assessed, the provisions of Subpart F – Overpayments, Underpayments, Waiver of Adjustment or Recovery of Overpayments, and Liability of a Certifying Officer will apply. (20 CFR Ch III Subpart F). You may request that we waive that overpayment, and we will consider such a request under our rules.

Under the Act, I will find you are entitled to benefits on or before January 27, 2009, the date SSA initially allowed the claim if you had a physical or mental condition(s) that:

- Kept you from doing any substantial gainful work; **and**

- Lasted 12 straight months, could have been expected to last 12 straight months, or could have been expected to result in death.

I will follow a step-by-step process to decide whether you are entitled to benefits on or before January 27, 2009, the date SSA initially allowed the claim. I will stop the process at the first step I can make a decision. The steps in this process look at:

- Any work you did after your condition(s) began;

- The severity of your condition(s);

- Whether you could have done the kind of work you did in the past; and

Lorena Lynn Naillieux (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)                                        Page 5 of 7

- Whether you could have done any other kind of work considering your age, education, and work experience.

I will also consider whether you had enough earnings under Social Security to be insured for a Period of Disability and Disability Insurance Benefits. If you did, I must decide whether you became disabled while you were insured.

Our regulations explain the rules for deciding whether you were entitled to benefits and, if so, when you became entitled to benefits. These rules are in the Code of Federal Regulations, Title 20, Chapter III, Part 404, Subpart B and Subpart P.

If I find that you were entitled to benefits, I will also consider whether your entitlement to benefits continued through January 27, 2009, or whether your condition(s) improved on or before January 27, 2009, the date SSA initially allowed the claim.

**Remarks**

A vocational expert will appear at the hearing by telephone. You will be able to communicate with the expert.

You have a right to review the claim file. If you have not already reviewed the file or arranged to do so, please call this office at the number shown at the top of the first page of this notice.

**If You Disagree With the Issues**

If you disagree with the issues or remarks listed above, you must tell me in writing why you disagree. To prevent delays, you must tell me as soon as possible.

**What Happens At the Hearing?**

- I will ask you and any other witnesses to take an oath or to affirm that the testimony is true.

- You will have a chance to testify and tell me about your case.

- You and your representative (if you have one) may submit documents, present and question witnesses, state your case, and give written statements about the facts and law.

- I will ask you and any other witnesses questions that will help me make a decision in your case.

- We will make an audio recording of the hearing.

Form HA-83 (04-2015)
Claimant

**127**

Lorena Lynn Naillieux (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)                                    Page 6 of 7

**Travel Costs**

We can pay certain travel costs when you, your representative, or needed witnesses must travel more than 75 miles to the hearing. A sheet is enclosed to tell you about our rules for paying travel costs. Please call this office if you want more information.

**The Decision**

After the hearing, I will issue a written decision and mail it to you. The decision will explain my findings of fact and conclusions of law. I will base my decision given all the evidence of record related to the period at issue, including the testimony at your hearing, but disregarding the evidence from Frederic Huffnagle, M.D., dated between January 2007 to May 2011.

**If You Have Any Questions**

If you have any questions, please call, **(877)409-4579**, or write this office. For your convenience, our address is on the first page of this notice.

Sincerely,


Charles Woode
Administrative Law Judge


Enclosures:
SSA Publication No. 05-10075 (Your Right To Representation)
Form HA-504 (Acknowledgement of Receipt of Notice of Hearing)
Form HA-L84 (Vocational Expert Letter)

Lorena Lynn Naillieux (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)                                    Page 7 of 7

---
### When we can pay travel expenses
---

If you must travel more than 75 miles one way from your home or office to attend the hearing, we can pay certain costs.  Here are the rules that apply:

- We can pay expenses such as the cost of a bus ticket or expenses for driving your car.

- In certain circumstances, you may need meals, lodging, or taxicabs.  The Administrative Law Judge (ALJ) must approve these special travel costs **before the hearing unless** the costs were unexpected and unavoidable.

- The ALJ may also approve payment of similar travel expenses for your representative and any witnesses he or she determines are needed at the hearing.

- You must submit a written request for payment of travel expenses other than meals, lodging, or taxicabs to the ALJ at the time of the hearing or as soon as possible after the hearing.  List what you spent and include supporting receipts.  If you requested a change in the scheduled location of the hearing to a location farther from your residence, we cannot pay you for any **additional** travel expenses.

- If you need money for travel costs in advance, you should tell the ALJ as soon as possible **before the hearing**.  We can make an advance payment only if you show that without it you would not have the funds to travel to or from the hearing.

- If you receive travel money in advance, you must give the ALJ an itemized list of your actual travel costs and receipts within 20 days after your hearing.

- If we gave you an advance payment that is more than the amount you are due for travel costs, you must pay back the difference within 20 days after we tell you how much you owe us.

- If we reimburse you for travel costs we follow the rules in the Code of Federal Regulations and apply the same rates and conditions of payment that govern travel expenses for Federal employees. 41 CFR Chapter 301 and 20 CFR 404.999a-999d.

# Your Right To Representation

You can have a representative, such as an attorney, help you when you do business with Social Security. We will work with your representative, just as we would with you.

For your protection, your representative cannot charge or collect a fee from you without first getting written approval from us. However, your representative may accept money from you in advance as long as it is held in a trust or escrow account.

Both you and your representative are responsible for providing us with accurate information. It is illegal to furnish false information knowingly and willfully. If you do, you may face criminal prosecution.

## What a representative can do

Once you appoint a representative, he or she can act on your behalf in most Social Security matters by:

- Getting information from your Social Security file;
- Helping you get medical records or information to support your claim;
- Coming with you, or for you, to any interview, conference or hearing you have with us;
- Requesting a reconsideration, hearing or Appeals Council review; and
- Helping you and your witnesses prepare for a hearing and questioning any witnesses.

Your representative also will receive a copy of the decision(s) we make on your claim(s).

## Choosing a representative

You can choose an attorney or other qualified person to represent you. You also can have more than one representative. However, you cannot have someone who has been suspended or disqualified from representing others before the Social Security Administration or who may not, by law, act as a representative.

Some organizations can help you find an attorney or give you free legal services if you qualify. Some representatives do not charge unless you receive benefits. Your Social Security Office has a list of organizations that can help you find a representative.

You can appoint one or more people in a firm, corporation or other organization as your representative, but you **may not** appoint the firm, corporation or organization itself.

After you choose a representative, you must tell us **in writing** as soon as possible. To do this, get Form SSA-1696-U4, *Appointment of Representative*, from our website at *www.socialsecurity.gov* or from any Social Security office.

You must give the name of the person you are appointing and sign your name. If the person is **not** an attorney, he or she must give his or her name, in writing, state that he or she accepts the appointment, and sign the form.

## What your representative may charge you

To charge you a fee for services, your representative first must file either a fee agreement or a fee petition with us.

Your representative **cannot** charge you more than the fee amount we approve. If you or your representative disagree with the fee we approve, either of you can ask us to look at it again.

A representative who charges or collects a fee without our approval, or charges or collects too much, may be suspended or disqualified from representing anyone before the Social Security Administration and also may face criminal prosecution.

## Filing a fee agreement

If you and your representative have a written fee agreement, your representative may ask us to approve it any time before we decide your claim. Usually, we will approve the agreement and tell you in writing how much your representative may charge as long as:

- You both signed the agreement;
- Your claim was approved and resulted in past-due benefits; and

(over)
Your Right To Representation

- The fee you agreed on is no more than 25 percent of past-due benefits or $6,000, whichever is less.

If we do not approve the fee agreement, we will notify you and your representative in writing that your representative must file a fee petition.

## Filing a fee petition

Your representative may give us a fee petition after completing the work on your claim(s). This written request should describe in detail the amount of time spent on each service your representative provided. Your representative must give you a copy of the fee petition and each attachment. If you disagree with the fee requested or the information shown, contact us within 20 days. We will consider the reasonable value of the representative's services and tell you, in writing, the amount of the fee we approve.

## How much you pay

The amount of the fee we decide your representative may charge is the most you owe for his or her services even if you agreed to pay your representative more. However, your representative can charge you for out-of-pocket expenses, such as medical reports, without our approval.

If an attorney or non-attorney whom Social Security has found eligible for direct payment represents you, we usually withhold 25 percent (but never more) of your past-due benefits to pay toward the fee. We pay all or part of the representatives from this money and send you any money left over.

Sometimes you must pay your representative directly:

- You must pay the rest you owe if the amount of the approved fee is more than the amount of money we withheld and paid your representative for you.
- You must pay the entire fee amount if:
  - Your representative is not eligible for direct payment;
  - We did not withhold 25 percent from your past-due Social Security or Supplemental Security Income benefits, or both; or

- Your representative did make a timely request for a fee and we sent you the money which we should have withheld.

You must pay for out-of-pocket expenses your representative incurs or expect(s) to incur (for example, the cost of getting your doctor's or hospital records).

### If someone else pays your representative

Even when someone else will pay the fee for you (for example, an insurance company), we must approve the fee unless:

- It is a nonprofit organization or federal, state, county or city agency that will pay the fee and any expenses from government funds; and
- Your representative gives us a written statement that you will not have to pay any fee or expenses.

### If you appeal your claim to the federal court

The court can allow a reasonable fee for your attorney. The fee usually will not exceed 25 percent of all past-due benefits that result from the court's decision. Your attorney cannot charge any additional fee for services before the court.

### Contacting Social Security

For more information, visit our website at *www. socialsecurity.gov* or call toll-free **1-800-772-1213** (for the deaf or hard of hearing, call or TTY number, **1-800-325-0778**). We can answer specific questions from 7 a.m. to 7 p.m. Monday through Friday. We can provide information by automated phone service 24 hours a day.

We treat all calls confidentially. We also want to make sure you receive accurate and courteous service. That is why we have a second Social Security representative monitor some telephone calls.



Social Security Administration
SSA Publication No. 05-10075
ICN 468000
Unit of Issue – HD (one hundred)
June 2009 (Prior editions may be used)

Form Approved
OMB NO. 0960-0671

## ACKNOWLEDGEMENT OF RECEIPT (NOTICE OF HEARING)
(COMPLETE THIS FORM AND RETURN IT AT ONCE IN THE ENVELOPE PROVIDED. NO POSTAGE IS NECESSARY)

| | |
|---|---|
| Claimant: Lorena Lynn Naillieux | Social Security Number: 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 |
| Wage Earner: | Administrative Law Judge: Charles Woode |
| Hearing Scheduled: Monday, November 2, 2015 at 11:45 AM Eastern (ET) | Hearing Office: NHC St Louis |
| Location of Hearing:  Room 2 | |

825 High Street
Hazard, KY 41701

RQID:00000000000000165220378 SITE:T1U DR:S
SSN:401088762 DOCTYPE:3005 RF:D CS:702a

(Check only one)

[ ]  **I will be present at the time and place shown on the Notice of Hearing.**  If an emergency arises after I mail this form and I cannot be present, I will immediately notify you at the telephone number shown on the Notice of Hearing.

[ ]  **I cannot be present at the time and place shown on the Notice of Hearing.**  I request that you reschedule my hearing because:

_____

_____

_____

NOTE: YOUR REQUEST FOR HEARING MAY BE DISMISSED IF YOU DO NOT ATTEND THE HEARING AND CANNOT GIVE A GOOD REASON FOR NOT ATTENDING.  THE TIME OR PLACE OF THE HEARING WILL BE CHANGED IF YOU HAVE A GOOD REASON FOR YOUR REQUEST.

| Signature: | Date: | Area Code and Telephone Number: |
|---|---|---|

[ ]  I have recently moved.  My new address is:

_____

_____

Form HA-504 (09-2003) ef (09-2014)

# Privacy Act Statement
## Collection and Use of Personal Information

Sections 205(a), 702, 1631(e)(1)(A) and (B), and (1869)(b)(1) and (c) of the Social Security Act, as amended, authorize us to collect this information. We will use the information you provide to continue processing your claim.

Furnishing us this information is voluntary. However, failing to provide us with all or part of the information could prevent us from making an accurate and timely decision on your claim and may affect the receipt of benefits under the Social Security Act.

We rarely use the information you supply us for any purpose other than to process your claim. We may also disclose information to another person or to another agency in accordance with approved routine uses, which include but are not limited to the following:

    1. To enable a third party or an agency to assist us in establishing rights to Social Security benefits and/or coverage;

    2. To comply with Federal laws requiring the release of information from Social Security records (e.g., to the Government Accountability Office and Department of Veterans' Affairs);

    3. To make determinations for eligibility in similar health and income maintenance programs at the Federal, State, and local level; and,

    4. To facilitate statistical research, audit, or investigative activities necessary to assure the integrity and improvement of Social Security programs (e.g., to the Bureau of the Census).

We may also use the information you give us in computer matching programs. Matching programs compare our records with records kept by other Federal, State, or local government agencies. Information from these matching programs can be used to establish or verify a person's eligibility for federally-funded or administered benefit programs and for repayment of payments or delinquent debts under these programs.

A complete list of routine uses of the information you provided us is available in our System of Records Notice entitled, Claims Folder System, 60-0089. This notice, additional information regarding this form, and information regarding our programs and systems, are available on-line at www.socialsecurity.gov or at your local Social Security office.

**Paperwork Reduction Act Statement -** This information collection meets the requirements of 44 U.S.C. § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget (OMB) control number. We estimate that it will take about 30 minutes to read the instructions, gather the facts, and answer the questions. *You may send comments on our time estimate above to: SSA, 6401 Security Blvd, Baltimore, MD 21235-6401. Send only comments relating to our time estimate to this address, not the completed form.*

**SOCIAL SECURITY ADMINISTRATION**

Refer To:
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
Lorena Lynn Naillieux

Office of Disability Adjudication and Review
Federal Center
4300 Goodfellow Blvd.
Bldg. 110, 2nd Floor
Saint Louis, MO 63120
Tel: (877)409-4579 / Fax: (314)263-8589

October 7, 2015

Roxanne Benoit
9596 Woodridge Circle
Fredericktown, OH 43019

Dear Roxanne Benoit:

The claimant named below has an application pending for disability benefits.  A hearing for the claimant is scheduled, date and time shown below.

**Name of Claimant:** Lorena Lynn Naillieux          **Birth date:** 07/31/1962          **SSN:** 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

**Date and Time:**   Monday, November 2, 2015 at 11:45 AM Eastern (ET)

You are requested to appear and give testimony as a vocational expert in the above hearing.  We will call you by phone for the hearing.

**Address:**          825 High Street
                     Room: 2
                     Hazard, KY 41701

Your testimony will primarily cover the following period:
                     October 15, 2005 through January 27, 2009.

Your presence throughout the hearing is desired since your testimony will be based, in part, on the testimony given by the claimant and any other witnesses, including a medical advisor if needed.  Copies of the pertinent exhibits (and a list of these exhibits) tentatively selected for inclusion in the record of this case will be mailed under separate cover if not enclosed with this notice.  Please have this material available for the hearing.

For additional information concerning your testimony, please see the attachment to this form letter.

Your charges for this service should be submitted in accordance with your contract with the Social Security Administration.

                                        Sincerely,



                                        Charles Woode
                                        Administrative Law Judge

Enclosures

**134**

Form HA-L84 (08-2013)

## IMPORTANT INFORMATION

NOTE:  IT IS REQUIRED THAT YOU DISQUALIFY YOURSELF IF YOU HAVE HAD ANY PRIOR KNOWLEDGE OF THIS CLAIMANT OR EXPERIENCE IN THIS CASE <u>OTHER</u> THAN AS A VOCATIONAL EXPERT FOR THE OFFICE OF DISABILITY ADJUDICATION AND REVIEW.

While medical factors alone may justify a finding that the claimant is or is not disabled, it is necessary in some cases to consider vocational factors in order to determine whether or not the claimant is able to engage in any substantial gainful activity.  Two basic questions will be presented to you at this hearing.

The first question pertains to the kind of work, if any, the claimant can do in light of prior work activity and residual functional capacity considering age, education, training and work experience.  Your testimony will be predicated on various assumptions, posed at the hearing, with respect to the claimant's residual functional capacity.  You will not be expected to testify as to whether or not the claimant is under a disability, since you do not have the responsibility for deciding this ultimate legal issue.  You should not express any opinion regarding the impairments involved and their effects on residual functional capacity, since these are medical matters.  You will be requested to furnish a rationale and complete explanation for your opinions.  In forming your judgment as to whether or not the claimant could transfer vocational skills to any other type of work, please consider only work which the claimant could perform after a normal period of training, usually given to new employees, rather than after extended vocational rehabilitation.

The second question is whether such work exists in the "national economy;" i.e., whether it exists in significant numbers either in the region where the claimant lives or in several other regions of the country.  You should be prepared to testify from personal knowledge gained from vocational surveys of businesses and industries (whether such surveys were made by you or by other vocational experts) and from other current vocational resource materials.

Questions may also be asked of you by the claimant (or representative, if any).

Form HA-L84 (08-2013)

**SOCIAL SECURITY ADMINISTRATION**

Refer To:
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
Lorena Lynn Naillieux

Office of Disability Adjudication and Review
Federal Center
4300 Goodfellow Blvd.
Bldg. 110, 2nd Floor
Saint Louis, MO 63120
Tel: (877)409-4579 / Fax: (314)263-8589

October 7, 2015

Roxanne Benoit
9596 Woodridge Circle
Fredericktown, OH 43019

Dear Roxanne Benoit:

The claimant named below has an application pending for disability benefits.  A hearing for the claimant is scheduled, date and time shown below.

**Name of Claimant:** Lorena Lynn Naillieux        **Birth date:** 07/31/1962        **SSN:** 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

**Date and Time:**   Monday, November 2, 2015 at 11:45 AM Eastern (ET)

You are requested to appear and give testimony as a vocational expert in the above hearing.  We will call you by phone for the hearing.

**Address:**        825 High Street
                    Room: 2
                    Hazard, KY 41701

Your testimony will primarily cover the following period:
                    October 15, 2005 through January 27, 2009.

Your presence throughout the hearing is desired since your testimony will be based, in part, on the testimony given by the claimant and any other witnesses, including a medical advisor if needed.  Copies of the pertinent exhibits (and a list of these exhibits) tentatively selected for inclusion in the record of this case will be mailed under separate cover if not enclosed with this notice.  Please have this material available for the hearing.

For additional information concerning your testimony, please see the attachment to this form letter.

Your charges for this service should be submitted in accordance with your contract with the Social Security Administration.

Sincerely,

Charles Woode
Administrative Law Judge

Enclosures

Form HA-L84 (08-1995)
Vocational Expert

**136**

See Next Page

Lorena Lynn Naillieux (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)                                      Page 2 of 2       **EXHIBIT NO. 9B**
**PAGE: 15 OF 15**

## IMPORTANT INFORMATION

NOTE:  IT IS REQUIRED THAT YOU DISQUALIFY YOURSELF IF YOU HAVE HAD ANY PRIOR
KNOWLEDGE OF THIS CLAIMANT OR EXPERIENCE IN THIS CASE <u>OTHER</u> THAN AS A VOCATIONAL
EXPERT FOR THE OFFICE OF DISABILITY ADJUDICATION AND REVIEW.

While medical factors alone may justify a finding that the claimant is or is not disabled, it is necessary in some cases to
consider vocational factors in order to determine whether or not the claimant is able to engage in any substantial
gainful activity.  Two basic questions will be presented to you at this hearing.

The first question pertains to the kind of work, if any, the claimant can do in light of prior work activity and residual
functional capacity considering age, education, training and work experience.  Your testimony will be predicated on
various assumptions, posed at the hearing, with respect to the claimant's residual functional capacity.  You will not be
expected to testify as to whether or not the claimant is under a disability, since you do not have the responsibility for
deciding this ultimate legal issue.  You should not express any opinion regarding the impairments involved and their
effects on residual functional capacity, since these are medical matters.  You will be requested to furnish a rationale
and complete explanation for your opinions.  In forming your judgment as to whether or not the claimant could transfer
vocational skills to any other type of work, please consider only work which the claimant could perform after a normal
period of training, usually given to new employees, rather than after extended vocational rehabilitation.

The second question is whether such work exists in the "national economy;" i.e., whether it exists in significant
numbers either in the region where the claimant lives or in several other regions of the country.  You should be
prepared to testify from personal knowledge gained from vocational surveys of businesses and industries (whether
such surveys were made by you or by other vocational experts) and from other current vocational resource materials.

Questions may also be asked of you by the claimant (or representative, if any).

**137**

Form HA-L84 (08-1995)
Vocational Expert

**SOCIAL SECURITY ADMINISTRATION**

Refer To:
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
Lorena Lynn Naillieux

Office of Disability Adjudication and Review
Federal Center
4300 Goodfellow Blvd.
Bldg. 110, 2nd Floor
Saint Louis, MO 63120
Tel: (877)409-4579 / Fax: (314)263-8589

October 21, 2015

Lorena Lynn Naillieux
85 Barlow Branch
Partridge, KY 40862

## NOTICE OF HEARING-IMPORTANT REMINDER

We recently mailed you a Notice stating the time and place of the hearing you requested. We enclosed with your Notice an Acknowledgement Form, which we asked you to complete and return. If you have **not** yet returned the Acknowledgement Form, please call the number listed above and tell us if you plan to come to your hearing. If you do not plan to come to your hearing, please tell us why you cannot come.

We expect you to be present at the hearing scheduled for:

| **Day:** | Monday | **Date:** | November 2, 2015 | **Time:** 11:45 AM Eastern (ET) |
|---|---|---|---|---|
| **Room:** | 2 | **Address:** | 825 High Street Hazard, KY 41701 | |

If you do not appear at this hearing, and do not provide a good reason why you did not appear, the administrative law judge (ALJ) will issue a decision on the record.

If you do not understand this notice, or if some unexpected problem arises, please call this hearing office at the phone number listed above.

Sincerely,

*Social Security Administration*

**EXHIBIT NO. 11B**
**PAGE: 1 OF 1**

Social Security Administration
**Please read the instructions before completing this form.**

Form Approved
OMB No 0960-0527

| Name (Claimant) (Print or Type) | Social Security Number |
|---|---|
| Lorena Lane Naillieux | 401   08   8762 |
| Wage Earner (If Different) | Social Security Number |

---

## Part I — CLAIMANT'S APPOINTMENT OF REPRESENTATIVE

I appoint this individual, ARDF of Kentucky, 600 High Street, Suite 101, Hazard, Ky 41701
(Name and Address)

to act as my representative in connection with my claim(s) or asserted right(s) under:

☐ Title II (RSDI)   ☒ Title XVI (SSI)   ☐ Title XVIII (Medicare)   ☐ Title VIII (SVB)

This individual may, entirely in my place, make any request or give any notice; give or draw out evidence or information; get information, and receive any notice in connection with my pending claim(s) or asserted right(s).

☒ I authorize the Social Security Administration to release information about my pending claim(s) or asserted right(s) to designated associates who perform administrative duties (e g. clerks), partners, and/or parties under contractual arrangements (e.g copying services) for or with my representative.

☐ I appoint, or I now have, more than one representative. My principal representative is:

_____
(Name of Principal Representative)

| Signature (Claimant) | Address 85 Barlow Branch, Partridge, Ky 40862 |
|---|---|
| *Lorena Naillieux* | |
| Telephone Number (with Area Code) | Fax Number (with Area Code) | Date |
| 606   589   6607 | 606   439   4364 | 09/14/2015 |

---

## Part II — REPRESENTATIVE'S ACCEPTANCE OF APPOINTMENT

I, Charnel M. Cornett , hereby accept the above appointment. I certify that I have not been suspended or prohibited from practice before the Social Security Administration; that I am not disqualified from representing the claimant as a current or former officer or employee of the United States; and that I will not charge or collect any fee for the representation, even if a third party will pay the fee, unless it has been approved in accordance with the laws and rules referred to on the reverse side of the representative's copy of this form If I decide not to charge or collect a fee for the representation, I will notify the Social Security Administration (Completion of Part III satisfies this requirement )

Check one: ☒ I am an attorney   ☐ I am a non-attorney eligible for direct payment under SSA law.
☐ I am a non-attorney not eligible for direct payment

I am now or have previously been disbarred or suspended from a court or bar to which I was previously admitted to practice as an attorney.   ☐ YES   ☒ NO

I am now or have previously been disqualified from participating in or appearing before a Federal program or agency   ☐ YES   ☒ NO

I declare under penalty of perjury that I have examined all the information on this form, and on any accompanying statements or forms, and it is true and correct to the best of my knowledge.

| Signature (Representative) | Address ARDF of Kentucky., 600 High Street, Suite 101, Hazard, Ky |
|---|---|
| *Charnel M. Cornett* | |
| Telephone Number (with Area Code) | Fax Number (with Area Code) | Date |
| 606   439   2315 | 606   439   4364 | 10/22/15 |

---

## Part III — FEE ARRANGEMENT

*(Select an option, sign and date this section )*

☐ I am charging a fee and requesting direct payment of the fee from withheld past-due benefits. *(SSA must authorize the fee unless a regulatory exception applies.)*

☐ I am charging a fee but waiving direct payment of the fee from withheld past-due benefits — I do not qualify for or do not request direct payment. *(SSA must authorize the fee unless a regulatory exception applies )*

☐ I am waiving fees and expenses from the claimant and any auxiliary beneficiaries —By checking this block I certify that my fee will be paid by a third-party entity or government agency, and that the claimant and any auxiliary beneficiaries are free of all liability, directly or indirectly, in whole or in part, to pay any fee or expenses to me or anyone as a result of their claim(s) or asserted right(s). *(SSA does not need to authorize the fee if a third-party entity or a government agency will pay from its funds the fee and any expenses for this appointment Do not check this block if a third-party individual will pay the fee )*

☒ I am waiving fees from any source —I am waiving my right to charge and collect any fee, under sections 206 and 1631 (d)(2) of the Social Security Act I release my client and any auxiliary beneficiaries from any obligations, contractual or otherwise, which may be owed to me for services provided in connection with their claim(s) or asserted right(s)

| Signature (Representative) | Date |
|---|---|
| *Charnel M. Cornett* | 10/22/15 |

Form SSA-1696-U4 (07-2014) ef (07-2014)
Use Prior Editions Until Exhausted

**ODAR COPY**

139

# APPALACHIAN RESEARCH AND DEFENSE FUND OF KENTUCKY, INC.

**ADMINISTRATIVE OFFICE**
120 North Front Avenue
Prestonsburg, KY 41653-7832
Phone (606) 886-9876
Fax (606) 886-0079

**ROBERT C. JOHNS**
Executive Director
email roberty@ardfky org

**JOHN M. ROSENBERG**
Director Emeritus
email johnr@ardfky org

(APPALRED LEGAL AID)
600 HIGH STREET, SUITE 100
HAZARD, KY 41701
(606) 439-2315 or (800)-866-2315
FAX: (606) 439-4364

EMAIL: HAZARDOFFICE@ARDFKY.ORG
WWW.ARDFKY.ORG

**AREA OFFICES**
Barbourville, Ky
Hazard, Ky
Prestonsburg, Ky
Richmond, Ky
Somerset, Ky

## FACSIMILE TRANSMISSION
### PLEASE DELIVER THE FOLLOWING PAGES TO:

COMPANY: _ODAR N&C St. Louis, MO_

ATTENTION: _____

FAX NO.: _314-263-8589_

### This Facsimile Transmission is from:

SENDER: _Charnel M. Cornett_

DATE: _10/29/15_

SUBJECT: _Lorena Maillieux_

MESSAGE OR COMMENT: _Ms. Maillieux has a hearing set for 11/2/15. We are requesting that it be continued because we have only recently been retained._

If you do not receive all pages, please call the sender above at 606-439- 2315

140

**SOCIAL SECURITY ADMINISTRATION**

Refer To:                                     Office of Disability Adjudication and Review
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                                   Bldg. 110, 2nd Floor
Lorena Lynn Naillieux                         4300 Goodfellow Blvd
                                              Saint Louis, MO 63120
                                              Tel: (877)409-4579 / Fax: (314)263-8589

                                              January 12, 2016


Lorena Lynn Naillieux
85 Barlow Branch
Partridge, KY 40862

## NOTICE OF HEARING

**Please bring this notice of hearing with you to the hearing.**

I have scheduled your hearing for:

**Day:** <u>Friday</u>        **Date:**        <u>February 26, 2016</u>        **Time:** <u>2:00 PM</u>
                                                                      <u>Eastern (ET)</u>


**Room:** <u>1</u>           **Address:**     <u>825 High Street</u>
                                             <u>Hazard, KY 41701</u>

### It Is Important That You Attend Your Hearing

The Office of the Inspector General notified the Social Security Administration (SSA), as
required by section 1129(l) of the Social Security Act, that there was reason to believe fraud
was involved in certain cases involving evidence from Bradley Adkins, Ph.D., Srinivas
Ammisetty, M.D., Frederic Huffnagle, M.D., or David P. Herr, D.O.

Under section 205(u) of the Social Security Act, SSA must redetermine an individual's
disability case when there is reason to believe fraud or similar fault was involved in that
individual's application for benefits.  In conducting a redetermination, SSA must disregard
any evidence from one of the medical providers above when the information was submitted
by representative Eric C. Conn or other representatives associated with Mr. Conn's law office.

After reviewing all of the relevant information, SSA sent your case back to me for a new
hearing and a new decision.  I have set aside this time for you to tell me about your case.

You may ask us if you want to appear by telephone. I will grant your request if I find that
extraordinary circumstances prevent you from appearing in person or by video
teleconferencing.

                                              Form HA-83 (04-2015)
                                              Claimant

**Suspect Social Security Fraud?**
**Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline**
**at 1-800-269-0271 (TTY 1-866-501-2101).**

**141**

Lorena Lynn Naillieux (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)                                          Page 2 of 7

You **must** bring valid picture identification (ID) to your hearing. Examples of acceptable picture ID include a:

- **Current and valid U.S. State driver's license;**
- **U.S. State-issued identity card;**
- **Current U.S. passport; or**
- **U.S. military ID/dependent military ID.**

If you do not have any of these forms of ID, please bring another form of picture ID with you. Proper ID is also required for your representative (if you have one), a friend, or a member of your family who comes with you to the hearing. Without proper ID, you may not be able to enter the building where your hearing is being held. This could stop or delay your hearing.

Benefits will not be suspended or terminated as a result of the redetermination process until you have an opportunity for a hearing and I make a new decision.

**Complete the Enclosed Form**

Please complete and return the enclosed acknowledgement form at the earliest possible opportunity. Please use the enclosed envelope to return the form to us. We assume you received this notice 5 days after the date on it unless you show us that you did not get it within the 5-day period.

**I Plan To Use Video Teleconferencing (VTC) At Your Hearing**

You are scheduled to appear at your hearing by VTC. You will be at the location shown above during the hearing, and I will be at another location. A large, color monitor will allow us to see, hear, and speak to each other. I will also be able to see, hear, and speak to anyone who comes with you to the hearing. This may include your representative (if you have one), a friend, or a member of your family. A person will be at your location to operate the equipment and provide any other help you may need.

**If You Cannot Attend Your Scheduled Hearing**

If you are not able to attend your hearing at the time and place I have set, please call this office immediately.

If you wish to change the time or place of your hearing, you must ask for a change. Your request must be in writing to tell me why you need the change and the time and place you would like the hearing held.

Form HA-83 (04-2015)
Claimant **142**

You must ask for this change before the earlier of the two dates described below. The first date is 30 days after you receive this notice. The second date is 5 days before the date of your hearing. If you delay in asking for a change, I will also decide whether you have a good reason for the delay. I will rule on your request based on our standards for deciding if there is a good reason for changing the time and place of your hearing.

I will decide whether you have a good reason for requesting the change. If I find you have a good reason for your request, I will set a new time and place for your hearing. I will also send another notice giving you the new time and place of your hearing at least 20 days before the new date of the hearing.

**If You Want Help With Your Appeal**

It is important to understand that while Mr. Conn or one of his associates was your appointed representative at the time of your initial allowance, his representation, or the representation of one of his associates, ended after we initially allowed your claim.  This means that if you would like the assistance of a representative during the redetermination proceedings, you must reappoint a representative to assist you. We will work with this person just as we would work with you. If you decide to have a representative, you should find one quickly so that person can start preparing your case.

Many representatives charge a fee.  Others may represent you for free. In these redetermination proceedings, there will be no past due benefits.  Usually, your representative may not charge a fee unless we approve it. Any appointed or previously appointed representative can submit a fee petition for the services he or she provided, and I will evaluate the request using the applicable procedures in HALLEX I-1-2 in determining a reasonable fee.  If you get a representative, you or that person must notify us in writing.

**Submitting More Evidence and Reviewing Your File**

We will consider more evidence if:
- It is new and material;

AND

- It is about "disability" starting on or before January 27, 2009, the date of the Administrative Law Judge's decision.

You should have already received a copy of your claims file on a compact disc.  If you have not received a copy of your claims file, please call this office and we will send you a replacement copy. You may also review your file on the day of your hearing if you come in at least 30 minutes before the time set for your hearing. Please call us in advance if you will need more than 30 minutes to review your file.

Lorena Lynn Naillieux (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)                                   Page 4 of 7

**Issues I Will Consider**

Section 205(u) of the Act requires that evidence in a claim for benefits be disregarded if there is reason to believe that fraud or similar fault was involved in providing that evidence. In reviewing your case, I am disregarding the evidence from Frederic Huffnagle, M.D. dated from January 2007 to May 2011.  As required by section 1129(l) of the Act, the Office of the Inspector General notified the Social Security Administration (SSA) that there was reason to believe fraud was involved in certain cases involving medical source statements from Frederic Huffnagle, M.D. submitted to SSA on behalf of claimants represented by Eric C. Conn or an individual associated with his law firm.  Under section 205(u) of the Act, I must disregard this evidence because there is reason to believe that fraud or similar fault was involved in providing the evidence. Although I will consider the other issues in this notice, I cannot reconsider whether this evidence will be disregarded.  After redetermining your case, I may find that there is insufficient evidence supporting your entitlement benefits on or before January 27, 2009, the date we initially allowed the claim.  My decision may result in the loss of your benefits and you may be determined to have received an overpayment.  If your benefits are terminated, and an overpayment is assessed, the provisions of Subpart F – Overpayments, Underpayments, Waiver of Adjustment or Recovery of Overpayments, and Liability of a Certifying Officer will apply. (20 CFR Ch III Subpart F).  You may request that we waive that overpayment, and we will consider such a request under our rules.

Under the Act, I will find you are entitled to benefits on or before January 27, 2009, the date SSA initially allowed the claim if you had a physical or mental condition(s) that:

- Kept you from doing any substantial gainful work; **and**

- Lasted 12 straight months, could have been expected to last 12 straight months, or could have been expected to result in death.

I will follow a step-by-step process to decide whether you are entitled to benefits on or before January 27, 2009, the date SSA initially allowed the claim.  I will stop the process at the first step I can make a decision.  The steps in this process look at:

- Any work you did after your condition(s) began;

- The severity of your condition(s);

- Whether you could have done the kind of work you did in the past; and

- Whether you could have done any other kind of work considering your age, education, and work experience.

I will also consider whether you had enough earnings under Social Security to be insured for a Period of Disability and Disability Insurance Benefits. If you did, I must decide whether you became disabled while you were insured.

Form HA-83 (04-2015)
Claimant **144**

Our regulations explain the rules for deciding whether you were entitled to benefits and, if so, when you became entitled to benefits. These rules are in the Code of Federal Regulations, Title 20, Chapter III, Part 404, Subpart B and Subpart P.

If I find that you were entitled to benefits, I will also consider whether your entitlement continued through January 27, 2009 or whether your condition(s) improved on or before January 27, 2009, the date SSA initially allowed the claim.

## Remarks

A vocational expert will appear at the hearing by telephone. You will be able to communicate with the expert.

You have a right to review the claim file. If you have not already reviewed the file or arranged to do so, please call this office at the number shown at the top of the first page of this notice.

## If You Disagree With the Issues

If you disagree with the issues or remarks listed above, you must tell me in writing why you disagree. To prevent delays, you must tell me as soon as possible.

## What Happens At the Hearing?

- I will ask you and any other witnesses to take an oath or to affirm that the testimony is true.

- You will have a chance to testify and tell me about your case.

- You and your representative (if you have one) may submit documents, present and question witnesses, state your case, and give written statements about the facts and law.

- I will ask you and any other witnesses questions that will help me make a decision in your case.

- We will make an audio recording of the hearing.

## Travel Costs

We can pay certain travel costs when you, your representative, or needed witnesses must travel more than 75 miles to the hearing. A sheet is enclosed to tell you about our rules for paying travel costs. Please call this office if you want more information.

Lorena Lynn Naillieux (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)                                    Page 6 of 7

**The Decision**

After the hearing, I will issue a written decision and mail it to you. The decision will explain my findings of fact and conclusions of law. I will base my decision given all the evidence of record related to the period at issue, including the testimony at your hearing, but disregarding the evidence from Frederic Huffnagle, M.D. dated between January 2007 to May 2011.

**If You Have Any Questions**

If you have any questions, please call **{877} 409-4579**, or write this office. For your convenience, our address is on the first page of this notice.

Sincerely,

John M. Dowling
Administrative Law Judge

Enclosures:
Form HA-504 (Acknowledgement of Receipt of Notice of Hearing)
Form HA-L84 (Vocational Expert Letter)

cc: Charnel M. Cornett
    A R D F Of Kentucky
    600 High St Ste 101
    Hazard, KY 41702

---

### When we can pay travel expenses

---

If you must travel more than 75 miles one way from your home or office to attend the hearing, we can pay certain costs.  Here are the rules that apply:

- We can pay expenses such as the cost of a bus ticket or expenses for driving your car.

- In certain circumstances, you may need meals, lodging, or taxicabs.  The Administrative Law Judge (ALJ) must approve these special travel costs **before the hearing unless** the costs were unexpected and unavoidable.

- The ALJ may also approve payment of similar travel expenses for your representative and any witnesses he or she determines are needed at the hearing.

- You must submit a written request for payment of travel expenses other than meals, lodging, or taxicabs to the ALJ at the time of the hearing or as soon as possible after the hearing.  List what you spent and include supporting receipts.  If you requested a change in the scheduled location of the hearing to a location farther from your residence, we cannot pay you for any **additional** travel expenses.

- If you need money for travel costs in advance, you should tell the ALJ as soon as possible **before the hearing**.  We can make an advance payment only if you show that without it you would not have the funds to travel to or from the hearing.

- If you receive travel money in advance, you must give the ALJ an itemized list of your actual travel costs and receipts within 20 days after your hearing.

- If we gave you an advance payment that is more than the amount you are due for travel costs, you must pay back the difference within 20 days after we tell you how much you owe us.

- If we reimburse you for travel costs we follow the rules in the Code of Federal Regulations and apply the same rates and conditions of payment that govern travel expenses for Federal employees. 41 CFR Chapter 301 and 20 CFR 404.999a-999d.

Form Approved
OMB NO. 0960-0671

## ACKNOWLEDGEMENT OF RECEIPT (NOTICE OF HEARING)
(COMPLETE THIS FORM AND RETURN IT AT ONCE IN THE ENVELOPE PROVIDED.  NO POSTAGE IS NECESSARY)

| | |
|---|---|
| Claimant: Lorena Lynn Naillieux | Social Security Number: 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 |
| Wage Earner: | Administrative Law Judge: John M. Dowling |
| Hearing Scheduled: Friday, February 26, 2016 at 2:00 PM Eastern (ET) | Hearing Office: NHC St Louis |
| Location of Hearing:  Room 1<br><br>825 High Street<br>Hazard, KY 41701 | RQID:0000000000000171255474 SITE:T1U DR:S<br>SSN:401088762 DOCTYPE:3005 RF:D CS:e2a |

(Check only one)

[ ]  **I will be present at the time and place shown on the Notice of Hearing.**  If an emergency arises after I mail this form and I cannot be present, I will immediately notify you at the telephone number shown on the Notice of Hearing.

[ ]  **I cannot be present at the time and place shown on the Notice of Hearing.**  I request that you reschedule my hearing because:

_____

_____

_____

NOTE: YOUR REQUEST FOR HEARING MAY BE DISMISSED IF YOU DO NOT ATTEND THE HEARING AND CANNOT GIVE A GOOD REASON FOR NOT ATTENDING.  THE TIME OR PLACE OF THE HEARING WILL BE CHANGED IF YOU HAVE A GOOD REASON FOR YOUR REQUEST.

| Signature: | Date: | Area Code and Telephone Number: |
|---|---|---|

[ ]  I have recently moved.  My new address is:

_____

_____

Form HA-504 (09-2003) ef (09-2014)

**148**

## Privacy Act Statement
## Collection and Use of Personal Information

Sections 205(a), 702, 1631(e)(1)(A) and (B), and (1869)(b)(1) and (c) of the Social Security Act, as amended, authorize us to collect this information. We will use the information you provide to continue processing your claim.

Furnishing us this information is voluntary.  However, failing to provide us with all or part of the information could prevent us from making an accurate and timely decision on your claim and may affect the receipt of benefits under the Social Security Act.

We rarely use the information you supply us for any purpose other than to process your claim.  We may also disclose information to another person or to another agency in accordance with approved routine uses, which include but are not limited to the following:

1. To enable a third party or an agency to assist us in establishing rights to Social Security benefits and/or coverage;

2. To comply with Federal laws requiring the release of information from Social Security records (e.g., to the Government Accountability Office and Department of Veterans' Affairs);

3. To make determinations for eligibility in similar health and income maintenance programs at the Federal, State, and local level; and,

4. To facilitate statistical research, audit, or investigative activities necessary to assure the integrity and improvement of Social Security programs (e.g., to the Bureau of the Census).

We may also use the information you give us in computer matching programs.  Matching programs compare our records with records kept by other Federal, State, or local government agencies.  Information from these matching programs can be used to establish or verify a person's eligibility for federally-funded or administered benefit programs and for repayment of payments or delinquent debts under these programs.

A complete list of routine uses of the information you provided us is available in our System of Records Notice entitled, Claims Folder System, 60-0089.  This notice, additional information regarding this form, and information regarding our programs and systems, are available on-line at www.socialsecurity.gov or at your local Social Security office.

**Paperwork Reduction Act Statement -** This information collection meets the requirements of 44 U.S.C. § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995.  You do not need to answer these questions unless we display a valid Office of Management and Budget (OMB) control number.  We estimate that it will take about 30 minutes to read the instructions, gather the facts, and answer the questions. *You may send comments on our time estimate above to: SSA, 6401 Security Blvd, Baltimore, MD 21235-6401.  Send only comments relating to our time estimate to this address, not the completed form.*

**SOCIAL SECURITY ADMINISTRATION**

Refer To:
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
Lorena Lynn Naillieux

Office of Disability Adjudication and Review
Bldg. 110, 2nd Floor
4300 Goodfellow Blvd
Saint Louis, MO 63120
Tel: (877)409-4579 / Fax: (314)263-8589

January 12, 2016

Fastrak Rehabilitation
Fastrak Rehabilitation
4570 Hilton Pkwy
Ste. #102
Colorado Springs, CO 80907

Dear Fastrak Rehabilitation:

The claimant named below has an application pending for disability benefits.  A hearing for the claimant is scheduled, date and time shown below.

**Name of Claimant:** Lorena Lynn Naillieux        **Birth date:** 07/31/1962        **SSN:** 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

**Date and Time:**   Friday, February 26, 2016 at 2:00 PM Eastern (ET)

You are requested to appear and give testimony as a vocational expert in the above hearing.  We will call you by phone for the hearing.

**Address:**        4300 Goodfellow Blvd
                Federal Center
                Building 110
                Room: 223
                St. Louis, MO 63120

Your testimony will primarily cover the following period:
                October 15, 2005 through January 27, 2009.

Your presence throughout the hearing is desired since your testimony will be based, in part, on the testimony given by the claimant and any other witnesses, including a medical advisor if needed.  Copies of the pertinent exhibits (and a list of these exhibits) tentatively selected for inclusion in the record of this case will be mailed under separate cover if not enclosed with this notice.  Please have this material available for the hearing.

For additional information concerning your testimony, please see the attachment to this form letter.

Your charges for this service should be submitted in accordance with your contract with the Social Security Administration.

Sincerely,

John M. Dowling
Administrative Law Judge

Enclosures

**150**

Form HA-L84 (08-2013)

## IMPORTANT INFORMATION

NOTE: IT IS REQUIRED THAT YOU DISQUALIFY YOURSELF IF YOU HAVE HAD ANY PRIOR KNOWLEDGE OF THIS CLAIMANT OR EXPERIENCE IN THIS CASE <u>OTHER</u> THAN AS A VOCATIONAL EXPERT FOR THE OFFICE OF DISABILITY ADJUDICATION AND REVIEW.

While medical factors alone may justify a finding that the claimant is or is not disabled, it is necessary in some cases to consider vocational factors in order to determine whether or not the claimant is able to engage in any substantial gainful activity. Two basic questions will be presented to you at this hearing.

The first question pertains to the kind of work, if any, the claimant can do in light of prior work activity and residual functional capacity considering age, education, training and work experience. Your testimony will be predicated on various assumptions, posed at the hearing, with respect to the claimant's residual functional capacity. You will not be expected to testify as to whether or not the claimant is under a disability, since you do not have the responsibility for deciding this ultimate legal issue. You should not express any opinion regarding the impairments involved and their effects on residual functional capacity, since these are medical matters. You will be requested to furnish a rationale and complete explanation for your opinions. In forming your judgment as to whether or not the claimant could transfer vocational skills to any other type of work, please consider only work which the claimant could perform after a normal period of training, usually given to new employees, rather than after extended vocational rehabilitation.

The second question is whether such work exists in the "national economy;" i.e., whether it exists in significant numbers either in the region where the claimant lives or in several other regions of the country. You should be prepared to testify from personal knowledge gained from vocational surveys of businesses and industries (whether such surveys were made by you or by other vocational experts) and from other current vocational resource materials.

Questions may also be asked of you by the claimant (or representative, if any).

Form HA-L84 (08-2013)

**SOCIAL SECURITY ADMINISTRATION**

Refer To:                                    Office of Disability Adjudication and Review
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                                  Bldg. 110, 2nd Floor
Lorena Lynn Naillieux                        4300 Goodfellow Blvd
                                             Saint Louis, MO 63120
                                             Tel: (877)409-4579 / Fax: (314)263-8589


                                             January 12, 2016


Lorena Lynn Naillieux
85 Barlow Branch
Partridge, KY 40862

## NOTICE OF HEARING

**Please bring this notice of hearing with you to the hearing.**

I have scheduled your hearing for:

| **Day:** | Friday | **Date:** | February 26, 2016 | **Time:** 2:00 PM Eastern (ET) |
|---|---|---|---|---|
| **Room:** 1 | | **Address:** | 825 High Street Hazard, KY 41701 | |

## It Is Important That You Attend Your Hearing

The Office of the Inspector General notified the Social Security Administration (SSA), as required by section 1129(l) of the Social Security Act, that there was reason to believe fraud was involved in certain cases involving evidence from Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D., Frederic Huffnagle, M.D., or David P. Herr, D.O.

Under section 205(u) of the Social Security Act, SSA must redetermine an individual's disability case when there is reason to believe fraud or similar fault was involved in that individual's application for benefits. In conducting a redetermination, SSA must disregard any evidence from one of the medical providers above when the information was submitted by representative Eric C. Conn or other representatives associated with Mr. Conn's law office.

After reviewing all of the relevant information, SSA sent your case back to me for a new hearing and a new decision. I have set aside this time for you to tell me about your case.

You may ask us if you want to appear by telephone. I will grant your request if I find that extraordinary circumstances prevent you from appearing in person or by video teleconferencing.

                                             Form HA-83 (04-2015)
                                             Representative

**Suspect Social Security Fraud?**
**Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline**
**at 1-800-269-0271 (TTY 1-866-501-2101).**

**152**

Lorena Lynn Naillieux (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)                          Page 2 of 7

You **must** bring valid picture identification (ID) to your hearing. Examples of acceptable picture ID include a:

- **Current and valid U.S. State driver's license;**
- **U.S. State-issued identity card;**
- **Current U.S. passport; or**
- **U.S. military ID/dependent military ID.**

If you do not have any of these forms of ID, please bring another form of picture ID with you. Proper ID is also required for your representative (if you have one), a friend, or a member of your family who comes with you to the hearing. Without proper ID, you may not be able to enter the building where your hearing is being held. This could stop or delay your hearing.

Benefits will not be suspended or terminated as a result of the redetermination process until you have an opportunity for a hearing and I make a new decision.

**Complete the Enclosed Form**

Please complete and return the enclosed acknowledgement form at the earliest possible opportunity. Please use the enclosed envelope to return the form to us. We assume you received this notice 5 days after the date on it unless you show us that you did not get it within the 5-day period.

**I Plan To Use Video Teleconferencing (VTC) At Your Hearing**

You are scheduled to appear at your hearing by VTC. You will be at the location shown above during the hearing, and I will be at another location. A large, color monitor will allow us to see, hear, and speak to each other. I will also be able to see, hear, and speak to anyone who comes with you to the hearing. This may include your representative (if you have one), a friend, or a member of your family. A person will be at your location to operate the equipment and provide any other help you may need.

**If You Cannot Attend Your Scheduled Hearing**

If you are not able to attend your hearing at the time and place I have set, please call this office immediately.

If you wish to change the time or place of your hearing, you must ask for a change. Your request must be in writing to tell me why you need the change and the time and place you would like the hearing held.

Lorena Lynn Naillieux (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)                                          Page 3 of 7

You must ask for this change before the earlier of the two dates described below. The first date is 30 days after you receive this notice. The second date is 5 days before the date of your hearing. If you delay in asking for a change, I will also decide whether you have a good reason for the delay. I will rule on your request based on our standards for deciding if there is a good reason for changing the time and place of your hearing.

I will decide whether you have a good reason for requesting the change. If I find you have a good reason for your request, I will set a new time and place for your hearing. I will also send another notice giving you the new time and place of your hearing at least 20 days before the new date of the hearing.

**If You Want Help With Your Appeal**

It is important to understand that while Mr. Conn or one of his associates was your appointed representative at the time of your initial allowance, his representation, or the representation of one of his associates, ended after we initially allowed your claim.  This means that if you would like the assistance of a representative during the redetermination proceedings, you must reappoint a representative to assist you. We will work with this person just as we would work with you. If you decide to have a representative, you should find one quickly so that person can start preparing your case.

Many representatives charge a fee.  Others may represent you for free. In these redetermination proceedings, there will be no past due benefits.  Usually, your representative may not charge a fee unless we approve it. Any appointed or previously appointed representative can submit a fee petition for the services he or she provided, and I will evaluate the request using the applicable procedures in HALLEX I-1-2 in determining a reasonable fee.  If you get a representative, you or that person must notify us in writing.

**Submitting More Evidence and Reviewing Your File**

We will consider more evidence if:
- It is new and material;

AND

- It is about "disability" starting on or before January 27, 2009, the date of the Administrative Law Judge's decision.

You should have already received a copy of your claims file on a compact disc.  If you have not received a copy of your claims file, please call this office and we will send you a replacement copy. You may also review your file on the day of your hearing if you come in at least 30 minutes before the time set for your hearing. Please call us in advance if you will need more than 30 minutes to review your file.

Form HA-83 (04-2015)
Representative **154**

See Next Page

**Issues I Will Consider**

Section 205(u) of the Act requires that evidence in a claim for benefits be disregarded if there is reason to believe that fraud or similar fault was involved in providing that evidence. In reviewing your case, I am disregarding the evidence from Frederic Huffnagle, M.D. dated from January 2007 to May 2011.  As required by section 1129(l) of the Act, the Office of the Inspector General notified the Social Security Administration (SSA) that there was reason to believe fraud was involved in certain cases involving medical source statements from Frederic Huffnagle, M.D. submitted to SSA on behalf of claimants represented by Eric C. Conn or an individual associated with his law firm.  Under section 205(u) of the Act, I must disregard this evidence because there is reason to believe that fraud or similar fault was involved in providing the evidence. Although I will consider the other issues in this notice, I cannot reconsider whether this evidence will be disregarded.  After redetermining your case, I may find that there is insufficient evidence supporting your entitlement benefits on or before January 27, 2009, the date we initially allowed the claim.  My decision may result in the loss of your benefits and you may be determined to have received an overpayment.  If your benefits are terminated, and an overpayment is assessed, the provisions of Subpart F – Overpayments, Underpayments, Waiver of Adjustment or Recovery of Overpayments, and Liability of a Certifying Officer will apply. (20 CFR Ch III Subpart F).  You may request that we waive that overpayment, and we will consider such a request under our rules.

Under the Act, I will find you are entitled to benefits on or before January 27, 2009, the date SSA initially allowed the claim if you had a physical or mental condition(s) that:

- Kept you from doing any substantial gainful work; **and**

- Lasted 12 straight months, could have been expected to last 12 straight months, or could have been expected to result in death.

I will follow a step-by-step process to decide whether you are entitled to benefits on or before January 27, 2009, the date SSA initially allowed the claim.  I will stop the process at the first step I can make a decision.  The steps in this process look at:

- Any work you did after your condition(s) began;

- The severity of your condition(s);

- Whether you could have done the kind of work you did in the past; and

- Whether you could have done any other kind of work considering your age, education, and work experience.

I will also consider whether you had enough earnings under Social Security to be insured for a Period of Disability and Disability Insurance Benefits. If you did, I must decide whether you became disabled while you were insured.

Form HA-83 (04-2015)
Representative **155**

Lorena Lynn Naillieux (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)                                      Page 5 of 7

Our regulations explain the rules for deciding whether you were entitled to benefits and, if so, when you became entitled to benefits. These rules are in the Code of Federal Regulations, Title 20, Chapter III, Part 404, Subpart B and Subpart P.

If I find that you were entitled to benefits, I will also consider whether your entitlement continued through January 27, 2009 or whether your condition(s) improved on or before January 27, 2009, the date SSA initially allowed the claim.

**Remarks**

A vocational expert will appear at the hearing by telephone. You will be able to communicate with the expert.

You have a right to review the claim file. If you have not already reviewed the file or arranged to do so, please call this office at the number shown at the top of the first page of this notice.

**If You Disagree With the Issues**

If you disagree with the issues or remarks listed above, you must tell me in writing why you disagree. To prevent delays, you must tell me as soon as possible.

**What Happens At the Hearing?**

- I will ask you and any other witnesses to take an oath or to affirm that the testimony is true.

- You will have a chance to testify and tell me about your case.

- You and your representative (if you have one) may submit documents, present and question witnesses, state your case, and give written statements about the facts and law.

- I will ask you and any other witnesses questions that will help me make a decision in your case.

- We will make an audio recording of the hearing.

**Travel Costs**

We can pay certain travel costs when you, your representative, or needed witnesses must travel more than 75 miles to the hearing. A sheet is enclosed to tell you about our rules for paying travel costs. Please call this office if you want more information.

Form HA-83 (04-2015)
Representative **156**

Lorena Lynn Naillieux (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)                                   Page 6 of 7

**The Decision**

After the hearing, I will issue a written decision and mail it to you. The decision will explain my findings of fact and conclusions of law. I will base my decision given all the evidence of record related to the period at issue, including the testimony at your hearing, but disregarding the evidence from Frederic Huffnagle, M.D. dated between January 2007 to May 2011.

**If You Have Any Questions**

If you have any questions, please call **{877} 409-4579**, or write this office. For your convenience, our address is on the first page of this notice.

Sincerely,

John M. Dowling
Administrative Law Judge

Enclosures:
Form HA-L32 (Electronic Disability Claims Processing Insert)
Form HA-504 (Acknowledgement of Receipt of Notice of Hearing)
Form HA-L84 (Vocational Expert Letter)
Barcode Sheet

cc: Charnel M. Cornett
    A R D F Of Kentucky
    600 High St Ste 101
    Hazard, KY 41702

Form HA-83 (04-2015)
Representative **157**

See Next Page

---
## When we can pay travel expenses
---

If you must travel more than 75 miles one way from your home or office to attend the hearing, we can pay certain costs.  Here are the rules that apply:

- We can pay expenses such as the cost of a bus ticket or expenses for driving your car.

- In certain circumstances, you may need meals, lodging, or taxicabs.  The Administrative Law Judge (ALJ) must approve these special travel costs **before the hearing unless** the costs were unexpected and unavoidable.

- The ALJ may also approve payment of similar travel expenses for your representative and any witnesses he or she determines are needed at the hearing.

- You must submit a written request for payment of travel expenses other than meals, lodging, or taxicabs to the ALJ at the time of the hearing or as soon as possible after the hearing.  List what you spent and include supporting receipts.  If you requested a change in the scheduled location of the hearing to a location farther from your residence, we cannot pay you for any **additional** travel expenses.

- If you need money for travel costs in advance, you should tell the ALJ as soon as possible **before the hearing**.  We can make an advance payment only if you show that without it you would not have the funds to travel to or from the hearing.

- If you receive travel money in advance, you must give the ALJ an itemized list of your actual travel costs and receipts within 20 days after your hearing.

- If we gave you an advance payment that is more than the amount you are due for travel costs, you must pay back the difference within 20 days after we tell you how much you owe us.

- If we reimburse you for travel costs we follow the rules in the Code of Federal Regulations and apply the same rates and conditions of payment that govern travel expenses for Federal employees. 41 CFR Chapter 301 and 20 CFR 404.999a-999d.

**Electronic Disability Claims Processing**

Social Security is changing from a paper to an electronic disability claims process in order to improve the quality and timeliness of our decisions.  Your client's disability claim file is being processed electronically.  Your claimant's rights under the Social Security Act remain the same.

When your client's case is exhibited, we will forward a copy of the file to you on a compact disc (CD).  We will also provide you a copy of the file on CD on the day of the hearing.  Should you require a copy of the file at any other time, please contact the hearing office.

Additional evidence should be submitted within the timeframes for the submission of evidence discussed in the notice.  **The preferred way to submit evidence to the electronic folder is by using one of the following three methods:**

- **Send the evidence using the Electronic Records Express (ERE) website.  If you have not registered to use the ERE website, contact your local hearing office.**

- **Fax the evidence using this fax number -- (877)847-1604.  Remember that the enclosed barcode must be the first page for <u>each document</u> being faxed.**

- **Send the evidence to the contract scanner listed below.  The barcode must be the first page of each document.  DO NOT SEND ORIGINAL DOCUMENTS. DOCUMENTS ARE NOT RETURNED.**

  **Saint Louis, MO ODAR**
  **P. O. Box 8922**
  **London, KY 40742-8922**

**You may also send the evidence by mail or deliver it to the hearing office but there may be a delay in associating the evidence with the electronic file.**

NOTE:  The attached barcode pertains to your client's disability claim file only.  Please keep the original barcode sheet for submitting all documents on this case.  Bar codes may be used more than once when faxing evidence into the electronic file.

Form Approved
OMB NO. 0960-0671

## ACKNOWLEDGEMENT OF RECEIPT (NOTICE OF HEARING)
(COMPLETE THIS FORM AND RETURN IT AT ONCE IN THE ENVELOPE PROVIDED.  NO POSTAGE IS NECESSARY)

| | |
|---|---|
| Claimant: Lorena Lynn Naillieux | Social Security Number: 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 |
| Wage Earner: | Administrative Law Judge: John M. Dowling |
| Hearing Scheduled: Friday, February 26, 2016 at 2:00 PM Eastern (ET) | Hearing Office: NHC St Louis |
| Location of Hearing:  Room 1<br><br>825 High Street<br>Hazard, KY 41701 | |

(Check only one)

[ ]   **I will be present at the time and place shown on the Notice of Hearing.**  If an emergency arises after I mail this form and I cannot be present, I will immediately notify you at the telephone number shown on the Notice of Hearing.

[ ]   **I cannot be present at the time and place shown on the Notice of Hearing.**  I request that you reschedule my hearing because:

_____

_____

_____

NOTE: YOUR REQUEST FOR HEARING MAY BE DISMISSED IF YOU DO NOT ATTEND THE HEARING AND CANNOT GIVE A GOOD REASON FOR NOT ATTENDING.  THE TIME OR PLACE OF THE HEARING WILL BE CHANGED IF YOU HAVE A GOOD REASON FOR YOUR REQUEST.

| Signature: | Date: | Area Code and Telephone Number: |
|---|---|---|

[ ]  I have recently moved.  My new address is:

_____

_____

Form HA-504 (09-2003) ef (09-2014)

**160**

EXHIBIT NO. 13B
PAGE: 21 OF 26

## Privacy Act Statement
## Collection and Use of Personal Information

Sections 205(a), 702, 1631(e)(1)(A) and (B), and (1869)(b)(1) and (c) of the Social Security Act, as amended, authorize us to collect this information. We will use the information you provide to continue processing your claim.

Furnishing us this information is voluntary.  However, failing to provide us with all or part of the information could prevent us from making an accurate and timely decision on your claim and may affect the receipt of benefits under the Social Security Act.

We rarely use the information you supply us for any purpose other than to process your claim.  We may also disclose information to another person or to another agency in accordance with approved routine uses, which include but are not limited to the following:

      1. To enable a third party or an agency to assist us in establishing rights to Social Security benefits and/or coverage;

      2. To comply with Federal laws requiring the release of information from Social Security records (e.g., to the Government Accountability Office and Department of Veterans' Affairs);

      3. To make determinations for eligibility in similar health and income maintenance programs at the Federal, State, and local level; and,

      4. To facilitate statistical research, audit, or investigative activities necessary to assure the integrity and improvement of Social Security programs (e.g., to the Bureau of the Census).

We may also use the information you give us in computer matching programs.  Matching programs compare our records with records kept by other Federal, State, or local government agencies.  Information from these matching programs can be used to establish or verify a person's eligibility for federally-funded or administered benefit programs and for repayment of payments or delinquent debts under these programs.

A complete list of routine uses of the information you provided us is available in our System of Records Notice entitled, Claims Folder System, 60-0089.  This notice, additional information regarding this form, and information regarding our programs and systems, are available on-line at www.socialsecurity.gov or at your local Social Security office.

**Paperwork Reduction Act Statement -** This information collection meets the requirements of 44 U.S.C. § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995.  You do not need to answer these questions unless we display a valid Office of Management and Budget (OMB) control number.  We estimate that it will take about 30 minutes to read the instructions, gather the facts, and answer the questions. *You may send comments on our time estimate above to: SSA, 6401 Security Blvd, Baltimore, MD  21235-6401.  Send only comments relating to our time estimate to this address, not the completed form.*

**SOCIAL SECURITY ADMINISTRATION**

Refer To:                                    Office of Disability Adjudication and Review
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                                  Bldg. 110, 2nd Floor
Lorena Lynn Naillieux                        4300 Goodfellow Blvd
                                             Saint Louis, MO 63120
                                             Tel: (877)409-4579 / Fax: (314)263-8589

                                             January 12, 2016

Fastrak Rehabilitation
Fastrak Rehabilitation
4570 Hilton Pkwy
Ste. #102
Colorado Springs, CO 80907

Dear Fastrak Rehabilitation:

The claimant named below has an application pending for disability benefits.  A hearing for the claimant is scheduled, date and time shown below.

**Name of Claimant:** Lorena Lynn Naillieux      **Birth date:** 07/31/1962      **SSN:** 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

**Date and Time:**   Friday, February 26, 2016 at 2:00 PM Eastern (ET)

You are requested to appear and give testimony as a vocational expert in the above hearing.  We will call you by phone for the hearing.

**Address:**        4300 Goodfellow Blvd
                    Federal Center
                    Building 110
                    Room: 223
                    St. Louis, MO 63120

Your testimony will primarily cover the following period:
                    October 15, 2005 through January 27, 2009.

Your presence throughout the hearing is desired since your testimony will be based, in part, on the testimony given by the claimant and any other witnesses, including a medical advisor if needed.  Copies of the pertinent exhibits (and a list of these exhibits) tentatively selected for inclusion in the record of this case will be mailed under separate cover if not enclosed with this notice.  Please have this material available for the hearing.

For additional information concerning your testimony, please see the attachment to this form letter.

Your charges for this service should be submitted in accordance with your contract with the Social Security Administration.

                                             Sincerely,



                                             John M. Dowling
                                             Administrative Law Judge

Enclosures

**162**

## IMPORTANT INFORMATION

NOTE:  IT IS REQUIRED THAT YOU DISQUALIFY YOURSELF IF YOU HAVE HAD ANY PRIOR
KNOWLEDGE OF THIS CLAIMANT OR EXPERIENCE IN THIS CASE <u>OTHER</u> THAN AS A VOCATIONAL
EXPERT FOR THE OFFICE OF DISABILITY ADJUDICATION AND REVIEW.

While medical factors alone may justify a finding that the claimant is or is not disabled, it is necessary in some cases to
consider vocational factors in order to determine whether or not the claimant is able to engage in any substantial
gainful activity.  Two basic questions will be presented to you at this hearing.

The first question pertains to the kind of work, if any, the claimant can do in light of prior work activity and residual
functional capacity considering age, education, training and work experience.  Your testimony will be predicated on
various assumptions, posed at the hearing, with respect to the claimant's residual functional capacity.  You will not be
expected to testify as to whether or not the claimant is under a disability, since you do not have the responsibility for
deciding this ultimate legal issue.  You should not express any opinion regarding the impairments involved and their
effects on residual functional capacity, since these are medical matters.  You will be requested to furnish a rationale
and complete explanation for your opinions.  In forming your judgment as to whether or not the claimant could transfer
vocational skills to any other type of work, please consider only work which the claimant could perform after a normal
period of training, usually given to new employees, rather than after extended vocational rehabilitation.

The second question is whether such work exists in the "national economy;" i.e., whether it exists in significant
numbers either in the region where the claimant lives or in several other regions of the country.  You should be
prepared to testify from personal knowledge gained from vocational surveys of businesses and industries (whether
such surveys were made by you or by other vocational experts) and from other current vocational resource materials.

Questions may also be asked of you by the claimant (or representative, if any).

**163**

   INSERT THIS END FIRST   

**Please include this barcode cover sheet as the first page
of <u>each set of documents</u> returned.**

**Fax the evidence to this fax number:**

**(877)847-1604**



```
RQID:00000000000000171255480 SITE:T1U DR:S
SSN:401088762 DOCTYPE:5032 RF:D CS:f013
```

**Claimant:  Lorena Lynn Naillieux
SSN:  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**

**164**

**SOCIAL SECURITY ADMINISTRATION**

Refer To:                                    Office of Disability Adjudication and Review
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                                  Bldg. 110, 2nd Floor
Lorena Lynn Naillieux                        4300 Goodfellow Blvd
                                             Saint Louis, MO 63120
                                             Tel: (877)409-4579 / Fax: (314)263-8589

                                             January 12, 2016

Fastrak Rehabilitation
Fastrak Rehabilitation
4570 Hilton Pkwy
Ste. #102
Colorado Springs, CO 80907

Dear Fastrak Rehabilitation:

The claimant named below has an application pending for disability benefits.  A hearing for the claimant is scheduled, date and time shown below.

**Name of Claimant:** Lorena Lynn Naillieux        **Birth date:** 07/31/1962        **SSN:** 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

**Date and Time:**   Friday, February 26, 2016 at 2:00 PM Eastern (ET)

You are requested to appear and give testimony as a vocational expert in the above hearing.  We will call you by phone for the hearing.

**Address:**          4300 Goodfellow Blvd
                      Federal Center
                      Building 110
                      Room: 223
                      St. Louis, MO 63120

Your testimony will primarily cover the following period:
                      October 15, 2005 through January 27, 2009.

Your presence throughout the hearing is desired since your testimony will be based, in part, on the testimony given by the claimant and any other witnesses, including a medical advisor if needed.  Copies of the pertinent exhibits (and a list of these exhibits) tentatively selected for inclusion in the record of this case will be mailed under separate cover if not enclosed with this notice.  Please have this material available for the hearing.

For additional information concerning your testimony, please see the attachment to this form letter.

Your charges for this service should be submitted in accordance with your contract with the Social Security Administration.

                                             Sincerely,


                                             John M. Dowling
                                             Administrative Law Judge

Enclosures

                                             Form HA-L84 (08-1-15)
                                             Vocational Expert

**165**

See Next Page

## IMPORTANT INFORMATION

NOTE:  IT IS REQUIRED THAT YOU DISQUALIFY YOURSELF IF YOU HAVE HAD ANY PRIOR KNOWLEDGE OF THIS CLAIMANT OR EXPERIENCE IN THIS CASE <u>OTHER</u> THAN AS A VOCATIONAL EXPERT FOR THE OFFICE OF DISABILITY ADJUDICATION AND REVIEW.

While medical factors alone may justify a finding that the claimant is or is not disabled, it is necessary in some cases to consider vocational factors in order to determine whether or not the claimant is able to engage in any substantial gainful activity.  Two basic questions will be presented to you at this hearing.

The first question pertains to the kind of work, if any, the claimant can do in light of prior work activity and residual functional capacity considering age, education, training and work experience.  Your testimony will be predicated on various assumptions, posed at the hearing, with respect to the claimant's residual functional capacity.  You will not be expected to testify as to whether or not the claimant is under a disability, since you do not have the responsibility for deciding this ultimate legal issue.  You should not express any opinion regarding the impairments involved and their effects on residual functional capacity, since these are medical matters.  You will be requested to furnish a rationale and complete explanation for your opinions.  In forming your judgment as to whether or not the claimant could transfer vocational skills to any other type of work, please consider only work which the claimant could perform after a normal period of training, usually given to new employees, rather than after extended vocational rehabilitation.

The second question is whether such work exists in the "national economy;" i.e., whether it exists in significant numbers either in the region where the claimant lives or in several other regions of the country.  You should be prepared to testify from personal knowledge gained from vocational surveys of businesses and industries (whether such surveys were made by you or by other vocational experts) and from other current vocational resource materials.

Questions may also be asked of you by the claimant (or representative, if any).

**EXHIBIT NO. 14B**
**PAGE: 1 OF 1**

Form Approved
OMB NO. 0960-0671

## ACKNOWLEDGEMENT OF RECEIPT (NOTICE OF HEARING)
(COMPLETE THIS FORM AND RETURN IT AT ONCE IN THE ENVELOPE PROVIDED. NO POSTAGE IS NECESSARY)

| | |
|---|---|
| Claimant: Lorena Lynn Naillieux | Social Security Number: 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 |
| Wage Earner: | Administrative Law Judge: John M. Dowling |
| Hearing Scheduled: Friday, February 26, 2016 at 2:00 PM Eastern (ET) | Hearing Office: NHC St Louis |
| Location of Hearing:  Room 1<br><br>825 High Street<br>Hazard, KY 41701 | |

(Check only one)

[✓]  **I will be present at the time and place shown on the Notice of Hearing.**  If an emergency arises after I mail this form and I cannot be present, I will immediately notify you at the telephone number shown on the Notice of Hearing.

[ ]   **I cannot be present at the time and place shown on the Notice of Hearing.**  I request that you reschedule my hearing because:

_____

_____

_____

NOTE: YOUR REQUEST FOR HEARING MAY BE DISMISSED IF YOU DO NOT ATTEND THE HEARING AND CANNOT GIVE A GOOD REASON FOR NOT ATTENDING.  THE TIME OR PLACE OF THE HEARING WILL BE CHANGED IF YOU HAVE A GOOD REASON FOR YOUR REQUEST.

| Signature: | Date: | Area Code and Telephone Number: |
|---|---|---|
| *Lorena Naillieux* | | |

[ ]  I have recently moved.  My new address is:

_____

_____

RECEIVED

FEB 0 8 2016

Form HA-504 (09-2003) ef (09-2014)

See Next Page

**167**

**EXHIBIT NO. 15B**
**PAGE: 1 OF 6**

**SOCIAL SECURITY ADMINISTRATION**

**Re:** 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
Lorena Lynn Naillieux

Office of Disability Adjudication and Review
SSA ODAR NHC
BLDG. 110, 2ND FLOOR
4300 GOODFELLOW BLVD
SAINT LOUIS, MO 63120
Tel: 877-409-4579
Fax: 314-263-8589

February 12, 2016

Lorena Lynn Naillieux
85 Barlow Branch
Partridge, KY 40862

### NOTICE OF HEARING-IMPORTANT REMINDER

We recently mailed you a Notice stating the time and place of the hearing you requested. We enclosed with your Notice an Acknowledgement Form, which we asked you to complete and return. If you have **not** yet returned the Acknowledgement Form, please call the number listed above and tell us if you plan to come to your hearing. If you do not plan to come to your hearing, please tell us why you cannot come.

We expect you to be present at the hearing scheduled for:

**Day:**  Friday             **Date:**  February 26, 2016          **Time:** 02:00 PM Eastern (ET)

**Room:** 1                 **Address:**  825 HIGH STREET
                                          HAZARD, KY 41701

If you do not appear at this hearing, and do not provide a good reason why you did not appear, the administrative law judge (ALJ) will **dismiss** your request for hearing without further notice. If the ALJ dismisses your request for hearing, the prior decision will become the final decision of the Commissioner on your application.

If you do not understand this notice, or if some unexpected problem arises, please call this hearing office at the phone number listed above.

Sincerely,

*Social Security Administration*

Form HA-L503 (4-2013)
Claimant

**168**

See Next Page

Lorena Lynn Naillieux (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)                                    Page 2 of 2


cc:  Charnel M. Cornett
     600 High St Ste 101
     Hazard, KY 41702

**EXHIBIT NO. 15B**
**PAGE: 3 OF 6**

 **SOCIAL SECURITY ADMINISTRATION**

**Re:** 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
Lorena Lynn Naillieux

Office of Disability Adjudication and Review
SSA ODAR NHC
BLDG. 110, 2ND FLOOR
4300 GOODFELLOW BLVD
SAINT LOUIS, MO 63120
Tel: 877-409-4579
Fax: 314-263-8589

February 12, 2016

Lorena Lynn Naillieux
85 Barlow Branch
Partridge, KY 40862

## NOTICE OF HEARING-IMPORTANT REMINDER

We recently mailed you a Notice stating the time and place of the hearing you requested. We enclosed with your Notice an Acknowledgement Form, which we asked you to complete and return. If you have **not** yet returned the Acknowledgement Form, please call the number listed above and tell us if you plan to come to your hearing. If you do not plan to come to your hearing, please tell us why you cannot come.

We expect you to be present at the hearing scheduled for:

**Day:**  Friday          **Date:**  February 26, 2016          **Time:** 02:00 PM Eastern (ET)

**Room:** 1          **Address:**  825 HIGH STREET
HAZARD, KY 41701

If you do not appear at this hearing, and do not provide a good reason why you did not appear, the administrative law judge (ALJ) will **dismiss** your request for hearing without further notice. If the ALJ dismisses your request for hearing, the prior decision will become the final decision of the Commissioner on your application.

If you do not understand this notice, or if some unexpected problem arises, please call this hearing office at the phone number listed above.

Sincerely,

*Social Security Administration*

Form HA-L503 (4-2013)
Representative          **170**

**EXHIBIT NO. 15B**
**PAGE: 4 OF 6**

Lorena Lynn Naillieux (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)                                      Page 2 of 2


Enclosures:
Form HA-L32 (Electronic Disability Claims Processing Insert)
Barcode Sheet


cc:  Charnel M. Cornett
      600 High St Ste 101
      Hazard, KY 41702

### Electronic Disability Claims Processing

Social Security is changing from a paper to an electronic disability claims process in order to improve the quality and timeliness of our decisions.  Your client's disability claim file is being processed electronically.  Your claimant's rights under the Social Security Act remain the same.

When your client's case is exhibited, we will forward a copy of the file to you on a compact disc (CD).  We will also provide you a copy of the file on CD on the day of the hearing.  Should you require a copy of the file at any other time, please contact the hearing office.

Additional evidence should be submitted within the timeframes for the submission of evidence discussed in the notice.  **The preferred way to submit evidence to the electronic folder is by using one of the following three methods:**

- o **Send the evidence using the Eletronic Records Express (ERE) website. If you have not registered to use the ERE website, contact your local hearing office.**

- o **Fax the evidence using this fax number -- (877)847-1604.  Remember that the enclosed barcode must be the first page for each document being faxed.**

- o **Send the evidence to the contract scanner listed below.  The barcode must be the first page of each document.  DO NOT SEND ORIGINAL DOCUMENTS.  DOCUMENTS ARE NOT RETURNED.**

   **SAINT LOUIS, MO ODAR**

   **P. O. BOX 8922**

   **LONDON, KY 40742-8922**

**You may also send the evidence by mail or deliver it to the hearing office but there may be a delay in associating the evidence with the electronic file.**

**NOTE:** The attached barcode pertains to your client's disability claim file only.  Please keep the original barcode sheet for submitting all documents on this case.  Bar codes may be used more than once when faxing evidence into the electronic file.

**EXHIBIT NO. 15B**
**PAGE: 6 OF 6**

 

INSERT THIS END FIRST

**Please include this barcode cover sheet as the first page
of each set of documents returned.**

**Fax the evidence to this fax number:**

**877-847-1604**



RQID:0000000000000173581264 SITE:T1U DR:S
SSN:401088762 DOCTYPE:5032 RF:D CS:305

**Claimant: Lorena Lynn Naillieux**

**SSN: 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**

**173**

**SOCIAL SECURITY ADMINISTRATION**

Refer To:
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
Lorena Lynn Naillieux

Office of Disability Adjudication and Review
Bldg. 110, 2nd Floor
4300 Goodfellow Blvd
Saint Louis, MO 63120
Tel: (877)409-4579 / Fax: (314)263-8589

February 18, 2016

Lorena Lynn Naillieux
85 Barlow Branch
Partridge, KY 40862

### NOTICE OF HEARING-IMPORTANT REMINDER

We recently mailed you a Notice stating the time and place of the hearing you requested.  We enclosed with your Notice an Acknowledgement Form, which we asked you to complete and return. If you have **not** yet returned the Acknowledgement Form, please call the number listed above and tell us if you plan to come to your hearing. If you do not plan to come to your hearing, please tell us why you cannot come.

We expect you to be present at the hearing scheduled for:

**Day:** Friday          **Date:** February 26, 2016          **Time:** 2:00 PM Eastern (ET)

**Room:** 1          **Address:** 825 High Street Hazard, KY 41701

If you do not appear at this hearing, and do not provide a good reason why you did not appear, the administrative law judge (ALJ) will issue a decision on the record.

If you do not understand this notice, or if some unexpected problem arises, please call this hearing office at the phone number listed above.

Sincerely,

*Social Security Administration*

cc: Charnel M. Cornett
600 High St Ste 101
Hazard, KY 41702

Form HA-L503 (04-2013)
Claimant **174**

**SOCIAL SECURITY ADMINISTRATION**

Refer To:

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

Lorena Lynn Naillieux

Office of Disability Adjudication and Review

Bldg. 110, 2nd Floor

4300 Goodfellow Blvd

Saint Louis, MO 63120

Tel: (877)409-4579 / Fax: (314)263-8589

February 18, 2016

Lorena Lynn Naillieux

85 Barlow Branch

Partridge, KY 40862

## NOTICE OF HEARING-IMPORTANT REMINDER

We recently mailed you a Notice stating the time and place of the hearing you requested. We enclosed with your Notice an Acknowledgement Form, which we asked you to complete and return. If you have **not** yet returned the Acknowledgement Form, please call the number listed above and tell us if you plan to come to your hearing. If you do not plan to come to your hearing, please tell us why you cannot come.

We expect you to be present at the hearing scheduled for:

| **Day:** | Friday | **Date:** | February 26, 2016 | **Time:** 2:00 PM Eastern (ET) |
|---|---|---|---|---|
| **Room:** | 1 | **Address:** | 825 High Street Hazard, KY 41701 | |

If you do not appear at this hearing, and do not provide a good reason why you did not appear, the administrative law judge (ALJ) will issue a decision on the record.

If you do not understand this notice, or if some unexpected problem arises, please call this hearing office at the phone number listed above.

Sincerely,

*Social Security Administration*

Form HA-L503 (04-2013)
Representative **175**

See Next Page

EXHIBIT NO. 16B
PAGE: 3 OF 5

Lorena Lynn Naillieux (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)                                    Page 2 of 2

Enclosures:
Form HA-L32 (Electronic Disability Claims Processing Insert)
Barcode Sheet


cc: Charnel M. Cornett
    600 High St Ste 101
    Hazard, KY 41702

### Electronic Disability Claims Processing

Social Security is changing from a paper to an electronic disability claims process in order to improve the quality and timeliness of our decisions.  Your client's disability claim file is being processed electronically.  Your claimant's rights under the Social Security Act remain the same.

When your client's case is exhibited, we will forward a copy of the file to you on a compact disc (CD).  We will also provide you a copy of the file on CD on the day of the hearing.  Should you require a copy of the file at any other time, please contact the hearing office.

Additional evidence should be submitted within the timeframes for the submission of evidence discussed in the notice.  **The preferred way to submit evidence to the electronic folder is by using one of the following three methods:**

- **Send the evidence using the Electronic Records Express (ERE) website.  If you have not registered to use the ERE website, contact your local hearing office.**

- **Fax the evidence using this fax number -- (877)847-1604.  Remember that the enclosed barcode must be the first page for <u>each document</u> being faxed.**

- **Send the evidence to the contract scanner listed below.  The barcode must be the first page of each document.  DO NOT SEND ORIGINAL DOCUMENTS. DOCUMENTS ARE NOT RETURNED.**

  **Saint Louis, MO ODAR**
  **P. O. Box 8922**
  **London, KY 40742-8922**

**You may also send the evidence by mail or deliver it to the hearing office but there may be a delay in associating the evidence with the electronic file.**

**NOTE:**  The attached barcode pertains to your client's disability claim file only.  Please keep the original barcode sheet for submitting all documents on this case.  Bar codes may be used more than once when faxing evidence into the electronic file.

 INSERT THIS END FIRST 

**Please include this barcode cover sheet as the first page
of <u>each set of documents</u> returned.**

**Fax the evidence to this fax number:**

**(877)847-1604**



```
RQID:0000000000000000173791818 SITE:T1U DR:S
SSN:401088762 DOCTYPE:5032 RF:D CS:7437
```

**Claimant:  Lorena Lynn Naillieux**
**SSN:  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**

178

June 20, 2008, 12:33
PAGE   1

NH 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                          SG-SSA-16

```
--------------------
: UNIT: DETATT    :
:                 :
:                 :
:                 :
:                 :
:                 :
:                 :
--------------------
```

APPLICATION SUMMARY FOR DISABILITY INSURANCE BENEFITS

I APPLY FOR A PERIOD OF DISABILITY AND/OR ALL INSURANCE BENEFITS FOR WHICH I AM
ELIGIBLE UNDER TITLE II AND PART A OF TITLE XVIII OF THE SOCIAL SECURITY ACT,
AS PRESENTLY AMENDED.

MY NAME IS LORENA LYNN NAILLIEUX.

I HAVE USED THE FOLLOWING NAME(S):
          LORENA CORNETT
          LORENA LYNN CORNETT

MY SOCIAL SECURITY NUMBER IS 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.

MY DATE OF BIRTH IS July 31, 1962.

I AM A CITIZEN OF THE UNITED STATES.

I DO NOT HAVE AN UNSATISFIED FELONY WARRANT(S).

I DO NOT HAVE AN UNSATISFIED FEDERAL OR STATE WARRANT(S) FOR VIOLATION OF
PROBATION OR PAROLE.

I BECAME UNABLE TO WORK BECAUSE OF MY DISABLING CONDITION ON October 15, 2005.

I AM STILL DISABLED.

NO PREVIOUS APPLICATION HAS BEEN FILED WITH THE SOCIAL SECURITY ADMINISTRATION
BY OR FOR ME.

I HAVE FILED OR INTEND TO FILE FOR SSI.

I HAVE NOT FILED NOR DO I INTEND TO FILE FOR ANY WORKERS' COMPENSATION, PUBLIC
DISABILITY OR BLACK LUNG BENEFITS.

I AM NOT ENTITLED TO NOR DO I EXPECT TO BECOME ENTITLED TO A PENSION OR ANNUITY
BASED IN WHOLE OR IN PART ON WORK AFTER 1956 NOT COVERED BY SOCIAL SECURITY.

I AM MARRIED TO STEVE NAILLIEUX. WE WERE MARRIED ON August 12, 1984 IN KY BY A
CLERGYMAN OR PUBLIC OFFICIAL. MY SPOUSE'S AGE OR BIRTHDATE IS November 6, 1963
AND SOCIAL SECURITY NUMBER IS 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.

**179**

EXHIBIT NO. 1D
PAGE: 2 OF 3

June 20, 2008, 12:33
PAGE   2

NH 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                          SG-SSA-16

I WAS NOT PREVIOUSLY MARRIED.

I DO NOT HAVE ANY CHILDREN UNDER AGE 18; AGE 18-19 ATTENDING ELEMENTARY OR
SECONDARY SCHOOL FULL TIME; OR AGE 18 OR OVER AND DISABLED BEFORE AGE 22 WHO
MAY BE ELIGIBLE FOR SOCIAL SECURITY BENEFITS ON THIS RECORD. THIS INCLUDES
CHILDREN WHO MAY OR MAY NOT BE LIVING WITH ME.

I UNDERSTAND THAT I MUST PROVIDE MEDICAL EVIDENCE ABOUT MY DISABILITY, OR
ASSIST THE SOCIAL SECURITY ADMINISTRATION IN OBTAINING THE EVIDENCE.

I UNDERSTAND THAT I MAY BE REQUESTED BY THE STATE DISABILITY DETERMINATION
SERVICES TO HAVE A CONSULTATIVE EXAMINATION AT THE EXPENSE OF THE SOCIAL
SECURITY ADMINISTRATION AND THAT IF I DO NOT GO, MY CLAIM MAY BE DENIED.

I AUTHORIZE ANY PHYSICIAN, HOSPITAL, AGENCY, OR OTHER ORGANIZATION TO DISCLOSE
ANY MEDICAL RECORD OR INFORMATION ABOUT MY DISABILITY TO THE SOCIAL SECURITY
ADMINISTRATION OR TO THE STATE DISABILITY DETERMINATION SERVICES THAT MAY
REVIEW MY CLAIM OR CONTINUING DISABILITY.

I AUTHORIZE THE SOCIAL SECURITY ADMINISTRATION TO RELEASE ANY INFORMATION ABOUT
ME TO A PHYSICIAN OR MEDICAL FACILITY PREPARATORY TO AN EXAMINATION OR TEST.
RESULTS OF SUCH EXAMINATION OR TEST MAY BE RELEASED TO MY PHYSICIAN OR OTHER
TREATING SOURCE.

I AUTHORIZE THAT INFORMATION ABOUT MY DISABILITY MAY BE FURNISHED TO ANY
CONTRACTOR FOR CLERICAL SERVICES BY THE STATE DISABILITY DETERMINATION
SERVICES.

I AGREE TO NOTIFY THE SOCIAL SECURITY ADMINISTRATION OF ALL EVENTS AS EXPLAINED
TO ME.

I KNOW THAT ANYONE WHO MAKES OR CAUSES TO BE MADE A FALSE STATEMENT OR
REPRESENTATION OF MATERIAL FACT IN AN APPLICATION OR FOR USE IN DETERMINING A
RIGHT TO PAYMENT UNDER THE SOCIAL SECURITY ACT COMMITS A CRIME PUNISHABLE UNDER
FEDERAL LAW BY FINE, IMPRISONMENT OR BOTH. I AFFIRM THAT ALL INFORMATION I HAVE
GIVEN IN CONNECTION WITH THIS CLAIM IS TRUE.


MY MAILING ADDRESS IS 85 BARLOW BRANCH
                      PARTRIDGE KY 40862

MY TELEPHONE NUMBER IS ( 606) 589-4149.

SIGNATURE _____ _____        DATE_____

WITNESSES ARE REQUIRED ONLY IF THIS APPLICATION HAS BEEN SIGNED BY MARK (X)
ABOVE. IF SIGNED BY (X), TWO WITNESSES TO THE SIGNING WHO KNOW THE APPLICANT
MUST SIGN BELOW, GIVING THEIR FULL ADDRESSES.


_____        _____
SIGNATURE OF WITNESS                    SIGNATURE OF WITNESS

**180**

EXHIBIT NO. 1D
PAGE: 3 OF 3

June 20, 2008, 12:33
PAGE   3

NH 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                                    SG-SSA-16

_____              _____
NUMBER AND STREET ADDRESS              NUMBER AND STREET ADDRESS


_____              _____
CITY, STATE AND ZIP CODE               CITY, STATE AND ZIP CODE

**181**

| SSN | 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 | Unit | WHAT | Date From | 90 | to | 15 | Get Data |

| | Show All Addresses   Show All Details |
|---|---|
| **Year** | |
| **2005** | |
| | **2005 Detail Covered FICA Earnings** |
| | **OASDI Yearly Total:   $ 5,445.00** |
| | **Self-employment** |
| | **Earnings Totals:**      Show Details |
| | OASDI Self-employment Total  $ 5,445 00 |
| **2004** | |
| | **2004 Detail Covered FICA Earnings** |
| | **OASDI Yearly Total:   $ 7,312.00** |
| | **Self-employment** |
| | **Earnings Totals:**      Show Details |
| | OASDI Self-employment Total  $ 7,312 00 |
| **2003** | |
| | **2003 Detail Covered FICA Earnings** |
| | **OASDI Yearly Total:   $ 9,051.00** |
| | **Self-employment** |
| | **Earnings Totals:**      Show Details |
| | OASDI Self-employment Total. $ 9,051 00 |
| **2002** | |
| | **2002 Detail Covered FICA Earnings** |
| | **OASDI Yearly Total:   $ 9,163.00** |
| | **Self-employment** |
| | **Earnings Totals:**      Show Details |
| | OASDI Self-employment Total  $ 9,163 00 |
| **2001** | |
| | **2001 Detail Covered FICA Earnings** |
| | **OASDI Yearly Total:   $ 9,421.00** |
| | **Self-employment** |
| | **Earnings Totals:**      Show Details |
| | OASDI Self-employment Total  $ 9,421 00 |
| **2000** | |
| | **2000 Detail Covered FICA Earnings** |
| | **OASDI Yearly Total:   $ 8,316.00** |
| | **Self-employment** |
| | **Earnings Totals:**      Show Details |
| | OASDI Self-employment Total  $ 8,316 00 |
| **1999** | |
| | **1999 Detail Covered FICA Earnings** |
| | **OASDI Yearly Total:   $ 7,007.00** |
| | **Self-employment** |
| | **Earnings Totals:**      Show Details |
| | OASDI Self-employment Total  $ 7,007 00 |
| **1998** | |
| | **1998 Detail Covered FICA Earnings** |
| | **OASDI Yearly Total:   $ 10,534.00** |
| | **Self-employment** |
| | **Earnings Totals:**      Show Details |
| | OASDI Self-employment Total  $ 10,534 00 |

**1997**

| | 1997 Detail Covered FICA Earnings |
|---|---|
| | OASDI Yearly Total:   $ 10,781.00 |
| | Self-employment |
| | Earnings Totals:        Show Details |
| | OASDI Self-employment Total  $ 10,781 00 |

**1995**

| | 1995 Detail Covered FICA Earnings |
|---|---|
| | OASDI Yearly Total:   $ 2,240.00 |
| | EIN: 610903760 |
| | Employer  HOMER R FORTNEY         Show Address |
| | Earnings Totals:        Show Details |
| | Wage Total  $ 2,240 00 |
| | OASDI Employer Total  $ 2,240 00 |

**1991**

| | 1991 Detail Covered FICA Earnings |
|---|---|
| | OASDI Yearly Total:   $ 6,303.30 |
| | EIN: 710631225 |
| | Employer  JAMES M WILLIAMS         Show Address |
| | Earnings Totals:        Show Details |
| | Wage Total  $ 6,303 30 |
| | OASDI Employer Total  $ 6,303 30 |

**1990**

| | 1990 Detail Covered FICA Earnings |
|---|---|
| | OASDI Yearly Total:   $ 1,355.36 |
| | EIN: 710478765 |
| | Employer. RONALD SCHROEDER BURNETT         Show Address |
| | Earnings Totals:        Show Details |
| | Wage Total  $ 692 36 |
| | OASDI Employer Total  $ 692 36 |
| | EIN: 710552280 |
| | Employer  JAMES A HESS D D S         Show Address |
| | Earnings Totals:        Show Details |
| | Wage Total  $ 663 00 |
| | OASDI Employer Total  $ 663 00 |

| SSN | 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 | Unit | WHAT | Date From | 90 | to | 15 | Get Data |
|---|---|---|---|---|---|---|---|---|

Show All Addresses    Show All Details

| EIN | |
|---|---|
| 000000000 | Self-employment |
| | **YEAR: 2005** |
| | **2005 Detail Covered FICA Earnings** |
| | **Earnings Totals:**    Show Details |
| | OASDI Self-employment Total. $ 5,445 00 |
| | **YEAR: 2004** |
| | **2004 Detail Covered FICA Earnings** |
| | **Earnings Totals:**    Show Details |
| | OASDI Self-employment Total  $ 7,312 00 |
| | **YEAR: 2003** |
| | **2003 Detail Covered FICA Earnings** |
| | **Earnings Totals:**    Show Details |
| | OASDI Self-employment Total. $ 9,051 00 |
| | **YEAR: 2002** |
| | **2002 Detail Covered FICA Earnings** |
| | **Earnings Totals:**    Show Details |
| | OASDI Self-employment Total. $ 9,163 00 |
| | **YEAR: 2001** |
| | **2001 Detail Covered FICA Earnings** |
| | **Earnings Totals:**    Show Details |
| | OASDI Self-employment Total  $ 9,421 00 |
| | **YEAR: 2000** |
| | **2000 Detail Covered FICA Earnings** |
| | **Earnings Totals:**    Show Details |
| | OASDI Self-employment Total  $ 8,316 00 |
| | **YEAR: 1999** |
| | **1999 Detail Covered FICA Earnings** |
| | **Earnings Totals:**    Show Details |
| | OASDI Self-employment Total. $ 7,007 00 |
| | **YEAR: 1998** |
| | **1998 Detail Covered FICA Earnings** |
| | **Earnings Totals:**    Show Details |
| | OASDI Self-employment Total  $ 10,534 00 |
| | **YEAR: 1997** |
| | **1997 Detail Covered FICA Earnings** |
| | **Earnings Totals:**    Show Details |
| | OASDI Self-employment Total  $ 10,781 00 |
| 610903760 | **Employer: HOMER R FORTNEY**    Show Address |
| | **YEAR: 1995** |
| | **1995 Detail Covered FICA Earnings** |
| | **Earnings Totals:**    Show Details |
| | Wage Total  $ 2,240 00 |
| | OASDI Employer Total. $ 2,240 00 |
| 710478765 | **Employer: RONALD SCHROEDER BURNETT**    Show Address |
| | **YEAR: 1990** |
| | **1990 Detail Covered FICA Earnings** |

| | |
|---|---|
| | **Earnings Totals:**   Show Details |
| | Wage Total  $ 692 36 |
| | OASDI Employer Total  $ 692 36 |
| **710552280** | **Employer: JAMES A HESS D D S**   Show Address |
| | **1990 Detail Covered FICA Earnings** |
| | **Earnings Totals:**   Show Details |
| | Wage Total  $ 663 00 |
| | OASDI Employer Total  $ 663 00 |
| **710631225** | **Employer: JAMES M WILLIAMS**   Show Address |
| | **YEAR: 1991** |
| | **1991 Detail Covered FICA Earnings** |
| | **Earnings Totals:**   Show Details |
| | Wage Total  $ 6,303 30 |
| | OASDI Employer Total  $ 6,303 30 |

| SSN | 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 | Unit | WHAT | Date From | 90 | to | 15 | Get Data |
|---|---|---|---|---|---|---|---|---|

MEF: NA: L L NAILLI  DB: 07/1962 SX: F AK: CORNET

**DETAIL COVERED FICA EARNINGS AND EMPLOYER NAME AND ADDRESS FOR YEARS REQUESTED**

---

**EIN: 710478765**   RONALD SCHROEDER BURNETT
2400 BROWNS LN STE B
JONESBORO  AR 72401-6105

| RPYR | REO | LOAC | NAME | EARNINGS | TOTAL COMP | CONTROL NUMBER | PR | S |
|---|---|---|---|---|---|---|---|---|
| 0090 | AA | | L   NAILLI | 692 36 | 692 36 | 0184-00-13125 | 02391 | V |
| | | | Wage Total | 692 36 | | | | |
| | | | OASDI Employer Total | 692 36 | | | | |

**EIN: 710552280**   JAMES A HESS D D S
501 N 6TH ST
BLYTHEVILLE  AR 72315-2407

| RPYR | REO | LOAC | NAME | EARNINGS | TOTAL COMP | CONTROL NUMBER | PR | S |
|---|---|---|---|---|---|---|---|---|
| 0090 | AA | | L   NAILLI | 663 00 | 663 00 | 0148-19-49996 | 01991 | V |
| | | | Wage Total | 663 00 | | | | |
| | | | OASDI Employer Total | 663 00 | | | | |
| 90 | | | OASDI Yearly Total | 1355 36 | | | | |

---

**EIN: 710631225**   JAMES M WILLIAMS
JAMES M WILLIAMS DDS
104 BRIARCREST ST
BLYTHEVILLE  AR 72315-7225

| RPYR | REO | LOAC | NAME | EARNINGS | TOTAL COMP | CONTROL NUMBER | PR | S |
|---|---|---|---|---|---|---|---|---|
| 0091 | AA | | L L NAILLI | 6303 30 | 6303 30 | 1132-08-12441 | 02692 | V |
| | | | Wage Total | 6303 30 | | | | |
| | | | OASDI Employer Total | 6303.30 | | | | |
| 91 | | | OASDI Yearly Total | 6303 30 | | | | |

---

| 92 NONE |
|---|
| 93 NONE |
| 94 NONE |

**EIN: 610903760**   HOMER R FORTNEY

EXHIBIT NO. 2D
PAGE: 6 OF 11

48 1ST ST
PO BOX 426
CUMBERLAND KY 40823-0426

| RPYR | REO | LOAC | NAME | EARNINGS | TOTAL COMP | CONTROL NUMBER | PR | S |
|------|-----|------|------|----------|-----------|----------------|-----|---|
| 0095 | AA | | L   NAILLI | 2240 00 | 2240 00 | 5131-73-16369 | 01196 | V |
| | | | Wage Total | 2240 00 | | | | |
| | | | OASDI Employer Total | 2240 00 | | | | |
| 95 | | | OASDI Yearly Total | 2240 00 | | | | |

**96 NONE**

**SELF-EMPLOYMENT**

| RPYR | REO | SMEM | NAME | EARNINGS | SE NUMBER | CONTROL NUMBER | PR | S |
|------|-----|------|------|----------|-----------|----------------|-----|---|
| SE97 | OI | | L   NAILLI | 10781 00 | 610700000 | 2061-06-04849 | 02498 | V |
| | | | OASDI Self-employment Total | 10781 00 | | | | |
| 97 | | | OASDI Yearly Total | 10781 00 | | | | |

**SELF-EMPLOYMENT**

| RPYR | REO | SMEM | NAME | EARNINGS | SE NUMBER | CONTROL NUMBER | PR | S |
|------|-----|------|------|----------|-----------|----------------|-----|---|
| SE98 | OI | | L   NAILLI | 10534 00 | 610800000 | 2210-97-15618 | 01599 | V |
| | | | OASDI Self-employment Total | 10534 00 | | | | |
| 98 | | | OASDI Yearly Total | 10534 00 | | | | |

**SELF-EMPLOYMENT**

| RPYR | REO | SMEM | NAME | EARNINGS | SE NUMBER | CONTROL NUMBER | PR | S |
|------|-----|------|------|----------|-----------|----------------|-----|---|
| SE99 | OI | | L   NAILLI | 7007 00 | 610900000 | 2211-03-18498 | 01100 | V |
| | | | OASDI Self-employment Total | 7007 00 | | | | |
| 99 | | | OASDI Yearly Total | 7007 00 | | | | |

**SELF-EMPLOYMENT**

http://what.ba.ssa.gov/deqy/mainwhat.cfm

| RPYR | REO | SMEM | NAME | EARNINGS | SE NUMBER | CONTROL NUMBER | PR | S |
|------|-----|------|------|----------|-----------|----------------|----|----|
| SE00 | OI | | L   NAILLI | 8316 00 | 610000000 | 2210-88-10617 | 01801 | V |
| | | | OASDI Self-employment Total | 8316 00 | | | | |
| 00 | | | OASDI Yearly Total | 8316 00 | | | | |

| SELF-EMPLOYMENT | | | | | | | | |
|------|-----|------|------|----------|-----------|----------------|----|----|
| RPYR | REO | SMEM | NAME | EARNINGS | SE NUMBER | CONTROL NUMBER | PR | S |
| SE01 | OI | | L   NAILLI | 9421 00 | 610100000 | 2211-05-35890 | 01702 | V |
| | | | OASDI Self-employment Total | 9421 00 | | | | |
| 01 | | | OASDI Yearly Total | 9421 00 | | | | |

| SELF-EMPLOYMENT | | | | | | | | |
|------|-----|------|------|----------|-----------|----------------|----|----|
| RPYR | REO | SMEM | NAME | EARNINGS | SE NUMBER | CONTROL NUMBER | PR | S |
| SE02 | OI | | L   NAILLI | 9163 00 | 610200000 | 2210-51-77962 | 00703 | V |
| | | | OASDI Self-employment Total | 9163 00 | | | | |
| 02 | | | OASDI Yearly Total | 9163 00 | | | | |

| SELF-EMPLOYMENT | | | | | | | | |
|------|-----|------|------|----------|-----------|----------------|----|----|
| RPYR | REO | SMEM | NAME | EARNINGS | SE NUMBER | CONTROL NUMBER | PR | S |
| SE03 | OI | | L   NAILLI | 9051 00 | 610300000 | 2110-94-40804 | 01504 | V |
| | | | OASDI Self-employment Total | 9051 00 | | | | |
| 03 | | | OASDI Yearly Total | 9051 00 | | | | |

| SELF-EMPLOYMENT | | | | | | | | |
|------|-----|------|------|----------|-----------|----------------|----|----|
| RPYR | REO | SMEM | NAME | EARNINGS | SE NUMBER | CONTROL NUMBER | PR | S |
| SE04 | OI | | L   NAILLI | 7312 00 | 610400000 | 2211-03-16648 | 01505 | V |
| | | | OASDI Self-employment | 7312 00 | | | | |

Total

| 04 | OASDI Yearly Total | 7312.00 |
|----|--------------------|---------|

**SELF-EMPLOYMENT**

| RPYR | REO | SMEM | NAME | EARNINGS | SE NUMBER | CONTROL NUMBER | PR | S |
|------|-----|------|------|----------|-----------|----------------|-----|---|
| SE05 | OI | | L NAILLI | 5445 00 | 610500000 | 2210-73-02803 | 01206 | V |
| | | | OASDI Self-employment Total | 5445 00 | | | | |
| 05 | | | OASDI Yearly Total ' | 5445 00 | | | | |

| 06 | NONE |
|----|------|
| 07 | NONE |
| 08 | NONE |
| 09 | NONE |
| 10 | NONE |
| 11 | NONE |
| 12 | NONE |
| 13 | NONE |
| 14 | NONE |
| 15 | NONE |

**DETAIL COVERED MQGE EARNINGS AND EMPLOYER NAME AND ADDRESS FOR YEARS REQUESTED (1983 - 1990)**

NO COVERED MQGE EARNINGS POSTED FOR YEARS REQUESTED

**DETAIL NON-COVERED EARNINGS AND W-2 PENSION DATA AND EMPLOYER NAME AND ADDRESS FOR YEARS REQUESTED**

NO NON-COVERED EARNINGS AND W-2 PENSION DATA POSTED FOR YEARS REQUESTED

**DETAIL RAILROAD EARNINGS FOR YEARS REQUESTED**

NO RR EARNINGS FOR YEARS REQUESTED

**REMARKS**

http://what.ba.ssa.gov/deqy/mainwhat.cfm

9/1/2015

Case: 7:16-cv-00193-JMH   Doc #: 12-1   Filed: 12/09/16   Page: 194 of 435 - Page ID#: 394

SSN `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`   Unit `WHAT`   Date From `90` to `15`   [ Get Data ]

| EIN | | | | |
|---|---|---|---|---|
| | Show All Addresses | | | |
| 000000000 | Self-employment (For SGA criteria, see DI 10510 010) | | | |
| | Year | Amount | Monthly SGA Amount | Monthly Blind SGA Amount |
| | 2005 | $5,445 00 | $830 | $1380 |
| | 2004 | $7,312 00 | $810 | $1350 |
| | 2003 | $9,051 00 | $800 | $1330 |
| | 2002 | $9,163 00 | $780 | $1300 |
| | 2001 | $9,421 00 | $740 | $1240 |
| | 2000 | $8,316 00 | $700 | $1170 |
| | 1999 | $7,007 00 | $500/700 | $1110 |
| | 1998 | $10,534 00 | $500 | $1050 |
| | 1997 | $10,781 00 | $500 | $1000 |
| 610903760 | Employer: HOMER R FORTNEY       Show Address | | | |
| | Year | Amount | Monthly SGA Amount | Monthly Blind SGA Amount |
| | 1995 | $2,240 00 | $500 | $940 |
| 710631225 | Employer: JAMES M WILLIAMS       Show Address | | | |
| | Year | Amount | Monthly SGA Amount | Monthly Blind SGA Amount |
| | 1991 | $6,303 30 | $500 | $810 |
| 710478765 | Employer: RONALD SCHROEDER BURNETT     Show Address | | | |
| | Year | Amount | Monthly SGA Amount | Monthly Blind SGA Amount |
| | 1990 | $692 36 | $500 | $780 |
| 710552280 | Employer: JAMES A HESS D D S     Show Address | | | |
| | Year | Amount | Monthly SGA Amount | Monthly Blind SGA Amount |
| | 1990 | $663 00 | $500 | $780 |

SSN: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 - Name:L L NAILLI - Yrs:1990-2015 Page 11 of 11

| SSN | 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 | Unit | WHAT | Date From | 90 | to | 15 | Get Data |
|---|---|---|---|---|---|---|---|---|

| **Multiple SSNs** |
| No Multiple SSNs present |
| **MQGE Earnings (1983 - 1990)** |
| NO COVERED MQGE EARNINGS POSTED FOR YEARS REQUESTED |
| **Non-Covered Earnings** |
| NO NON-COVERED EARNINGS AND W-2 PENSION DATA POSTED FOR YEARS REQUESTED |
| **Railroad Earnings** |
| NO RR EARNINGS FOR YEARS REQUESTED |
| **Remarks** |
| CLAIMS ACTIVITY--SEE MBR |

**EXHIBIT NO. 3D**
**PAGE: 1 OF 1**

```
----- NDNH-T2 QUERY for 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 -------------------------------------------
No New Hire/Wage/UC Reports
```

```
NH NAME    LORENA        L NAILLIEUX              SN: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 PG 001+
INPUT      09/01/15                       DO:T1U UNIT:EZTOOL DERO MOD:09
RUN DATE   09/01/15  V:07/15/14
CONTROL    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


EVENT      ICERS EARNINGS RECORD
TID        CERTIFIED EARNINGS RECORD
ALERTS     NH HAS 00 DIS EX YOC'S FOR NONCOVERED PENSION PIA
           PRIOR CLAIM DATA DOES NOT EXIST ON DRAMS
           POSSIBLE GAPS 1985 1986 1992 1993 1994 1996
           POSSIBLE DUPLICATES 1983 1991
           POSSIBLE INCOMPLETES 1987 1989 1995
           NH HAS 00 YOC'S FOR NONCOVERED PENSION PIA
           FILING DATE USED BY SYSTEM EQUALS ONSET DATE
INFORMTNL  DISABILITY EXCLUSION FULLY INSURED STATUS MET
           DISABLED NH IS FULLY INSURED RIB
           DISABILITY NON-EXCLUSION FULLY INSURED STATUS MET
           DISABILITY NON-EXCLUSION 20/40 INSURED TEST MET
           DISABILITY EXCLUSION 20/40 INSURED TEST MET
           PRIOR CLAIM STATUS - A
ID INFO    REQ NAME:NAILLI   REQ SEX:F   REQ DATE OF BIRTH:07/31/1962
DATES      DATE OF ONSET:10/15/2005
DIB INPUT  MBR/INPUT DATA
           ONSET:10/15/2005  ENTITLEMENT:06/2007
INS STAT   DISABILITY:  EXCL REQ QC:21  EXCL HAS:040
           NON-EXCL REQ QC:21  NON-EXCL HAS:040   DIS DLI:12/10
           OTHER:  FIRST INSURED:10/01
TOT COV    SSA QC
           1937 THRU 1950 QC:  0
           WAGE QC AFTER 1946:  69    WAGE QC AFTER 1950:  69
           SE QC:NONE   AG QC:NONE
TOT EARN   SSA
           TOT AFTER 1936:        103708.57
           TOT AFTER 1950:        103708.57
COMPUTATIONAL YEARLY EARNINGS
MAX    AMT YR  QC    REGULAR  U   NH INDEXED    RAILROAD  RQSM DMW SE AG
29700  310 81 CCCC   1312.74  L    3246.79
32400  340 82 CCCC   2613.87  H    6127.54
35700  370 83 CCCC   5266.34  H   11772.08
37800  390 84 CCCC   2585.87  H    5459.38
39600  410 85 NNNN
42000  440 86 NNNN
43800  460 87 CCCN   1793.39  H    3315.43
45000  470 88 CCCC   2573.56  H    4534.40
48000  500 89 CNNN    634.14       1074.75
51300  520 90 CCNN   1355.36    \  2195.66
53400  540 91 CCCC   6303.30  H    9844.38
55500  570 92 NNNN
```

**194**

```
NH NAME      LORENA        L NAILLIEUX              SN: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 PG 002
INPUT        09/01/15                       DO:T1U UNIT:EZTOOL DERO MOD:09
```

COMPUTATIONAL YEARLY EARNINGS

| MAX | AMT | YR | QC | REGULAR | U | NH INDEXED | RAILROAD | RQSM | DMW | SE | AG |
|-----|-----|----|----|---------|---|------------|----------|------|-----|----|----|
| 57600 | 590 | 93 | NNNN | | | | | | | | |
| 60600 | 620 | 94 | NNNN | | | | | | | | |
| 61200 | 630 | 95 | CCCN | 2240.00 | L | 3088.58 | | | | | |
| 62700 | 640 | 96 | NNNN | | | | | | | | |
| 65400 | 670 | 97 | CCCC | 10781.00 | H | 13390.73 | | | | Y | |
| 68400 | 700 | 98 | CCCC | 10534.00 | H | 12433.20 | | | | Y | |
| 72600 | 740 | 99 | CCCC | 7007.00 | H | 7833.75 | | | | Y | |
| 76200 | 780 | 00 | CCCC | 8316.00 | H | 8810.00 | | | | Y | |
| 80400 | 830 | 01 | CCCC | 9421.00 | H | 9748.09 | | | | Y | |
| 84900 | 870 | 02 | CCCC | 9163.00 | H | 9386.99 | | | | Y | |
| 87000 | 890 | 03 | CCCC | 9051.00 | H | 9051.00 | | | | Y | |
| 87900 | 900 | 04 | CCCC | 7312.00 | H | 7312.00 | | | | Y | |
| 90000 | 920 | 05 | CCCC | 5445.00 | H | 5445.00 | | | | Y | |
| 94200 | 970 | 06 | NNNN | | | | | | | | |
| 97500 | 1000 | 07 | NNNN | | | | | | | | |
| 102000 | 1050 | 08 | NNNN | | | | | | | | |
| 106800 | 1090 | 09 | NNNN | | | | | | | | |
| | 1120 | 10 | NNNN | | | | | | | | |
| | 1120 | 11 | NNNN | | | | | | | | |
| 110100 | 1130 | 12 | NNNN | | | | | | | | |
| 113700 | 1160 | 13 | NNNN | | | | | | | | |
| 117000 | 1200 | 14 | NNNN | | | | | | | | |
| 118500 | 1220 | 15 | NNNN | | | | | | | | |

```
  COMP DATA   DI - COMP TYPE:NS 78 DIS EX              AIME:   $641.00
              EFF DATE:04/06  PIA: $592.00  PIFC:L  FAM MAX:  $592.00
              EFF DATE:12/06  PIA: $611.50  PIFC:L  FAM MAX:  $611.50
              EFF DATE:12/07  PIA: $625.50  PIFC:L  FAM MAX:  $625.50
              EFF DATE:12/08  PIA: $661.70  PIFC:L  FAM MAX:  $661.70
              EFF DATE:12/09  PIA: $661.70  PIFC:L  FAM MAX:  $661.70
              EFF DATE:12/10  PIA: $661.70  PIFC:L  FAM MAX:  $661.70
              EFF DATE:12/11  PIA: $685.50  PIFC:L  FAM MAX:  $685.50
              EFF DATE:12/12  PIA: $697.10  PIFC:L  FAM MAX:  $697.10
              EFF DATE:12/13  PIA: $707.50  PIFC:L  FAM MAX:  $707.50
              EFF DATE:12/14  PIA: $719.50  PIFC:L  FAM MAX:  $719.50
              START BASE YEAR/START DATE:1951   LAST BASE YEAR/CLOSE DATE:2005
              DIVIDEND: $130799.34  DM:204  DOY:4  YOC:   I/Y:   ELG YR:2005
              TRIAL COMPUTATIONS: NS 78  $719.50
```

Case: 7:16-cv-00193-JMH   Doc #: 12-1 Filed: 12/09/16  Page: 200 of 435 - Page ID#: 279

DETAIL COVERED FICA EARNINGS AND EMPLOYER NAME AND ADDRESS FOR YEARS
REQUESTED
EIN: 710478765            RONALD SCHROEDER BURNETT
                         2400 BROWNS LN STE B
                         JONESBORO           AR  72401-6105

| RPYR | REO LOAC | NAME | EARNINGS | TOTAL COMP | CONTROL NUMBER | PR | S |
|------|----------|------|----------|------------|----------------|----|---|
| 0090 | AA | L  NAILLI | 692.36 | 692.36 | 0184-00-13125 | 02391 | V |
|  |  | WAGE TOTAL | 692.36 | | | | |
|  |  | OASDI EMPLOYER TOTAL | 692.36 | | | | |

EIN: 710552280            JAMES A HESS D D S
                         501 N 6TH ST
                         BLYTHEVILLE         AR  72315-2407

| RPYR | REO LOAC | NAME | EARNINGS | TOTAL COMP | CONTROL NUMBER | PR | S |
|------|----------|------|----------|------------|----------------|----|---|
| 0090 | AA | L  NAILLI | 663.00 | 663.00 | 0148-19-49996 | 01991 | V |
|  |  | WAGE TOTAL | 663.00 | | | | |
|  |  | OASDI EMPLOYER TOTAL | 663.00 | | | | |
|  |  | 90 OASDI YEARLY TOTAL | 1355.36 | | | | |

EIN: 710631225            JAMES M WILLIAMS
                         JAMES M WILLIAMS DDS
                         104 BRIARCREST ST
                         BLYTHEVILLE         AR  72315-7225

| RPYR | REO LOAC | NAME | EARNINGS | TOTAL COMP | CONTROL NUMBER | PR | S |
|------|----------|------|----------|------------|----------------|----|---|
| 0091 | AA | L L NAILLI | 6303.30 | 6303.30 | 1132-08-12441 | 02692 | V |
|  |  | WAGE TOTAL | 6303.30 | | | | |
|  |  | OASDI EMPLOYER TOTAL | 6303.30 | | | | |
|  |  | 91 OASDI YEARLY TOTAL | 6303.30 | | | | |

  92 NONE

  93 NONE

  94 NONE

EIN: 610903760            HOMER R FORTNEY
                          48 1ST ST
                          PO BOX 426
                          CUMBERLAND          KY  40823-0426

| RPYR | REO LOAC | NAME | EARNINGS | TOTAL COMP | CONTROL NUMBER | PR | S |
|------|----------|------|----------|------------|----------------|----|---|
| 0095 | AA | L  NAILLI | 2240.00 | 2240.00 | 5131-73-16369 | 01196 | V |
|  |  | WAGE TOTAL | 2240.00 | | | | |
|  |  | OASDI EMPLOYER TOTAL | 2240.00 | | | | |
|  |  | 95 OASDI YEARLY TOTAL | 2240.00 | | | | |

  96 NONE

SELF EMPLOYMENT

| RPYR | REO SMEM | NAME | EARNINGS | SE NUMBER | CONTROL NUMBER | PR | S |
|------|----------|------|----------|-----------|----------------|----|---|
| SE97 | OI | L  NAILLI | 10781.00 | 610700000 | 2061-06-04849 | 02498 | V |
| OASDI SELF EMPLOYMENT TOTAL |  |  | 10781.00 | | | | |
|  |  | 97 OASDI YEARLY TOTAL | 10781.00 | | | | |

**196**

SELF EMPLOYMENT

| RPYR | REO SMEM | NAME | EARNINGS | SE NUMBER | CONTROL NUMBER | PR | S |
|---|---|---|---|---|---|---|---|
| SE98 | OI | L  NAILLI | 10534.00 | 610800000 | 2210-97-15618 | 01599 | V |

OASDI SELF EMPLOYMENT TOTAL    10534.00
     98 OASDI YEARLY TOTAL     10534.00


SELF EMPLOYMENT

| RPYR | REO SMEM | NAME | EARNINGS | SE NUMBER | CONTROL NUMBER | PR | S |
|---|---|---|---|---|---|---|---|
| SE99 | OI | L  NAILLI | 7007.00 | 610900000 | 2211-03-18498 | 01100 | V |

OASDI SELF EMPLOYMENT TOTAL    7007.00
     99 OASDI YEARLY TOTAL     7007.00


SELF EMPLOYMENT

| RPYR | REO SMEM | NAME | EARNINGS | SE NUMBER | CONTROL NUMBER | PR | S |
|---|---|---|---|---|---|---|---|
| SE00 | OI | L  NAILLI | 8316.00 | 610000000 | 2210-88-10617 | 01801 | V |

OASDI SELF EMPLOYMENT TOTAL    8316.00
     00 OASDI YEARLY TOTAL     8316.00


SELF EMPLOYMENT

| RPYR | REO SMEM | NAME | EARNINGS | SE NUMBER | CONTROL NUMBER | PR | S |
|---|---|---|---|---|---|---|---|
| SE01 | OI | L  NAILLI | 9421.00 | 610100000 | 2211-05-35890 | 01702 | V |

OASDI SELF EMPLOYMENT TOTAL    9421.00
     01 OASDI YEARLY TOTAL     9421.00


SELF EMPLOYMENT

| RPYR | REO SMEM | NAME | EARNINGS | SE NUMBER | CONTROL NUMBER | PR | S |
|---|---|---|---|---|---|---|---|
| SE02 | OI | L  NAILLI | 9163.00 | 610200000 | 2210-51-77962 | 00703 | V |

OASDI SELF EMPLOYMENT TOTAL    9163.00
     02 OASDI YEARLY TOTAL     9163.00


SELF EMPLOYMENT

| RPYR | REO SMEM | NAME | EARNINGS | SE NUMBER | CONTROL NUMBER | PR | S |
|---|---|---|---|---|---|---|---|
| SE03 | OI | L  NAILLI | 9051.00 | 610300000 | 2110-94-40804 | 01504 | V |

OASDI SELF EMPLOYMENT TOTAL    9051.00
     03 OASDI YEARLY TOTAL     9051.00


SELF EMPLOYMENT

| RPYR | REO SMEM | NAME | EARNINGS | SE NUMBER | CONTROL NUMBER | PR | S |
|---|---|---|---|---|---|---|---|
| SE04 | OI | L  NAILLI | 7312.00 | 610400000 | 2211-03-16648 | 01505 | V |

OASDI SELF EMPLOYMENT TOTAL    7312.00
     04 OASDI YEARLY TOTAL     7312.00


SELF EMPLOYMENT

| RPYR | REO SMEM | NAME | EARNINGS | SE NUMBER | CONTROL NUMBER | PR | S |
|---|---|---|---|---|---|---|---|
| SE05 | OI | L  NAILLI | 5445.00 | 610500000 | 2210-73-02803 | 01206 | V |

OASDI SELF EMPLOYMENT TOTAL    5445.00
     05 OASDI YEARLY TOTAL     5445.00


   06 NONE

   07 NONE

   08 NONE

   09 NONE

**197**

```
10  NONE

11  NONE

12  NONE

13  NONE

14  NONE

15  NONE


DETAIL COVERED MQGE EARNINGS AND EMPLOYER NAME AND ADDRESS FOR YEARS
REQUESTED (1983-1990)
 NO COVERED MQGE EARNINGS POSTED FOR YEARS REQUESTED


DETAIL NON-COVERED EARNINGS AND W-2 PENSION DATA AND EMPLOYER NAME AND
 ADDRESS  FOR YEARS REQUESTED
 NO NON-COVERED EARNINGS AND W-2 PENSION DATA POSTED FOR YEARS REQUESTED


REMARKS
 CLAIMS ACTIVITY--SEE MBR
```

**198**

Case: 7:16-cv-00193-JMH Doc #: 12-1 Filed: 12/09/16 Page: 203 of 435 - Page ID#: 273

**EXHIBIT NO. 6D**
**PAGE: 1 OF 1**

## SUMMARY FICA EARNINGS FOR YEARS REQUESTED

| YEAR | EARNINGS | YEAR | EARNINGS | YEAR | EARNINGS | YEAR | EARNINGS |
|------|---------|------|----------|------|----------|------|----------|
| 1990 | 1355.36 | 1997 | 10781.00 | 2004 | 7312.00 | 2010 | .00 |
| 1991 | 6303.30 | 1998 | 10534.00 | 2005 | 5445.00 | 2011 | .00 |
| 1992 | .00 | 1999 | 7007.00 | 2006 | .00 | 2012 | .00 |
| 1993 | .00 | 2000 | 8316.00 | 2007 | .00 | 2013 | .00 |
| 1994 | .00 | 2001 | 9421.00 | 2008 | .00 | 2014 | .00 |
| 1995 | 2240.00 | 2002 | 9163.00 | 2009 | .00 | 2015 | .00 |
| 1996 | .00 | 2003 | 9051.00 | | | | |

## SUMMARY MQGE EARNINGS FOR YEARS REQUESTED

NO MQGE EARNINGS FOR YEARS REQUESTED

## REMARKS

CLAIMS ACTIVITY--SEE MBR

**199**

| SSN: 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 | Unit: WHAT | Date From: 94 | to: 16 | Get Data |
|---|---|---|---|---|

Show All Addresses    Show All Details

| Year | |
|---|---|
| **2005** | |
| | **2005 Detail Covered FICA Earnings** |
| | **OASDI Yearly Total:** **$ 5,445.00** |
| | **Self-employment** |
| | **Earnings Totals:**    Show Details |
| | OASDI Self-employment Total: $ 5,445.00 |
| **2004** | |
| | **2004 Detail Covered FICA Earnings** |
| | **OASDI Yearly Total:** **$ 7,312.00** |
| | **Self-employment** |
| | **Earnings Totals:**    Show Details |
| | OASDI Self-employment Total: $ 7,312.00 |
| **2003** | |
| | **2003 Detail Covered FICA Earnings** |
| | **OASDI Yearly Total:** **$ 9,051.00** |
| | **Self-employment** |
| | **Earnings Totals:**    Show Details |
| | OASDI Self-employment Total: $ 9,051.00 |
| **2002** | |
| | **2002 Detail Covered FICA Earnings** |
| | **OASDI Yearly Total:** **$ 9,163.00** |
| | **Self-employment** |
| | **Earnings Totals:**    Show Details |
| | OASDI Self-employment Total: $ 9,163.00 |
| **2001** | |
| | **2001 Detail Covered FICA Earnings** |
| | **OASDI Yearly Total:** **$ 9,421.00** |
| | **Self-employment** |
| | **Earnings Totals:**    Show Details |
| | OASDI Self-employment Total: $ 9,421.00 |
| **2000** | |
| | **2000 Detail Covered FICA Earnings** |
| | **OASDI Yearly Total:** **$ 8,316.00** |
| | **Self-employment** |
| | **Earnings Totals:**    Show Details |
| | OASDI Self-employment Total: $ 8,316.00 |
| **1999** | |
| | **1999 Detail Covered FICA Earnings** |
| | **OASDI Yearly Total:** **$ 7,007.00** |
| | **Self-employment** |
| | **Earnings Totals:**    Show Details |
| | OASDI Self-employment Total: $ 7,007.00 |
| **1998** | |
| | **1998 Detail Covered FICA Earnings** |
| | **OASDI Yearly Total:** **$ 10,534.00** |
| | **Self-employment** |
| | **Earnings Totals:**    Show Details |

**200**

| | OASDI Self-employment Total: $ 10,534.00 |
|---|---|
| **1997** | |
| | **1997 Detail Covered FICA Earnings** |
| | **OASDI Yearly Total:   $ 10,781.00** |
| | **Self-employment** |
| | **Earnings Totals:** _Show Details_ |
| | OASDI Self-employment Total: $ 10,781.00 |
| **1995** | |
| | **1995 Detail Covered FICA Earnings** |
| | **OASDI Yearly Total:   $ 2,240.00** |
| | **EIN: 610903760** |
| | Employer: HOMER R FORTNEY       _Show Address_ |
| | **Earnings Totals:** _Show Details_ |
| | Wage Total: $ 2,240.00 |
| | OASDI Employer Total: $ 2,240.00 |

SSN: 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   Unit: WHAT   Date From: 94   to: 16   [Get Data]

Show All Addresses   Show All Details

| EIN | | |
|---|---|---|
| 000000000 | Self-employment | |
| | YEAR: 2005 | |
| | 2005 Detail Covered FICA Earnings | |
| | Earnings Totals:      Show Details | |
| | OASDI Self-employment Total: $ 5,445.00 | |
| | YEAR: 2004 | |
| | 2004 Detail Covered FICA Earnings | |
| | Earnings Totals:      Show Details | |
| | OASDI Self-employment Total: $ 7,312.00 | |
| | YEAR: 2003 | |
| | 2003 Detail Covered FICA Earnings | |
| | Earnings Totals:      Show Details | |
| | OASDI Self-employment Total: $ 9,051.00 | |
| | YEAR: 2002 | |
| | 2002 Detail Covered FICA Earnings | |
| | Earnings Totals:      Show Details | |
| | OASDI Self-employment Total: $ 9,163.00 | |
| | YEAR: 2001 | |
| | 2001 Detail Covered FICA Earnings | |
| | Earnings Totals:      Show Details | |
| | OASDI Self-employment Total: $ 9,421.00 | |
| | YEAR: 2000 | |
| | 2000 Detail Covered FICA Earnings | |
| | Earnings Totals:      Show Details | |
| | OASDI Self-employment Total: $ 8,316.00 | |
| | YEAR: 1999 | |
| | 1999 Detail Covered FICA Earnings | |
| | Earnings Totals:      Show Details | |
| | OASDI Self-employment Total: $ 7,007.00 | |
| | YEAR: 1998 | |
| | 1998 Detail Covered FICA Earnings | |
| | Earnings Totals:      Show Details | |
| | OASDI Self-employment Total: $ 10,534.00 | |
| | YEAR: 1997 | |
| | 1997 Detail Covered FICA Earnings | |
| | Earnings Totals:      Show Details | |
| | OASDI Self-employment Total: $ 10,781.00 | |
| 610903760 | Employer: HOMER R FORTNEY    Show Address | |
| | YEAR: 1995 | |
| | 1995 Detail Covered FICA Earnings | |
| | Earnings Totals:      Show Details | |
| | Wage Total: $ 2,240.00 | |
| | OASDI Employer Total: $ 2,240.00 | |

EXHIBIT NO. 7D
PAGE: 4 OF 9

| SSN: | 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 | Unit: | WHAT | Date From: | 94 | to: | 16 | Get Data |
|------|-------------|-------|------|------------|----|----|----|----------|

MEF: NA: L L NAILLI  DB: 07/1962 SX: F AK: CORNET

**DETAIL COVERED FICA EARNINGS AND EMPLOYER NAME AND ADDRESS FOR YEARS REQUESTED**

**94 NONE**

EIN: 610903760

HOMER R FORTNEY
48 1ST ST
PO BOX 426
CUMBERLAND  KY 40823-0426

| RPYR | REO | LOAC | NAME | EARNINGS | TOTAL COMP | CONTROL NUMBER | PR | S |
|------|-----|------|------|----------|-----------|----------------|----|----|
| 0095 | AA | | L   NAILLI | 2240.00 | 2240.00 | 5131-73-16369 | 01196 | V |
| | | | Wage Total | 2240.00 | | | | |
| | | | OASDI Employer Total | 2240.00 | | | | |
| 95 | | | OASDI Yearly Total | 2240.00 | | | | |

**96 NONE**

**SELF-EMPLOYMENT**

| RPYR | REO | SMEM | NAME | EARNINGS | SE NUMBER | CONTROL NUMBER | PR | S |
|------|-----|------|------|----------|-----------|----------------|----|----|
| SE97 | OI | | L   NAILLI | 10781.00 | 610700000 | 2061-06-04849 | 02498 | V |
| | | | OASDI Self-employment Total | 10781.00 | | | | |
| 97 | | | OASDI Yearly Total | 10781.00 | | | | |

**SELF-EMPLOYMENT**

| RPYR | REO | SMEM | NAME | EARNINGS | SE NUMBER | CONTROL NUMBER | PR | S |
|------|-----|------|------|----------|-----------|----------------|----|----|
| SE98 | OI | | L   NAILLI | 10534.00 | 610800000 | 2210-97-15618 | 01599 | V |
| | | | OASDI Self-employment Total | 10534.00 | | | | |
| 98 | | | OASDI Yearly Total | 10534.00 | | | | |

**SELF-EMPLOYMENT**

**203**

Case: 401-08-8702193-JMH  Doc #: 12-1  Filed: 12/09/16

| RPYR | REO | SMEM | NAME | EARNINGS | SE NUMBER | CONTROL NUMBER | PR | S |
|------|-----|------|------|----------|-----------|----------------|-----|---|
| SE99 | OI | | L   NAILLI | 7007.00 | 610900000 | 2211-03-18498 | 01100 | V |
| | | | OASDI Self-employment Total | 7007.00 | | | | |
| 99 | | | OASDI Yearly Total | 7007.00 | | | | |

### SELF-EMPLOYMENT

| RPYR | REO | SMEM | NAME | EARNINGS | SE NUMBER | CONTROL NUMBER | PR | S |
|------|-----|------|------|----------|-----------|----------------|-----|---|
| SE00 | OI | | L   NAILLI | 8316.00 | 610000000 | 2210-88-10617 | 01801 | V |
| | | | OASDI Self-employment Total | 8316.00 | | | | |
| 00 | | | OASDI Yearly Total | 8316.00 | | | | |

### SELF-EMPLOYMENT

| RPYR | REO | SMEM | NAME | EARNINGS | SE NUMBER | CONTROL NUMBER | PR | S |
|------|-----|------|------|----------|-----------|----------------|-----|---|
| SE01 | OI | | L   NAILLI | 9421.00 | 610100000 | 2211-05-35890 | 01702 | V |
| | | | OASDI Self-employment Total | 9421.00 | | | | |
| 01 | | | OASDI Yearly Total | 9421.00 | | | | |

### SELF-EMPLOYMENT

| RPYR | REO | SMEM | NAME | EARNINGS | SE NUMBER | CONTROL NUMBER | PR | S |
|------|-----|------|------|----------|-----------|----------------|-----|---|
| SE02 | OI | | L   NAILLI | 9163.00 | 610200000 | 2210-51-77962 | 00703 | V |
| | | | OASDI Self-employment Total | 9163.00 | | | | |
| 02 | | | OASDI Yearly Total | 9163.00 | | | | |

### SELF-EMPLOYMENT

| RPYR | REO | SMEM | NAME | EARNINGS | SE NUMBER | CONTROL NUMBER | PR | S |
|------|-----|------|------|----------|-----------|----------------|-----|---|
| SE03 | OI | | L   NAILLI | 9051.00 | 610300000 | 2110-94-40804 | 01504 | V |

|  | OASDI Self-employment Total | 9051.00 |
|---|---|---|
| 03 | OASDI Yearly Total | 9051.00 |

### SELF-EMPLOYMENT

| RPYR | REO | SMEM | NAME | EARNINGS | SE NUMBER | CONTROL NUMBER | PR | S |
|---|---|---|---|---|---|---|---|---|
| SE04 | OI | | L   NAILLI | 7312.00 | 610400000 | 2211-03-16648 | 01505 | V |
| | | | OASDI Self-employment Total | 7312.00 | | | | |
| 04 | | | OASDI Yearly Total | 7312.00 | | | | |

### SELF-EMPLOYMENT

| RPYR | REO | SMEM | NAME | EARNINGS | SE NUMBER | CONTROL NUMBER | PR | S |
|---|---|---|---|---|---|---|---|---|
| SE05 | OI | | L   NAILLI | 5445.00 | 610500000 | 2210-73-02803 | 01206 | V |
| | | | OASDI Self-employment Total | 5445.00 | | | | |
| 05 | | | OASDI Yearly Total | 5445.00 | | | | |

| 06 NONE |
|---|
| 07 NONE |
| 08 NONE |
| 09 NONE |
| 10 NONE |
| 11 NONE |
| 12 NONE |
| 13 NONE |
| 14 NONE |
| 15 NONE |
| 16 NONE |

**DETAIL NON-COVERED EARNINGS AND W-2 PENSION DATA AND EMPLOYER NAME AND ADDRESS FOR YEARS REQUESTED**

NO NON-COVERED EARNINGS AND W-2 PENSION DATA POSTED FOR YEARS REQUESTED

SSN: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  Name:L L NAILLI  Yrs.1994-2016

EXHIBIT NO. 7D
Page: 2019
PAGE: 7 OF 9

DETAIL RAILROAD EARNINGS FOR YEARS REQUESTED

NO RR EARNINGS FOR YEARS REQUESTED

REMARKS

CLAIMS ACTIVITY--SEE MBR

SSN: 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  Unit: WHAT  Date From: 94  to: 16  Get Data

| EIN | Show All Addresses | | | |
|---|---|---|---|---|
| 000000000 | Self-employment (For SGA criteria, see DI 10510.010) | | | |
| | Year | Amount | Monthly SGA Amount | Monthly Blind SGA Amount |
| | 2005 | $5,445.00 | $830 | $1380 |
| | 2004 | $7,312.00 | $810 | $1350 |
| | 2003 | $9,051.00 | $800 | $1330 |
| | 2002 | $9,163.00 | $780 | $1300 |
| | 2001 | $9,421.00 | $740 | $1240 |
| | 2000 | $8,316.00 | $700 | $1170 |
| | 1999 | $7,007.00 | $500/700 | $1110 |
| | 1998 | $10,534.00 | $500 | $1050 |
| | 1997 | $10,781.00 | $500 | $1000 |
| 610903760 | Employer: HOMER R FORTNEY    Show Address | | | |
| | Year | Amount | Monthly SGA Amount | Monthly Blind SGA Amount |
| | 1995 | $2,240.00 | $500 | $940 |

http://what.ba.ssa.gov/deqy/mainwhat.cfm

2/16/2016

SSN: 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 | Unit: WHAT | Date From: 94 | to: 16 | Get Data

| Multiple SSNs |
|---|
| No Multiple SSNs present |
| **Non-Covered Earnings** |
| NO NON-COVERED EARNINGS AND W-2 PENSION DATA POSTED FOR YEARS REQUESTED |
| **Railroad Earnings** |
| NO RR EARNINGS FOR YEARS REQUESTED |
| **Remarks** |
| CLAIMS ACTIVITY--SEE MBR |

Case: 7:16-cv-00193-JMH   Doc #: 12-1   Filed: 12/09/16   Page: 213 of 435 - Page ID#: 282

EXHIBIT NO. 8D
PAGE 1 OF 1

'Y' MEANS SSN    IS   ON THE REPORT. OVERKEY WITH 'X'S' FOR DETAILS.
'N' MEANS SSN IS NOT ON THE REPORT.
'QUARTER' MEANS WHEN THE PAYMENTS WERE MADE.

```
        NEW HIRE REPORT:  N
                        WAGE          UNEMPLOYMENT
        QUARTER         REPORT          REPORT
        4TH/2015          N               N
        3RD/2015          N               N
        2ND/2015          N               N
        1ST/2015          N               N
        4TH/2014          N               N
        3RD/2014          N               N
        2ND/2014          N               N
        1ST/2014          N               N
```

# SUPPLEMENTAL QUESTIONNAIRE

## (ANXIETY, DEPRESSION, NERVOUSNESS, OR ANY SIMILAR CONDITION)

1. Have you ever received treatment from a psychiatrist, or any type of mental health facility, such as a comprehensive care center? NO

   If yes, provide the complete name, address, and phone number of the physician(s), and/or treatment centers, as well as the dates of treatment.

2. Have you ever been hospitalized or received emergency room treatment for anxiety, depression, nervousness, or any other similar condition? No

   If yes, provide the complete name, address, and phone number of the hospital(s), as well as the date that you were there.

3. Are you currently on any medication for anxiety, depression, nervousness, or any other similar condition? YES

   If yes, what is it called? WELLBUTRIN

   How long have you been taking it? 5 YEARS

   Who prescribed it? (include the complete address and phone number of the doctor if not already shown)
   MOUNTAIN COMP HEALTH CARE
   226 MEDICAL PLAZA LANE
   WHITESBURG, KY 41858

   When did you last see this doctor? 06/2008

   When is your next appointment?

   Signature _Serena Mullins_ Date _6/19/08_

**210**

(I)

RE: LORENA LYNN NAILLIEUX
SSN: 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
CASE No:
DEA:

## PAIN QUESTIONNAIRE

The answers to these questions will help us determine whether your condition is disabling within
the meaning of the law. Please fully explain your answers wherever possible by giving
descriptions and examples. If you need more room for your answers, you may use additional
sheets of paper.

1.    Please describe your pain in the following terms:

   a.    When did it begin?
         October 15, 2005

   b.    Where is the pain located?
         BACK, LEGS AND FEET

   c.    Describe how the pain hurts.
         IT IS A SHARP, PINCHING, STABBING, CONSTANT PAIN

   d.    Does the pain spread to other places? If yes, where?
         No.

   e.    How often does the pain occur?
         DAILY

   f.    What brings the pain on? (Please be very specific.)
         SITTING, STANDING AND WALKING FOR LONG PERIODS AT A TIME

   g.    How long does the pain last?
         IT IS A CONSTANT PAIN

2.    Does rest relieve your pain? How soon?
      No.

3.    If you take medicine for your pain:

   a.    What is the medicine called?

   b.    How much medicine do you take?

   c.    How often do you take the medicine?

   d.    How long have you been taking the medicine?

   e.    Does the medicine relieve the pain? How soon?

   f.    Does the medicine cause any side effects? If yes, what are the side effects?

   g.    Who prescribed the medication?

         Doctor/Facility Name:

         Address:

         Telephone:

DEP 116  (03/02)

**211**

(3)

RE: LORENA LYNN NAILLIEUX
SSN: 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
CASE No:
DEA:

11.    Is there anyone else we may contact who has knowledge about your pain?

Name                          Telephone No.              Relationship
STEVE NAILLIEUX               (606) 589-4149             HUSBAND

Street Address                City                       State             Zip Code
85 BARLOW BRANCH              PARTRIDGE                  KENTUCKY          40862

_Lorena Naillieux_                                        6/19/08
CLAIMANT'S SIGNATURE                                     Date
Telephone No. (606) 589-4149

DEP  116  (03/02)

**212**

EXHIBIT NO. 3E
PAGE: 1 OF 8
Form Approved
OMB No. 0960-0681

SOCIAL SECURITY ADMINISTRATION

# FUNCTION REPORT - ADULT
*How your illnesses, injuries, or conditions limit your activities*

For SSA Use Only
Do not write in this box

Related SSN

Number Holder

## SECTION A - GENERAL INFORMATION

**1. NAME OF DISABLED PERSON** *(First, Middle, Last)*

Lorena    Naillieux

**2. SOCIAL SECURITY NUMBER**

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

**3. DATE** *(Month, Day, Year)*

**4. YOUR DAYTIME TELEPHONE NUMBER** *(if there is no telephone number where you can be reached, please give us a daytime number where we can leave a message for you.)*

(606)  589-4149
Area    Phone Number

☒ Your Number        ☐ Message Number        ☐ None

**5. a. Where do you live?** *(Check one.)*

☒ House          ☐ Apartment          ☐ Boarding House          ☐ Nursing Home
☐ Shelter        ☐ Group Home         ☐ Other *(What?)*

**b. With whom do you** *live? (Check one.)*

☐ Alone          ☒ With Family          ☐ With Friends
☐ Other *(Describe relationship.)* _____

## SECTION B - INFORMATION ABOUT DAILY ACTIVITIES

6   Describe what you do from the time you wake up until going to bed.

I get up, get something to drink, sit and watch tv, get up take care of my personal needs, sit back down, try to do some light house Keeping with breaks in between, fix something to eat, sit and watch tv and go to bed

**213**

7. Do you take care of anyone else such as a wife/husband, children, grandchildren, parents, friend, other?  ☐ Yes  ☒ No
   If "YES," for whom do you care, and what do you do for them? _____
   _____

8. Do you take care of pets or other animals?  ☐ Yes  ☒ No
   If "YES," what do you do for them? _____
   _____

9. Does anyone help you care for other people or animals?  ☐ Yes  ☒ No
   If "YES," who helps, and what do they do to help? _____
   _____

10. What were you able to do before your illnesses, injuries, or conditions that you can't do now?
    _____

11. Do the illnesses, injuries, or conditions affect your sleep?  ☒ Yes  ☐ No
    If "YES," how? I am constantly moving because of the pain

12. **PERSONAL CARE** (Check here ☐ if **NO PROBLEM** with personal care.)
    a. Explain how your illnesses, injuries, or conditions affect your ability to:
    Dress  I have trouble bending over
    Bathe  It is easier for me to take showers
    Care for hair  It is hard holding my arms up
    Shave  _____
    Feed self  _____
    Use the toilet  _____
    Other?  _____

**214**

b. Do you need any special reminders to take care of personal needs and grooming?   ☐ Yes   ☒ No

If "YES," what type of help or reminders are needed?

_____

c. Do you need help or reminders taking medicine?   ☐ Yes   ☒ No

If "YES," what kind of help do you need?

_____

## 13. MEALS

a. Do you prepare your own meals?   ☒ Yes   ☐ No

If "Yes," what kind of food do you prepare? (For example, sandwiches, frozen dinners, or complete meals with several courses).  *any thing quick and easy*

How often do you prepare food or meals? *(For example, daily, weekly, monthly.)*

*Daily*

How long does it take you?  *30 minutes*

Any changes in cooking habits since the illness, injuries, or conditions began?

_____

b. If "No," explain why you cannot or do not prepare meals.

_____

## 14. HOUSE AND YARD WORK

a. List household chores, both indoors and outdoors, that you are able to do. *(For example, cleaning, laundry, household repairs, ironing, mowing, etc.)*  *general cleaning*

b. How much time does it take you, and how often do you do each of these things?

*I do some every day because it takes so long to do it*

c. Do you need help or encouragement doing these things?   ☐ Yes   ☒ No

If "YES," what help is needed?

_____

**215**

d. If you don't do house or yard work, explain why not. _____

_____

## 15. GETTING AROUND

a. How often do you go outside? __Daily_____

If you don't go out at all, explain why not. _____

_____

b. When going out, how do you travel? *(Check all that apply.)*

☐ Walk    ☒ Drive a car    ☒ Ride in a car    ☐ Ride a bicycle

☐ Use public transportation    ☐ Other *(Explain)* _____

c. When going out, can you go out alone?    ☒ Yes    ☐ No

If "NO," explain why you can't go out alone. _____

_____

d. Do you drive?    ☒ Yes    ☐ No

If you don't drive, explain why not. _____

_____

## 16. SHOPPING

a. If you do any shopping, do you shop: *(Check all that apply.)*

☒ In stores    ☐ By phone    ☐ By mail    ☐ By computer

b. Describe what you shop for. __groceries_____

_____

c. How often do you shop and how long does it take?  __I go twice a week__

__and it takes about 30 minutes_____

## 17. MONEY

a. Are you able to:

| | | | | | |
|---|---|---|---|---|---|
| Pay bills | ☒ Yes | ☐ No | Handle a savings account | ☒ Yes | ☐ No |
| Count change | ☒ Yes | ☐ No | Use a checkbook/money orders | ☒ Yes | ☐ No |

Explain all "NO" answers. _____

_____

b. Has your ability to handle money changed since the illnesses, injuries, or conditions began?  ☐ Yes  ☒ No

If "YES," explain how the ability to handle money has changed. _____

## 18. HOBBIES AND INTERESTS

a. What are your hobbies and interests? *(For example, reading, watching TV, sewing, playing sports, etc.)*  I like to paint

b. How often and how well do you do these things?  I have not don it in two months

c. Describe any changes in these activities since the illnesses, injuries, or conditions began.
I use to do it twice a week

## 19. SOCIAL ACTIVITIES

a. Do you spend time with others? *(In person, on the phone, on the computer, etc.)*  ☒ Yes  ☐ No

If "YES," describe the kinds of things you do with others. _____

How often do you do these things?  Daily

b. List the places you go on a regular basis. *(For example, church, community center, sports events, social groups, etc.)*  I go to church

Do you need to be reminded to go places?  ☐ Yes  ☒ No
How often do you go and how much do you take part?  I go once a week

Do you need someone to accompany you?  ☐ Yes  ☒ No

c. Do you have any problems getting along with family, friends, neighbors, or others?     ☐ Yes   ☒ No

If "YES," explain. _____

_____

d. Describe any changes in social activities since the illnesses, injuries, or conditions began.

_____

---

## SECTION C - INFORMATION ABOUT ABILITIES

20. a. Check any of the following items that your illnesses, injuries, or conditions affect:

☒ Lifting     ☒ Walking     ☒ Stair Climbing     ☐ Understanding
☒ Squatting     ☒ Sitting     ☐ Seeing     ☐ Following Instructions
☒ Bending     ☒ Kneeling     ☒ Memory     ☒ Using Hands
☒ Standing     ☐ Talking     ☐ Completing Tasks     ☐ Getting Along With Others
☒ Reaching     ☐ Hearing     ☒ Concentration

Please explain how your illnesses, injuries, or conditions affect each of the items you checked. (For example, you can only lift *[how many pounds]*, or you can only walk *[how far]*)

_____

_____

b. Are you:   ☒ Right Handed?    ☐ Left Handed?

c. How far can you walk before needing to stop and rest? _200 ft_

If you have to rest, how long before you can resume walking? _5 minutes_

d. For how long can you pay attention? _As long as needed_

e. Do you finish what you start? *(For example, a conversation, chores, reading, watching a movie)*    ☒ Yes   ☐ No

f. How well do you follow written instructions? *(For example a recipe)* _good_

_____

g. How well do you follow spoken instructions? _good_

_____

h. How well do you get along with authority figures? *(For example, police, bosses, landlords or teachers)* _____

_____

i. Have you ever been fired or laid off from a job because of problems getting along with other people?  ☐ Yes  ☒ No

If "YES," please explain. _____

_____

If "YES," please give name of employer. _____

j. How well do you handle stress? _Not good_____

_____

k. How well do you handle changes in routine? _Not good_____

_____

l. Have you noticed any unusual behavior or fears?  ☐ Yes  ☒ No
If "YES," please explain. _____

_____

21. Do you use any of the following? *(Check all that apply.)*

☐ Crutches        ☐ Cane             ☐ Hearing Aid
☐ Walker          ☐ Brace/Splint     ☐ Glasses/Contact Lenses
☐ Wheelchair      ☐ Artificial Limb  ☐ Artificial Voice Box
☐ Other *(Explain)*

Which of these were prescribed by a doctor? _____

_____

When was it prescribed? _____

_____

When do you need to use these aids? _____

_____

## SECTION D - REMARKS

Use this section for any added information you did not show in earlier parts of this form. When you are done with this section (or if you didn't have anything to add), be sure to complete the fields at the bottom of this page.

Name of person completing this form *(Please print)*

*[signature]* Lorena Maullen

Date *(month, day, year)*

6|19|08

Address *(Number and Street)*

85 Barbw Branch

email address *(optional)*

City

Partridge

State

Ky

Zip Code

40862

220

# DISABILITY REPORT - FIELD OFFICE - Form SSA-3367

## (3367) ID/Prior Filings

**Identifying Information**

1. Name of Person whose Social Security Record this Claim is being filed:

**Lorena Lynn Naillieux**

His or Her Social Security Number: **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**

Name of Claimant (if different from above):

SSN (if different from above):

Gender: **Female**

Date Of Birth: **07/31/1962**

2. Claimant's Alleged Onset Date: **10/15/2005**

3. Potential Onset Date (if different from above):

4. Reason for Potential Onset Date:

5. Explanation for Potential Onset Date, when applicable:

**Miscellaneous Information**

6. Protective Filing Date:

Date Last Insured (DIB/Freeze case): **12/31/2010**

Beginning of Prescribed Period (DWB):

End of Prescribed Period:

Controlling Date:

Closed Period Case: **No**

**Prior Filing Information**

7. Prior Filing(s): **No**

If Yes, and you are not sending the prior folder, enter the following:

## (3367) Presumptive

The Presumptive Disability page details are not being displayed here because there is no SSI claim on this case.

---

## (3367) Observations

9. Observations/Perceptions:

How was the Interview Conducted? **No contact with claimant**

Observations: Describe the claimant's behavior, appearance, grooming, degree of limitations, etc.
**claim recd from atty office**

---

## (3367) Development

10. Development Initiated by FO:

A. Medical:

B. Other:

C. Forms to be completed by applicant and sent to the DDS:
SSA-3371:
SSA-3369:
Other:

11. Was medical evidence brought in to the FO by the claimant? **No**
12. Is DDS capability development needed? **No**
Remarks:

Name of Interviewer: **D. Taylor**

**222**

EXHIBIT NO. 4E
PAGE: 3 OF 3

Phone Number: **606-886-8525 ext. 207**

Name of Person Completing Form: **D. Taylor**

Date: **06/20/2008**

**Form SSA-3367 EDCS**

# DISABILITY REPORT - ADULT - Form SSA-3368

## (3368) Section 1 - Information About the Disabled Person

A. Name: **Lorena Lynn Naillieux**

B. Social Security Number: **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**

C. Daytime Telephone Number (If you do not have a number where we can reach you, give us a daytime number where we can leave a message.):

**606-589-4149 Your number**

D. Give the name of a friend or a relative that we can contact (other than your doctors) who knows about your illnesses, injuries, or conditions and can help you with your claim.

| | |
|---|---|
| Name: | **Steve Naillieux** |
| Relationship: | **Spouse** |
| Address: | **85 BARLOW BRANCH PARTRIDGE, KY 40862** |
| Daytime Phone: | **606-589-4149 - Voice** |
| | |

E. What is your height without shoes? **4' 11"**

F. What is your weight without shoes? **190 lbs.**

G. Do you have a medical assistance card? **No**

   If "YES", show the number here:

H. Can you speak and understand English? **Yes**

   If "NO", what is your preferred language?

   NOTE: If you cannot speak and understand English, we will provide an interpreter, free of charge.

   If you cannot speak and understand English, is there someone we may contact who speaks and understands English and will give you messages?

   (If "YES", is this the same person as in "D" above? If it is, show "SAME" below, if not complete below.)

I. Can you read and understand English? **Yes**

J. Can you write more than your name in English? **Yes**

## (3368) Section 2 - Your Illnesses, Injuries, or Conditions and How They Affect You

A. What are the illnesses, injuries, or conditions that limit your ability to work?

**Back problems, back pain, sleep apnea, arthritis, hernia, swelling in legs and feet, stomach problems, anxiety, depression, nervousness, liver enzymes are high, sinus problems**

B. How do your illnesses, injuries, or conditions limit your ability to work?

**I cannot sit, stand or walk for long periods at a time. I am unable to lift and carry anything heavy due to the constant pain that I am in. I have trouble remembering and concentrating on things.**

C. Do your illnesses, injuries, or conditions cause you pain or other symptoms? **Yes**

D. When did your illnesses, injuries, or conditions first interfere with your ability to work? **101505**

E. When did you become unable to work because of your illnesses, injuries, or conditions?

**10/15/2005**

F. Have you ever worked? **Yes**

G. Did you work at any time after the date your illnesses, injuries, or conditions first interfered with your ability to work? **No**

H. If "Yes," did your illnesses, injuries, or conditions cause you to:

   work fewer hours?

   change your job duties?

   make any job-related changes such as your attendance, help needed, or employers?

Explain:


I. Are you working now? **No**

  If "NO," when did you stop working? **10/15/2005**

J. Why did you stop working?

**my conditions**



## (3368) Section 3 - Information About Your Work


A. List all the jobs that you had in the 15 years before you became unable to work because of your illnesses, injuries, or conditions.

* = Longest Job Held

**225**

| Longest Job Held | Job Title | Type of Business | Dates Worked (From-To) | Hours Per Day | Days Per Week | Rate of Pay/Per |
|---|---|---|---|---|---|---|
| | dental assistant | dentist office | 1991 - 1994 | 8 | 5 | $6.00/Hour |
| * | janitor | weather service | 1996 - 2005 | 4 | 5 | $1,300.00/Month |

B. Which job did you do the longest?

**janitor**

C. Describe this job. What did you do all day? (If you need more space, write in the "Remarks" section.):

**I would do general cleaning, like mop, sweep, dust, take out the garbage, clean the windows.**

D. In this job, did you:

Use machines, tools, or equipment? **Yes**

Use technical knowledge or skills? **Yes**

Do any writing, complete reports, or perform duties like this? **No**

E. In this job, how many total hours each day did you:

Walk? **2**

Stand? **2**

Sit? **0**

Climb? **0.5**

Stoop? (Bend down & forward at waist.): **0.5**

Kneel? (Bend legs to rest on knees.): **0**

Crouch? (Bend legs & back down & forward.): **0**

Crawl? (Move on hands & knees.): **0**

Handle, grab or grasp big objects? **8**

Reach? **8**

Write, type or handle small objects? **8**

F. Lifting and Carrying (Explain what you lifted, how far you carried it, and how often you did this.):

**I would lift and carry cleaning supplies.**

G. Heaviest weight lifted: **20 lbs.**

H. Weight you frequently lifted (By frequently, we mean from 1/3 to 2/3 of the workday.):

**Less than 10 lbs.**

I. Did you supervise other people in this job? **No**

How many people did you supervise?

**226**

What part of your time was spent supervising people?

Did you hire and fire employees?

J. Were you a lead worker? **No**

---

## (3368) Section 4 - Information About Your Medical Records

---

A. Have you been seen by a doctor/hospital/clinic or anyone else for the illnesses, injuries, or conditions that limit your ability to work?

**Yes**

B. Have you been seen by a doctor/hospital/clinic or anyone else for emotional or mental problems that limit your ability to work?

**Yes**

C. List other names you have used on your medical records:

Tell us who may have medical records or other information about your illnesses, injuries, or conditions.

D. List each Doctor/HMO/Therapist. Include your next appointment:

| Name: | **MICHAEL BOLAND MD** | | |
|---|---|---|---|
| Address: | **740 S LIMESTONE STE K401** **LEXINGTON, KY 40536** | Date First Visit: | **2005** |
| | | Date Last Visit: | **2007** |
| Phone: | Patient ID # : | Next Appointment: | |
| Reasons for Visits: | | | |
| **motorcycle accident** | | | |
| What treatment was received? | | | |
| **follow ups and medication** | | | |

E. List each Hospital/Clinic. Include your next appointment:

| Name: | **ARH TRI CITY MEDICAL CENTER** |
|---|---|
| Address: | **18880 N US HIGHWAY 119** **CUMBERLAND, KY 40823-8106** |
| Phone: | **606-589-0130** |

**227**

| Inpatient Date In 1: | | Inpatient Date Out 1: | |
|---|---|---|---|
| Inpatient Date In 2: | | Inpatient Date Out 2: | |
| Inpatient Date In 3: | | Inpatient Date Out 3: | |
| Outpatient Date First Visit: | **2008** | Outpatient Date Last Visit: | **05/2008** |

Emergency Room Dates of Visits:

Next Appointment:

Your Hospital/Clinic Number:

Reasons for Visits:

**general care**

What treatment did you receive?

**exams and tests**

What doctors do you see at this hospital/clinic on a regular basis?

**Dr. Pamela Sheffield**

| Name: | **EAST KY EYE EARS NOSE & THROAT SPECIALISTS** | | |
|---|---|---|---|
| Address: | **255 CHURCH ST STE 101** | | |
| | **PIKEVILLE, KY 41501-3476** | | |
| Phone: | **606-432-4494** | | |
| Inpatient Date In 1: | | Inpatient Date Out 1: | |
| Inpatient Date In 2: | | Inpatient Date Out 2: | |
| Inpatient Date In 3: | | Inpatient Date Out 3: | |
| Outpatient Date First Visit: | **01/2008** | Outpatient Date Last Visit: | **05/2008** |

Emergency Room Dates of Visits:

Next Appointment:

Your Hospital/Clinic Number:

Reasons for Visits:

**allergies**

What treatment did you receive?

**exams and medication**

What doctors do you see at this hospital/clinic on a regular basis?

**Dr. Michael Cecil**

| Name: | **MOUNTAIN COMP EXTENDED SERVICES** | | |
|---|---|---|---|
| Address: | **50 E MAIN ST** | | |
| | **WHITESBURG, KY 41858-7346** | | |
| Phone: | **606-633-4476** | | |
| Inpatient Date In 1: | | Inpatient Date Out 1: | |
| Inpatient Date In 2: | | Inpatient Date Out 2: | |

**228**

| Inpatient Date In 3: | | Inpatient Date Out 3: | |
|---|---|---|---|
| Outpatient Date First Visit: | **1998** | Outpatient Date Last Visit: | **2007** |

Emergency Room Dates of Visits:
Next Appointment:
Your Hospital/Clinic Number:
Reasons for Visits:
**general care**
What treatment did you receive?
**exams and medication**
What doctors do you see at this hospital/clinic on a regular basis?

F. Does anyone else have medical records or information about your illnesses, injuries, or conditions (for example, Workers' Compensation, insurance companies, prisons, attorneys, or welfare agency), or are you scheduled to see anyone else?
**No**

## (3368) Section 5 - Medications

Do you currently take any medications for your illnesses, injuries, or conditions? **Yes**

If "YES," please tell us the following: (Look at your medicine containers, if necessary.)

| Name of Medicine | Prescribed By (Name of Doctor) | Reason For Medicine | Side Effects You Have |
|---|---|---|---|
| **Diclofenac** | **MOUNTAIN COMP EXTENDED SERVICES** | **arthritis** | **none** |
| **estratest** | **MOUNTAIN COMP EXTENDED SERVICES** | **estrogen** | **none** |
| **Fexofenadine** | **EAST KY EYE EARS NOSE & THROAT SPECIALISTS** | **allergies** | **none** |
| **Nasonex** | **EAST KY EYE EARS NOSE & THROAT SPECIALISTS** | **allergies** | **none** |
| **Wellbutrin** | **MOUNTAIN COMP EXTENDED SERVICES** | **depression** | **none** |

**229**

## (3368) Section 6 - Tests

Have you had, or will you have, any medical tests for your illnesses, injuries, or conditions?
 **No**

If "YES," please tell us the following: (Give approximate dates, if necessary.)

| Kind of Test | When Was/Will Test Be Done? (Month, day, year) | Where Done | Who Sent You For This Test |
|---|---|---|---|
| | | | |

## (3368) Section 7 - Education/Training Information

A. Highest grade of school completed: **1 year of college**
   Approximate date completed:        **1991**
B. Did you attend special education classes? **No**
If "YES",
.
C. Have you completed any type of special job training, trade or vocational school?
**No**
   If "YES", what type?

   Approximate date completed:

## (3368) Section 8 - Vocational Rehabilitation, Employment, or Other Support Services Information

**230**

Are you participating in the Ticket Program or another program of vocational rehabilitation services, employment services, or other support services to help you go to work?

**No**

## (3368) Section 9 - Remarks

Use this section for any additional information you did not show in earlier parts of this form. When you are done with this section (or if you don't have anything to add), be sure to go to the next page and complete the blocks there.

| Name of person completing this form: | Date Form Completed (Month, day, year): |
|---|---|

Address (Number and street, City, State, Zip Code):

**85 BARLOW BRANCH**
**PARTRIDGE, KY 40862**

e-mail address (optional):

**Form SSA-3368 EDCS**

231

| CASE ANALYSIS | SSN |
| | 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 |
| | NAME |
| | NAILLIEUX, LORENA LYNN |
| | STATE |
| | KY |

INITIAL  46 yof alleging back pain and problems, sleep apnea, arthritis, hernia, swelliung in legs and feet, stomach and sinus problems, liver enzymes high and mental addressed elsewhere.  Medical in file shows 06/18/08 testing finding no sleep apnea and MRI 07/03/08 noting moderate HNP at C5-6. ASCE done 8-27-08 found 61.5", 196#, BP 126/78, VA 20/20 bilat uncorrected, normal gait without assistive device, 1 of 18 fibromyalgia trigger points reported as tender, lungs cta, heart rrr, UE/LE/hands non tender and no swellind or warmth, ROM for hip for flex redused from 100 to 90 deg and knees Flex Ext from 150 to 130 degrees due to obesity per vendor opinion. SLRs neg. Arthritis workup reported by clmt done 5-6 yrs ago neg. All other ROMs wnls. These conditions, singly or combined, impose no significant limitations on basic  work related activities and are considered not severe. There is no TP opinion to address and claimants reported limitations to  lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing and using hands considered partially credible due to pain in fund of evidence.

☐ THESE FINDINGS COMPLETE THE MEDICAL PORTION OF THE DISABILITY DETERMINATION.

| SIGNATURE *Jim Hoppin* | SPECIALTY | OFFICE |
| NAME (PRINTED OR TYPED) Jim Hoppin | PAGE 1 OF 1 | DATE 09/10/2008 |

# DISABILITY REPORT - FIELD OFFICE - Form SSA-3367

## (3367) ID/Prior Filings

**Identifying Information**

1. Name of Person whose Social Security Record this Claim is being filed:

**Lorena Lynn Naillieux**

His or Her Social Security Number: **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**

Name of Claimant (if different from above):

SSN (if different from above):

Gender: **Female**

Date Of Birth: **07/31/1962**

2. Claimant's Alleged Onset Date:

3. Potential Onset Date (if different from above):

4. Reason for Potential Onset Date:

5. Explanation for Potential Onset Date, when applicable:

**Miscellaneous Information**

6. Protective Filing Date:

Date Last Insured (DIB/Freeze case):

Beginning of Prescribed Period (DWB):

End of Prescribed Period:

Controlling Date:

Closed Period Case:

**Prior Filing Information**

7. Prior Filing(s):

If Yes, and you are not sending the prior folder, enter the following:

## (3367) Presumptive

**233**

The Presumptive Disability page details are not being displayed here because there is no SSI claim on this case.

---

## (3367) Observations

9. Observations/Perceptions:

How was the Interview Conducted? **No contact with claimant**

Observations: Describe the claimant's behavior, appearance, grooming, degree of limitations, etc.

---

## (3367) Development

10. Development Initiated by FO:

A. Medical:

B. Other:

C. Forms to be completed by applicant and sent to the DDS:

SSA-3371:

SSA-3369:

Other:

11. Was medical evidence brought in to the FO by the claimant? **No**

12. Is DDS capability development needed? **No**

Remarks:

Name of Interviewer: **A. Hall**

Phone Number: **606-886-8525 ext. 241**

Name of Person Completing Form: **A. Hall**

Date: **10/02/2008**

---

**Form SSA-3367 EDCS**

# DISABILITY REPORT - APPEAL - Form SSA-3441

## (3441) Section 1 - Information About the Disabled Person

A. Name: **Lorena Lynn Naillieux**

B. Social Security Number: **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**

C. What is your daytime telephone number? (If you do not have a number where we can reach you, give us a daytime number where we can leave a message.):

**606-589-4149 Your number**

D. Give the name of a friend or relative that we can contact (other than your doctors) who knows about your illnesses, injuries, or conditions and can help with your claim.

| Name: | **Owen Cornett** |
|---|---|
| Relationship: | **Father** |
| Address: | **85 Barlow Branch** |
| | **Partridge, KY 40862** |
| Daytime Phone: | **606-589-4149 - Voice** |
| | |

## (3441) Section 2 - Information About Your Illnesses, Injuries, or Conditions

Date of Last Disability Report: **06/20/2008**

**236**

A. Has there been any change(for better or worse) in your illnesses, injuries, or conditions since you last completed a disability report? **No**

If "YES," please describe in detail:

Approximate date the change(s) occurred:

B. Do you have any new physical or mental limitations as a result of your illnesses, injuries, or conditions since you last completed a disability report? **No**

If "YES," please describe in detail:

Approximate beginning date:

C. Do you have any new illnesses, injuries, or conditions since you last completed a disability report? **No**

If "YES," please describe in detail:

Approximate beginning date:

---

## (3441) Section 3 - Information About Your Medical Records

A. Since you last completed a disability report, have you seen or will you see a doctor/hospital/clinic or anyone else for the illnesses, injuries, or conditions that limit your ability to work?
**Yes**

B. Since you last completed a disability report, have you seen or will you see a doctor/hospital/clinic or anyone else for emotional or mental problems that limit your ability to work?
**Yes**

C. List other names you have used on your medical records.

Tell us who may have medical records or other information about your illnesses, injuries, or conditions since you last completed a disability report:

D. List each Doctor/HMO/Therapist. Include your next appointment.

**237**

**EXHIBIT NO. 8E**
**PAGE: 3 OF 7**

E. List each Hospital/Clinic. Include your next appointment.

| | |
|---|---|
| Name: | **ARH TRI CITY MEDICAL CENTER** |
| Address: | **18880 N US HIGHWAY 119** |
| | **CUMBERLAND, KY 40823-8106** |
| Phone: | **606-589-0130** |

| | | |
|---|---|---|
| Inpatient Date In 1: | | Inpatient Date Out 1: |
| Inpatient Date In 2: | | Inpatient Date Out 2: |
| Inpatient Date In 3: | | Inpatient Date Out 3: |
| Outpatient Date First Visit: | **2006** | Outpatient Date Last Visit: **09/2008** |

Emergency Room Dates of Visits:
Next Appointment:
Your Hospital/Clinic Number:
Reasons for Visits:
**Back problems and pain**
What treatment did you receive?
**exam, meds, follow ups**
What doctors do you see at this hospital/clinic on a regular basis?

F. Since you last completed a disability report, does anyone else have medical records or information about your illnesses, injuries, or conditions (for example, Workers' Compensation, insurance companies, prisons, attorneys, or welfare agency), or are you scheduled to see anyone else?

**Yes**

| | | | |
|---|---|---|---|
| Name: | **ERIC C CONN** | | |
| Address: | **ATTORNEY AT LAW** | Date First Visit: | **2008** |
| | **PO BOX 308** | | |
| | **STANLEY, KY 41659-0308** | Date Last Visit: | **2008** |
| Phone: | **606-478-5119** | Next Appointment: | **2008** |

Claim Number:
Reasons for Visits:
**atty**

**238**

## (3441) Section 4 - Medications

Do you currently take any prescription or non-prescription medications for your condition(s)? **Yes**

If "YES," please tell us the following: (Look at your medication containers if necessary.)

| Name of Medication | If Prescribed, Give Name of Doctor | Reason for Medication | Side Effects You Have |
|---|---|---|---|
| **Amoxicillin** | **ARH TRI CITY MEDICAL CENTER** | **Sickness** | **none** |
| **Diclofenac** | **ARH TRI CITY MEDICAL CENTER** | **Arthritis** | **none** |
| **Estratest** | **ARH TRI CITY MEDICAL CENTER** | **Estrogen** | **none** |
| **Fexofenadine** | **ARH TRI CITY MEDICAL CENTER** | **Allergies** | **none** |
| **Nasonex** | **ARH TRI CITY MEDICAL CENTER** | **Allergies** | **none** |
| **Wellbutrin** | **ARH TRI CITY MEDICAL CENTER** | **Depression** | **none** |

## (3441) Section 5 - Tests

Since you last completed a disability report, have you had any medical tests for your illnesses, injuries, or conditions or do you have any such tests scheduled?

**Yes**

If "YES," please tell us the following: (Give approximate dates, if necessary.)

| Kind of Test | When Was/Will Test Be Done? (Month, day, year) | Where Done (Name of Facility) | Who Sent You For This Test? |
|---|---|---|---|
| **X-ray Lower back** | **08/01/08** | **ARH TRI CITY MEDICAL CENTER** | **ARH TRI CITY MEDICAL CENTER** |

**239**

**(3441) Section 6 - Updated Work Information**

A. Have you worked since you last completed a disability report?

**No**

If "YES," you will be asked to give details on a separate form.

**(3441) Section 7 - Information About Your Activities**

A. How do your illnesses, injuries, or conditions affect your ability to care for your personal needs?

**no change**

B. What changes have occurred in your daily activities since you last completed a disability report? (If none, show "None")

**no change**

**(3441) Section 8 - Education/Training Information**

Have you completed any type of special job training, trade or vocational school since you last completed a disability report?

**No**

If "YES," describe what type:

Approximate date completed:

**(3441) Section 9 - Vocational Rehabilitation, Employment Services, Other Support Services, and Individualized Education Programs**

**240**

Since you last completed a disability report, have you participated, or are you participating in any program providing vocational rehabilitation, employment services, or other support services to help you go to work or in:

- an individual work plan with an employment network under the Ticket to Work Program;
- an individualized plan for employment with a vocational rehabilitation agency or any other organization;
- a Plan to Achieve Self-Support; or
- an individualized education program through an educational institution (if a student age 18-21)?

**No**

If "Yes," complete the following information:

_____

_____

### (3441) Section 10 - Remarks

Use this section for any additional information you did not show in earlier parts of this form. When you are done with this section (or if you don't have anything to add), be sure to go to the next page and complete the signature block.

_____

**241**

**I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED ALL THE INFORMATION ON THIS FORM, AND ON ANY ACCOMPANYING STATEMENTS OR FORMS, AND IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.
I UNDERSTAND THAT ANYONE WHO KNOWINGLY GIVES A FALSE OR MISLEADING STATEMENT ABOUT A MATERIAL FACT IN THIS INFORMATION, OR CAUSES SOMEONE ELSE TO DO SO, COMMITS A CRIME AND MAY BE SENT TO PRISON, OR MAY FACE OTHER PENALTIES, OR BOTH.**

| Signature of claimant or person filing on claimant's behalf (parent, guardian) | Date (Month, day, year) |
|---|---|
| Address (Number and street, city, state and ZIP code)<br><br>85 BARLOW BRANCH<br>PARTRIDGE, KY 40862 | e-mail Address (optional) |

Witnesses are required ONLY if this statement has been signed by mark (X) above. If signed by mark (X), two witnesses to the signing who know the person making the statement must sign below, giving their full addresses.

| 1. Signature of Witness | 2. Signature of Witness |
|---|---|
| Address (Number and street, city, state and ZIP code) | Address (Number and street, city, state and ZIP code) |

**Form SSA-3441 EDCS**

242

# DISABILITY REPORT - FIELD OFFICE - Form SSA-3367

## (3367) ID/Prior Filings

**Identifying Information**

1. Name of Person whose Social Security Record this Claim is being filed:

**Lorena Lynn Naillieux**

His or Her Social Security Number: **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**

Name of Claimant (if different from above):

SSN (if different from above):

Gender: **Female**

Date Of Birth: **07/31/1962**

2. Claimant's Alleged Onset Date:

3. Potential Onset Date (if different from above):

4. Reason for Potential Onset Date:

5. Explanation for Potential Onset Date, when applicable:

**Miscellaneous Information**

6. Protective Filing Date:

Date Last Insured (DIB/Freeze case):

Beginning of Prescribed Period (DWB):

End of Prescribed Period:

Controlling Date:

Closed Period Case:

**Prior Filing Information**

7. Prior Filing(s):

If Yes, and you are not sending the prior folder, enter the following:

## (3367) Presumptive

The Presumptive Disability page details are not being displayed here because there is no SSI claim on this case.

---

## (3367) Observations

9. Observations/Perceptions:

---

## (3367) Development

10. Development Initiated by FO:

A. Medical:

B. Other:

C. Forms to be completed by applicant and sent to the DDS:
SSA-3371:
SSA-3369:
Other:

11. Was medical evidence brought in to the FO by the claimant? **No**
12. Is DDS capability development needed? **No**
Remarks:

Name of Interviewer: **J. Nelson**
Phone Number: **606-886-8525 ext. 233**
Name of Person Completing Form:
Date:

**244**

EXHIBIT NO. 9E
PAGE: 3 OF 3

**Form SSA-3367 EDCS**

# DISABILITY REPORT - APPEAL - Form SSA-3441

## (3441) Section 1 - Information About the Disabled Person

A. Name: **Lorena Lynn Naillieux**

B. Social Security Number: **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**

C. What is your daytime telephone number? (If you do not have a number where we can reach you, give us a daytime number where we can leave a message.):

**606-589-4149 Your number**

D. Give the name of a friend or relative that we can contact (other than your doctors) who knows about your illnesses, injuries, or conditions and can help with your claim.

| | |
|---|---|
| Name: | **Owen Cornett** |
| Relationship: | **Father** |
| Address: | **85 Barlow Branch** |
| | **Partridge, KY 40862** |
| Daytime Phone: | **606-589-4149 - Voice** |
| | |

## (3441) Section 2 - Information About Your Illnesses, Injuries, or Conditions

Date of Last Disability Report: **10/02/2008**

**246**

A. Has there been any change(for better or worse) in your illnesses, injuries, or conditions since you last completed a disability report? **No**

If "YES," please describe in detail:

Approximate date the change(s) occurred:

B. Do you have any new physical or mental limitations as a result of your illnesses, injuries, or conditions since you last completed a disability report? **No**

If "YES," please describe in detail:

Approximate beginning date:

C. Do you have any new illnesses, injuries, or conditions since you last completed a disability report? **No**

If "YES," please describe in detail:

Approximate beginning date:

---

## (3441) Section 3 - Information About Your Medical Records

A. Since you last completed a disability report, have you seen or will you see a doctor/hospital/clinic or anyone else for the illnesses, injuries, or conditions that limit your ability to work?

**Yes**

B. Since you last completed a disability report, have you seen or will you see a doctor/hospital/clinic or anyone else for emotional or mental problems that limit your ability to work?

**No**

C. List other names you have used on your medical records.

Tell us who may have medical records or other information about your illnesses, injuries, or conditions since you last completed a disability report:

D. List each Doctor/HMO/Therapist. Include your next appointment.

**247**

E. List each Hospital/Clinic. Include your next appointment.

| Name: | **APPALACHIAN REG HOSPITAL/HARLAN** | |
|---|---|---|
| Address: | **MEDICAL RECORDS** | |
| | **81 BALL PARK RD** | |
| | **HARLAN, KY 40831** | |
| Phone: | **606-573-8100** | |
| Inpatient Date In 1: | | Inpatient Date Out 1: |
| Inpatient Date In 2: | | Inpatient Date Out 2: |
| Inpatient Date In 3: | | Inpatient Date Out 3: |
| Outpatient Date First Visit: | **2008** | Outpatient Date Last Visit: **2008** |
| Emergency Room Dates of Visits: | | |
| Next Appointment: | **None** | |
| Your Hospital/Clinic Number: | **Unknown** | |
| Reasons for Visits: | | |

**Medical Testing**

What treatment did you receive?

**Medical Testing**

What doctors do you see at this hospital/clinic on a regular basis?

**Unknown**

| Name: | **ARH TRI CITY MEDICAL CENTER** | |
|---|---|---|
| Address: | **18880 N US HIGHWAY 119** | |
| | **CUMBERLAND, KY 40823-8106** | |
| Phone: | **606-589-0130** | |
| Inpatient Date In 1: | | Inpatient Date Out 1: |
| Inpatient Date In 2: | | Inpatient Date Out 2: |
| Inpatient Date In 3: | | Inpatient Date Out 3: |
| Outpatient Date First Visit: | **2008** | Outpatient Date Last Visit: **2008** |
| Emergency Room Dates of Visits: | | |
| Next Appointment: | **2008** | |
| Your Hospital/Clinic Number: | **Unk** | |
| Reasons for Visits: | | |

**Back Problems**

What treatment did you receive?

**Examinations, medications, and follow ups.**

What doctors do you see at this hospital/clinic on a regular basis?

**Pam Sheffield**

248

| Name: | **HOLSTON VALLEY MEDICAL CENTER** | |
|---|---|---|
| Address: | **PO BOX 238** | |
| | **KINGSPORT, TN 37762** | |
| Phone: | **423-224-4000** | |
| Inpatient Date In 1: | Inpatient Date Out 1: | |
| Inpatient Date In 2: | Inpatient Date Out 2: | |
| Inpatient Date In 3: | Inpatient Date Out 3: | |
| Outpatient Date First Visit: | **2008** Outpatient Date Last Visit: | **2008** |
| Emergency Room Dates of Visits: | | |
| Next Appointment: | **None** | |
| Your Hospital/Clinic Number: | **Unknown** | |

Reasons for Visits:

**Medical Testing**

What treatment did you receive?

**Medical Testing**

What doctors do you see at this hospital/clinic on a regular basis?

**Unknown**

F. Since you last completed a disability report, does anyone else have medical records or information about your illnesses, injuries, or conditions (for example, Workers' Compensation, insurance companies, prisons, attorneys, or welfare agency), or are you scheduled to see anyone else?

**No**

## (3441) Section 4 - Medications

Do you currently take any prescription or non-prescription medications for your condition(s)? **Yes**

If "YES," please tell us the following: (Look at your medication containers if necessary.)

**249**

| Name of Medication | If Prescribed, Give Name of Doctor | Reason for Medication | Side Effects You Have |
|---|---|---|---|
| **Amoxicillin** | **ARH TRI CITY MEDICAL CENTER** | **Sickness** | **none** |
| **Diclofenac** | **ARH TRI CITY MEDICAL CENTER** | **Arthritis** | **none** |
| **Estratest** | **ARH TRI CITY MEDICAL CENTER** | **Estrogen** | **none** |
| **Fexofenadine** | **ARH TRI CITY MEDICAL CENTER** | **Allergies** | **none** |
| **Nasonex** | **ARH TRI CITY MEDICAL CENTER** | **Allergies** | **none** |
| **Omeprazole** | **ARH TRI CITY MEDICAL CENTER** | **Stomach** | **None** |
| **Wellbutrin** | **ARH TRI CITY MEDICAL CENTER** | **Depression** | **none** |

## (3441) Section 5 - Tests

Since you last completed a disability report, have you had any medical tests for your illnesses, injuries, or conditions or do you have any such tests scheduled?

**Yes**

If "YES," please tell us the following: (Give approximate dates, if necessary.)

**250**

| Kind of Test | When Was/Will Test Be Done? (Month, day, year) | Where Done (Name of Facility) | Who Sent You For This Test? |
|---|---|---|---|
| **Blood test (Not HIV)** | **12/11/2008** | **HOLSTON VALLEY MEDICAL CENTER** | **HOLSTON VALLEY MEDICAL CENTER** |
| **MRI/CT Scan    Lower Back** | **12/11/2008** | **APPALACHIAN REG HOSPITAL/HARLAN** | **APPALACHIAN REG HOSPITAL/HARLAN** |
| **MRI/CT Scan    Back** | **12/11/2008** | **HOLSTON VALLEY MEDICAL CENTER** | **HOLSTON VALLEY MEDICAL CENTER** |

## (3441) Section 6 - Updated Work Information

A. Have you worked since you last completed a disability report?
**No**
If "YES," you will be asked to give details on a separate form.

## (3441) Section 7 - Information About Your Activities

A. How do your illnesses, injuries, or conditions affect your ability to care for your personal needs?
**No change**
B. What changes have occurred in your daily activities since you last completed a disability report? (If none, show "None")
**No change**

251

## (3441) Section 8 - Education/Training Information

Have you completed any type of special job training, trade or vocational school since you last completed a disability report?

**No**

If "YES," describe what type:

Approximate date completed:

## (3441) Section 9 - Vocational Rehabilitation, Employment Services, Other Support Services, and Individualized Education Programs

Since you last completed a disability report, have you participated, or are you participating in any program providing vocational rehabilitation, employment services, or other support services to help you go to work or in:

- an individual work plan with an employment network under the Ticket to Work Program;
- an individualized plan for employment with a vocational rehabilitation agency or any other organization;
- a Plan to Achieve Self-Support; or
- an individualized education program through an educational institution (if a student age 18-21)?

**No**

If "Yes," complete the following information:

## (3441) Section 10 - Remarks

Use this section for any additional information you did not show in earlier parts of this form. When you are done with this section (or if you don't have anything to add), be sure to go to the next page and complete the signature block.

**I DECLARE UNDER PENALTY OF PERJURY THAT I HAVE EXAMINED ALL THE INFORMATION ON THIS FORM, AND ON ANY ACCOMPANYING STATEMENTS OR FORMS, AND IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.**
**I UNDERSTAND THAT ANYONE WHO KNOWINGLY GIVES A FALSE OR MISLEADING STATEMENT ABOUT A MATERIAL FACT IN THIS INFORMATION, OR CAUSES SOMEONE ELSE TO DO SO, COMMITS A CRIME AND MAY BE SENT TO PRISON, OR MAY FACE OTHER PENALTIES, OR BOTH.**

| Signature of claimant or person filing on claimant's behalf (parent, guardian) | Date (Month, day, year) |
|---|---|
| Address (Number and street, city, state and ZIP code)<br><br>85 BARLOW BRANCH<br>PARTRIDGE, KY 40862 | e-mail Address (optional) |

Witnesses are required ONLY if this statement has been signed by mark (X) above. If signed by mark (X), two witnesses to the signing who know the person making the statement must sign below, giving their full addresses.

| 1. Signature of Witness | 2. Signature of Witness |
|---|---|
| Address (Number and street, city, state and ZIP code) | Address (Number and street, city, state and ZIP code) |

**Form SSA-3441 EDCS**

# Office *of the* Inspector General

## SOCIAL SECURITY ADMINISTRATION

MEMORANDUM

Date:    May 12, 2015

To:    David F. Black
        General Counsel
        Social Security Administration

From:    Helen L. Cooper
        Acting Counsel to the Inspector General
        Social Security Administration

Subject:    Referral Pursuant to Section 1129(l) of the Social Security Act

    Pursuant to section 1129(l) of the Social Security Act, 42 U.S.C. § 1320a-8(l), the Social
Security Administration (SSA) Office of the Inspector General (OIG) previously provided you
with information regarding 1,787 individuals. These individuals were formerly represented by
attorney Eric C. Conn, or his firm, and OIG had reason to believe that fraud was involved in their
applications for Social Security benefits. Specifically, in these cases, OIG had, and still has,
reason to believe that Mr. Conn or his firm submitted pre-completed "template" Residual
Functional Capacity forms purportedly from Bradley Adkins, Ph.D., Srinivas Ammisetty, M.D.,
Frederic Huffnagle, M.D., or David P. Herr, D.O., dated between January 2007 and May 2011,
in support of the individuals' applications for benefits.

    SSA OIG understood that SSA would use this information to carry out its responsibilities to
redetermine cases involving fraud or similar fault under sections 205(u) and 1631(e)(7)(A)(i) of
the Act, 42 U.S.C. §§ 405(u) and 1383(e)(7)(A)(i). The previous referral was with the
understanding that SSA was not to take any adverse action against any individual on the list until
further notice.

    This Memorandum is to advise you that we are not aware of any objections to SSA moving
forward with its administrative processing of the redeterminations of the 1,787 individuals whose
names were previously provided by OIG to SSA on July 2, 2014. As such, this notice is to
inform SSA that it may proceed with its redetermination of the cases of the individuals on the
previously transmitted list.

    If you have any questions or need additional information, please contact me at extension 6-2323.

EXHIBIT NO. 12E

PAGE: 1 OF 6

Form Approved
OMB No. 0960-0578

SOCIAL SECURITY ADMINISTRATION

# WORK HISTORY REPORT

For SSA Use Only
Do not write in this box.

## SECTION 1 - INFORMATION ABOUT THE DISABLED PERSON

| A. Name (First, Middle Initial, Last) | B. SOCIAL SECURITY NUMBER |
|---|---|
| LORENA L NAILLIEUX | 401 – 08 – 8762 |

**C. DAYTIME TELEPHONE NUMBER** *(If you have no number where you can be reached, give us a daytime number where we can leave a message for you.)*

( 606 )  589 ‾4149
Area Code  Phone Number

x  Your Number        Message Number        None

## SECTION 2 - INFORMATION ABOUT YOUR WORK

List all the jobs that you have had in the 15 years before you became unable to work because of your illnesses, injuries, or conditions.

| Job Title | Type of Business | Dates Worked | |
|---|---|---|---|
| | | From | To |
| 1. JANITOR | WEATHER SERVICE | 1996 | 2005 |
| 2. DENTAL ASSISTANT | DENTIST OFFICE | 1991 | 1994 |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |

Work History Report - Form SSA-3369-BK

**Give us more information about Job No. 1 listed on Page 1. Estimate hours and pay if you need to.**

| JOB TITLE NO. 1 | JANITOR |
|---|---|

| Rate of Pay | Per (Check One) | | | | | | Hours per day | Days per week |
|---|---|---|---|---|---|---|---|---|
| $ 1,300.00 | Hour | Day | Week | x Month | Year | | 4 | 5 |

**Describe this job. What did you do all day?** *(If you need more space, write in the"Remarks" section.)*

I WOULD DO GENERAL CLEANING, LIKE MOP SWEEP, DUST, TAKE OUT THE GARBAGE,

CLEAN THE WINDOWS

| In this job, did you: | | | |
|---|---|---|---|
| | Use machines, tools or equipment? | x YES | NO |
| | Use technical knowledge or skills? | x YES | NO |
| | Do any writing, complete reports, or perform duties like this? | YES | x NO |

In **this job**, how many total hours each day did you:

| | | | | | |
|---|---|---|---|---|---|
| Walk? | 2 | | Kneel? *(Bend legs to rest on knees)* | | 0 |
| Stand? | 2 | | Crouch? *(Bend legs & back down & forward)* | | 0 |
| Sit? | 0 | | Crawl? *(Move on hands & knees)* | | 0 |
| Climb? | 0.5 | | Handle, grab or grasp big objects? | | 8 |
| Stoop? *(Bend down and forward at waist)* | | 0.5 | Reach? | 8 | |
| | | | Write, type or handle small objects? | | 8 |

**Lifting and Carrying** *(Explain what you lifted, how far you carried it, and how often you did this.)*
I WOULD LIFT AND CARRY CLEANING SUPPLIES

Check the **heaviest** weight lifted:

| Less than 10 lbs | 10 lbs | x 20 lbs | 50 lbs | 100 lbs. or more | Other |
|---|---|---|---|---|---|

Check weight you **frequently** lifted:  *(By frequently, we mean from 1/3 to 2/3 of the workday.)*

| X Less than 10 lbs | 10 lbs | 25 lbs | 50 lbs. or more | Other |
|---|---|---|---|---|

| Did you supervise other people in this job? | YES (Complete the next 3 Items.) | x NO (Skip to the last question on this page.) |
|---|---|---|
| How many people did you supervise? | | |
| What part of your time was spent supervising people? | | |
| Did you hire and fire employees? | YES | NO |

| Were you a lead worker? | YES | x NO |
|---|---|---|

Form SSA-3369-BK (2-2008)   ef (02-2008)

**Give us more information about Job No. 2 listed on Page 1. Estimate hours and pay if you need to.**

| JOB TITLE NO. 2 | DENTAL ASSISTANT |
|---|---|

| Rate of Pay | Per (Check One) | | | | | | Hours per day | Days per week |
|---|---|---|---|---|---|---|---|---|
| $6.00 | x Hour | Day | Week | Month | Year | | 8 | 5 |

**Describe this job. What did you do all day?** *(If you need more space, write in the "Remarks" section.)*

I WOULD HELP THE DENTIST, TAKE X-RAYS WHEN CLIENTS CAME IN, STERILIZED THE

NEEDED INSTRUMENTS, CLEAN THE ROOMS


In this job, did you:

| | | | |
|---|---|---|---|
| Use machines, tools or equipment? | x YES | NO |
| Use technical knowledge or skills? | x YES | NO |
| Do any writing, complete reports, or perform duties like this? | x YES | NO |

In **this job**, how many total hours each day did you:

| | | | |
|---|---|---|---|
| Walk? | 3 | Kneel? *(Bend legs to rest on knees)* | 0 |
| Stand? | 3 | Crouch? *(Bend legs & back down & forward)* | 0 |
| Sit? | 3 | Crawl? *(Move on hands & knees)* | 0 |
| Climb? | 0 | Handle, grab or grasp big objects? | 8 |
| Stoop? *(Bend down and forward at waist)* | 0.5 | Reach? | 8 |
| | | Write, type or handle small objects? | 8 |

**Lifting and Carrying** *(Explain what you lifted, how far you carried it, and how often you did this.)*

I DID NOT HAVE TO LIFT AND CARRY ANYTHING HEAVY ON THIS JOB



**Check the heaviest weight lifted:**

Less than 10 lbs    x 10 lbs    20 lbs    50 lbs    100 lbs. or more    Other _____

**Check weight you frequently lifted:** *(By frequently, we mean from 1/3 to 2/3 of the workday.)*

x Less than 10 lbs    10 lbs    25 lbs    50 lbs. or more    Other _____

Did you supervise other people in this job?        YES (Complete the next 3 items.)        X NO (Skip to the last question on this page.)

How many people did you supervise? _____

What part of your time was spent supervising people? _____

Did you hire and fire employees?        YES        NO

Were you a lead worker?        YES        x NO

**257**

**Give us more information about Job No. 3 listed on Page 1. Estimate hours and pay if you need to.**

| JOB TITLE NO. 3 |
|---|

| Rate of Pay | Per (Check One) | | | | | Hours per day | Days per week |
|---|---|---|---|---|---|---|---|
| $ _____ | Hour | Day | Week | Month | Year | _____ | _____ |

**Describe this job. What did you do all day?** *(If you need more space, write in the"Remarks" section.)*

_____

_____

In this job, did you:

| | | |
|---|---|---|
| Use machines, tools or equipment? | YES | NO |
| Use technical knowledge or skills? | YES | NO |
| Do any writing, complete reports, or perform duties like this? | YES | NO |

**In this job, how many total hours each day did you:**

Walk? _____
Stand? _____
Sit? _____
Climb? _____
Stoop? *(Bend down and forward at waist)* _____

Kneel? *(Bend legs to rest on knees)* _____
Crouch? *(Bend legs & back down & forward)* _____
Crawl? *(Move on hands & knees)* _____
Handle, grab or grasp big objects? _____
Reach? _____
Write, type or handle small objects? _____

**Lifting and Carrying** *(Explain what you lifted, how far you carried it, and how often you did this.)*

_____

_____

Check the **heaviest** weight lifted:

Less than 10 lbs     10 lbs     20 lbs     50 lbs     100 lbs. or more     Other _____

Check weight you **frequently** lifted: *(By frequently, we mean from 1/3 to 2/3 of the workday.)*

Less than 10 lbs     10 lbs     25 lbs     50 lbs. or more     Other _____

Did you supervise other people in this job?     YES (Complete the next 3 items.)     NO (Skip to the last question on this page.)

How many people did you supervise? _____

What part of your time was spent supervising people? _____

Did you hire and fire employees?     YES          NO

Were you a lead worker?     YES          NO

**258**

**Give us more information about Job No. 4 listed on Page 1. Estimate hours and pay if you need to.**

---

**JOB TITLE NO. 4**

---

| Rate of Pay | Per *(Check One)* | | | | | Hours per day | Days per week |
|---|---|---|---|---|---|---|---|
| $ _____ | Hour | Day | Week | Month | Year | _____ | _____ |

**Describe this job. What did you do all day?** *(If you need more space, write in the "Remarks" section.)*

_____

_____

_____

In this job, did you:

| | | |
|---|---|---|
| Use machines, tools or equipment? | YES | NO |
| Use technical knowledge or skills? | YES | NO |
| Do any writing, complete reports, or perform duties like this? | YES | NO |

In **this job**, how many total hours each day did you:

| | |
|---|---|
| Walk? _____ | Kneel? *(Bend legs to rest on knees)* _____ |
| Stand? _____ | Crouch? *(Bend legs & back down & forward)* _____ |
| Sit? _____ | Crawl? *(Move on hands & knees)* _____ |
| Climb? _____ | Handle, grab or grasp big objects? _____ |
| Stoop? *(Bend down and forward at waist)* _____ | Reach? _____ |
| | Write, type or handle small objects? _____ |

**Lifting and Carrying** *(Explain what you lifted, how far you carried it, and how often you did this.)*

_____

_____

_____

Check the **heaviest** weight lifted:

| Less than 10 lbs | 10 lbs | 20 lbs | 50 lbs | 100 lbs. or more | Other _____ |
|---|---|---|---|---|---|

Check weight you **frequently** lifted: *(By frequently, we mean from 1/3 to 2/3 of the workday.)*

| Less than 10 lbs | 10 lbs | 25 lbs | 50 lbs. or more | Other _____ |
|---|---|---|---|---|

| | | |
|---|---|---|
| Did you supervise other people in this job? | YES (Complete the next 3 items.) | NO (Skip to the last question on this page.) |
| How many people did you supervise? _____ | | |
| What part of your time was spent supervising people? _____ | | |
| Did you hire and fire employees? | YES | NO |
| Were you a lead worker? | YES | NO |

**259**

**Give us more information about Job No. 5 listed on Page 1. Estimate hours and pay if you need to.**

| JOB TITLE NO. 5 |
|---|

| Rate of Pay | Per *(Check One)* | | | | | Hours per day | Days per week |
|---|---|---|---|---|---|---|---|
| $ _____ | Hour | Day | Week | Month | Year | _____ | _____ |

**Describe this job. What did you do all day?** *(If you need more space, write in the "Remarks" section.)*

_____

_____

_____

In this job, did you:

| | | | |
|---|---|---|---|
| Use machines, tools or equipment? | YES | NO |
| Use technical knowledge or skills? | YES | NO |
| Do any writing, complete reports, or perform duties like this? | YES | NO |

In **this job**, how many total hours each day did you:

| | | |
|---|---|---|
| Walk? _____ | Kneel? *(Bend legs to rest on knees)* | |
| Stand? _____ | Crouch? *(Bend legs & back down & forward)* _____ | |
| Sit? _____ | Crawl? *(Move on hands & knees)* | |
| Climb? _____ | Handle, grab or grasp big objects? _____ | |
| Stoop? *(Bend down and forward at waist)* _____ | Reach? _____ | |
| | Write, type or handle small objects? _____ | |

**Lifting and Carrying** *(Explain what you lifted, how far you carried it, and how often you did this.)*

_____

_____

_____

**Check the heaviest weight lifted:**

| | | | | | |
|---|---|---|---|---|---|
| Less than 10 lbs | 10 lbs | 20 lbs | 50 lbs | 100 lbs. or more | Other _____ |

**Check weight you frequently lifted:** *(By frequently, we mean from 1/3 to 2/3 of the workday.)*

| | | | | |
|---|---|---|---|---|
| Less than 10 lbs | 10 lbs | 25 lbs | 50 lbs. or more | Other _____ |

Did you supervise other people in this job?   YES *(Complete the next 3 items.)*   NO *(Skip to the last question on this page.)*

How many people did you supervise? _____

What part of your time was spent supervising people? _____

Did you hire and fire employees?   YES   NO

Were you a lead worker?   YES   NO

**260**

**SOCIAL SECURITY ADMINISTRATION**

Office of Disability Adjudication and Review
Federal Center
4300 Goodfellow Blvd.
Bldg. 110, 2nd Floor
Saint Louis, MO 63120
Tel: (877)409-4579

September 3, 2015

Lorena Lynn Naillieux
85 Barlow Branch
Partridge, KY 40862

Dear Ms. Naillieux:

Your file is now ready for your review. A CD is enclosed that contains all of the evidence in your electronic folder to date.

Further processing of this case requires the following actions on your part:

1.  To examine the file, please follow the instructions entitled **"Opening an Encrypted CD."** In order to protect personal information, the instructions were enclosed in a separate mailing.  If you need further assistance, please contact our office.

2.  It is your responsibility to provide medical evidence showing that you have an impairment(s) and how severe it is during the time you allege disability.  In order to expedite processing of this claim, you should , at one time, submit the following information:

    a.  All medical records *(not duplicates)* from one year prior to the alleged onset date to the present and any other relevant medical, school or other records not already in file. Please refer to the CD to avoid submitting duplicate records.

    b.  Completed Recent Medical Treatment, Medications and Work Background questionnaires, and signed Authorization to Release Information (enclosed).

Form HA-L56 (05-2011) **261**

Lorena Lynn Naillieux                                                    Page 2 of 2

As soon as you submit these documents, we will review your case to determine if we can make a fully favorable decision without holding a hearing. If we cannot make a decision on the record, we will notify you when your hearing is scheduled. Therefore, it is to your advantage to submit your evidence as soon as possible.

If you have any questions, please contact the number listed above.

Sincerely,


Kathy S. Waggoner
Administrative Officer


Enclosures:
HA-4631 (Claimant's Recent Medical Treatment)
HA-4632 (Claimant's Medications)
HA-4633 (Claimant's Work Background)
SSA-827 (Authorization to Disclose Information to the Social Security Administration (SSA))

| Social Security Administration | Form Approved |
|---|---|
| Office of Disability Adjudication and Review | OMB No.0960-0292 |

## CLAIMANT'S RECENT MEDICAL TREATMENT

A. To be completed by hearing office

| (Claimant and Social Security Number)<br>Lorena Lynn Naillieux<br>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 | (Wage Earner and Social Security Number)<br>(Leave blank if same as claimant) | The last time we brought your<br>case up-to-date was:<br>December 18, 2008 |
|---|---|---|

B. To be completed by claimant

### PLEASE PRINT

**Please Answer the Following Questions:**

(1) Have you been treated or examined by a doctor (other than a doctor at a hospital) since the above date?  ☐ Yes  ☐ No

*(If yes, please list the name, addresses and telephone numbers of doctors who have treated or examined you since the above date. Also list dates of treatment or examination. If possible, send updated reports from these doctors to the Administrative Law Judge prior to the date of your hearing.)*

| DOCTORS' NAME(S) | ADDRESS(ES) & TELEPHONE NO.(S) | DATE(S) |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

(2) What have these doctors told you about your condition?

_____

_____

_____

_____

(3) Have you been hospitalized since the above date?  ☐ Yes  ☐ No
*(If yes, please list the name and address of the hospital. Also explain why you were hospitalized and what treatment you received.)*

| Name of Hospital | Address of Hospital (Include ZIP Code) |
|---|---|

Reason for hospitalization:

_____

Treatment received:

_____

| Form **HA-4631** (8-1996) ef (6-2009)<br>Issue Old Stock | | If more space is needed,<br>use additional sheets. |
|---|---|---|

RQID:00000000000000162959211 SITE:T1U DR:S
SSN:401088762 DOCTYPE:3040 RF:D CS:d129

**263**

## Privacy Act Statement

### Collection and Use of Personal Information

Sections 205, 1631(d)(1), and 1872 of the Social Security Act, as amended authorize us to collect this information. We will use this information to evaluate your reason for failing to appear at your scheduled hearing.

Furnishing us this information is voluntary. However, failing to provide us with all or part of the requested information may affect our ability to re-evaluate the decision on your claim.

We rarely use the information you supply for any purpose other than for determining problems in Social Security programs. However, we may use it for the administration and integrity of Social Security programs. We may also disclose information to another person or to another agency in accordance with approved routine uses, which include, but are not limited to the following:

1. To enable a third party or an agency to assist Social Security in establishing rights to Social Security benefits and/or coverage;

2. To comply with Federal Laws requiring the release of information from Social Security records (e.g., to the Government Accountability Office and the Department of Veterans' Affairs);

3. To make determinations for eligibility in similar health and income maintenance programs as at the Federal, State, and local level; and

4. To facilitate statistical research, audit, or investigative activities necessary to assure the integrity of Social Security programs.

We may also use the information you provide in computer matching programs. Matching programs compare our records with records kept by other Federal, State, or local government agencies. Information from these matching programs can be used to establish or verify a person's eligibility for federally-funded or administered benefit programs and for repayment of payments or delinquent debts under these programs.

A complete use of routine uses for this information is available in our Systems of Records Notices, 60-0009, Hearings and Appeals Case Control System, and 60-0010, Hearing Office Tracking System of Claimant Cases. These notices, additional information regarding our programs and systems, are available on-line at www.socialsecurity.gov or at any local Social Security office.

**Paperwork Reduction Act Statement -** This information collection meets the requirements of 44 U.S.C. § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget (OMB) control number. The OMB control number for this collection is 0960-0292. We estimate that it will take about 10 minutes to read the instructions, gather the facts, and answer the questions. ***Send only comments relating to our time estimate above to***: *SSA, 6401 Security Blvd, Baltimore, MD 21235-6401.*

Form **HA-4631** (8-1996) ef (9-2012)

SOCIAL SECURITY ADMINISTRATION
Office of Disability Adjudication and Review

Form Approved
OMB No.0960-0289

## CLAIMANT'S MEDICATIONS

A. To be completed by Hearing Office

| (Claimant and Social Security Number) | (Wage Earner and Social Security Number) (Leave blank if same as claimant) | The last time we brought your case up-to-date was: |
|---|---|---|
| Lorena Lynn Naillieux 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 | | December 18, 2008 |

B. To be completed by the claimant

## PLEASE PRINT

PLEASE LIST BELOW THE PRESCRIPTION MEDICATION WHICH YOU ARE PRESENTLY TAKING.  IF THE NAME OF THE MEDICATION IS NOT SHOWN ON THE PRESCRIPTION CONTAINER, YOU MAY VERIFY THE NAME WITH YOUR PHARMACIST.

| NAME OF MEDICATION & DOSAGE | DATE FIRST PRESCRIBED | DAILY AMOUNT TAKEN | REASONS FOR MEDICATION | NAME OF PHYSICIAN |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

PLEASE LIST BELOW THE NONPRESCRIPTION MEDICATION YOU ARE TAKING AND THE REASONS YOU TAKE THEM.

Form **HA-4632** (2-1994) ef (6-2009)
Use Until Stock Is Exhausted

If more space is needed,
use additional sheets.



RQID:00000000000000162959213 SITE:T1U DR:S
SSN:401088762 DOCTYPE:3045 RF:D CS:b9c0

**265**

**Privacy Act Statement**

### Collection and Use of Personal Information

Sections 205, 1631(d)(1), and 1872 of the Social Security Act, as amended authorize us to collect this information. We will use this information to evaluate your reason for failing to appear at your scheduled hearing.

Furnishing us this information is voluntary. However, failing to provide us with all or part of the requested information may affect our ability to re-evaluate the decision on your claim.

We rarely use the information you supply for any purpose other than for determining problems in Social Security programs. However, we may use it for the administration and integrity of Social Security programs. We may also disclose information to another person or to another agency in accordance with approved routine uses, which include, but are not limited to the following:

1. To enable a third party or an agency to assist Social Security in establishing rights to Social Security benefits and/or coverage;

2. To comply with Federal Laws requiring the release of information from Social Security records (e.g., to the Government Accountability Office and the Department of Veterans' Affairs);

3. To make determinations for eligibility in similar health and income maintenance programs as at the Federal, State, and local level; and

4. To facilitate statistical research, audit, or investigative activities necessary to assure the integrity of Social Security programs.

We may also use the information you provide in computer matching programs. Matching programs compare our records with records kept by other Federal, State, or local government agencies. Information from these matching programs can be used to establish or verify a person's eligibility for federally-funded or administered benefit programs and for repayment of payments or delinquent debts under these programs.

A complete use of routine uses for this information is available in our Systems of Records Notices, 60-0009, Hearings and Appeals Case Control System, and 60-0010, Hearing Office Tracking System of Claimant Cases. These notices, additional information regarding our programs and systems, are available on-line at www.socialsecurity.gov or at any local Social Security office.

**Paperwork Reduction Act Statement -** This information collection meets the requirements of 44 U.S.C. § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget (OMB) control number. The OMB control number for this collection is 0960-0289. We estimate that it will take about 15 minutes to read the instructions, gather the facts, and answer the questions. *Send only comments relating to our time estimate above to*: *SSA, 6401 Security Blvd, Baltimore, MD 21235-6401.*

Form **HA-4632** (2-1994) ef (9-2012)

SOCIAL SECURITY ADMINISTRATION
Office of Disability Adjudication and Review

Form Approved
OMB No.0960-0300

## CLAIMANT'S WORK BACKGROUND

A. To be completed by Hearing Office

| (Claimant and Social Security Number)<br><br>Lorena Lynn Naillieux<br> 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 | (Wage Earner and Social Security Number)<br>(Leave blank if same as claimant) | The last time we brought your case up-to-date was:<br>December 18, 2008 |
|---|---|---|

B. To be completed by the claimant

### PLEASE PRINT

Start with your most recent job, and list that any and work performed within the past 15 years.

| DATE OF EMPLOYMENT (APPROXIMATELY) | NAME OF EMPLOYER AND LOCATION OF EMPLOYMENT | DUTIES PERFORMED |
|---|---|---|
| FROM | | |
| TO | | |
| | | |
| | | |
| | | |
| FROM | | |
| TO | | |
| | | |
| | | |
| | | |
| FROM | | |
| TO | | |
| | | |
| | | |
| | | |

Form **HA-4633** (3-1994) ef (6-2009)
Issue Old Stock

If more space is needed,
use additional sheets.

RQID:0000000000000162959215 SITE:T1U DR:S
SSN:401088762 DOCTYPE:3050 RF:D CS:f356

**267**

**Privacy Act Statement**

### Collection and Use of Personal Information

Sections 205(a), 702, 1631 (e)(1)(A) and (B) and 1869(b)(1)(C) of the Social Security Act, as appropriate, authorize us to collect the information on this form. The information you provide will help us to determine your potential eligibility for benefit payments and/or help us to decide if additional information is needed. Your response is voluntary. However, failure to provide the requested information may prevent an accurate and timely decision on any claim filed, or could result in the loss of benefits.

We rarely use the information provided on this form for any purpose other than for determining entitlement to benefit payments. In accordance with 5 U.S.C. § 552a(b) of the Privacy Act, however, we may disclose the information provided on this form in accordance with approved routine uses, which include but are not limited to the following:

1. To enable a third party or an agency to assist Social Security in establishing rights to Social Security benefits and/or coverage;

2. To make determinations for eligibility in similar health and income maintenance programs at the Federal, state and local level;

3. To comply with Federal laws requiring the disclosure of the information from our records; and

4. To facilitate statistical research, audit or investigative activities necessary to assure the integrity of SSA programs.

We may also use the information you provide when we match records by computer. Computer matching programs compare our records with those of other Federal, state or local government agencies. Information from these matching programs can be used to establish or verify a person's eligibility for Federally funded or administered benefit programs and for repayment of payments or delinquent debts under these programs. The law allows us to do this even if you do not agree to it.

Additional information regarding this form, routine uses of information, and other Social Security programs are available from our Internet website at www.socialsecurity.gov or at your local Social Security office.

**Paperwork Reduction Act Statement -** This information collection meets the requirements of 44 U.S.C. § 3507, as amended by Section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget control number. We estimate that it will take about 15 minutes to read the instructions, gather the facts, and answer the questions. **SEND OR BRING THE COMPLETED FORM TO YOUR LOCAL SOCIAL SECURITY OFFICE.  The office listed under U. S. Government agencies in your telephone directory or you may call Social Security at 1-800-772-1213.** *You may send comments on our time estimate above to*: *SSA, 6401Security Blvd, Baltimore, MD 21235-6401.* **Send _only_ comments relating to our time estimate to this address, not the completed form.**

Form **HA-4633** (3-1994) ef (6-2009)

**EXHIBIT NO. 13E**
**PAGE: 9 OF 12**

| WHOSE *Records to be Disclosed* | Form Approved<br>OMB No. 0960-0623 |
|---|---|
| NAME *(First, Middle, Last, Suffix)*<br>Lorena Lynn Naillieux | |

| SSN<br>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 | Birthday *(mm/dd/yy)*<br>07/31/1962 |
|---|---|

# AUTHORIZATION TO DISCLOSE INFORMATION TO
# THE SOCIAL SECURITY ADMINISTRATION (SSA)

**\*\* PLEASE READ THE ENTIRE FORM, BOTH PAGES, BEFORE SIGNING BELOW \*\***

I voluntarily authorize and request disclosure (including paper, oral, and electronic interchange):
<u>OF WHAT</u>   *All my medical records*; also education records and other information related to my ability to perform tasks. This includes specific permission to release:

1. **All records and other information regarding my treatment, hospitalization, and outpatient care for my impairment(s)** *including*, and **not limited to** :
   - Psychological, psychiatric or other mental impairment(s) (excludes "psychotherapy notes" as defined in 45 CFR 164.501)
   - Drug abuse, alcoholism, or other substance abuse
   - Sickle cell anemia
   - Records which may indicate the presence of a communicable or noncommunicable disease; and tests for or records of HIV/AIDS
   - Gene-related impairments (including genetic test results)
2. **Information about how my impairment(s) affects my ability to complete tasks and activities of daily living, and affects my ability to work.**
3. **Copies of educational tests or evaluations, including Individualized Educational Programs, triennial assessments, psychological and speech evaluations, and any other records that can help evaluate function; also teachers' observations and evaluations.**
4. **Information created within 12 months after the date this authorization is signed, as well as past information.**

<u>FROM WHOM</u>
- **All medical sources** (hospitals, clinics, labs, physicians, psychologists, etc.) including mental health, correctional, addiction treatment, and VA health care facilities
- All educational sources (schools, teachers, records administrators, counselors, etc.)
- Social workers/rehabilitation counselors
- Consulting examiners used by SSA
- Employers, insurance companies, workers' compensation programs
- Others who may know about my condition (family, neighbors, friends, public officials)

THIS BOX TO BE COMPLETED BY SSA/DDS (**as needed**) Additional information to identify the subject (e.g., other names used), the specific source, or the material to be disclosed:

<u>TO WHOM</u>   **The Social Security Administration and to the State agency authorized to process my case** (usually called "disability determination services"), **including contract copy services, and doctors or other professionals consulted during the process.** [Also, for international claims, to the U.S. Department of State Foreign Service Post.]

<u>PURPOSE</u>   Determining my **eligibility for benefits**, including looking at the combined effect of any impairments that by themselves would not meet SSA's definition of disability; and whether I can manage such benefits.
☐ Determining whether I am **capable of managing benefits ONLY** (check only if this applies)

<u>EXPIRES WHEN</u>   This authorization is good for 12 months from the date signed (below my signature).
- I authorize the use of a copy (including electronic copy) of this form for the disclosure of the information described above.
- I understand that there are some circumstances in which this information may be redisclosed to other parties (see page 2 for details).
- I may write to SSA and my sources to revoke this authorization at any time (see page 2 for details).
- SSA will give me a copy of this form if I ask; I may ask the source to allow me to inspect or get a copy of material to be disclosed.
- **I have read both pages of this form and agree to the disclosures above from the types of sources listed.**

**PLEASE SIGN USING BLUE OR BLACK INK ONLY**
**INDIVIDUAL** authorizing disclosure

IF not signed by subject of disclosure, specify basis for authority to sign
☐ Parent of minor   ☐ Guardian   ☐ Other personal representative (explain)

SIGN ▶

(Parent/guardian/personal representative
sign here if two signatures required by State   ▶
law)

| Date Signed | Street Address<br>85 Barlow Branch | | |
|---|---|---|---|
| Phone Number (with area code)<br>(606)589-4149 | City<br>Partridge | State<br>KY | ZIP<br>40862 |

<u>WITNESS</u>   *I know the person signing this form or am satisfied of this person's identity:*

SIGN ▶

IF needed, second witness sign here (e.g., if signed with "X" above)
SIGN ▶

| Phone Number (or Address) | Phone Number (or Address) |
|---|---|

*This general and special authorization to disclose was developed to comply with the provisions regarding disclosure of medical, educational, and other information under P.L. 104-191 ("HIPAA"); 45 CFR parts 160 and 164; 42 U.S. Code section 290dd-2; 42 CFR part 2; 38 U.S. Code section 7332; 38 CFR 1.475; 20 U.S. Code section 1232g ("FERPA"); 34 CFR parts 99 and 300; and State law.*

**269**

**Explanation of Form SSA-827,**
**"Authorization to Disclose Information to the Social Security Administration (SSA)"**

We need your written authorization to help get the information required to process your claim, and to determine your capability of managing benefits. Laws and regulations require that sources of personal information have a signed authorization before releasing it to us. Also, laws require specific authorization for the release of information about certain conditions and from educational sources.

You can provide this authorization by signing a form SSA-827. Federal law permits sources with information about you to release that information if you sign a single authorization to release all your information from all your possible sources. We will make copies of it for each source. A covered entity (that is, a source of medical information about you) may not condition treatment, payment, enrollment, or eligibility for benefits on whether you sign this authorization form. A few States, and some individual sources of information, require that the authorization specifically name the source that you authorize to release personal information. In those cases, we may ask you to sign one authorization for each source and we may contact you again if we need you to sign more authorizations.

You have the right to revoke this authorization at any time, except to the extent a source of information has already relied on it to take an action. To revoke, send a written statement to any Social Security Office. If you do, also send a copy directly to any of your sources that you no longer wish to disclose information about you; SSA can tell you if we identified any sources you didn't tell us about. SSA may use information disclosed prior to revocation to decide your claim.

It is SSA's policy to provide service to people with limited English proficiency in their native language or preferred mode of communication consistent with Executive Order 13166 (August 11, 2000) and the Individuals with Disabilities Education Act. SSA makes every reasonable effort to ensure that the information in the SSA-827 is provided to you in your native or preferred language.

**Privacy Act Statement**
**Collection and Use of Personal Information**

Sections 205(a), 233(d)(5)(A), 1614(a)(3)(H)(i), 1631(d)(l) and 1631(e)(l)(A) of the Social Security Act as amended, [42 U.S.C. 405(a), 433(d)(5)(A), 1382c(a)(3)(H)(i), 1383(d)(l) and 1383(e)(l)(A)] authorize us to collect this information. We will use the information you provide to help us determine your eligibility, or continuing eligibility for benefits, and your ability to manage any benefits received. The information you provide is voluntary. However, failure to provide the requested information may prevent us from making an accurate and timely decision on your claim, and could result in denial or loss of benefits.

We rarely use the information you provide on this form for any purpose other than for the reasons explained above. However, we may use it for the administration and integrity of Social Security programs. We may also disclose information to another person or to another agency in accordance with approved routine uses, including but not limited to the following:

1. To enable a third party or an agency to assist us in establishing rights to Social Security benefits and/or coverage;

2. To comply with Federal laws requiring the release of information from our records (e.g., to the Government Accountability Office, General Services Administration, National Archives Records Administration, and the Department of Veterans Affairs);

3. To make determinations for eligibility in similar health and income maintenance programs at the Federal, State, and local level; and

4. To facilitate statistical research, audit, or investigative activities necessary to assure the integrity and improvement of our programs (e.g., to the U.S. Census Bureau and to private entities under contract with us).

We may also use the information you provide in computer matching programs. Matching programs compare our records with records kept by other Federal, State, or local government agencies. We use the information from these programs to establish or verify a person's eligibility for Federally funded or administered benefit programs and for repayment of incorrect payments or delinquent debts under these programs.

A complete list of routine uses of the information you gave us is available in our Privacy Act Systems of Records Notices entitled, Claims Folder System, 60-0089; Master Beneficiary Record, 60-0090; Supplemental Security Income record and Special Veterans benefits, 60-0103; and Electronic Disability (eDIB) Claims File, 60-0340. The notices, additional information regarding this form, and information regarding our systems and programs, are available on-line at www.socialsecurity.gov or at any Social Security office.

**Paperwork Reduction Act Statement -** This information collection meets the requirements of 44 U.S.C. § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget control number. We estimate that it will take about 10 minutes to read the instructions, gather the facts, and answer the questions. **SEND OR BRING THE COMPLETED FORM TO YOUR LOCAL SOCIAL SECURITY OFFICE.** You can find your local Social Security office through SSA's website at **www.socialsecurity.gov.** Offices are also listed under U.S. Government agencies in your telephone directory **or you may call Social Security at 1-800-772-1213 (TTY 1-800-325-0778).** *You may send comments on our time estimate above to: SSA, 6401 Security Blvd, Baltimore, MD 21235-6401. Send only comments relating to our time estimate to this address, not the completed form.*

**SOCIAL SECURITY ADMINISTRATION**

Office of Disability Adjudication and Review
Federal Center
4300 Goodfellow Blvd.
Bldg. 110, 2nd Floor
Saint Louis, MO 63120
Tel: (877)409-4579

September 3, 2015

Lorena Lynn Naillieux
85 Barlow Branch
Partridge, KY 40862

Dear Ms. Naillieux:

Your file is now ready for your review. To protect personal information, an encrypted CD was sent to you in a separate mailing.

To examine the file, please place the CD in your computer and follow the enclosed instructions entitled **"Opening an Encrypted CD."** Once you have completed the instructions, a "Getting Started" screen will appear. Click on Exhibit List Index at the top of the screen to access the Exhibited documents associated with this case to date.

If you have any questions, please contact the number listed above.

Sincerely,

Kathy S. Waggoner
Administrative Officer

Enclosure: Opening an Encrypted CD

**271**

# Opening an Encrypted CD

No additional software is necessary to read the information on the encrypted CD. The following instructions will allow proper viewing of the contents of the CD.

1. Insert the Electronic Folder CD into your PC's CDROM drive.
2. Double click on "My Computer"; next double-click on your PC's CDROM drive to display the contents of the CD.
3. Double-click on the **unlock.exe** file located on the CD.
   - ❖ Enter the Password; click Unlock. The password consists of the following: First 4 letters of claimant's first name in lower case (if the name is less than four characters, use "#"s after the last alpha), a number sign (#), and the last 4 numbers of the claimant's SSN. For example:

     - ➢ Your name is Mickey Mays and SSN is 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. The encryption password is **mick#6789,** or
     - ➢ Your name is Tom Mays and SSN is 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. The encryption password is **tom##6789**.

4. To decrypt the contents of the CD, highlight the words "[**Encrypted Device**]" and click on the **Extract** button.
5. The Browse for Folder window will appear. The first time you decrypt a CD, highlight the drive where you want to save the file and click on [**Make New Folder**] button. NOTE: If a folder already exists, navigate to that location to download the file.
6. Change the folder name then highlight the new folder and click on the OK button.
7. Go to the folder created, or the location you extracted the files. Double-click on the **index.html** file
8. Close the Endpoint encryption window by clicking on the "x" in the upper right hand corner of the screen or by selecting File/Exit from the menu.
9. A deletion window will appear if files were extracted to your computer
10. If you extracted files to your hard drive or server and DO NOT want the files deleted from your computer, select "No".

**Important Notes:**
- If you repeatedly enter incorrect information in the Password field, you will be prompted with an incorrect password security message. If you continue to get this message, please contact the local ODAR office that sent you the CD.
- You can view the files individually from the Endpoint Media Encryption window without using the index.html to navigate to them. You must select each document separately in the "docs" folder. If you open the index.html from the Endpoint window, it may not display correctly.
- To view the actual images you will need to navigate to the "docs" folder and select the desired image.

**272**

EXHIBIT NO. 14E

PAGE: 1 OF 1

SOCIAL SECURITY ADMINISTRATION
Office of Disability Adjudication and Review

Form Approved
OMB No 0960-0300

## CLAIMANT'S WORK BACKGROUND

A. To be completed by Hearing Office

| (Claimant and Social Security Number)<br><br>Lorena Lynn Nailheux<br>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 | (Wage Earner and Social Security Number)<br>(Leave blank if same as claimant) | The last time we brought your case up-to-date was.<br>December 18, 2008 |
|---|---|---|

B. To be completed by the claimant

### PLEASE PRINT

Start with your most recent job, and list that and any work performed within the past 15 years.

| DATE OF EMPLOYMENT (APPROXIMATELY) | NAME OF EMPLOYER AND LOCATION OF EMPLOYMENT | DUTIES PERFORMED |
|---|---|---|
| FROM 1991<br>TO | James m Williams<br>104 Briarcrest street<br>Blytheville, AR 72315 | Dental Assistant |
| FROM 1995<br>TO | Homer Fortney<br>48 1st street P.O Box 426<br>Cumberland Ky 40823 | Dental Assistant |
| FROM 1996<br>TO 2005 | NOAA National Weather Service | Janitorial services |
| | | |
| | | |

Form **HA-4633** (3-1994) ef (6-2009)
Issue Old Stock

If more space is needed,
use additional sheets

RQID.0000000000000162959215 SITE.T1U DR·S
SSN 401088762 DOCTYPE:3050 RF D CS f356

RECEIVED
SEP 1 4 2015

273

Social Security Administration
Office of Disability Adjudication and Review

Form Approved
OMB No.0960-0292

## CLAIMANT'S RECENT MEDICAL TREATMENT

A  To be completed by hearing office

| (Claimant and Social Security Number) Lorena Lynn Naillieux 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 | (Wage Earner and Social Security Number) (Leave blank if same as claimant) | The last time we brought your case up-to-date was: December 18, 2008 |
|---|---|---|

B. To be completed by claimant

### PLEASE PRINT

**Please Answer the Following Questions:**

(1) Have you been treated or examined by a doctor (other than a doctor at a hospital) since the above date?  ☑ Yes   ☐ No

*(If yes, please list the name, addresses and telephone numbers of doctors who have treated or examined you since the above date  Also list dates of treatment or examination  If possible, send updated reports from these doctors to the Administrative Law Judge prior to the date of your hearing )*

| DOCTORS' NAME(S) | ADDRESS(ES) & TELEPHONE NO.(S) | DATE(S) |
|---|---|---|
| Chris Lewis | 1-606-589-5514 Quantum Health Associates of Cumberland Po Box D 103 Kingdom Come Dr Cumberland Ky 40803 | 2012-2015 |
| DR Edwin Rogers | Lexington Surgeons 1-859-277-5711 1760 Nicholasville Rd Ste 202 Lexington, Ky 40503 | 2014-2015 |
| DR Monica Hall 1-859-263-0091 | 3260 Blazer Pky Lexington Ky 40509 | 2015 |

(2) What have these doctors told you about your condition?

(3) Have you been hospitalized since the above date?   ☑ Yes   ☐ No

*(If yes, please list the name and address of the hospital  Also explain why you were hospitalized and what treatment you received )*

Name of Hospital
Central Baptist 1740 Nicholasville Rd, Lexington Ky 41503

Reason for hospitalization
Double Mastectomy, Cancer

Treatment received

Form HA-4631 (8-1996) ef (6-2009)
Issue Old Stock

If more space is needed, use additional sheets

RQID:00000000000000162959211 SITE:T1U DR:S
SSN.401088762 DOCTYPE 3040 RF:D CS.d129

RECEIVED
SEP 14 2015

274

**EXHIBIT NO. 16E**
**PAGE: 1 OF 1**

SOCIAL SECURITY ADMINISTRATION
Office of Disability Adjudication and Review

Form Approved
OMB No 0960-0289

## CLAIMANT'S MEDICATIONS

A  To be completed by Hearing Office

| (Claimant and Social Security Number) | (Wage Earner and Social Security Number) (Leave blank if same as claimant) | The last time we brought your case up-to-date was: |
|---|---|---|
| Lorena Lynn Naillieux 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 | | December 18, 2008 |

B. To be completed by the claimant

### PLEASE PRINT

PLEASE LIST BELOW THE PRESCRIPTION MEDICATION WHICH YOU ARE PRESENTLY TAKING  IF THE NAME OF THE MEDICATION IS NOT SHOWN ON THE PRESCRIPTION CONTAINER, YOU MAY VERIFY THE NAME WITH YOUR PHARMACIST

| NAME OF MEDICATION & DOSAGE | DATE FIRST PRESCRIBED | DAILY AMOUNT TAKEN | REASONS FOR MEDICATION | NAME OF PHYSICIAN |
|---|---|---|---|---|
| Glucophage HCl | 2014 | 500 mg 2x day | sugar diabetes | Chris Lewis |
| Lisinopril | 5mg 2014 | 1x day | Sugar diabetes | Chris Lewis |
| Diclofena Sod | 2005 | 75 mg 2x day | Fibromyalgia | Chris Lewis |
| Omeprazole | 2010 | 20 mg 1x day | Reflux | Chris Lewis |

PLEASE LIST BELOW THE NONPRESCRIPTION MEDICATION YOU ARE TAKING AND THE REASONS YOU TAKE THEM

| | | | | |
|---|---|---|---|---|
| Soma | 2015 | 1 every 8 hrs | muscle aches | Monica Hall |
| Fluticasone | | Nasal spray | Sinus | Chris Lewis |
| Loratidine | 2014 | 10 mg 1x day | Sinus | Chris Lewis |

Form **HA-4632** (2-1994) ef (6-2009)
Use Until Stock Is Exhausted

If more space is needed,
use additional sheets.



RQID.000000000000000162959213 SITE T1U DR.S
SSN 401088762 DOCTYPE 3045 RF D CS b9c0

RECEIVED
SEP 1 4 2015

275

## Roxanne Benoit, MA, CRC, CLCP

### Professional Qualifications

- 21 years of vocational rehabilitation experience that includes working with individuals who have
  sustained the following injuries: soft tissue, spinal cord, traumatic brain, chronic pain, orthopedic,
  RSD, and amputations.
- 15 years of vocational testing and direct job placement experience within the workers' compensation system.
- Work with third-party administrators, employers, managed care organizations, and the Bureau of
  Worker's Compensation on best practices to resolve medical and vocational barriers for injured
  workers.
- Supervise the services offered by various outside providers such as: physical, occupational,
  and industrial therapy; on site transitional work; job placement; work adjustment and training; vocational evaluations; career and adjustment to disability counseling.

### Professional Experience

**Vocational Rehabilitation Counselor/Life Care Planner/Vocational Expert**, Independent Contractor
Complete vocational evaluations, and provide job placement, and job seeking skills training, to persons receiving workers' compensation benefits.  Serve as a Vocational Expert for Social Security and complete life care plans for catastrophic injury cases.  (Present)

**Manager of Operations/Vocational Counselor, Ohio & Michigan**, Procura Management
Responsible for the management of all Nursing and Vocational staff in Ohio and Michigan, which included
hiring, training, and supervising a professional team, state reporting, fiscal management, managing high volume monthly reports and customer relations.  Provided vocational evaluations, job placement, and job seeking skills training to persons receiving workers' compensation benefits.  (2008-2012)

**Vocational Rehabilitation Counselor/Life Care Planner**, Independent Contractor
Completed vocational evaluations, and provided job placement and job seeking skills training to persons receiving workers' compensation benefits.  Worked directly with Managed Care Organizations, injured/ill persons, and their physicians, to develop rehabilitation plans and coordinate care.  Completed life care plans for catastrophic cases.  (2004-2008)

**Vocational Counselor/Life Care Planner**, Intracorp
Provided vocational testing, job placement, and job seeking skills training to persons receiving workers' compensation and long-term disability benefits.  Worked directly with Managed Care

Organizations, Bureau of Workers' Compensation, Injured/ill persons, and their Physicians, to develop rehabilitation plans and coordinate services. (1997-2004)

**In-House Vocational Rehabilitation Counselor**, Hartford Insurance
As a member of the workers' compensation team, completed initial rehabilitation assessments on cases
open over 90 days.  Developed QA measures for outside contractual activities and managed 22 rehabilitation
vendors. Worked with large, self-insured employers to design and implement return to work programs for
their injured workers.  (1994-1996)

**Vocational Counselor, Medical Case Manager, Supervisor**, S. Yangouyian & Associates
Progressively accepted increased responsibilities, first as a Counselor and Medical Case Manager, then as
a Supervisor for 17 Nurses and Vocational Counselors working in the field.  Responsible for all aspects of
hiring, training and managing day-to-day operations.  (1989-1994)

Roxanne Benoit
Vitae
Page 2

## Education and Credentials

Certified Rehabilitation Counselor (CRC)
Certified Life Care Planner (CLCP)
Certificate, Life Care Planning, University of Florida/Intelicus
Master of Arts, Rehabilitation Counseling, Michigan State University
Bachelor of Science, Psychology, Michigan State University

## Professional Organizations

International Association of Rehabilitation Professionals (IARP)-Member

**277**

MITCH VEEDER, MA, CDMS, ARM, CEAS

150 Quail Ridge Place
Montgomery, TX 77316

mitchveeder@msn.com
Office 936.588.8429
Mobile 303.552.8296

PROFESSIONAL EXPERIENCE

2013 – Present   **FasTrak Rehabilitation, Montgomery, Texas**
Vocational Consultant

2001 to 2013   **Pinnacol Assurance, Denver, Colorado**
Return to Work Consultant

1995 to 2001   **Sloans Lake Managed Care, Denver, Colorado**
Work Transition Manager

1993 to 1995   **Vocational Rehabilitation Counselor/Consultant, Colorado Springs and Denver, Colorado**

Vocational Expert Associates, Inc., Colorado Springs, Colorado, FasTrak Rehabilitation, Inc., Colorado Springs, Colorado and Bonnie Ruth and Associates, Ltd., Denver, Colorado

1987 to 1993   **John Bermudez, PhD, Rehabilitation and Neuropsychologist, Colorado Springs and Denver, Colorado**

**United Rehabilitation, Inc.**
Vocational Rehabilitation Counselor/Consultant

**Developmental Services, Inc.**
Psychometrist

**Parent Resource Center, Inc.**
Home Site Evaluator

CERTIFICATIONS

2014   **Certified Ergonomics Assessment Specialist (CEAS)**

2005   **Associate in Risk Management (ARM)**

2005   **Associate in Insurance Services (AIS)**

1993   **Certified Disability Management Specialist (C.D.M.S.) # 00011900**

1988   **Qualified Rehabilitation Consultant**
Colorado Department of Labor and Employment,
Division of Workers' Compensation # 1788

EDUCATION

1988   **University of Colorado, Colorado Springs, Colorado**
Master of Arts
Clinical Psychology

1979   **University of Northern Iowa, Cedar Falls, Iowa**
Bachelor of Arts
Psychology

**278**

**Mitch Veeder, MA, CDMS, ARM, CEAS**

## ASSOCIATIONS

| | |
|---|---|
| 2000 to 2002 | International Association of Rehabilitation Professionals (IARP) President, Colorado Chapter |

## PRE-PROFESSIONAL EXPERIENCE

| | |
|---|---|
| 1986 to 1987 | **Mesa House, Colorado Springs, Colorado** <br> <u>Intern</u> |
| 1985 | **Rocky Mountain Rehabilitation Center, Colorado Springs, Colorado** <br> <u>Intern</u> |
| 1980 to 1984 | **Colorado Market Research Services, Inc., Denver, Colorado** <br> <u>Field Supervisor</u> |
| 1979 | **Exceptional Persons, Inc., Waterloo, Iowa** <br> <u>Residential Aide</u> |

## CONTINUING EDUCATION

| | |
|---|---|
| 2013 | Adjuster Academy of Texas #36187 <br> Texas All Lines Adjuster Pre-Licensing Course #80536 |
| 2005 | ARM 56 Essentials of Risk Control. <br> ARM 55 Risk Financing. <br> American Institute for Chartered Property Casualty Underwriters/Insurance Institute of America. |
| 2004 | ARM 54 Essentials of Risk Management. <br> American Institute for Chartered Property Casualty Underwriters/Insurance Institute of America. |
| 2001 | AIS 25, Delivering Insurance Services.  A course in continuous improvement. <br> Insurance Institute of America. |
| 1999 | "Cultural Competence Seminar, Psychological and Cultural Factors in Vocational Rehabilitation."  Presented by:  Ricardo Esparza, PhD. <br><br> "Workforce 2000" A briefing on the differing/emerging workforce. <br> Presented by:  Thomas F. Mahan, The Saratoga Institute |
| 1998 | "Basic Workers' Compensation in Colorado:  The Mechanics of Administering Claims." <br> Presented by:  Gregory B. Cairns, ESQ <br><br> Professionals in Workers' Compensation:  First Annual Spring Training <br><br> National NARPPS Leadership Conference, Washington, D.C. |
| 1996 | World of Work Inventory Training Workshop.  Presented by:  World of Work, Inc. |
| 1995 | "Management Skills (Leadership, Conflict and Group Dynamics)" <br> Presented by:  Mountain States Employers Council, Inc. |
| 1993 | "Symptom distortion in Claims – Understanding Symptom Magnification, Cultural and Behavioral Aspects, Deception and Malingering." <br> Sponsored by Colorado Rehabilitation Institute. |

**279**

Mitch Veeder, MA, CDMS, ARM, CEAS

1991      "How to Make Social Security Work for You."
          Training provided by Rocky Mountain Resource and Training Institute (RMRTI).

1990      "Mechanisms of Pain and Pain Control – In English by an Expert", J. Peter Rosenfeld,
          Ph.D.
          "Innovations in Assessments and Treatment of Recurrent Headache", Frank Andrasik,
          Ph.D.
          Sponsored by Association for Applied Psychophysiology and Biofeedback.

1989      "Evaluating Disability:  Medical, Legal and Rehabilitation Issues in Colorado Workers'
          Compensation."
          Sponsored by ReEntry Vocational Services, Inc.

1985      "Reitan's Workshop in Human Clinical Neuropsychology", Denver, CO
          Basic training in the Halstead-Reitan Neuropsychological Test Battery.

PUBLICATIONS

          Greenberg, Pysczynski, Solomon, Rosenblatt, Veeder, Kirkland and Lyon.  "Evidence for
          Terror Management Theory:  The Effects of Mortality Salience on Reactions to Those
          Who Threaten or Bolster the cultural Worldview," Journal of Personality and Social
          Psychology.  1990. Volume 58, No. 2.

          Somervill, Veeder, Miller and Zortman.  "The Sex Variable and Reactions to the Physically
          Disabled by Eighth Graders," American corrective Therapy Journal.  1981.  March-April.

          Somervill, Veeder, Graw and Sechovec.  "The Stygma Hypotheses:  The Sex Variable in
          Face to Face Interactions with the Physically Disabled," Rehabilitation Psychology.  1979.
          No. 16.

280

**EXHIBIT NO. 1F**
**PAGE: 1 OF 9**

**CABINET FOR HEALTH AND FAMILY SERVICES**
DEPARTMENT FOR DISABILITY DETERMINATIONS
PO BOX 1000
FRANKFORT KY, 40602-9987
www.chfs.ky.gov
AN EQUAL OPPORTUNITY EMPLOYER M/F/D



Steven L. Beshear
Governor

July 3, 2008

Janie Miller
Secretary

DR MICHAEL BOLAND
LEXINGTON, KY
1143288A

**FAX#:**  866-818-0912
CLAIMANT INFORMATION:

RE: LORENA NAILLIEUX
PARTRIDGE, KY
DOB: 07/31/1962
CASE#: 1413020
**DMA: Y PFI: N**

Medical eligibility for disability under the Social Security Act is being considered on the above named individual who has asked us to request this evidence. Please send records from 10/15/05 TO PRESENT.

Please submit the enclosed report form or a narrative report, and/or copies of your medical or mental health records. Your report should include a statement based on your medical findings, expressing your opinion about whether the impairment(s) affect(s) the ability of this individual to do work-related activities such as sitting, standing, moving about, lifting, carrying, handling objects, hearing, speaking, and traveling; and, for a mental impairment(s), the ability to understand, to carry out and remember instructions, and to respond appropriately to supervision, coworkers and work pressures in a work setting.

**To FAX your report:**  **USE THE SHEET WITH THE BARCODE AS THE COVER SHEET** and fax the cover sheet and records to the following fax number **866-818-0912.**  Your report will come directly to the Department where its security as defined in HIPAA is preserved. We will pay an additional $5.00 for faxed records.

**To send your records via EME SECURE WEBSITE:**  You must have a username and password to use the EME website.  Contact a Professional Relations Officer for more information at (800) 928-8050. We will pay an additional $5.00 for records sent electronically to the SSA website.

**To MAIL your report:**  Please use the sheet with the barcode as the cover sheet.

**To DICTATE your report:**  The Department provides teledictation services for its medical reports.  If you have never used the service before call this number **1-877-712-2400** to register for the service.  To dictate a report call **1-800-213-2400** and follow the instructions.

JAMES, Disability Examiner
**800-928-8050 EXT. 4362**
HOP:hop B1
Enclosures: Release Authorization, Report Form   D0002

## KEEP THIS PAGE FOR YOUR RECORDS.

NAILLIEUX, LORENA                       138-47-98-3

5-9-06

HPI: Ms. Naillieux is here for follow-up of her EMG/NCV study of the right upper extremity and her C-spine MRI. The MRI was performed on 4-24-06 at Appalachian Regional Healthcare in Harlan. Her EMG/NCV study was done here at UK on 4-5-06. Overall, Ms. Naillieux states that nothing has changed. She continues to have some low-grade numbness and tingling in the left hand, but this has been since her ORIF of the distal radius fracture and carpal tunnel release at the same time.

With regard to the right upper extremity, she continues to have some numbness and tingling involving chiefly the middle and ring fingers. This can awaken her at night. She does not have a wrist splint to wear.

She also has some problems with posterior neck pain and right sided elbow pain.

PHYSICAL EXAMINATION:  She is a bit tender over the midline of the posterior neck.  There is a negative Tinel at the supraclavicular space, both right and left. At the right elbow, there is a positive Tinel at the cubital tunnel and there is a positive Tinel at the carpal tunnel. There is negative carpal compression at the wrist. She has no thenar wasting. Light touch is intact.

EMG/NCV study is reviewed and indicates mild median neuropathy at the level of the wrist with no evidence of right-sided cervical radiculopathy.

MRI films are not available for reviewed today, but the report impression is of moderate sized left paracentral disk herniation at C5/6 with indenting of the adjacent thecal sac and cervical cord.

ASSESSMENT:  Right upper extremity signs and symptoms of multi level neuropathy.

PLAN: It is recommended to Ms. Naillieux that we refer her to the Spine Service here in this department with either Dr. William Shaffer or Dr. Carter Cassidy for further evaluation for the source of her symptoms.  If they feel that it is confined to the carpal tunnel, we will consider scheduling her for carpal tunnel release.

She is offered a wrist splint for night time use, which she declines. We will see her in six weeks (no x-rays at that time) to follow-up up on her consultation with the Spine Service.


Marianne Long, PA-C
ML/jik


Michael R. Boland, M.D., Attending
MRB/jik

C: UK Orthopaedic Spine Surgery
    Kentucky Clinic

# UNIVERSITY OF KENTUCKY CHANDLER MEDICAL CENTER

800 Rose Street
Lexington, Kentucky 40536-0293

Department of Diagnostic Radiology
Radiology Report

NAME:  NAILLIEUX,  LORENA
PATIENT TYPE:      OP
DATE OF BIRTH:      7/31/1962
LOCATION :        ORTH
ORDER :         2224113
REASON :
DISCHARGE DATE:

MRN:        013847983
SEX:  F            RACE:  W
ACCOUNT NUMBER:      0138479836129
REQUESTING SVC  :    ORR C
ADDENDUM :            0

Verified

REQUESTING PHYS: BOLAND, MICHAEL
INTERESTED PHYS :
PROCEDURE            FINGER RIGHT THUMB
DATE/TIME OF EXAM:    5/9/2006    @   14:23

Reason for Exam: 719.49

iCD-9:

CPT Code(s):    73140
RIGHT THUMB 5/9/06

INDICATION: Pain

FINDINGS: Three views of the right thumb are within normal limits.  There are no prior studies for comparison.

Resident    :

Attending  : JAMES L.  BUCK  MD
Verified by: JAMES L. BUCK , MD
Date    :   5/11/2006   @   15:49
Transcribed by: RADRKM 05/11/2006 07:44

**283**

# THIS MUST BE THE FIRST PAGE WHEN FAXING OR MAILING RECORDS. PLEASE FAX TO 866-818-0912.

DR MICHAEL BOLAND
LEXINGTON, KY  40536
1143288A

FAX: 866-818-0912
CLAIMANT INFORMATION:

RE: LORENA NAILLIEUX
    PARTRIDGE, KY
CASE#: 1413020
DOB:  07/31/1962
**DMA: Y  PFI: N**



DEPT FOR DISABILITY DETERMINATIONS (S20)
PO BOX 8750
LONDON KY 40742-9818

RQID:L00002LZQD000          SITE:S20 DR:S
SSN:*********  DOCTYPE:0001 RF:D CS:459

IF AN EXAMINATION IS NEEDED, ARE YOU WILLING TO PERFORM THE EXAMINATION ON THIS
PATIENT? YES _____ NO _____
JAMES, Disability Examiner
800-928-8050 EXT. 4362
HOP:hop B1

**PLEASE RETURN THIS PAGE WITH YOUR REPORT.** We pay a maximum of $10.00 if
only copies of records are submitted or a maximum of $15.00 for a narrative report,
accompanied by copies of records. **WE WILL PAY AN ADDITIONAL $5.00 FOR RECORDS SENT
ELECTRONICALLY (FAXED OR SENT TO SSA WEBSITE).**  If you have any questions about the
electronic process call 800-928-8050 ext. 4355.  To be paid, fill in amount and revise
payment information below if needed. Allow four weeks for payment. All billing issues
must be resolved within one year from the date of this letter.

HOP:hop B1

**PAYMENT NAME/ADDRESS/FED TAX ID/TYPE**
HEALTHPORT
PO BOX 409822
ATLANTA, GA 30384-9822

**FEDERAL TAX ID: 58-2659941, BUSINESS TYPE:**

DC002

INVOICE AMOUNT: $ **15.00**

**INVOICE NUMBER:** _____
DR MICHAEL BOLAND
Vendor ID #: 1143288A
Serial #: 20080703400885  **DMA: Y**
NAILLIEUX  1413020  **PFI: N**

# THIS BARCODED PAGE MUST BE THE TOP PAGE.

2179994I

# ADULT MEDICAL REPORT FOR SOCIAL SECURITY OR SSI DISABILITY BENEFITS

TELEPHONE DICTATION NUMBER: 1-800-213-2400

| | | | |
|---|---|---|---|
| Patient: | LORENA NAILLIEUX | July 3, 2008 | |
| Case: | 1413020 | Source's Name: | DR MICHAEL BOLAND |
| | | | 1143288 A |
| | | EXAMINER ID-UNIT | HOP:B1 |

Date of first office visit: _____  Date of last office visit: _____

Height:(w/o shoes) _____ Date: _____ Weight: _____ Date: _____ Respiration: _____ Pulse: _____

Serial BP: ___/___ Date: _____: ___/___ Date: ___: ___/___ Date: _____: ___/___ Date: ___

Cuff Size: (Check one) Regular _____ Oversize _____

**Please describe Positive and Negative Findings and note any additional abnormalities. Give dated results of all pertinent studies. If available, please include the results and tracings of any EKGs, GXTs, and PFS.**

| | Normal | Abnormal (please describe) |
|---|---|---|
| EYES | | |
| EARS | | |
| NOSE, THROAT, MOUTH | | |
| LUNGS | | |
| HEART | | |
| ARTERIES | | |
| VEINS | | |
| ABDOMEN | | |
| GENITO-URINARY | | |
| NEUROLOGICAL | | |
| MUSCULOSKELETAL | | |
| PSYCHIATRIC/PSYCHOLOGICAL | | |
| NEOPLASM | | |

If treatment is for a physical condition, please describe the patient's ability to do work-related activities such as sitting, standing, ambulation, lifting, carrying, handling objects, hearing, speaking or traveling.

If treatment is for mental condition, please describe the patient's ability to reason or make occupational, personal, or social adjustments.

| Medication/Treatment | Response |
|---|---|
| | |

| Diagnosis | Prognosis/duration |
|---|---|
| | |

Is patient capable of managing benefits in his/her best interest?   Yes _____   No _____

_____          _____

Physician's Signature                              Date                    DDS-2

ADULT MENTAL IMPAIRMENT REPORT FORM
SOCIAL SECURITY OR SSI DISABILITY BENEFITS

Telephone Dictation Number: 1-800-213-2400
Patient: **LORENA NAILLIEUX**

Source's Name:     July 3, 2008
**DR MICHAEL BOLAND**
Case:     **1413020**     **1143288A**
Date Patient     Examiner ID/Unit: **HOP:B1**
First seen: _____     Frequency
Of visits: _____     Date of most
Recent exam: _____

Longitudinal Picture/Chronological History

Please include a description of premorbid status, onset, patient's complaints,
hospitalizations, therapy or medication, response and compliance with treatment.
Describe the frequency, duration and intensity of any abnormal behavioral
manifestations, providing specific examples.  Include copies of all psychological
testing done, as well as appropriate subtest scores, if applicable.  Also include copies
of office notes, progress notes, hospital summaries, and other medical records that will
provide this patient's complete history.

MENTAL STATUS

Please provide the latest mental status exam findings.  Date of findings _____.
This should include 1) Attitude and Behavior, 2) Stream of conversation (provide
examples), 3) Mood, affective status and emotional reaction, 4) Content of special
preoccupations, and 5) Sensorium, memory and intellectual resources.  Any abnormal
findings reported should include a detailed description with specific examples.

DDS-5

| WHOSE Records to be Disclosed | Form Approved |
|---|---|
| NAME (First, Middle, Last) | OMB No. 0960-0623 |
| LORENA LYNN NAILLIEUX | |
| SSN 401 - 08 - 8762 | Birthday (mm/dd/yy) 07/31/62 |

# AUTHORIZATION TO DISCLOSE INFORMATION TO THE SOCIAL SECURITY ADMINISTRATION (SSA)

** PLEASE READ THE ENTIRE FORM, BOTH PAGES, BEFORE SIGNING BELOW **

I voluntarily authorize and request disclosure (including paper, oral, and electronic interchange):

**OF WHAT** All my medical records; also education records and other information related to my ability to perform tasks. This includes specific permission to release:

1. All records and other information regarding my treatment, hospitalization, and outpatient care for my impairment(s) including, and not limited to:
   - Psychological, psychiatric or other mental impairment(s) (excludes "psychotherapy notes" as defined in 45 CFR 164.501)
   - Drug abuse, alcoholism, or other substance abuse
   - Sickle cell anemia
   - Records which may indicate the presence of a communicable or venereal disease which may include, but are not limited to, diseases such as hepatitis, syphilis, gonorrhea and the human immunodeficiency virus, also known as Acquired Immune Deficiency Syndrome (AIDS); and tests for HIV.
   - Gene-related impairments (including genetic test results)
2. Information about how my impairment(s) affects my ability to complete tasks and activities of daily living, and affects my ability to work.
3. Copies of educational tests or evaluations, including Individualized Educational Programs, triennial assessments, psychological and speech evaluations, and any other records that can help evaluate function; also teachers' observations and evaluations.
4. Information created within 12 months after the date this authorization is signed, as well as past information.

**FROM WHOM**

- All medical sources (hospitals, clinics, labs, physicians, psychologists, etc.) including mental health, correctional, addiction treatment, and VA health care facilities
- All educational sources (schools, teachers, records administrators, counselors, etc.)
- Social workers/rehabilitation counselors
- Consulting examiners used by SSA
- Employers
- Others who may know about my condition (family, neighbors, friends, public officials)

THIS BOX TO BE COMPLETED BY SSA/DDS (as needed) Additional information to identify the subject (e.g., other names used), the specific source, or the material to be disclosed:

DR MICHAEL BOLAND

LEXINGTON, KY 40536

Please Refer to Medical request regarding specific dates and medical records requested

**TO WHOM** The Social Security Administration and to the State agency authorized to process my case (usually called "disability determination services"), including contract copy services, and doctors or other professionals consulted during the process. [Also, for international claims, to the U.S. Department of State Foreign Service Post.]

**PURPOSE** Determining my eligibility for benefits, including looking at the combined effect of any impairments that by themselves would not meet SSA's definition of disability; and whether I can manage such benefits.

Determining whether I am capable of managing benefits ONLY (check only if this applies)

**EXPIRES WHEN** This authorization is good for 12 months from the date signed (below my signature).

- I authorize the use of a copy (including electronic copy) of this form for the disclosure of the information described above.
- I understand that there are some circumstances in which this information may be redisclosed to other parties (see page 2 for details).
- I may write to SSA and my sources to revoke this authorization at any time (see page 2 for details).
- SSA will give me a copy of this form if I ask; I may ask the source to allow me to inspect or get a copy of material to be disclosed.
- I have read both pages of this form and agree to the disclosures above from the types of sources listed.

**PLEASE SIGN USING BLUE OR BLACK INK ONLY.**

| INDIVIDUAL authorizing disclosure | IF not signed by subject of disclosure, specify basis for authority to sign |
|---|---|
| SIGN ▶ *Lorena Naillieux* | Parent of minor ☐ Guardian ☐ Other personal representative (explain) |
| Date Signed 6/19/08 | (Parent/guardian/personal representative sign here if two signatures required by State law) ▶ |
| Phone Number (with area code) (606) 589-4149 | Street Address 85 BARLOW BRANCH |
| | City PARTRIDGE | State KY | ZIP 40862- |

**WITNESS** I know the person signing this form or am satisfied of this person's identity.

| SIGN ▶ *Rachel Baisden* | IF needed, second witness sign here (e.g., if signed with "X" above) |
|---|---|
| Phone Number (or Address) (606) 478-5100 | SIGN ▶ |
| | Phone Number (or Address) |

This general and special authorization to disclose was developed to comply with the provisions regarding disclosure of medical, educational, and other information under P.L. 104-191 (HIPAA); 45 CFR parts 160 and 164; 42 U.S. Code section 290dd-2; 42 CFR part 2; 38 U.S. Code section ...

**287**

Explanation of Form SSA-827,
"Authorization to Disclose Information to the Social Security Administration (SSA)"

We need your written authorization to help get the information required to process your claim, and to determine your capability of managing benefits. Laws and regulations require that sources of personal information have a signed authorization before releasing it to us. Also, laws require specific authorization for the release of information about certain conditions and from educational sources.

You can provide this authorization by signing a form SSA-827. Federal law permits sources with information about you to release that information if you sign a single authorization to release all your information from all your possible sources. We will make copies of it for each source. A covered entity (that is, a source of medical information about you) may not condition treatment, payment, enrollment, or eligibility for benefits on whether you sign this authorization form. A few States, and some individual sources of information, require that the authorization specifically name the source that you authorize to release personal information. In those cases, we may ask you to sign one authorization for each source and we may contact you again if we need you to sign more authorizations.

You have the right to revoke this authorization at any time, except to the extent a source of information has already relied on it to take an action. To revoke, send a written statement to any Social Security office. If you do, also send a copy directly to any of your sources that you no longer wish to disclose information about you; SSA can tell you if we identified any sources you didn't tell us about. SSA may use information disclosed prior to revocation to decide your claim.

It is SSA's policy to provide service to people with limited English proficiency in their native language or preferred mode of communication consistent with Executive Order 13166 (August 11, 2000) and the Individuals with Disabilities Education Act. SSA makes every reasonable effort to ensure that the information in the SSA-827 is provided to you in your native or preferred language.

## IMPORTANT INFORMATION, INCLUDING NOTICE REQUIRED BY THE PRIVACY ACT

All personal information collected by SSA is protected by the Privacy Act of 1974. Once medical information is disclosed to SSA, it is no longer protected by the health information privacy provisions of 45 CFR part 164 (mandated by the Health Insurance Portability and Accountability Act (HIPAA)). SSA retains personal information in strict adherence with the retention schedules established and maintained in conjunction with the National Archives and Records Administration. At the end of a record's useful life cycle, it is destroyed in accordance with the privacy provisions, as specified in 36 CFR part 1228.

SSA is authorized to collect the information on form SSA-827 by sections 205(a), 223(d)(5)(A), 1614(a)(3)(H)(i), 1631(d)(1) and 1631 (e)(1)(A) of the Social Security Act. We use the information obtained with this form to determine your eligibility, or continuing eligibility, for benefits, and your ability to manage any benefits received. This use usually includes review of the information by the State agency processing your case and quality control people in SSA. In some cases, your information may also be reviewed by SSA personnel that process your appeal of a decision, or by investigators to resolve allegations of fraud or abuse, and may be used in any related administrative, civil, or criminal proceedings.

Signing this form is voluntary, but failing to sign it, or revoking it before we receive necessary information, could prevent an accurate or timely decision on your claim, and could result in denial or loss of benefits. Although the information we obtain with this form is almost never used for any purpose other than those stated above, the information may be disclosed by SSA without your consent if authorized by Federal laws such as the Privacy Act and the Social Security Act. For example, SSA may disclose information:

1. To enable a third party (e.g., consulting physicians) or other government agency to assist SSA to establish rights to Social Security benefits and/or coverage;
2. Pursuant to law authorizing the release of information from Social Security records (e.g., to the Inspector General, to Federal or State benefit agencies or auditors, or to the Department of Veterans Affairs(VA));
3. For statistical research and audit activities necessary to ensure the integrity and improvement of the Social Security programs (e.g., to the Bureau of the Census and private concerns under contract with SSA).

SSA will not redisclose without proper prior written consent information: (1) relating to alcohol and/or drug abuse as covered in 42 CFR part 2, or (2) from educational records for a minor obtained under 34 CFR part 99 (Family Educational Rights and Privacy Act (FERPA)), or (3) regarding mental health, developmental disability, AIDS or HIV.

We may also use the information you give us when we match records by computer. Matching programs compare our records with those of other Federal, State, or local government agencies. Many agencies may use matching programs to find or prove that a person qualifies for benefits paid by the Federal government. The law allows us to do this even if you do not agree to it.

Explanations about possible reasons why information you provide us may be used or given out are available upon request from any Social Security Office.

## PAPERWORK REDUCTION ACT

This information collection meets the requirements of 44 U.S.C. § 3507, as amended by Section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget control number. We estimate that it will take about 10 minutes to read the instructions, gather the facts, and answer the questions. SEND OR BRING IN THE COMPLETED FORM TO YOUR LOCAL SOCIAL SECURITY OFFICE. The office is listed under U. S. Government agencies in your telephone directory or you may call Social Security at 1-800-772-1213. You may send comments on our time estimate above to: SSA, 6401 Security Blvd., Baltimore, MD 21235-6401. Send only comments relating to our time estimate to this address, not the completed form.

Form SSA-827 (6-2006)   ef (06-2006)

**EXHIBIT NO. 1F**
**PAGE 8 OF 9**

**HealthPort**
P.O. Box 409822
Atlanta, GA 30384-9822
Fed Tax ID 58 - 2659941
(770) 754 - 6000

# HealthPort.

## INVOICE

Electronic Delivery Service

Invoice #: 0050137063
Date: 9/6/2008
Customer #: 912073

**HealthPortConnect**

| Ship to: | | Bill to: | | Records from: |
|---|---|---|---|---|
| JAMES | | JAMES | | U K ORTHOPEDICS |

JAMES
DDS FRANKFORT KY S20
PO BOX 1000
FRANKFORT, KY 40602-1000

JAMES
DDS FRANKFORT KY S20
PO BOX 1000
FRANKFORT, KY 40602-1000

U K ORTHOPEDICS
740 SOUTH LIMESTONE
LEXINGTON, KY 40536

**Requested By:** DISABILITY DETERMINATION
**Patient Name:** NAILLIEUX LORENA

**SSN:** 401088762
**DOB:** 073162

| Description | Quantity | Unit Price | Amount |
|---|---|---|---|
| Basic Fee | | | 15.00 |
| Retrieval Fee | | | 0.00 |
| Per Page Copy (Paper) 1 | 2 | 0.00 | 0.00 |
| Subtotal | | | 15.00 |
| Sales Tax | | | 0.00 |
| Invoice Total | | | 15.00 |
| Balance Due | | | 15.00 |

**Please Note: Your medical record request has been delivered electronically to your HealthPortConnect account.**

Pay your invoice online at www.HealthPortPay.com

**Terms:** Net 30 days

**Please remit this amount : $ 15.00 (USD)**

✂

**HealthPort**
P.O. Box 409822
Atlanta, GA 30384-9822
Fed Tax ID 58 - 2659941
(770) 754 - 6000

| Invoice #: **0050137063** |
|---|

Check # _____

Payment Amount $_____

# Please return stub with payment.

Please include invoice number on check.
To pay invoice online, please go to http://www.HealthPortPay.com or call (770) 754 6000.

**289**

## THIS MUST BE THE FIRST PAGE WHEN FAXING OR MAILING RECORDS.  PLEASE FAX TO 866-818-0912.

EAST KY EYE EARS NOSE & THROAT SPECIALISTS
PIKEVILLE, KY  41501-3476
0139192A

FAX: 866-818-0912

CLAIMANT INFORMATION:

RE: LORENA NAILLIEUX
    PARTRIDGE, KY
CASE#: 1413020
DOB:  07/31/1962
**DMA: Y   PFI: N**

ldalllulalulalldldlulululllddlull
DEPT FOR DISABILITY DETERMINATIONS (S20)
PO BOX 8750
LONDON KY 40742-9818



RQID:L00002LZQY000          SITE:S20 DR:S
SSN:*********  DOCTYPE:0001 RF:D CS:f094

IF AN EXAMINATION IS NEEDED, ARE YOU WILLING TO PERFORM THE EXAMINATION ON THIS
PATIENT? YES _____   NO _____
JAMES, Disability Examiner
**800-928-8050 EXT. 4362**
HOP:hop B1

**PLEASE RETURN THIS PAGE WITH YOUR REPORT.** We pay a maximum of $10.00 if
only copies of records are submitted or a maximum of $15.00 for a narrative report,
accompanied by copies of records. **WE WILL PAY AN ADDITIONAL $5.00 FOR RECORDS SENT
ELECTRONICALLY (FAXED OR SENT TO SSA WEBSITE).  If you have any questions about the
electronic process call 800-928-8050 ext. 4355.**  To be paid, fill in amount and revise
payment information below if needed. Allow four weeks for payment. All billing issues
must be resolved within one year from the date of this letter.

HOP:hop B1

INVOICE AMOUNT: $ 15.00

**PAYMENT NAME/ADDRESS/FED TAX ID/TYPE**
EAST KY EYE EARS NOSE & THROAT
255 CHURCH ST STE 101
PIKEVILLE, KY 41501-3476

INVOICE NUMBER:
EAST KY EYE EARS NOSE & THROAT
SPECIALISTS
Vendor ID #: 0139192A
Serial #: 20080703400894  **DMA: Y**
NAILLIEUX  1413020  **PFI: N**

**FEDERAL TAX ID: 61-1393689, BUSINESS TYPE: C**

D0005

## THIS BARCODED PAGE MUST BE THE TOP PAGE

## EAST KENTUCKY EYE, EAR, NOSE & THROAT SPECIALISTS, PLLC

Phone: 606-432-4494      255 Church Street  Suite 101      Fax: 606-432-0430
Pikeville, KY 41501

### OTOLARYNGOLOGY HISTORY & PHYSICAL FORM     Date 4-25-08

Patient Name __Lorena Naillieux__     Age 45   D.O.B. 7-31-62     Male __ Female ✓

Referring / Consulting Physician ___     Primary Care Physician ___

History of Present Illness (Brief = 3, Extended = 4 new or 3 chronic/inactive)

|  | Chief complaint # 1 | Complaint # 2 | Complaint # 3 | Complaint #4 |
|---|---|---|---|---|
|  | Sinus Problems | Sleep Apnea |  |  |
| Timing | years - daily | 5-6 yrs |  |  |
| Duration | Almost Constant | S/P UPPP Tonsillect. (Dr. Manjarde) |  |  |
| Location |  |  |  |  |
| Severity | Mild - Mod. | Mod. OSA Prior to Surg. |  |  |
| Quality |  | * Surg has help but not 100% |  |  |
| Modifying Factors | (+) PAID, (+) tenderness around | Ø Use of C-Pap |  |  |
| Context | eyes & bridge of nose. | Ø Repeat Sleep Study p Surg. |  |  |
| Assoc. signs & symptoms | Ø Nasal Congestion (other than) | (+) Occ feels Unrested in Am's, |  |  |
|  | Night, Ø CT or X-Ray of Sinus | Ø daytime Sleepiness, |  |  |
|  | Not tried Rx meds | Ø daytime Naps. |  |  |

Physician Reviewed Medical History Form (past medical history, family history, ROS) with patient    (YES)   NO

| MEDICATIONS | | ALLERGIES | OPERATIONS | Tobacco Use: Yes (No) |
|---|---|---|---|---|
| Wellbutrin |  | * Sulfa | Herm | Packs per day N/A |
|  |  |  | UPPP. Tonsillect | Number of years __ |
| Estratest |  |  | partial | Quit when? __ |
|  |  |  | Hysterectomy | Alcohol Use:  Yes (No) |
|  |  |  | Appendect | N/A |
|  |  |  | Complete Hysterect | Occupation: __ |
|  |  |  | C-Section |  |

B/P 128/82  HR 76   Resp 20   Wt 196#   Temp ___   Alert & Oriented x 3   (Yes)  No

|  | Nml | Abn |  |  |
|---|---|---|---|---|
| General appearance | ✓ |  | Unable to see TM secondary to cerumen  L  R | **Performed/reviewed** |
| Ability to communicate, voice quality | ✓ |  | Cerumenectomy performed  L  R   Hearing Decreased  L  R | Nasolaryngoscopy |
| Inspection of head and face | ✓ |  | Weber lateralizes  L  R   Rinne: L= Pos Neg  R= Pos Neg | Nasal endoscopy |
| External inspection ears and nose | ✓ |  |  | Endonasal debridement |
| Otoscopy – EAC's / TM's | ✓ |  |  | Tympanogram |
| Assessment hearing (finger rub/tuning fk) | ✓ |  |  | Audiogram/SRT/Discrim |
| Nasal mucosa, septum, turbinates |  | ✓ | BITH | ENG |
| Oral cavity, lips, teeth, gums | ✓ |  |  | ABR |
| Oropharynx, tongue, tonsils, palate | ✓ |  |  | Cerumenectomy  L  R |
| Palpation/percussion of face/sinus | ✓ |  |  | OAE's |
| Pharyngeal walls, pyriform sinuses |  |  |  | Hearing aid evaluation |
| Mirror exam larynx, epiglottis, vocal folds |  |  |  | Microscopic exam ears |
| Mirror exam nasopharynx |  |  |  | Myringotomy  L  R |
| Lymph nodes–neck and/or other | ✓ |  |  | PE Tube  L  R |
| Neck (masses, tracheal position) | ✓ |  |  | FNA Neck mass |
| Thyroid (tenderness, masses, enlargement) | ✓ |  |  | FNA Salivary Gland |
| Salivary glands | ✓ |  |  | FNA thyroid |
| Facial strength | ✓ |  |  | Biopsy |
| Ocular motility, primary gaze alignment | ✓ |  |  | Steroid injection |
| Cranial nerves | ✓ |  |  | Canalith exercise pamphlet |
| Auscultation lungs |  |  |  | Epley maneuver performed |
| Auscultation heart |  |  |  | CT Scan:  Neck  Sinus |
|  |  |  |  | MRI |

**DIAGNOSIS:**

1. Chronic rhinitis
2. OSA Stable

**PLAN:**

1. Allergy Nasonex
2. CT sinuses c T/u
3. Obtain last PSG

RTO: 3 - 4  Days - Wks ___

5-20-08

___ D.O./M.D

**EXHIBIT NO. 2F**
**PAGE: 3 OF 6**

## EAST KENTUCKY EYE, EAR, NOSE & THROAT SPECIALISTS, PLLC

Phone: 606-432-4494    255 Church Street   Suite 101    Fax: 606-432-0430
Pikeville, KY  41501

### PATIENT MEDICAL HISTORY FORM-----OTOLARYNGOLOGY    Date_____

Patient Name _Lorena  Nailliev X_    Age _45_   Birth Date _7-31-63_    Male____   Female _✓_

Who is your primary care physician (family doctor)?_____

Did your primary care physician refer you to our office?    Yes_____    No _✓_

Where is your primary care physician's office located? _____

Did another physician, other than your primary care physician refer you to us?    Yes_____    No _✓_

If you answered yes, which physician referred you to us? _____

Where is your referring physician's office located? _____

What is the single most important reason for today's visit? _Sinus problems + Sleep Apnea_

How long have you had this problem? _years_

### PERSONAL & FAMILY HISTORY—If you or a family member have had any of the following problems, either check yes or no.

| | PATIENT | | FAMILY | | | PATIENT | | FAMILY | |
|---|---|---|---|---|---|---|---|---|---|
| | Yes | No | Yes | No | | Yes | No | Yes | No |
| Rheumatic fever | | ✓ | ✓ | | Asthma | | | ✓ | ✓ |
| Mitral valve prolapse | | ✓ | | | Emphysema | | | ✓ | |
| Heart disease | | ✓ | ✓ | | Miner's black lung | | | ✓ | |
| Heart attack | | ✓ | | | Ulcers | | | ✓ | ✓ |
| Angina (chest pain from heart) | | ✓ | ✓ | | Hiatal hernia | ✓ | | ✓ | |
| High blood pressure | | ✓ | ✓ | | Reflux or heartburn | | | ✓ | |
| Diabetes | | ✓ | ✓ | | Elevated cholesterol or triglycerides | ✓ | | ✓ | |
| Meningitis | | ✓ | | | Thyroid disorders | | ✓ | | |
| Cancer | | ✓ | ✓ | | Arthritis | ✓ | | ✓ | |
| Seizures | | ✓ | | | Bleeding disorders | | ✓ | | |

### PERSONAL REVIEW OF SYSTEMS—If you have recently experienced any of the following conditions, please check yes or no.

| | Yes | No | | Yes | No | | Yes | No |
|---|---|---|---|---|---|---|---|---|
| Fever | ✓ | | Sore throats (recurrent) | | ✓ | Chronic back pain | | ✓ |
| Weight change, up____ down____ lbs. | | | Mouth sores or bleeding gums | | ✓ | Dry skin, rash, or itching    (circle) | ✓ | |
| Blurred vision or changes in vision | ✓ | | Dental cavities or abscesses | | ✓ | Change in size or color of moles | | ✓ |
| Itchy or watery eyes | | ✓ | Hoarseness or loss of voice | | ✓ | Development of new skin lesions | ✓ | |
| Hearing loss or changes in hearing | | ✓ | Swelling of feet or ankles | ✓ | | Numbness / tingling in hands / feet | ✓ | |
| Noise in ears (ringing, crickets, etc.) | ✓ | | Shortness of breath | | ✓ | Loss of limb movement | | ✓ |
| Earaches or ear drainage | | ✓ | Frequent cough | | ✓ | Loss of consciousness | | ✓ |
| Fullness in ears | ✓ | | Chest congestion | | ✓ | Depression, anxiety or agitation | ✓ | |
| Dizziness or imbalance | | ✓ | Coughing up blood | | ✓ | Fatigue | ✓ | |
| Difficulty breathing through nose | ✓ | | Frequent respiratory infections | | ✓ | Excessive thirst | | ✓ |
| Nose bleeds | | ✓ | Loss of appetite | | ✓ | Slow to heal after cuts | | ✓ |
| Sneezing or runny nose | ✓ | | Loss of bowel or bladder control | | ✓ | Free bleeding | | ✓ |
| Sinus pressure, facial pain, or frequent headaches | ✓ | | Nausea, vomiting, diarrhea, constipation    (circle) | | ✓ | Frequent skin infections | | ✓ |
| Post nasal drainage | ✓ | | Painful, frequent, or difficulty with urination (circle) | | ✓ | Chest pain | | ✓ |
| Bad breath or bad taste in mouth | | ✓ | Joint pain or swelling | ✓ | | | | |

Patient /Guardian Signature X_Lorena Nailliev_    Reviewed by: _____ D.O./M.D.

**292**

EXHIBIT NO. 2F
PAGE: 4 OF 6

# EAST KENTUCKY EYE, EAR, NOSE, & THROAT SPECIALISTS, PLLC

| | COAL RUN MEDICAL PLAZA | |
|---|---|---|
| Phone  606-432-4494 | 255 Church Street, Ste 101 | Fax  606-432-0430 |

**Otolaryngology**                          Pikeville, KY  41501                    **Ophthalmology**
*Gregory V. Hazelett, D.O.*                                                        *Kay C. Hazelett, M.D.*
*Michael T. Cecil, M.D.*              **Audiology & Hearing Aids**
*Danita S. Thompson, PA-C*              *Alecia Manning, MS, CCC-A*

---

May 1, 2008

## NO PRIMARY CARE PHYSICIAN

RE:    Lorena Naillieux
DOB:   07/31/1962
CHART # 35469
DATE OF VISIT:  April 25, 2008

Dear Dr.

Your patient was seen in our office as a **new self-referred** patient on the above stated date.  At that time our findings and recommendations were as follows:

DIAGNOSTIC EXAMS/PROCEDURES
None

IMPRESSIONS
1.  Chronic rhinitis
2.  Obstructive sleep apnea stable

RECOMMENDATIONS
1.  Rx Allegra and Nasonex
2.  CT scan of the sinuses scheduled for 05/20/2008
3.  Obtain last sleep study
4.  Return visit scheduled for 05/20/2008

We appreciate your support and confidence.  Should you have any questions regarding this patient's care or if any new problems develop, please do not hesitate to call our office.

Sincerely,

Michael T. Cecil, M.D.

MTC/dlt

**293**

07/14/2008 10:29 6064320430 EKEENTS PAGE 05/06
04/25/2008 16:00 Case: 7:16-cv-00193-JMH Doc #: 12-1 Filed: 12/09/16 Page: 298 of 435 - Page ID#: 368/02

EXHIBIT NO. 2F
PAGE: 5 OF 6



## PIKEVILLE METHODIST HOSPITAL

**Breathing Disorder Sleep Lab**
*911 Bypass Road*
*Pikeville, KY 41501*

01/18/2002      35469

Frank D. Mongiardo, MD
200 Medical Center Drive. #2N
Hazard, KY 41701

RE:   Naillieux, Lorena Lynn
DOB:  07/31/1962
MRN:  18-94-73
ACCT: 0201404365

Dear Doctor Mongiardo:

Lorena Naillieux is a 30-year-old female who cannot breath and snores. She has an Epworth score of 18 out of 24. She has been feeling fatigued and tired. My impression was extreme daytime sleepiness, snoring problems and sleep apnea. She had a sleep study done on the night of January 14, 2002. The study was done with the CPAP with usual technical procedures including EEG, EMG, EOG, EKG, oxygen saturation, respiratory flow and effort channel and leg movements are being monitored. The result and recommendations are as follows:

**Sleep Architecture**

Total study time was 6.0 hrs. with sleep efficiency of 88%. Sleep staging: Stage 1 is 2%; stage 2 is 55%; stage 3 – 4 is 27%; REM sleep is 16%. Latency to sleep onset is 31.5 minutes. Latency to first REM is 110.5 minutes.

**Body Movements**

Number of body movements were 2, per hour of sleep was .37.

**Periodic Leg Movements**

Periodic leg movements were 24, number per hour of sleep was 4.5 and number of arousals with periodic leg movements were 15.

**Micro wakes**

Micro wakes were 92; per hour of sleep was 17.4.

*1st Study* **294**

Pikeville Methodist Hospital
Breathing Disorder Sleep Lab
Cardio-Pulmonary Department

RE: Naillieux, Lorena Lynn
MRN: 18-94-73
DATE: 01/14/2002
Page#: 2

Respiratory Summary

There were 7 apnea, 96 partial apnea with the longest apnea of 18 seconds and the longest hypopnea of 45 seconds. RDI – 15.5.

Oxygenation

Oxygen saturation was 98% while awake, was around 96% during sleep. The lowest saturation is 88%.

Cardiac

Heart rate was 70-86 beats per minute.

Impression

1.    Moderate obstructive sleep apnea.

Recommendations

1.    At this time she had an Epworth score of 18 out 24 which means she is extremely sleepy during the day. She had an index of 15.5. Even though she did not have 30 documented apneas she had partial apneas of 75 and she is very symptomatic. The clinical consequences of the apneas and partial apneas are the same. I would like to bring her back and do the CPAP titration to see how she does since she has sleep apnea syndrome. I will be sending you detailed recommendations once the CPAP titration is done with further recommendations.

Thank you for the consultation on this patient.

Sincerely,

R.V. Mettu, M.D.,FACP, FCCP, FAASM
Diplomation American Board of Sleep Medicine

RVM/rkt
cc: R.V. Mettu, M.D.,FACP
     Breathing Disorder Sleep Lab

DD: 01/16/2002
DT: 01/18/2002

**THIS MUST BE THE FIRST PAGE WHEN FAXING OR**
**MAILING RECORDS. PLEASE FAX TO 866-818-0912.**

FAX: 866-818-0912
CLAIMANT INFORMATION:

MOUNTAIN COMP EXTENDED SERVICES
WHITESBURG, KY  41858-7346
1175291A

RE: LORENA NAILLIEUX
      PARTRIDGE, KY
CASE#: 1413020
DOB: 07/31/1962
**DMA: Y  PFI: N**

DEPT FOR DISABILITY DETERMINATIONS (S20)
PO BOX 8750
LONDON KY 40742-9818



RQID: L00002LZR5000                          SITE: S20 DR: S
SSN: ********* DOCTYPE: 0001 RF: D CS: d1f9

IF AN EXAMINATION IS NEEDED, ARE YOU WILLING TO PERFORM THE EXAMINATION ON THIS
PATIENT? YES _____  NO _____
JAMES, Disability Examiner
800-928-8050 EXT. 4362
HOP:hop B1

**PLEASE RETURN THIS PAGE WITH YOUR REPORT.** We pay a maximum of $10.00 if
only copies of records are submitted or a maximum of $15.00 for a narrative report,
accompanied by copies of records. **WE WILL PAY AN ADDITIONAL $5.00 FOR RECORDS SENT
ELECTRONICALLY (FAXED OR SENT TO SSA WEBSITE).  If you have any questions about the
electronic process call 800-928-8050 ext. 4355.  To be paid, fill in amount and revise
payment information below if needed. Allow four weeks for payment. All billing issues
must be resolved within one year from the date of this letter.

HOP:hop B1

                                              INVOICE AMOUNT: $ 15.00

PAYMENT NAME/ADDRESS/FED TAX ID/TYPE          INVOICE NUMBER: _____
MOUNTAIN COMP EXTENDED SERVICES               MOUNTAIN COMP EXTENDED SERVICES
50 E MAIN ST                                  Vendor ID #: 1175291A
WHITESBURG, KY 41858-7346                     Serial #: 20080703400897  **DMA: Y**
                                              NAILLIEUX  1413020  **PFI: N**
FEDERAL TAX ID: 0, BUSINESS TYPE: _____

D0005

**THIS BARCODED PAGE MUST BE THE TOP PAGE**

## MOUNTAIN COMPERHENSIVE HEALTH COOPERATION
## X-RAY REQUEST FORM:
### CENTER# 259

PATIENT: **LORENA NAILLIEUX**
PATIENT CHART #: 03-16
DOB: 07/31/1962

ORDERED BY: Ann Moore, CNM
DATE ORDERED:
DATE OF EXAM:  12/06/06

EXAMINATION DESIRED:     **BILATERAL SCREENING MAMMOGRAM:**

RELEVENT CLINICAL HISTORY AND WORKING DIAGNOSIS.  The patient has discharge
from both breasts. No other complaints. No family history of breast carcinoma.

X-RAY FILE#: 15339

DATE OF REPORT: 12/12/06

REPORT OF RADIOLOGIST: Routine film screen craniocaudal and angle medial lateral
projections of both breasts are obtained.  Compared to the prior mammogram of May 21, 2004.

Moderate fibrocystic changes bilaterally which diminishes the sensitivity of mammography.
There is no evidence of malignant appearing dominant mass, suspicious microcalcifications, skin
thickening or nipple retraction. There is no architecture distortion. The axillary lymph nodes are
demonstrated bilaterally.

IMPRESSION: Fibrocystic changes bilaterally which diminishes the sensitivity of
mammography.   Negative mammogram, no mammographic evidence of malignancy. Birad
category 1 examination. No significant interval change compared to the prior mammogram dated
May 21, 2004.

Kenneth T. Grimes, MD/ln

**297**

EXHIBIT NO. 3F
PAGE: 3 OF 10

## MOUNTAIN COMPREHENSIVE HEALTH COOPERATION
### X-RAY REQUEST FORM:
### CENTER# 259

PATIENT: **LORENA NAILLIEUX**
PATIENT CHART #: 03-16
DOB: 07/31/1962

ORDERED BY: Ann Moore, CNM
DATE ORDERED:
DATE OF EXAM: 06/24/08

EXAMINATION DESIRED: **BILATERAL SCREENING MAMMOGRAM:**

RELEVENT CLINICAL HISTORY AND WORKING DIAGNOSIS: Bilateral black green discharge from the nipple. No other complaints. No family history of breast carcinoma

X-RAY #: 15339

DATE OF REPORT: 06/30/08

REPORT OF RADIOLOGIST: Routine film screen craniocaudal and angle medial lateral projections of both breasts are obtained. Compared to the prior mammogram of December 6th, 2006. There has been no significant change in the interim.

The breast parenchyma demonstrates scattered fibrocystic changes bilaterally which diminishes the sensitivity of mammography. There is no evidence of malignant appearing dominant mass, suspicious microcalcifications, skin thickening or nipple retraction. No architecture distortion. Axillary lymph nodes is demonstrated on the right.

IMPRESSION: heterogeneously dense breast parenchyma which diminishes the sensitivity of mammography. Negative mammogram, no mammographic evidence of malignancy. Birad category I examination. No significant interval change compared to the prior mammogram dated December 6th, 2006.

Kenneth T. Grimes, MD
Transcriptionist: Michelle Nickels.

**298**



**PATIENT INFORMATION**
**LORENA NAILLIEUX**
Sex: Female
DOB/AGE: 07/31/1962 (44)
SSN #: 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
MRN #: C031602

**PHYSICIAN INFORMATION**
ANN MOORE, C.M.A.
WHITESBURG MEDICAL CLINIC
P.O. BOX 40
Whitesburg KY 41858
606-633-4871

**AmeriPath®**

James P. Bodnar, M.D.    Susan E. Spires, M.D.
Michael J. Kline, M.D.    Henry A. Hansmen, M.D.
David E. Hunt, M.D.    Joana A. Faber, M.D
J. Augusto Ross, M.D.    C. Thomas Anderson, M.D.

**SPECIMEN INFORMATION**
Accession #: **KC06-23810**

Collected: 10/24/06
Received: 10/24/06
Reported: 10/25/06

**CYTOPATHOLOGY REPORT**

NEGATIVE

**RESULTS**

Source: THIN PREP GYN
Adequacy of Specimen: SATISFACTORY FOR EVALUATION

Interpretation: NEGATIVE FOR INTRAEPITHELIAL LESION OR MALIGNANCY
Screening Tech: TD, 10/25/06

Educational Note: The THIN PREP GYN test is not a diagnostic procedure and should not be used as the sole means to detect cervical cancer. It is only a screening procedure to aid in the detection of cancer and its precursors. Both False-negative and false-positive results have been experienced. Any visible lesions should be biopsied.

Place of Service: 2620 Wilhite Circle, Lexington, Ky 40503

CPT Codes: 88142    AmeriPath Kentucky, 310 S. Limestone Street, Lexington, KY 40508  (Phone: 859-226-7094  FAX: 859-255-9836)

299

WHITESBURG MEDICAL CLINIC
226 MEDICAL PLAZA LANE/PO BOX 40
WHITESBURG, KY 41858
PHONE (606)633-4871 EXT-228

Patient Name: NAILLIEUX LORENA                              Priority: ROUTINE
ID: C031602
Sex:6F2     Age: 44     Misc: CC          Misc: CMP/LIPID   Misc: DD12/6/06
Physician: MOORE

| Test | | Result | | Normal Range | | |
|------|---|--------|---|---|---|---|
| GLUCOSE | HI | 110. | mg/dL | 70. | — | 110. |
| UREA NITROGEN | HI | 19. | mg/dL | 7. | — | 18. |
| CREATININE | | .8 | mg/dL | .6 | — | 1.3 |
| SODIUM | | 144. | mmol/L | 136. | — | 145. |
| POTASSIUM | | 4.3 | mmol/L | 3.5 | — | 5.1 |
| CHLORIDE | | 104. | mmol/L | 98. | — | 107. |
| CARBON DIOXIDE | HI | 30. | mmol/L | 22. | — | 29. |
| CALCIUM | | 9.9 | mg/dL | 8.5 | — | 10.1 |
| CHOLESTEROL | HI | 225. | mg/dl | 50. | — | 200. |
| | | | | | | |
| Direct HDLC | | 49. | mg/dL | 35. | — | 65. |
| TOTAL PROTEIN | | | g/dl | | — | 8.2 |
| ALBUMIN | | 4.5 | g/dL | 3.4 | — | 5.0 |
| AST | | 36. | U/L | 15. | — | 37. |
| ALT | | 32. | U/L | 30. | — | 65. |
| ALKP | | 99. | U/L | 50. | — | 136. |
| TOTAL BILI | | .4 | mg/dl | 0.0 | — | 1.0 |
| LDL | HI | 151. | mg/dL | 0. | — | 130. |
| VLDL | | 25. | mg/dL | 4. | — | 32. |

Report Print Time 10:50:02                            Report Print Date 12/06/06

Test Init Date: Dec 06 06    10:41:17

12/19/06
for information

300

**MOUNTAIN COMPREHENSIVE HELATH CORP.**                    Page   1
12/06/06              WHITESBURG MEDICAL CLINIC
04:16PM                   226 MEDICAL PLAZA LANE
                          WHITESBURG, KY 41858
                       PH (606) 633-4871 EXT.282

| Name: NAILLIEUX,LORENA | | SID: 31228 | | Req Phy: CNM A. MOORE | |
|---|---|---|---|---|---|
| PID : 0C031602   Sex: F | | DrawDate: 12/06/06 Comment: | | | |
| DOB : 07/31/1962   Age: 44 | | DrawTime: 12:24PM | | | |

| Test Name | Result | Units | Screening | Reference | Tech |
|---|---|---|---|---|---|
| *CHEMISTRY* TSH | 2.14 | uIU/mL | | 0.40 — 5.50 | CC |



MOUNTAIN COMPREHENSIVE HEALTH CORPORATION

C031602 F 610004706
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   606-589-4149
NAILLIEUX, LORENA  07-31-1962
85 BARLOW BR

PARTRIDGE, KY 40862
78230204002 CHA HEALTH

**PROGRESS NOTES**

| DATE/PROBLEMS (No. and Description) | FINDINGS (Subjective and Objective) | PLANS |
|---|---|---|
| Date 10-24-06 | Age 43   Wt 191.3 | C/O here for pap + |
| Provider# 046 | BP 100/52 T 97 P 76 R 20 | chup — also |
| | G 2   P 2   AB ____ | meds HRT. |
| | LMP Hyst    Last Pap 5-04 | — Sharon Hale |
| | Last Mammogram 5-04 | |
| | Birth Control TAH | |
| | Hormone Rx ____ | |
| | GYN/Surgery TAH BSO | Location |
| | | Frequency |
| | 0 1 2 3 4 5 6 7 8 9 10 | Duration |
| | | Sharp ___ Dull ___ Ache |
| | | Squeezing ___ Cramping |

Injections/Medications

| | | | |
|---|---|---|---|
| ___ J3105 Brethine | ___ J1000 Depo Estr | ___ J7040 IV Fluids | ___ J2788 Rhogam    Other ___ |
| ___ J0704 Celeston | ___ J9217 Depolupro | ___ 90784 IV Set Up | ___ J1885 Toradol |
| ___ J1055 Depopro (CON) | ___ J0725 HCG | ___ J2550 Phener 25 | Other ___ |
| ___ J1051 Depoprov | ___ J3490 HSG | ___ J0696 Rocephin | Other ___ |

| 12-6-06 | Patient here in _____ + labs per A |
|---|---|
| | Moore. Dr Swisher |

— C031602 . F 610004706
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     .606-589-4149
NAILLIEUX, LORENA     07-31-1962
85 BARLOW BR

PARTRIDGE, KY 40862
YRP866M55909  ANTHEM BLUE CROSS

MOUNTAIN COMPREHENSIVE HEALTH CORPORATION

**PROGRESS NOTES**

PT. PAYS Unknown

| DATE/PROBLEMS (No. and Description) | FINDINGS (Subjective and Objective) | PLANS |
|---|---|---|
| Date 6-24-08 | Age 45 Wt 195 | C/O Momma & Dr Visit |
| Provider# 46 | BP 10/69 T 97² P. 78 R. 20 | Unscheduled Appt |
| | G 2 P 2 AB 0 | |
| | LMP Hyst     Last Pap 10-06 wnl | |
| | Last Mammogram 6-24-08 | |
| J | Birth Control Hyst | |
| | Hormone Rx | |
| | GYN/Surgery Hyst 7° benign Nausea | |
| | | Location |
| | | Frequency |
| | 0  1  2  3  4  5  6  7  8  9  10 | Duration |
| | | Sharp     Dull     Ache |
| | | Squeezing     Cramping |

### Injections/Medications

| | | | |
|---|---|---|---|
| __J3105 Brethine | __J1000 Depo Estr | __J7040 IV Fluids | __J2788 Rhogam     Other___ |
| __J0704 Celeston | __J9217 Depolupro | __90784 IV Set Up | __J1885 Toradol |
| __J1055 Depopro (CON) | __J0725 HCG | __J2550 Phener 25 | Other ___ |
| __J1051 Depoprov | __J3490 HSG | __J0696 Rocephin | Other ___ |

MCHC FORM 852-OBGYN (REV 7/00)

**303**

## MOUNTAIN COMPREHENSIVE HEALTH CORPORATION
### MEDICATION RECORD

C031602 F 610004706
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    .606-589-4149
NAILLIEUX, LORENA    07-31-1962
85 BARLOW BR

PARTRIDGE, KY 40862
78230204002   CHA HEALTH

| ALLERGIES | REACTION |
|-----------|----------|
| SulFA     |          |
|           |          |

DATE

| # | MEDICATION/DOSE | FREQUENCY | 10/24/06 | 02/24/08 | | | | | | | | |
|---|-----------------|-----------|---|---|---|---|---|---|---|---|---|---|
| 1 | Estratest 1.25/2.5 | daily | 30/12 | | | | | | | | | |
| 2 | Wellbutrin | daily | | | | | | | | | | |
| 3 | | | | | | | | | | | | |
| 4 | | | | | | | | | | | | |
| 5 | | | | | | | | | | | | |
| 6 | | | | | | | | | | | | |
| 7 | | | | | | | | | | | | |
| 8 | | | | | | | | | | | | |
| 9 | | | | | | | | | | | | |
| 10 | | | | | | | | | | | | |
| 11 | | | | | | | | | | | | |
| 12 | | | | | | | | | | | | |
| 13 | | | | | | | | | | | | |
| 14 | | | | | | | | | | | | |
| 15 | | | | | | | | | | | | |
| 16 | | | | | | | | | | | | |
| 17 | | | | | | | | | | | | |
| 18 | | | | | | | | | | | | |
| 19 | | | | | | | | | | | | |
| 20 | | | | | | | | | | | | |

| CONTROLLED SUBSTANCE | FREQUENCY | | | | | | | | | | | |
|----------------------|-----------|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |

/05)

304

**MOUNTAIN COMPREHENSIVE HEALTH CORPORATION**

**PROBLEM LIST**

C 031602  F 610004706
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        606-589-4149
NAILLIEUX, LORENA     07-31-1962
85 BARLOW BR

PARTRIDGE, KY 40862
78230204002  CHA HEALTH

#4. 63¼"

| # | ILLNESSES | PROCEDURES |
|---|-----------|------------|
| 1 | | TAA  BSO |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |

**305**

**EXHIBIT NO. 4F**

0708073P0003899

## THIS MUST BE THE FIRST PAGE WHEN FAXING OR PAGE: 1 OF 28
## MAILING RECORDS. PLEASE FAX TO 866-818-0912.

ARH TRI CITY MEDICAL CENTER
CUMBERLAND, KY 40823-8106
1137025B

FAX: 866-818-0912
<u>CLAIMANT INFORMATION:</u>

RE: LORENA NAILLIEUX
     PARTRIDGE, KY
CASE#: 1413020
DOB: 07/31/1962
**DMA: Y  PFI: N**

ldadlladadadadadadaldadadalladadll
DEPT FOR DISABILITY DETERMINATIONS (S20)
PO BOX 8750
LONDON KY 40742-9818



RQID:L00002LZQU000          SITE:S20 DR:S
SSN:********* DOCTYPE:0001 RF:D CS:f458

JAMES, Disability Examiner
**800-928-8050 EXT. 4362**
HOP:hop B1

**PLEASE RETURN THIS PAGE WITH THE COPY OF YOUR RECORDS.** We pay a
maximum of $10.00 for photocopy of medical records. **WE WILL PAY AN ADDITIONAL $5.00 FOR
RECORDS SENT ELECTRONICALLY (FAXED OR SENT TO SSA WEBSITE). If you have any questions
about the electronic process call 800-928-8050 ext. 4355.** To be paid, fill in amount
and revise payment information below if needed. Allow four weeks for payment. All
billing issues must be resolved within one year from the date of this letter.

HOP:hop B1

INVOICE AMOUNT: $ _10.00_

**PAYMENT NAME/ADDRESS/FED TAX ID/TYPE**
APPALACHIAN REGIONAL HEALTHCARE
ARH TRI CITY MEDICAL CENTER
18880 N US HIGHWAY 119
CUMBERLAND, KY 40823-8106
**FEDERAL TAX ID: 52-0795508, BUSINESS TYPE:**

**INVOICE NUMBER:** _____
ARH TRI CITY MEDICAL CENTER
Vendor ID #: 1137025B
Serial #: 20080703400892 **DMA: Y**
NAILLIEUX 1413020 **PFI: N**

D0008

## THIS BARCODED PAGE MUST BE THE TOP PAGE.

(11)

**ARH TRI-CITY MEDICAL CTR**
18880 US NORTH HWY 119
CUMBERLAND, KY. 40823

Date: 6/1/06
Time: 3:45
Nsg. _Watkins LPN_

ALLERGIES: Sulfa_____ SMOKES No PPD ___ Shots UTD No    age - 43

FOLLOW UP _____ NEW PATIENT ASSESSMENT ____ O2-sat _____ % on room air

**VITAL STATISITICS:**
WT 188.8 HT 50" TEMP 98.1 RR 16 PULSE 60 B/P 124/80

| CHIEF COMPLAINT: | GEN: WEAKNESS: FATIGUE: |
|---|---|
| _Fever, earache, toothache_ | CV ___ CP: ___ PALPITATIONS: ___ |
| _No D.V. & D. No cough_ | RESP: ___ SOB: ___ COUGH: ___ |
| _No further complaints_ | GI ___ N ___ V ___ D ___ |
| | GU: ___ DYSURIA ___ |
| | NEURO: ___ HA ___ DIZZINESS ___ |
| | MS: ___ WNL ___ PAIN 0 on 1:10 |
| | GENERALIZED STIFFNESS ___ |

**PHYSICAL EXAM:**

GEN: ☑ Well developed well-nourished ☑ alert ☐ no distress ☐ non-toxic ☐ age appropriate behavior
ABNL/OTHER _____

EYES: ☐ lids, conjunctiva nl ☐ PERRL irises nl ☐ disc & fund nl
ABNL/OTHER _____

ENMT: ☑ ext ears, nose nl ☑ TM canals nl ☐ hearing grossly intact ☐ nasal exam nl ☐ teeth, gums, palate nl ☐ oropharynx nl
ABNL/OTHER _swollen w/slight maxillary sinuses tender c pressure_

NECK: ☐ neck supple, symmetric, no masses ☐ thyroid ☐ no JVD ☐ neck non-tender ☐ full ROM w/o pain
ABNL/OTHER _____

RESP: ☐ resp. effort nl ☑ clear to auscultation ☐ percussion nl ☐ palpation of chest nl ☑ chest symmetry & expansion nl
ABNL/OTHER _____

CV: ☑ RRR, no murmurs, gallop or rub Pulses: ☐ carotid nl ☐ abd aorta nl ☐ femoral nl ☐ pedal nl · ☐ no edema
ABNL/OTHER _____

GI: ☐ no tenderness/mass ☐ liver & spleen nl ☐ no hernias ☐ rectal, no mass ☐ + BS's ☐ non-distended ☐ no rebounding/guarding
ABNL/OTHER _____

GU: ☐ scrotal contents nl ☐ penis nl ☐ prostate nl ☐ no CVA tenderness ☐ breast exam nl ☐ rectal exam nl
☐ ext genatalia & vaginal nl ☐ urethra nl ☐ bladder nl ☐ uterus nl ☐ adnexa nl
ABNL/OTHER _____

MUSC: ☑ Extremities nl __ ALL __ RUE __ LUE __ RLE __ LLE __ ☐ back nl __ ☐ pelvis & hips nl ☐ gait station nl ☐ digits nl
ABNL/OTHER _____

SKIN: ☑ inspection nl ☐ palpation nl ☐ well-hydrated ☐ wound healing w/o infection ☐ feet nl
ABNL/OTHER _____

NEURO: ☐ CN 11-XII intact ☐ DTR'S symmetric ☐ sensory intact ☐ motor strength nl ☐ SLR neg. ☐ coordination nl
ABNL/OTHER _____

PSYCH: ☐ judgment/insight nl ☑ oriented x 3 ☐ memory nl ☐ mood nl ☐ no delusions/hallucinations
ABNL/OTHER _____

LYMPH: Normal Nodes: ☐ cervical ☐ axillary ☐ inguinal
ABNL/OTHER _____

| DIAGNOSES: | PLAN: |
|---|---|
| 1. _Pharyngitis_ | _Rocephin 1gm IM_ |
| 2. _Sinusitis_ | _Augmentin 875 mg, BID x 10 days_ |
| 3. _____ | |
| 4. _____ | |
| 5. _____ | |

FOLLOW UP: ☐ PRN or Return _____ Signature _Pam S. Steffield_ ARNP-BC

ARH TRI-CITY MEDICAL CTR
18880 US NORTH HWY 119
CUMBERLAND, KY. 40823

| | |
|---|---|
| Marital Status: M S W D | Allergies: _____ |
| Occupation:_____ | _____ |
| Lives Alone: Y N Lives with: _____ | |
| Hospitalizations/Surgeries | Diagnoses History |

Injection site _*(R) hip* 1 *sm*_
Medicine/dose injected _*Rocephin*_    (Last)
Time injected _4:15_    PaP-_____
No reaction after _15_ Minutes    Mammo-_____
Given by _*M Curtis ism*_    Chest X-_____
   Psa-_____
Notes_____    Family History
_____
_____    Mother_Htn Dm CVA Ca_____
_____    Father_Htn Dm CVA Ca_____
_____    Sister_Htn Dm CVA Ca_____
_____    Brother_Htn Dm CVA Ca_____
_____    Grandmother_Htn Dm CVA Ca_____
_____    Grandfather_Htn Dm CVA Ca_____
_____
_____    **Nursing**

**308**

**EXHIBIT NO. 4F**
**PAGE 4 OF 28**

0208 NAILLEUX 3899, LORENA
0224-9373
MSR: 00002389781
85 BARLOW BRANCH
PARTRIDGE
40862            KY DOB 07/31/1962
Cht Loc: TH      LOC: THTH
Cht ID: 046537   PH: 6065894149
FC: CI

------------Appointment-------------
12/19/06   03:15P   Appt Type: OV
PAM SHEFFIELD        SHEPA CLITH
CHA HEALTH          782302040

**ARH TRI-CITY MEDICAL CTR**
**18880 US NORTH HWY 119**
**CUMBERLAND, KY. 40823**

Date 12/19/06   Age 44
Time 315
Nsg. LHarper

ALLERGIES Sulfa          SMOKES NO PPD          Shots UTD yes
FOLLOW UP _____ NEW PATIENT ASSESSMENT ____ O2-sat 99 % on room air 0
VITAL STATISITICS:
WT 188   HT 5'   TEMP 97²   RR 20   PULSE 90   B/P 110/60

| CHIEF COMPLAINT: | GEN: WEAKNESS: FATIGUE: |
|---|---|
| Coughing x 2-3 wk - | CV: CP: PALPITATIONS: |
| no fever SL sore | RESP: SOB: mild COUGH: ↑ |
| started to get congested | GI: N Ø V Ø D Ø |
| no OTC meds | GU: DYSURIA |
| | NEURO: HA DIZZINESS |
| | MS: WNL PAIN on 1:10 |
| | GENERALIZED STIFFNESS |

**PHYSICAL EXAM:**

**GEN.** ☑ Well developed well-nourished ☑ alert ☑ no distress ☐ non-toxic ☐ age appropriate behavior
ABN/OTHER_____

**EYES:** ☐ lids, conjunctiva nl ☐ PERRL irises nl ☐ disc & fund nl
ABN/OTHER_____

**ENMT:** ☐ ext. ears, nose nl ☐ TM canals nl ☐ hearing grossly intact ☐ nasal exam nl ☐ teeth, guns, palate nl ☐ oropharynx nl
ABN/OTHER_____

**NECK:** ☐ neck supple, symmetric, no masses ☐ thyroid ☐ no JVD ☐ neck non-tender ☐ full ROM w/o pain
ABN/OTHER_____

**RESP:** ☑ resp. effort nl ☑ clear to auscultation ☐ percussion nl ☐ palpation of chest nl ☑ chest symmetry & expansion nl
ABN/OTHER_____

**CV:** ☑ RRR, no murmurs, gallop or rub Pulses: ☐ carotid nl ☐ abd aorta nl ☐ femoral nl ☐ pedal nl ☐ no edema
ABN/OTHER_____

**GI:** ☐ no tenderness/mass ☐ liver & spleen nl ☐ no hernias ☐ rectal, no mass ☐ +BS's ☐ non-distended ☐ no rebounding/guarding
ABN/OTHER_____

**GU:** ☐ scrotal contents nl ☐ penis nl ☐ prostate nl ☐ no CVA tenderness ☐ breast exam nl ☐ rectal exam nl
☐ ext genatalia & vaginal nl ☐ urethra nl ☐ bladder nl ☐ uterus nl ☐ adnexa nl
ABN/OTHER_____

**MUSC:** ☐ extremities nl __ ALL__ RUE__ LUE__ RLE __ LLE__ ☐ back nl __ ☐ pelvis & hips nl ☐ gait station nl ☐ digits nl
ABN/OTHER_____

**SKIN:** ☐ inspection nl ☐ palpation nl ☑ well-hydrated ☐ wound healing w/o infection ☐ feet nl
ABN/OTHER_____

**NEURO:** ☐ CN 11-XII intact ☐ DTR'S symmetric ☐ sensory intact ☐ motor strength nl ☐ SLR neg. ☐ coordination nl
ABN/OTHER_____

**PSYCH:** ☑ judgment/insight nl ☑ oriented x 3 ☐ memory nl ☐ mood nl ☐ no delusions/hallucinations
ABN/OTHER_____

**LYMPH:** Normal Nodes: ☑ cervical ☐ axillary ☐ inguinal
ABN/OTHER_____

| DIAGNOSES: | PLAN: |
|---|---|
| 1. Bronchitis | Keraflex 1 gm SR |
| 2._____ | 2-tab ↓ dose pak - as directed |
| 3._____ | |
| 4._____ | |
| 5._____ | |

FOLLOW UP: ☑ PRN or Return _____   Signature _Pam S Sheffield_   ARNP-BC

**309**

ARH TRI-CITY MEDICAL CTR
18880 US NORTH HWY 119
CUMBERLAND, KY. 40823

| Marital Status: M S W D | Allergies: _____ |
|---|---|
| Occupation: _____ | |
| Lives Alone: Y N Lives with: _____ | _____ |
| Hospitalizations/Surgeries | Diagnoses History |

Injection site_____
Medicine/dose injected_____   (Last)
Time injected_____   PaP-_____
No reaction after_____ Minutes____   Mammo-_____
Given by _____   Chest X-_____
_____   Psa-_____

Notes_____

**Family History**

Mother_Htn Dm CVA Ca_____
Father_Htn Dm CVA Ca_____
Sister_Htn Dm CVA Ca_____
Brother_Htn Dm CVA Ca_____
Grandmother_Htn Dm CVA Ca _____
Grandfather_Htn Dm CVA Ca_____

**Nursing**

**310**

0 2 55 BARLOW BRANCH
PARTRIDGE                    KY DOB  07/13/1962
41862                       LOC:  THTH
Cht Loc: TH                 FH:  6065894149
Cht ID:  046537
-----------------Appointment-----------------
07/05/07   03:30P  Appt Type:  WI
JULIE JACKSON              JACTH CLITH
BLUE CROSS AND BLU YRP866M55909

---

Ulkusim

A Checked or Circled Answer=Positive Finding    A Slash=Negative Finding    Date: 7-5-07

N/C=Non-Contributory

Sex: M (F)    Age: 44    PCP: Sheffield    Pregnancy? Y (N)
HEIGHT: 5'0" (inches)  WEIGHT: 191  LBS  TEMP: 98.6  (F) C
PULSE: 104    BLOOD PRESSURE: 130/80  RESPS: 16
PAIN TODAY: NONE 1 2 3 4 5 6 7 8 (9) 10
Immunizations Up To Date: Y (N)
ALLERGIES: Sulfa
Current Medications & Dosages:
none Estratest Wellbutrin 300mg XL daily
diclofenac PRN Bid

CC: Sinuses

HPI: c/o sinus headache & pressure x ~ week. Pain to (L) side of face & into forth. Stuffy nose.
PMH: See chart
Surgical HX: See chart
Social HX: Smoke Dip ETOH Drugs Denies

## REVIEW OF SYSTEMS

**GENERAL:** __Recent Weight Gain or Loss __Loss of Appetite __Fever/UP TO ____ __Chills
__Fatigue __Night Sweats ✓Feeling Generally "OK"

**HEENT:** __Headache ✓Sinus Pressure/Discomfort __Runny Nose ✓Stuffy Nose ✓Sore Throat
__Tinnitus __Vertigo ✓Ear Discomfort __Hearing Loss __Epistaxis __Blurred Vision
__Eye Pain or Redness __Eye Discharge __Glasses/Contacts __Change in Voice __N/C

**PULMONOLOGY:** __Cough __Sputum __**SPUTUM COLOR** __Hemoptysis __Dyspnea
__Wheezing __Rales __Pleuritic Chest Pain __Asthma __SOB __Bronchitis __COPD
__Pneumonia __Occupational Exposure/Coal/Asbestos __Chest Tight on Inspiration ✓N/C

**CARDIAC:** __Chest Pain OR Pressure __Palpitations __Orthopnea __Pedal Edema __Murmur
__HTN __Hyperlipidemia __Past MI __CAD ✓N/C

**GI:** __Nausea __Vomiting __Diarrhea __Constipation __Dysphagia __Melena __Flatus
__Hemorrhiods __Hepatisis __Gallbladder __Heartburn __GERD __Abdominal Pain
__Change in Appetite ✓N/C

**GU:** __Dysuria __Hematuria __Burning __Itching __Frequency __Nocturia __Polyuria
__Hesitancy __Incontinence __UTIs __Felling of Retention __Urgency ✓N/C

**FEMALE:** Gravida ____ Para ____ Abortions ____ Menarche/Age ____ LNMP ____
Last Pap ____ Last MAM ____ __PMS __PMDD __STDs __Endometriosis __PCOS
__Ovarian Cysts __Cervical CA __Breast CA __Vaginal D/C __Abnormal Bleeding __Dyspareunia
__Breast Lumps __Nipple D/C __Birth Control Method __N/C

**MALE:** __Hernia __Testicular Masses or Pain __Penile D/C __Penile Sores __Prostatitis
__STDs __Last PSA __Sexual Dysfunction __Slow Start of Stream
__Frequency __Urgency __Nocturia __Dribbling ✓N/C

**NEURO:** ___Dizziness ___Syncope ___Seizures ___Vertigo ___Limb Weakness ___Tremors ___Paresthesias ___Headache ___Double Vision ___Confusion (N/C)

**MUSCUSKELETAL:** ___Joint Pain or Swelling ___Gout ___Arthritis ___Myalgia ___Back Pain ___Muscle Pain (N/C)

**VASCULAR:** ___Phlebitis ___Varicose Veins ___Claudication ___Cramping ___Raynauds ___Shiny Skin ___Vasculitis (N/C)

**ENDO:** ___Diabetes ___Polyuria ___Polydypsia ___Polyphagia ___Cold-Heat Intolerance ___Thyroid Problems ___Tremors (N/C)

**HEMEATOLOGY:** ___Anemia ___Easy Bruising/Bleeding ___Anticoagulants ___Lymph Node Enlargement ___Fatigue ___Fever ___Chills ___Night Sweats (N/C)

**DERM:** ___Rash ___Moles (recent changes?) ___Dry Skin ___Pruritus ___Eczema ___Psoriasis ___Impetigo ___Birthmarks ___Lumps ___Pigment Change (N/C)

**PSYCH:** ___Depression ___Agitation ___Memory Disturbances ___Personality Changes ___Anxiety ___Hallucinations ___Mania (N/C)

## Physical Exam

**GENERAL:** ✓Alert ✓Active ✓Oriented ✓Well Developed/Nourished ~~Distress~~ ✓Mood/Affect Norm. ~~Listless~~ ~~Lethargic~~ ~~Dehydrated~~ ___Pale Membranes ~~Looks Ill~~

**HEENT:** ✓Normocephalic ✓PERRL ✓EOEM ~~Conjunctivitis~~ ___TM's Opaque ✓TM's Red (R) (L) ~~Wax R L~~ ___TM's Dull R L ___TM's Shiny (R)(L) ___TM's Injected R L ✓Loss of TM Landmarks ✓Nasal Drainage ~~Nares Red~~ ~~Nares/Edema~~ ✓Pharynx Red ✓Ulcerations on (Pharynx)/Tonsils ~~Thrush~~ ~~Tooth/Gum Infection~~ ~~Normal Pharynx/Pink/No Edema~~ ~~Normal Nares~~ ~~Normal Ears~~ ✓Enlarged Nodes (R)(L) ✓Lips/Gums WNL ___Flat Fontanels ~~Drooling~~ ~~Muffled/Hoarse Voice~~ ~~Ear Canal Reddened R L~~ ✓Sinus Tenderness/Palpation ~~Increased Sinus Pressure/Bending~~ ___N/C

**RESPIRATORY:** ✓Lung (CTA) ~~Rales R L~~ ~~Rhonchi R L~~ ~~Wheezes R L~~ ___Stridor ___Breathing Unlabored / ↑ ↑ ___Retractions/Accessory Muscle Use ___Decr. Air Movement ___Barrel Chest ___Lung Sounds Distant / Harsh ___Resp. Distress

**CARDIAC:** ___Heart Rate & Rhythm Regular/Irregular ___Murmur ___Click ___Gallop ___Cap Refill Norm/Abnorm ~~Carotid Bruits~~ ~~Pedal Edema~~ ___JVD ___Pulses/Upper/Normal ___Pulses/Lower/Normal ___Brady ___Tachy ___Extra Systoles

**ABDOMEN:** ✓Bowel Sounds (Active) & (WNL) ~~Increased~~ ~~Decreased~~ ~~Tympanic~~ ~~Guarding~~ ✓Soft ___Pain ___Quadrent ___Tenderness/Palpation ___Quadrant ___Rebound ___Organamegaly ___Suprapubic Tenderness ~~Epigastric Tenderness~~ ___Pelvic Tenderness ___N/C

**GU:** ___Diaper Rash ___Bellantis ___Hernia ___Hydrocele ___Warts ___Vaginal D/C ___Penile D/C ___CVA Tenderness ___N/C

**RECTAL/PROSTATE:** ___Hard/Soft Stool _____Prostate ___Hemmorrhoids ___Occult Blood ___Sphincter Tone ___N/C

**MUSCULOSKELETAL:** ___Range of Motion Normal/Decreased On Observ. ___Muscle Joint Bone Swelling ___Pain/ _____Tenderness _____Muscles Tight ___N/C

**NEURO:** ___Cranial Nerves (2-12) Norm / Abnorm. *as Tested* REFLEXES _____Romberg Motor Strength _____No Sensory Deficit ___Alternating Fingers Test ___Finger to Nose ___Hand Rotation/Knees ___Able Distinguish Sharp/Soft ___N/C

**SKIN:** Normal Color Y/N Normal Texture Y N Warm/Dry Y/N Rash Y (N) Diaphoretic Y (N)

**Assessment:** *Sinusitis*

---

**PLAN:** *Biaxin 500mg ī p BID x 10 day*
*Zyrtec 10mg po q hs*
*Ibuprofen 800mg po q 6° p*

---

**EDUCATION:**

Julie Jackson, ARNP

**312**

NAILLIEUX        LORENA
MSR:   00006642813
85 BARLOW BRANCH
PARTRIDGE            KY DOB  07/31/1962
40862               LOC:   THTH
Cht Loc: TH          PH: 6065894149
Cht ID:  046537
----------------Appointment--------------
03/11/08    11:30A  Appt Type: CI
PAM SHEFFIELD        SHEPA CLITH
BLUE CROSS AND BLU  YRP866M55909

FC:  BC

**ARH TRI-CITY MEDICAL CTR**
**18880 US NORTH HWY 119**
**CUMBERLAND, KY. 40823**

Date: 3/11/08    Age: 45
Time: 11:45
Nsg.

ALLERGIES _Sulfa_         SMOKES _No_ PPD ____ Shots UTD _No_
FOLLOW UP _____ NEW PATIENT ASSESSMENT ____ O2-sat _____ % on room air

VITAL STATISTICS:
WT _195.4_ HT _5'0"_  TEMP _98.6_  RR _16_ PULSE _64_ B/P _132/84_

| CHIEF COMPLAINT: | |
|---|---|
| Low grade fever x 1 1/2 wks | GEN: ____ WEAKNESS: ____ FATIGUE: ____ |
| Wants a Complete | CV: ____ CP: ____ PALPITATIONS: ____ |
| Physical | RESP: ____ SOB: ____ COUGH: ____ |
| | GI: ____ N ____ V ____ D ____ |
| | GU: ____ DYSURIA ____ |
| | NEURO: ____ HA ____ DIZZINESS ____ |
| | MS: ____ WNL ____ PAIN ____ on 1:10 |
| | GENERALIZED STIFFNESS ____ |

**PHYSICAL EXAM:**

**GEN.** ☑ Well developed well-nourished ☑ alert ☑ no distress ☐ non-toxic ☐ age appropriate behavior
ABNL/OTHER _____

**EYES:** ☐ lids, conjunctiva nl  ☐ PERRL irises nl  ☐ disc & fund nl
ABNL/OTHER _____

**ENMT:** ☐ ext. ears, nose nl ☐ TM canals nl ☐ hearing grossly intact ☐ nasal exam nl ☐ teeth, guns, palate nl ☐ oropharynx nl
ABNL/OTHER _____

**NECK:** ☐ neck supple, symmetric, no masses ☐ thyroid ☐ no JVD ☐ neck non-tender ☐ full ROM w/o pain
ABNL/OTHER _____

**RESP:** ☑ resp. effort nl ☑ clear to auscultation ☐ percussion nl ☐ palpation of chest nl ☑ chest symmetry & expansion nl
ABNL/OTHER _____

**CV:** ☑ RRR, no murmurs, gallop or rub Pulses: ☐ carotid nl  ☐ abd aorta nl  ☐ femoral nl   ☐ pedal nl   ☐ no edema
ABNL/OTHER _____

**GI:** ☐ no tenderness/mass ☐ liver & spleen nl ☐ no hernias ☐ rectal, no mass ☐ +BS's ☐ non-distended ☐ no rebounding/guarding
ABNL/OTHER _____

**GU:** ☐ scrotal contents nl ☐ penis nl ☐ prostate nl ☐ no CVA tenderness ☐ breast exam nl ☐ rectal exam nl
     ☐ ext genatalia & vaginal nl ☐ urethra nl ☐ bladder nl ☐ uterus nl ☐ adnexa nl
ABNL/OTHER _____

**MUSC:** ☑ Extremities nl __ALL__ RUE__ LUE__ RLE__ LLE__ ☐ back nl __ ☐ pelvis & hips nl  ☐ gait station nl ☐ digits nl
ABNL/OTHER _____

**SKIN:** ☑ inspection nl ☐ palpation nl ☐ well-hydrated ☐ wound healing w/o infection ☐ feet nl
ABNL/OTHER _____

**NEURO:** ☐ CN 11-Xll intact ☐ DTR'S symmetric ☐ sensory intact ☐ motor strength nl ☐ SLR neg.  ☐ coordination nl
ABNL/OTHER _____

**PSYCH:** ☐ judgment/insight nl ☐ oriented x 3 ☐ memory nl ☐ mood nl ☐ no delusions/hallucinations
ABNL/OTHER _____

**LYMPH:** Normal Nodes: ☐ cervical ☐ axillary ☐ inguinal
ABNL/OTHER _____

| DIAGNOSES: | PLAN: |
|---|---|
| 1. _Physical Exam_ | CBC, CMP, CRP, B12, Folate, TSH |
| 2. _Sinusitis_ | Arthritis Panel, U/A, HbA1c |
| 3. _____ | Roceplin 1gm IM |
| 4. _____ | |
| 5. _____ | |

FOLLOW UP: ☑ PRN or Return _____     Signature _Pam S. Sheffield_   ARNP-BC

**313**

ARH TRI-CITY MEDICAL CTR
18880 US NORTH HWY 119
CUMBERLAND, KY. 40823

Marital Status: M S W D                     Allergies: _____
Occupation:_____
Lives Alone: Y N Lives with: _____

| Hospitalizations/Surgeries | Diagnoses History |
|---|---|

Injection site _R Hip_
Medicine/dose injected _Register (Last)_
Time injected _12:45_
No reaction after _15_ Minutes
Given by _R. McRistim_

PaP-_____
Mammo-_____
Chest X-_____
Psa-_____

Notes_____

Family History

Mother_Htn Dm CVA Ca_____
Father_Htn Dm CVA Ca_____
Sister_Htn Dm CVA Ca_____
Brother_Htn Dm CVA Ca_____
Grandmother_Htn Dm CVA Ca_____
Grandfather_Htn Dm CVA Ca_____

**Nursing**

314

NAILLIEUX          LORENA          29-_____
0208073  0220-3776
MSR:  C0007551468
85 EARLOW BRANCH          KY DOB  07/31/1962
PARTRIDGE          LOC:     THTH
40862          PH:  6065894149
Cht Loc: TH
Cht ID:  046537
--------------------Appointment--------------
06/10/08          12:15P   Appt Type:  CV
PA!! SHEFFIELD          SHEPA CLITH
BLUE CROSS AND BLU  YRP8661155909

**ARH TRI-CITY MEDICAL CTR**
**18880 US NORTH HWY 119**
**CUMBERLAND, KY. 40823**

Date _6/10/18_   Age _45_
Time _12:55_
Nsg. _Klein um_

ALLERGIES _Sulfa_   SMOKES _NO_ PPD____  Shots UTD _NO_
FOLLOW UP____   NEW PATIENT ASSESSMENT____  O2-sat_____ % on room air
VITAL STATISTICS:
WT _199.8_ HT _5'0"_ TEMP _97.8_   RR _16_ PULSE _64_  B/P _122/76_

| CHIEF COMPLAINT: | |
|---|---|
| Tlk re Labs. 4/o neck pain, x several mo. Would like to have x-rays. Tlk re sleep apnea studies. | GEN:____ WEAKNESS:____ FATIGUE:____ |
| | CV:____ CP:____ PALPITATIONS:____ |
| | RESP:____ SOB:____ COUGH:____ |
| | GI:____ N____ V____ D____ |
| | GU:____ DYSURIA____ |
| | NEURO:____ HA____ DIZZINESS____ |
| | MS:____ WNL____ PAIN O____ on 1:10 |
| | GENERALIZED STIFFNESS____ |

**PHYSICAL EXAM:**

**GEN:** ☑ Well developed well-nourished ☑ alert ☑ no distress ☐ non-toxic ☐ age appropriate behavior
ABNL/OTHER_____

**EYES:** ☐ lids, conjunctiva nl ☐ PERRL irises nl ☐ disc & fund nl
ABNL/OTHER_____

**ENMT:** ☐ ext. ears, nose nl ☐ TM canals nl ☐ hearing grossly intact ☐ nasal exam nl ☐ teeth, guns, palate nl ☐ oropharynx nl
ABNL/OTHER_____

**NECK:** ☐ neck supple, symmetric, no masses ☐ thyroid ☐ no JVD ☐ neck non-tender ☐ full ROM w/o pain
ABNL/OTHER_____

**RESP:** ☑ resp. effort nl ☑ clear to auscultation ☐ percussion nl ☐ palpation of chest nl ☑ chest symmetry & expansion nl
ABNL/OTHER_____

**CV:** ☑ RRR, no murmurs, gallop or rub Pulses: ☐ carotid nl ☐ abd aorta nl ☐ femoral nl ☐ pedal nl ☐ no edema
ABNL/OTHER_____

**GI:** ☐ no tenderness/mass ☐ liver & spleen nl ☐ no hernias ☐ rectal, no mass ☐ +BS's ☐ non-distended ☐ no rebounding/guarding
ABNL/OTHER_____

**GU:** ☐ scrotal contents nl ☐ penis nl ☐ prostate nl ☐ no CVA tenderness ☐ breast exam nl ☐ rectal exam nl
☐ ext genatalia & vaginal nl ☐ urethra nl ☐ bladder nl ☐ uterus nl ☐ adnexa nl
ABNL/OTHER_____

**MUSC:** ☑ Extremities nl ☑ ALL__ RUE__ LUE__ RLE__ LLE__ ☐ back nl __ ☐ pelvis & hips nl ☐ gait station nl ☐ digits nl
ABNL/OTHER_____

**SKIN:** ☑ inspection nl ☐ palpation nl ☐ well-hydrated ☐ wound healing w/o infection ☐ feet nl
ABNL/OTHER_____

**NEURO:** ☐ CN 11-XII intact ☐ DTR'S symmetric ☐ sensory intact ☐ motor strength nl ☐ SLR neg. ☐ coordination nl
ABNL/OTHER_____

**PSYCH:** ☐ judgment/insight nl ☐ oriented x 3 ☐ memory nl ☐ mood nl ☐ no delusions/hallucinations
ABNL/OTHER_____

**LYMPH:** ☐ Normal Nodes: ☐ cervical ☐ axillary ☐ inguinal
ABNL/OTHER_____

| DIAGNOSES: | PLAN: |
|---|---|
| 1. Hypercholesterolemia | ① Discussion of Labs. |
| 2. Neck Pain | ② Lipitor 20 mg daily (#30) 2LF |
| 3. Sleep Apnea | ② X-Ray C-Spine   ③ Sleep Apnea |
| 4._____ | Flexeril 10 mg TID x 7dys.  Studies |
| 5._____ | Motrin 800 mg TID x 7dys |

FOLLOW UP:__ ☑ PRN or Return _3 mo._   Signature _Anne Sheffield_   ARNP-BC
_1 wk._

**315**

ARH TRI-CITY MEDICAL CTR
18880 US NORTH HWY 119
CUMBERLAND, KY. 40823

| Marital Status: M S W D | Allergies: _____ |
| Occupation:_____ | _____ |
| Lives Alone: Y N Lives with: _____ | |
| Hospitalizations/Surgeries | Diagnoses History |

Injection site_____
Medicine/dose injected_____
Time injected_____
No reaction after_____Minutes_____
Given by _____
_____

(Last)
PaP-_____
Mammo-_____
Chest X-_____
Psa-_____

Notes_____
_____
_____

**Family History**

Mother_Htn Dm CVA Ca_____
Father_Htn Dm CVA Ca_____
Sister_Htn Dm CVA Ca_____
Brother_Htn Dm CVA Ca_____
Grandmother_Htn Dm CVA Ca_____
Grandfather_Htn Dm CVA Ca

**Nursing**

**316**

**Appalachian Regional Healthca**

## Request for Consult

```
HSR7 3 100755 8429
85 BARLOW BRANCH
PARTRIDGE
40862                      KY DOB  07/31/1962
Cht Loc: TH            LOC:    THTH
Cht ID:  016537        PH: 6065894149
------------------Appointment------------
06/10/08   12:15P  Appt Type:  OV
PAI1 SHEFFIELD              SHEPA CLITH
BLUE CROSS AND BLU YKP866H55909
```

To: Cardiaukmonaiy _____ Date _____

@ ARH _____ Notified: _____ Date & Time: _____

- ☐ Consult with recommendation only
- ☐ Consult with management & follow up
- ☐ Consult for transfer of services
- STAT ____ Today ____ Next day ____

Regarding: Please do Sleep Study.
Thank you. Sleep apnea.
Pam Sheffield ARNP/
Klaikins lm

| Date June 16 | Time 9pu | **Consultation Report** |
|---|---|---|

6/11/08 Spoke č Judi (ID # AB24874) @ Anthem BCBS

precert: Sent to another department.

Klaikins (ma

Called 888-730-2817 Spoke to: Sharon – No Precert Needed.

Signature _____

**Appalachian Regional Healthcar**

# Request for Consulta

MSP: C00000014?
ST BAPTIST CHURCH
PARTRIDGE                     KY DOB  07/01/19??
40?0?                        LOC:    THTH
Cht L?? TH                    PH: 6065894142
Cht ID: 0?5?7
-----------Appointment---------
0?/1?/0?    12:??P Appt Type: ?V
PAM SHEFFIELD          SHEFA SMITH
BLUE CROSS AND BLU TRI850:55389

To: _____ Date o

Notified: _____

| | Regarding: |
|---|---|
| ☐ Consult with recommendation only | |
| ☐ Consult with management & follow up | |
| ☐ Consult for transfer of services | |
| STAT __ __ Today ____ Next day ____ | |

| Date | Time | Consultation Report |
|------|------|---------------------|
| | | |

Signature ___ ___ ___ ___ ___

06/26/2008   07:19   6065758174   HARH SLEEP CENTER   PAGE 22
0208073000003899

EXHIBIT NO. 4F
PAGE: 14 OF 28
4653



**m∩yS | SLEEP DISORDERS**
**& associates | TESTING**

# POLYSOMNOGRAPHY INTERPRETATION

*Faxed*
*6/26/08*

## PATIENT INFORMATION
Study Date:        06/18/2008
Patient Name:      LORENA L. NAILLIEUX
Date of Birth:     07/31/1962 (45)
Hospital:          Harlan ARH
Physician:         Pamela J. Sheffield, MD

## CLINICAL SUMMARY
This 45-year-old female is 5' 0" tall, weighs 198 pounds and is referred for evaluation of obstructive sleep apnea. The patient has a history of snoring, excessive daytime fatigue, respiratory disturbance and a concern about obstructive sleep apnea. Past medical history includes: obesity, arthritis, GERD and allergies. Patient had UPPP done about 6 years ago and adenoidectomy about 6 years ago. Current medications are: Estratest, Allegra, Nasonex, diclofenac, ibuprofen, and Lipitor.

## REPORT
Sleep efficiency was 94.4% with a total of 5.63 hours of sleep. Basal arterial oxygen saturation was 95.54% with a minimum of 86.00%. Sleep distribution was marked for a decrease in REM sleep and increase in slow wave sleep. This sleep study revealed intermittent snoring along with multiple respiratory related arousals and few hypopneas with rare oxygen desaturations to a minimum of 86.00%. For the entire night, the patient had an apnea/hypopnea index of 2.8 and a respiratory disturbance index of 6.6, which does not meet the criteria for obstructive sleep apnea syndrome but it does suggest the possibility of mild sleep related breathing disorder of unknown clinical significance. The patient had significant periodic leg movements of sleep with an index of 6.2 per hour and a PLMS arousal index of 0.0 per hour, which is not clinically significant arousal index.

## IMPRESSION
This overnight polysomnogram reveals:
1. Intermittent snoring.
2. No evidence of obstructive sleep apnea syndrome, please see above comments.

## DIAGNOSIS
Axis A:  Snoring (786.09)

Axis B:  Baseline PSG (CPT 95810)

6/29/08
pss

**319**

**EXHIBIT NO. 4F**
**PAGE: 15 OF 28**

Page 2

| | |
|---|---|
| Study Date: | 06/18/2008 |
| Patient Name: | LORENA L. NAILLIEUX |
| Date of Birth: | 07/31/1962 (45) |
| Hospital: | Harlan ARH |
| Physician: | Pamela J. Sheffield, MD |

## RECOMMENDATIONS

For snoring or mild sleep related breathing disorder, encourage weight loss and avoidance of supine position, and consider ENT evaluation.


Mousab Almusaddy, MD, D,ABSM
06/19/2008

6/29/08 pss

06/26/2008  07:19  6085/581 7     MAYS SLEEP CENTER     PAGE 04

020807300003899



**MAYS & associates | SLEEP DISORDERS TESTING**

# POLYSOMNOGRAPHY ANALYSIS REPORT
**Baseline Evaluation**

*This polysomnogram consisted of continuous monitoring of EEG, EOG, EMG, ECG, nasal/oral airflow, thoracic and abdominal respiratory effort and body position.*

## PATIENT INFORMATION:

Patient Name:     LORENA L NAILLIEUX
Study Date:       06/18/2008
Date of Birth:    07/31/1962 (45)
Gender: F         Height: 5' 0"          Weight: 198 lbs.

**RECORDING TIME:** 23:40:41 to 05:38:11

### SLEEP STAGING STATISTICS

|  | MINUTES |  | MINUTES | PERCENT OF TST |
|---|---|---|---|---|
| Total Recording Time | 357.5 | N1 Sleep | 20.0 | 5.9 |
| Total Sleep Time | 337.5 | N2 Sleep | 188.5 | 55.9 |
| Sleep Onset Latency | 12.5 | N3 Sleep | 97.5 | 28.9 |
| REM Latency | 200.5 | REM Sleep | 31.5 | 9.3 |
| Sleep Efficiency | 94.4% |  |  |  |

### RESPIRATORY STATISTICS

|  | AVERAGE DURATION | TOTAL DURATION | TOTAL EVENTS | SUPINE INDEX | REM INDEX | OVERALL INDEX |
|---|---|---|---|---|---|---|
| Obstructive Apnea | 0.0 sec | 0.0 min | 0 | 0.0 | 0.0 | 0.0 |
| Hypopnea | 30.3 sec | 8.1 min | 16 | 0.0 | 3.8 | 2.8 |
| Central Apnea | 0.0 sec | 0.0 min | 0 | 0.0 | 0.0 | 0.0 |
| Mixed Apnea | 0.0 sec | 0.0 min | 0 | 0.0 | 0.0 | 0.0 |
| Apnea & Hypopnea | 30.3 sec | 8.1 min | 16 | 0.0 | 3.8 | 2.8 |
| AHI = 2.8 |  |  |  |  |  |  |
| RDI = 6.6 |  |  |  |  |  |  |

### OXIMETRY STATISTICS

| Basal Oxygen Saturation = 95.54 | Average Desaturation = 94.59% | Lowest Desaturation = 86.00% |
|---|---|---|
| Total Desaturations > 4% = 34 |  |  |

### PLMS STATISTICS

| PLMS per hour of NREM sleep = 6.9 | PLMS per hour of REM sleep = 0.0 | Total PLMS Index = 6.2 |
|---|---|---|

### AROUSAL STATISTICS

|  | REM | NREM | TOTAL | INDEX |
|---|---|---|---|---|
| Apnea & Hypopnea Related | 0 | 10 | 10 | 1.8 |
| Respiratory Event Related (RERA) | 0 | 21 | 21 | 3.7 |
| Spontaneous | 0 | 0 | 0 | 0.0 |
| PLMS Related | 0 | 0 | 0 | 0.0 |
| Overall Arousal Index = 5.5 |  |  |  |  |

6/29/08
PSS

020807300003899

Page 2 Polysomnography Report
Patient: LORENA L NAILLIEUX

## GRAPHIC SUMMARY



SLEEP STAGES

AROUSALS

RESPIRATORY EVENTS

OXIMETRY

BODY POSITION

PERIODIC LIMB MOVEMENTS

TIME

| Time | 23:40:41 | | | | | 05:38:11 | |
|------|----------|---|---|---|---|----------|---|
| Hours | 0 | 1 | 2 | 3 | 4 | 5 | |
| Epochs | 5 | 125 | 245 | 365 | 485 | 605 | 720 |

6/29/08 pss

**EXHIBIT NO. 4F**
**PAGE: 18 OF 28**

020807300603899
NATLIEUX        LORENA
0224 9373      39-0012-7
MSR: 00007565708
85 BARLOW BRANCH
PARTRIDGE
40862                    FC: BC
Cht Loc: TH        KY DOB 07/31/1962
Cht ID: 046537      LOC: THTH
                    PH: 6065894149
06/18/08  01:00P ---Appointment---
PAM SHEFFIELD      Appt Type: CI
BLUE CROSS AND BLU    SHEPA CLITH
                  YRP886H55939

**ARH TRI-CITY MEDICAL CTR**
18880 US NORTH HWY 119
CUMBERLAND, KY. 40823

Date 6/18/08    Age 45
Time 1:30
Nsg Waugh y

ALLERGIES _Sulfa_ _____ SMOKES _←_ PPD ____ Shots UTD _✓_
FOLLOW UP ____ NEW PATIENT ASSESSMENT ____ O2-sat ____ % on room air

**VITAL STATISITICS:**
WT _128_ HT _5'_ TEMP _99_ RR _20_ PULSE _70_ B/P _124/74_

| CHIEF COMPLAINT: | GEN:____WEAKNESS:____FATIGUE:____ |
|---|---|
| | CV____CP:____PALPITATIONS:____ |
| | RESP:____SOB:____COUGH:____ |
| | GI____N____V____D____ |
| | GU:____DYSURIA____ |
| | NEURO:____HA____DIZZINESS____ |
| | MS:____WNL____PAIN____on 1:10 |
| | GENERALIZED STIFFNESS____ |

**PHYSICAL EXAM:**
GEN. ☑ Well developed well-nourished ☑ alert ☑ no distress ☐ non-toxic ☐ age appropriate behavior
ABNL/OTHER _____
EYES: ☐ lids, conjunctiva nl ☐ PERRL irises nl ☐ disc & fund nl
ABNL/OTHER _____
ENMT: ☐ ext. ears, nose nl ☐ TM canals nl ☐ hearing grossly intact ☐ nasal exam nl ☐ teeth, guns, palate nl ☐ oropharynx nl
ABNL/OTHER _____
NECK: ☐ neck supple, symmetric, no masses ☐ thyroid ☐ no JVD ☐ neck non-tender ☐ full ROM w/o pain
ABNL/OTHER _____
RESP: ☑ resp. effort nl ☑ clear to auscultation ☐ percussion nl ☐ palpation of chest nl ☑ chest symmetry & expansion nl
ABNL/OTHER _____
CV: ☑ RRR, no murmurs, gallop or rub Pulses: ☐ carotid nl ☐ abd aorta nl ☐ femoral nl ☐ pedal nl ☐ no edema
ABNL/OTHER _____
GI: ☐ no tenderness/mass ☐ liver & spleen nl ☐ no hernias ☐ rectal, no mass ☐ +BS's ☐ non-distended ☐ no rebounding/guarding
ABNL/OTHER _____
GU: ☐ scrotal contents nl ☐ penis nl ☐ prostate nl ☐ no CVA tenderness ☐ breast exam nl ☐ rectal exam nl
     ☐ ext genatalia & vaginal nl ☐ urethra nl ☐ bladder nl ☐ uterus nl ☐ adnexa nl
ABNL/OTHER _____
MUSC: ☑ Extremities nl ☐ ALL__ RUE__ LUE__ RLE__ LLE__ ☐ back nl __ ☐ pelvis & hips nl ☐ gait station nl ☐ digits nl
ABNL/OTHER _____
SKIN: ☑ inspection nl ☐ palpation nl ☐ well-hydrated ☐ wound healing w/o infection ☐ feet nl
ABNL/OTHER _____
NEURO: ☐ CN 11-XII intact ☐ DTR'S symmetric ☐ sensory intact ☐ motor strength nl ☐ SLR neg. ☐ coordination nl
ABNL/OTHER _____
PSYCH: ☑ judgment/insight nl ☐ oriented x 3 ☐ memory nl ☐ mood nl ☐ no delusions/hallucinations
ABNL/OTHER _____
LYMPH: Normal Nodes: ☐ cervical ☐ axillary ☐ inguinal
ABNL/OTHER _____

| DIAGNOSES: | PLAN: |
|---|---|
| 1. _Neck Pain_ | _Discussion of x-rays_ |
| 2. _____ | _MRI of C-Spine_ |
| 3. _____ | |
| 4. _____ | |
| 5. _____ | |

FOLLOW UP: ☑ PRN or Return _____ Signature _Pam Sheffield_ ARNP **323**

620807300001899

EXHIBIT NO. 4F
PAGE: 19 OF 28

46599

# Harlan ARH Hospital
**81 Ball Park Road • Harlan, KY 40831**
**Phone: 606-573-8100**

Patient Name:    NAILLIEUX, LORENA
Patient ID:      J000221013
Ordering MD:     SHEFFIELD, PAMELA J (

Location:        J* CUMBERLAND VAL.PCC
Date of Birth:   07/31/1962
Encounter #      J0807100201

=========================================================================
## CHEMISTRY RESULTS
=========================================================================

| BLOOD | 03/11/2008 07:00 | | | | | Units | Reference Range |
|---|---|---|---|---|---|---|---|
| Accession Ord Physician | JC031108139 SHEFFIELD, PAMELA J ( | | | | | | |
| GLUCOSE | 92 | | | | | mg/dL | 70-99 |
| BUN | 13 | | | | | mg/dL | 7-18 |
| CREA | 0.9 | | | | | mg/dL | 0.6-1.3 |
| NA | 139 | | | | | mEq/L | 136-145 |
| POTASSIU | 4.0 | | | | | mEq/L | 3.5-5.1 |
| CL | 102 | | | | | mEq/L | 98-107 |
| CO2 | 27 | | | | | mmol/L | 22-29 |
| ANIONGAP | 13.8 | | | | | mEq/L | 10.0-20.0 |
| CA | 9.2 | | | | | mg/dL | 8.5-10.1 |
| TOT PROT | 7.5 | | | | | gm/dL | 6.4-8.2 |
| ALBUMIN | 4.2 | | | | | gm/dL | 3.4-5.0 |
| AG Ratio | 1.3 | | | | | | 1.0-2.0 |
| ALK PHOS | 101 | | | | | U/L | 50-136 |
| AST SGOT | 23 | | | | | U/L | 15-37 |
| ALT SGPT | 45 | | | | | U/L | 30-65 |
| TBIL | 0.26 | | | | | mg/dL | 0.0-1.0 |
| CHOL | **228 H** ✓ | | | | | mg/dL | 50-200 |
| TRIG | **151 H** | | | | | mg/dL | 50-150 |
| HDL | 50 | | | | | mg/dL | 35-65 |
| CHOLHDL | 5 | | | | | | 4-5 |
| LDL | **147.8 H** ✓ | | | | | mg/dL | 0.0-130.0 |
| VLDL | 30 | | | | | | 0-30 |
| URICACID | 4.9 | | | | | mg/dL | 2.6-7.2 |
| GFR | >60.0[1] | | | | | mL/min/1.73 m2 | |

[1]eGFR Interpretation:   Disease State Reference Ranges for eGFR (calculated)
     Stage    eGFR    Description
     I/II     >60     Normal/Mildly reduced kidney function
     III      30-59   Moderately reduced kidney function
     IV       15-29   Severely reduced kidney function
     V        <15     End-stage kidney failure

3/16/08 PSS

Calculated using MDRD formula based on gender,race (* GFR AA is for the African
American population), and age. GFR estimates are unreliable in patients with rapidly
changing kidney function,recent dialysis, extremes in body size, severe malnutrition

=========================================================================
Patient Name:    NAILLIEUX, LORENA
Patient ID:      J000221013
Encounter #:     J0807100201
*Out Patient Clinic Report*

Medical Director: Nandkumar Bathija, MD
Reported:  03/12/2008 07:30
Page:      1 of 3
*This copy to: J* CUMBERLAND VAL.PCC*

**324**

020807300003899

EXHIBIT NO. 4F
PAGE: 20 OF 28

# Harlan ARH Hospital
**81 Ball Park Road   •   Harlan, KY 40831**
**Phone: 606-573-8100**

| | |
|---|---|
| Patient Name:   NAILLIEUX, LORENA | Location:   J* CUMBERLAND VAL.PCC |
| Patient ID:   J000221013 | Date of Birth: 07/31/1962 |
| Ordering MD:   SHEFFIELD, PAMELA J ( | Encounter #   J0807100201 |

| BLOOD | 03/11/2008 07:00 | | | | | Units | Reference Range |
|---|---|---|---|---|---|---|---|
| Accession | JC031108139 | | | | | | |
| GFR AA* | >60.0 | | | | | mL/min/1.73 m2 | |
| B/CR | 14.4 | | | | | | 6.0-20.0 |

or obesity, loss of limbs, abnormal muscle mass, or during pregnancy.  In these
patients, alternative determinations of GFR should be obtained.

*TSH*                                                           *Accession: JC031108139*

| BLOOD | | Result | Units | Reference Range |
|---|---|---|---|---|
| 03/11/2008 07:00 | TSH | 2.26 | mIU/mL | 0.34-4.82 |

3/14/08
P85

| | |
|---|---|
| Patient Name:   NAILLIEUX, LORENA | Medical Director: Nandkumar Bathija, MD |
| Patient ID:   J000221013 | Reported:  03/12/2008 07:30 |
| Encounter #:   J0807100201 | Page:      2 of 3 |
| *Out Patient Clinic Report* | *This copy to: J* CUMBERLAND VAL.PCC* |

325

020807300003899

**EXHIBIT NO. 4F**
**PAGE: 21 OF 28**

# Harlan ARH Hospital
### 81 Ball Park Road • Harlan, KY 40831
### Phone: 606-573-8100

| | |
|---|---|
| Patient Name:   NAILLIEUX, LORENA | Location:   J* CUMBERLAND VAL.PCC |
| Patient ID:   J000221013 | Date of Birth: 07/31/1962 |
| Ordering MD:   SHEFFIELD, PAMELA J ( | Encounter #   J0807100201 |

==================================================================================

## CHEMISTRY RESULTS

| BLOOD | 03/11/2008 07:00 | | | | | Units | Reference Range |
|---|---|---|---|---|---|---|---|
| Accession | JC031108140 | | | | | | |
| Ord Physician | SHEFFIELD, PAMELA J ( | | | | | | |
| HA1C | 5.8[1] | | | | | % | 4.8-6.0 |

[1]Hemoglobin A1C Reference Ranges
      4.8 - 6.0%   Normal Patient
            <7%   Controlled Diabetes
Consistently >8%   Reevaluate Treatment

==================================================================================

| | |
|---|---|
| Patient Name:   NAILLIEUX, LORENA | Medical Director: Nandkumar Bathija, MD |
| Patient ID:   J000221013 | Reported:  03/12/2008 08:03 |
| Encounter #:   J0807100201 | Page:    1 of 2 |
| *Out Patient Clinic Report* | *This copy to: J* CUMBERLAND VAL.PCC* |

EXHIBIT NO. 4F
PAGE: 22 OF 28

020807300003899

46531

# Harlan ARH Hospital
**81 Ball Park Road  •  Harlan, KY 40831**
**Phone: 606-573-8100**

| | |
|---|---|
| Patient Name:  NAILLIEUX, LORENA | Location:  J* CUMBERLAND VAL.PCC |
| Patient ID:  J000221013 | Date of Birth: 07/31/1962 |
| Ordering MD:  SHEFFIELD, PAMELA J ( | Encounter #  J0807100201 |

===================================================================

## HEMATOLOGY RESULTS

| BLOOD | 03/11/2008 07:00 | | | | | Units | Reference Range |
|---|---|---|---|---|---|---|---|
| Accession | JH031108107 | | | | | | |
| Ord Physician | SHEFFIELD, PAMELA J ( | | | | | | |
| SEDRATE | 7 | | | | | mm/hr | 0-20 |

## URINALYSIS RESULTS

| URINE | 03/11/2008 07:00 | | | | | Units | Reference Range |
|---|---|---|---|---|---|---|---|
| Accession | JU031108034 | | | | | | |
| Ord Physician | SHEFFIELD, PAMELA J ( | | | | | | |
| APPEAR | CLEAR | | | | | | CLEAR |
| COLOR | YELLOW | | | | | | YELLOW,STRAW, COLORLESS,PALE YELLOW |
| SPECGRAV | 1.015 L | | | | | | 1.016-1.022 |
| PH | 7.0 | | | | | | 5.0-7.0 |
| PROTEIN | NEGATIVE | | | | | | NEGATIVE |
| GLUC | NEGATIVE | | | | | | NEGATIVE |
| KET | NEGATIVE | | | | | | NEGATIVE |
| BILI | NEGATIVE | | | | | | NEGATIVE |
| BLOOD | NEGATIVE | | | | | | NEGATIVE |
| NITRITE | NEGATIVE | | | | | | NEGATIVE |
| LEUKO | NEGATIVE | | | | | | NEGATIVE |
| UBG | norm | | | | | mg/dL | 0-1 |
| EPI's | See Note[2] | | | | | | NONE SEEN |

[2] 0-4 SQUAMOUS EPITHELIAL CELLS **

3/16/08 pss

===================================================================

| | |
|---|---|
| Patient Name:  NAILLIEUX, LORENA | Medical Director: Nandkumar Bathija, MD |
| Patient ID:  J000221013 | Reported:  03/12/2008 08:03 |
| Encounter #:  J0807100201 | Page:  2 of 2 |
| *Out Patient Clinic Report* | *This copy to: J* CUMBERLAND VAL.PCC* |

327

020807100003899

**EXHIBIT NO. 4F**
**PAGE: 23 OF 28**

4653A

# Harlan ARH Hospital
**81 Ball Park Road • Harlan, KY 40831**
**Phone: 606-573-8100**

Patient Name: NAILLIEUX, LORENA
Patient ID: J000221013
Ordering MD: SHEFFIELD, PAMELA J (

Location: J* CUMBERLAND VAL.PCC
Date of Birth: 07/31/1962
Encounter # J0807100201

## HEMATOLOGY RESULTS

| BLOOD | 03/11/2008 07:00 | | | | | Units | Reference Range |
|---|---|---|---|---|---|---|---|
| Accession | JH031108119 | | | | | | |
| Ord Physician | SHEFFIELD, PAMELA J ( | | | | | | |
| WBC | 6.6 | | | | | X 10^3 | 3.5-9.6 |
| RBC | 4.31 | | | | | X 10^6 | 4.20-5.40 |
| HGB | 13.7 | | | | | gm/dL | 12.0-15.0 |
| HCT | 38.5 | | | | | % | 36.0-47.0 |
| MCV | 89.4 | | | | | fl | 80.0-100.0 |
| MCH | 31.7 | | | | | pg | 27.0-32.0 |
| MCHC | 35.5 | | | | | gm/dL | 32.0-36.0 |
| RDW | 13.1 | | | | | % | 12.0-15.0 |
| PLATELET | 253[2] | | | | | X 10^3 | 140-450 |
| MPV | 9.5 H | | | | | fl | 6.6-9.3 |
| NEUT % | 69.0 | | | | | % | 50.0-70.0 |
| LYMPH % | 23.1 | | | | | % | 20.0-35.0 |
| MONO % | 5.5 | | | | | % | 0.0-13.0 |
| BASO % | 0.8 | | | | | % | 0.0-2.0 |
| EOSIN % | 1.6 | | | | | % | 0.0-4.0 |
| NEUT # | 4.5 | | | | | X 10^3 | 1.5-7.1 |
| LYMPH # | 1.5 | | | | | X 10^3 | 0.7-4.3 |
| MONO # | 0.4 | | | | | X 10^3 | 0.2-1.2 |
| EO# | 0.1 | | | | | X 10^3 | 0.0-0.8 |
| BASO # | 0.1 | | | | | X 10^3 | 0.0-0.1 |

[2]CK X 2

3/16/08
P88

---

Patient Name: NAILLIEUX, LORENA
Patient ID: J000221013
Encounter #: J0807100201
*Out Patient Clinic Report*

Medical Director: Nandkumar Bathija, MD
Reported: 03/12/2008 07:30
Page: 3 of 3
*This copy to: J* CUMBERLAND VAL.PCC*

**328**

APPALACHIAN REGIONAL HEALTHCARE, INC.
Tri-City Medical Center
18880 U.S. Highway 119 North
Cumberland, KY 40823

## Radiology Report

| | |
|---|---|
| Patient Name: | NAILLIEUX, LORENA |
| Encounter Number: | 0000046537 |
| Attending Physician: | Sheffield, Pamela |
| Alternate Physician: | |
| Location: | TH |
| Date of Exam: | 06/10/2008 |
| Dictation Date: | 06/12/2008 |
| Dictation Time: | 12:03 PM |
| Job Number: | 1783189 |
| History Unit Number: | 046537 |
| DOB: | 07/31/1962 |
| Payer: | Blue Cross/Blue Shield |
| Clinical History: | Pain in neck |
| Transcription Date/Time: | 6/12/2008 @ 1:35 PM |
| Transcriptionist: | kf |

COMPLETE CERVICAL SPINE SERIES:
AP, lateral and both oblique views of the cervical spine
were obtained. The vertebral bodies are normal in height
and alignment. Narrowing of the C5-C6 disk interspace is
accompanied by anterior and posterior marginal
osteophytosis. There is also mild encroachment of the
neural foramina bilaterally at C5-C6 and is secondary to
bony spurs arising from the uncovertebral joints of
Luschka. Encroachment is more severe on the left side
compared to the right. The rest of the disk spaces are
well maintained. No prevertebral soft tissue swelling is
seen.

IMPRESSION
1.   Signs of degenerative disk disease involving C5-
     C6 disk interspace are seen.
2.   Encroachment of the neural foramina is seen
     bilaterally at C5-C6, more severe on the left
     compared to the right and is secondary to bony
     spurs arising from the uncovertebral joints of
     Luschka.

Gregory Tiu, MD
Radiologist

**329**

APPALACHIAN REGIONAL HEALTHCARE, INC.
Tri-City Medical Center
18880 U.S. Highway 119 North
Cumberland, KY 40823

Radiology Report

Patient Name:                    NAILLIEUX, LORENA
Encounter Number:                0000046537
Attending Physician:             Sheffield, Pamela
Alternate Physician:
Location:                        TH
Date of Exam:                    06/10/2008
Dictation Date:                  06/12/2008
Dictation Time:                  12:03 PM
Job Number:                      1783189
History Unit Number:             046537
DOB:                             07/31/1962
Payer:                           Blue Cross/Blue Shield
Clinical History:                Pain in neck
Transcription Date/Time:         6/12/2008 @ 1:35 PM
Transcriptionist:                kf

COMPLETE CERVICAL SPINE SERIES:
AP, lateral and both oblique views of the cervical spine
were obtained. The vertebral bodies are normal in height
and alignment. Narrowing of the C5-C6 disk interspace is
accompanied by anterior and posterior marginal
osteophytosis. There is also mild encroachment of the
neural foramina bilaterally at C5-C6 and is secondary to
bony spurs arising from the uncovertebral joints of
Luschka. Encroachment is more severe on the left side
compared to the right. The rest of the disk spaces are
well maintained. No prevertebral soft tissue swelling is
seen.

IMPRESSION
  1.  Signs of degenerative disk disease involving C5-C6
      disk interspace are seen.
  2.  Encroachment of the neural foramina is seen
      bilaterally at C5-C6, more severe on the left
      compared to the right and is secondary to bony
      spurs arising from the uncovertebral joints of
      Luschka.

Gregory Tiu, MD
Radiologist

6/16/08 pб

**330**

EXHIBIT NO. 4F
PAGE: 26 OF 28

9208073000003899

Appalachian Regional Healthcare Harlan
Ball Park Road
Harlan, Kentucky 40831

RADIOLOGY REPORT

PT NAME:  NAILLIEUX,LORENA                45Y F    MR#: 000221013

DOB: 07/31/62              LOC: *JOP         ACCT #: 0818500145

REL DATE:07/08/08 1510     CI DATE:  07/03/08 1439

SHEFFIELD,PAMELA J                                 (606)848-5451
                        HARLAN, KY  40831

Chk-in #    Order     Exam
 2433938    0001      30040    MR C-SPINE W/O CONTRST
                               Ord Diag: 723.1-CERVICALGIA


MRI OF THE CERVICAL SPINE WITHOUT CONTRAST:

Technique:
MR imaging of the cervical spine was carried out through the
use of GE Signa 1.5 Tesla system.  Using spin echo
technique, sagittal images of the cervical spine were
obtained using spin echo T1, fast spin echo T2 and gradient
echo T1 weighted imaging.  Axial images of the cervical
spine were then obtained using gradient echo imaging.

Findings:
Vertebral bodies are normal in height and alignment.
Presence of a moderate size left paracentral cervical disk
herniation is identified compressing the adjacent thecal sac
and the cervical cord.  No other abnormal extradural lesions
are seen.  Cervical cord itself is normal in caliber and
signal intensity.  There appears to be an accompanying bony
spur seen with the herniated nucleus pulposus.

This herniated nucleus pulposus and accompanying bony spur
is seen at the level of C5-6.

IMPRESSION
    1.   Moderate size left paracentral herniated nucleus
         pulposus is seen at the level of C5-6 with an accompanying
         bony spur.   This extradural lesion is also seen compressing
         the adjacent thecal sac and the cervical cord.
FINAL

**331**

0208073000036899

Appalachian Regional Healthcare Harlan
Ball Park Road
Harlan, Kentucky 40831

RADIOLOGY REPORT

PT NAME:  NAILLIEUX,LORENA            45Y F    MR#: 000221013

DOB: 07/31/62                  LOC: *JOP        ACCT #: 0818500145

REL DATE:07/08/08 1510        CI DATE:  07/03/08 1439

SHEFFIELD,PAMELA J                           (606)848-5451
                    HARLAN, KY  40831

Checkin-Exam Code Summary
2433938-30040

Job # 1814043  D: 7/7/08  3:29 pm

        Reading Radiologist- GREGORY Y TIU, M.D., Radiologist
        Releasing Radiologist- GREGORY Y TIU, M.D., Radiologist
        Released Date Time- 07/08/08 1510
        Transcriptionist- EULA GRAY MCHARGUE, Rad. Transcriptionist
        --------------------------------------------------------------

FINAL

020207300003899

**Appalachian Regional Healthcare, Inc.**

EXHIBIT NO. 4F
PAGE: 28 OF 28

# Request for X-Ray Examination

*Qu 3rd @ 230*

| Patient's Name | (Last) | (First) | (Middle) | Sex | Age | Race |
|---|---|---|---|---|---|---|

| Ward No. | Ambulatory | Wheelchair | Stretcher | Bedside |
|---|---|---|---|---|

| Hospital No. | Address (if APC) |
|---|---|

| Date of Request: | Height (if for chest) | Weight (if for chest) |
|---|---|---|

**Examination Desired:**

**Relevant Clinical History and Working Diagnosis:**

This space for technician's use

| 8x10 | 10x12 | 11x14 | 14x17 | Misc. |
|---|---|---|---|---|
|  |  |  |  |  |

Ordered By: _____

Attending Physician _____

X–Ray File Number _____

**Report of Radiologist**

Date of Report _____

_____, M.D.

Radiologist

The Radiologist will be pleased to confer with the attending physician with respect to all cases referred to this department. Prepare requests in duplicate. The original will be returned to the chart.

## BOTH SIDES OF THIS SHEET MAY BE USED

ARH FORM E-I-13 (Rev. 6/06)

PAGE 1 OF 1

**333**

**EXHIBIT NO. 5F**
**PAGE: 1 OF 8**

COMMONWEALTH OF KENTUCKY          HOP/MLP/A5                            DMA: Y
DISABILITY DETERMINATION SERVICES   SERIAL NUMBER: 20080811000191
PO BOX 1000                                                            PFI: N
FRANKFORT, KY  40602-9987         VENDOR: JEANNE M BENNETT PSYD
CLAIMANT NAME: LORENA NAILLIEUX    VENDOR NUMBER: 0011624E     TIN: 20-2655178
DOB: 07/31/1962                    VENDOR ADDR: ATTN: JEANNE M BENNETT PSYD
ORDER#: 0469584  CASE#: 1413020                LOUISVILLE, KY 40206
APPT DATE: August 22, 2008         APPT LOC.:  HARLAN, KY 40831

**THIS PAGE MUST BE THE TOP PAGE WHEN MAILING OR FAXING REPORTS.  PLEASE POSITION THE
ADDRESS BELOW IN WINDOW OF ENCLOSED POSTAGE PAID ENVELOPE IF MAILING.  YOU MUST ALSO
INCLUDE PAGE WITH SIGNATURE, CERTIFYING SERVICES LISTED WERE INCLUDED IN REPORT.**

                                                              **FAX: (866) 818-0912**

        DISABILITY DETERMINATION SERVICES (S20)
        PO BOX 8750
        LONDON KY 40742-9818



                    RQID:L0000ZQDNC000              SITE:S20 DR:S
                    SSN:********* DOCTYPE:0002 RF:D CS:2d95
                    AUTHORIZATION/SUMMARY OF SERVICES
            ****THIS COPY MUST BE SIGNED AND RETURNED FOR PAYMENT TO BE MADE****

01200        (90801 ) PSYCHIATRIC                              $80.00

20200        Facility Fee                                      $7.50
TOTAL FOR AUTHORIZED STUDIES:                                 $87.50

AUTHORIZED ADDITIONAL STUDIES _____

                                                         _____
                                                           Amount

APPROVED BY _____
      **Additional studies may not be added without prior approval**

ADJUSTED TOTAL: _____                          DEPARTMENT CERTIFICATIONS
          SPECIALIST'S CERTIFICATION             I hereby certify that the listed
I hereby certify that the services listed on page 61-2 & summarized   services have been received and
above have been furnished to the Commonwealth of Kentucky by me       accepted.
on 8/22/08      & that payment in whole or in part has not been
received & that the claimant has not been billed for any services.    APPROVED:

_Lorena Bennett PsyD 9/5/08_                      _____
SIGNED                    DATE                    SIGNED              DATE
20080811000191            0011624E               LORENA NAILLIEUX  ORD# 0469584

DDS 61-3                                                           V-3

                                                                   **334**

TELEPHONE DICTATION REPORT

## DEPARTMENT FOR DISABILITY DETERMINATION
### P.O. BOX 1000
### FRANKFORT, KENTUCKY 40601

CLAIMANT:                    LORENA NAILLIEUX
CASE #:                      1413020

DISABILITY EXAMINER:         JAMES

CONSULTANT:                  JEANNE M. BENNETT, PSY.D.
                             105A CRESCENT AVENUE
                             LOUISVILLE, KY 40206

DATE OF EXAMINATION:         08/22/2008

PLACE OF EXAMINATION:        HARLAN, KENTUCKY

DATE OF BIRTH:               07/31/1962

CLAIMANT'S AGE:              46 YEARS

CONSULTATIVE EXAMINATION

REFERRAL:  Lorena Naillieux is a 46-year-old, married Caucasian woman who is applying for Disability benefits for the first time.  She drove to the appointment in an SUV, traveling 25 miles, and her sister accompanied her.  The claimant had a valid Kentucky driver's license (expires August 31, 2009) that she presented for personal identification.

CHIEF COMPLAINT:  "Right now, I am still trying to figure that out.  I have something going on with my spine."

REPORTED ALLEGATIONS:  Back pain and problems, sleep apnea, arthritis, hernia, swelling in legs and feet, stomach problems, high liver enzymes, sinus problems, nervousness, anxiety, and depression.

BACKGROUND INFORMATION:  The claimant was the sole informant of background information and appeared to be a reliable historian.  She was born in Harlan, Kentucky and raised in Cumberland, Kentucky by her biological parents.  She is the eldest of five children, having two brothers and two sisters.  The claimant was never placed in foster care or group home, and she denied abuse of any form during

CONTINUED ON PAGE 2

**335**

SEP-7-2008  03:25P FROM:          (502)893-8711          TO:18668180912          P.3/8

LORENA NAILLIEUX
CASE #:  1413020
08/22/08

PAGE 2

her childhood.

Academically, the woman graduated from Cumberland High School in 1981 and attended the Cotton Bowl Vocational School in Arkansas, where she received a dental assistant certificate after completing the 1 year program. She described herself as an above average student who repeated the first grade, but was never placed on remedial classes.

Ms. Naillieux married when she was 22 and her husband was 21, and they have been married for 24 years. She has a 23-year-old daughter and a 22-year-old son. She and her husband live with her father in her father's house.

Occupationally, Ms. Naillieux was last employed as a janitor for the NOAA Weather Station in Jackson, Kentucky. She worked there for 9 years and left in 2005, when she and her husband moved.

MEDICAL HISTORY: She was sickly her first year of school with pneumonia, which is why she had to repeat the first grade. She was driving a motorcycle, wearing a helmet on January 10, 2005, when a car pulled in front of her to make a turn and she ran into the car. She sustained loss of consciousness that she estimated lasted approximately 30 minutes. She was in and out of consciousness for the next 24 hours. She recalled the ambulance driver asking for her name, but had no memory until the next day. The claimant was sent to the University of Kentucky, where she was admitted and treated for 4 days. Following her discharge, she had physical therapy on her hand as an outpatient because of fracture she sustained to her left arm in the accident.

Other medical problems include sleep apnea (does not use BiPAP or CPAP), hyperlipidemia and bone spurs on her neck. Dhe is scheduled to see a rheumatologist for arthritis.

SURGICAL HISTORY: Left arm fracture repair, fibroid tumors, hysterectomy, and uvula removed to treat sleep apnea.

CONTINUED ON PAGE 3

336

LORENA NAILLIEUX
CASE #:  1413020
08/22/08

PAGE 3

The claimant's primary care practitioner is Pam Sheffield, nurse practitioner, in Cumberland, Kentucky. The claimant has Anthem Blue Cross Blue Shield Insurance through her husband's employment.

MEDICATIONS:  Wellbutrin XL 300 mg q.d., Flexeril 10 mg b.i.d. p.r.n., Motrin 800 mg q. 6 h p.r.n, diclofenac 75 mg q.d., Estratest q.d., Lipitor 10 mg q.d., Allegra q.d. 180 mg, and Nasonex 2 sprays q.d.

ALLERGIES/ADVERSE REACTIONS:  Sulfa drugs.

OVER-THE-COUNTER MEDICATIONS:  None.

PSYCHIATRIC HISTORY:  The woman denied a history of inpatient or outpatient mental health treatment.

SUBSTANCE USE:  The claimant denied a history of tobacco, alcohol, or illicit drug use.  Caffeine consumption has averaged 1 soft drink a day.  She denied a history of treatment for alcohol or drug abuse.

LEGAL HISTORY:  None.

DAILY ACTIVITIES:  This individual has slept an average of 5 hours at night and her sleep has been disturbed by pain in her legs as well as by breathing difficulties.  She bathes and brushes her teeth daily.  Occasionally, she cannot bend over to dress her lower extremities or cannot raise her hands to pull on her shirt and she will require assistance from her husband at this time.  She consumes two meals a day and everyone in the household pitches in to fix foods.  She does routine household chores, but has to rest after several minutes of exertion.  Ms. Naillieux goes grocery shopping weekly.

A typical day was described as sleeping as long as possible.  She rises in the morning and fixes herself breakfast and will stay up most of the time.  She likes to do things on the computer.  In the past, she enjoyed riding motorcycles, but has done little of that recently, although that was a passion prior to her

CONTINUED ON PAGE 4

337

LORENA NAILLIEUX
CASE #:  1413020
08/22/08

PAGE 4

accident.  She sees family primarily for social contact.

Financially, her husband works outside of Cumberland and
they do not get food stamps.  They manage the household
finances together.

MENTAL STATUS EXAMINATION:  Lorena Naillieux is a 46-year-
old, married Caucasian woman who stood 5 feet 7 inches and
weighed 197 pounds.  She was attired in a pink blouse and
casual pants.  She did not wear cosmetics.  The woman was
adequately dressed and groomed.  She ambulated without
assistive device or gait disturbance, posture was normal,
and no psychomotor disturbances or physical anomalies were
observed.

The claimant could spell the word "world" backward and she
repeated four digits in reverse order.  The woman performed
serial 3s backward from 20 without error.

Attention and concentration were intact, and she was
oriented in all spheres.  In the area of memory, the
claimant repeated three of three words immediately
following presentation and recalled none other words after
a five minute delay.  She was able to retrieve one of the
three words when prompted with a semantic cue and
accurately selected the remaining two words when given to
her in a multiple-choice format.

Recall for recent events was intact.  She had pinto beans,
cornbread, and macaroni for dinner the prior night.  Over
the past several days, she watched her husband work on the
house and looked at photographs of her grandchildren.

Eye contact was appropriate and facial expression was
constricted.  Affect was subdued and she was fully
cooperative with answering questions.

When asked about her spirits, she replied, "there are times
I feel like some days I just don't want to do anything."
She rated her mood 7 on a scale of 1 to 10, with 10 being
the worse mood.  She described having pain in her legs at
the time of the assessment.

CONTINUED ON PAGE 5

LORENA NAILLIEUX
CASE #: 1413020
08/22/08

PAGE 5

Speech was fluent, although word retrieval problems were evident in her conversational speech. Her thoughts were organized and goal-directed. Her thoughts were logical. There were no indications of delusional thinking or paranoid ideation, and no symptoms of a formal thought disorder were noted.

The claimant's fund of general information was estimated to be in the average range. She could name three large U.S. cities, knew the capital of Kentucky, identify the direction in which the sunset, named the current President, thought that president Carter was our recent past President, and believed there were 32 weeks in a year.

Global intellectual functioning was estimated to be in the average range. The claimant could abstract similarities in four of four word pairs and accurately solved three-word arithmetic problems presented orally. She could interpret two well-known proverbs and provided adequate solutions to several hypothetical daily problems.

The claimant displayed adequate judgment and reality testing was intact. She demonstrated satisfactory capacity for insight. Ms. Naillieux appears capable of making decisions for herself independently.

When asked about stressors, she stated she was worried about her grandchildren, although there is nothing specific occurring to cause her worries. She has coped with her stress through prayer. Her family has been very supportive of her.

DIAGNOSTIC IMPRESSION:

AXIS I:   Mood disorder, NOS.

AXIS II:  None.

AXIS III: Status post closed head injury and motorcycle accident.

AXIS IV:  None.

CONTINUED ON PAGE 6

**339**

LORENA NAILLIEUX
CASE #:  1413020
08/22/08

PAGE 6

AXIS V:   Current GAF 65.

FUNCTIONAL CAPACITIES:   This individual's capacity to
understand, remember, and carry out instructions towards
the performance of simple, repetitive tasks is not affected
by the impairment.

The woman's ability to tolerate stress and pressure of day-
to-day employment is affected by the impairment with slight
limitations noted.   There were word retrieval problems
noted in her conversational speech and she complained of
cognitive problems, although no pronounced problems were
apparent.   Under stress and fatigue, individuals with a
history of closed head injury sometimes have mild lapses in
cognitive facility, such as word retrieval problems noted
in her conversational speech.

The claimant's ability to sustain attention and
concentration towards the performance of simple, repetitive
tasks is not affected by the impairment.

The woman's capacity to respond appropriately to
supervision, coworkers, and work pressures in a work
setting is not affected by the impairment.

Opinion regarding functional limitations due to medical
conditions is deferred to a physician.

CAPABILITY STATEMENT:   If awarded benefits, it is felt the
claimant could manage them adequately in her best interest.

The prognosis for the claimant's improvement is good with
mental health intervention.

In the absence of treatment, the prognosis is fair.


_____
JEANNE M. BENNETT, PSY.D.
LICENSED CLINICAL PSYCHOLOGIST


**340**

SEP-7-2008  03:27P FROM:            (502)893-8711          TO:18668180912          P.8/8

JMB/SH828
Dictation Date-08/30/2008
Transcription Date-09/01/2008
Report Transmitted Date-09/01/2008
Template Character Count-515
Total Character Count-9862
Total Lines-136
Job #2244_5548

Cc:1

This transcription was made from a recording of the voice
of JEANNE M. BENNETT, PSY.D.



EXHIBIT NO. 6F
PAGE: 1 OF 7

COMMONWEALTH OF KENTUCKY
DISABILITY DETERMINATION SERVICES
PO BOX 1000
FRANKFORT, KY  40602-9987

HOP/RWB/A5
SERIAL NUMBER: 20080814000169

DMA: )

PFI: N

CLAIMANT NAME: LORENA NAILLIEUX
DOB: 07/31/1962
ORDER#: 0469583   CASE#: 1413020
APPT DATE: August 27, 2008

VENDOR: TRI STATE OCCUPATIONAL MEDICINE INC
VENDOR NUMBER: 0001120X   TIN: 55-0730008
VENDOR ADDR: ATTN: TRI STATE OCCUPATIONAL M
              HUNTINGTON, WV 25701
APPT LOC.:   HARLAN, KY 40831

THIS PAGE MUST BE THE TOP PAGE WHEN MAILING OR FAXING REPORTS.  PLEASE POSITION THE
ADDRESS BELOW IN WINDOW OF ENCLOSED POSTAGE PAID ENVELOPE IF MAILING.  YOU MUST ALSO
INCLUDE PAGE WITH SIGNATURE, CERTIFYING SERVICES LISTED WERE INCLUDED IN REPORT.

**FAX: (866) 818-0912**

DISABILITY DETERMINATION SERVICES (S20)
PO BOX 8750
LONDON KY 40742-9818



RQID:L00002QXJE000          SITE:S20 DR:S
SSN:*********  DOCTYPE:0002 RF:D CS:2463
**AUTHORIZATION/SUMMARY OF SERVICES**
****THIS COPY MUST BE SIGNED AND RETURNED FOR PAYMENT TO BE MADE****

| 00100 | (99203 ) ALL SYS/FAM PR | $90.00 |
|-------|------------------------|--------|
| 20200 | Facility Fee | $7.50 |
| TOTAL FOR AUTHORIZED STUDIES: | | $97.50 |

AUTHORIZED ADDITIONAL STUDIES  _____      _____
                                                              Amount

APPROVED BY  _____
     **Additional studies may not be added without prior approval**
ADJUSTED TOTAL:

SPECIALIST'S CERTIFICATION
I hereby certify that the services listed on page 61-2 & summarized
above have been furnished to the Commonwealth of Kentucky by me
on _____ & that payment in whole or in part has not been
received & that the claimant has not been billed for any services.

DEPARTMENT CERTIFICATIONS
I hereby certify that the listed
services have been received and
accepted.

APPROVED:

_____  5/27/08
SIGNED                    DATE
20080814000169          0001120X

SIGNED                    DATE
LORENA NAILLIEUX  ORD# 0469583

DDS 61-3

V-3

342

**TRI-STATE OCCUPATIONAL MEDICINE, INC.**
**(Barry Burchett, M.D.)**
**612 Sixth Avenue**
**Huntington, WV 25701**
**Phone: (304) 525-4202**
**Fax: (304) 525-4231**

**To:** Kentucky Disability Determination Division
PO Box 1000
Frankfort, KY 40602-9987

D.E.: James

RE: NAILLIEUX, LORENA L.
Case: 1413020

LOCATION OF EXAM: Harlan, Kentucky
DATE OF EXAM: August 27, 2008

**Photo ID confirmed**

<u>INTERNAL MEDICINE EXAMINATION</u>

**CHIEF COMPLAINT:** This is a 46-year-old white female claiming disability stating, "I have pain all over my joints and muscles."

Records reviewed:
1. Sleep study read as "Unremarkable."
2. MRI of the cervical spine dated July 3, 2008 revealing moderate sized left herniated nucleus pulposus at C5-6 with an accompanying bony spur which compresses the adjacent thecal sac and the cervical cord.

**HISTORY OF PRESENT ILLNESS:** The claimant reports a seven to eight year history of increasing pain "hard to describe." She reports pain in the "joints and muscles" in the hips, neck, fingers, knees, and ankles as well as the arms and legs nonspecifically. The pain seems to be variable in severity and in location. She describes variable fatigue symptoms. She complains of generalized pain that awakens her from sleep. She states he falls asleep initially all right, but then awakens after five or six hours. She states she had work up for arthritis four to five years ago, which was negative. She states at that time, she was prescribed Wellbutrin which she continues to take. She states Wellbutrin does not affect her pain, but seems to provide some psychological value.

**PAST MEDICAL HISTORY:** Negative for cancer, hypertension or diabetes.

**343**

PAGE 2                          NAILLIEUX, LORENA L.                    Case 1413020

**ALLERGIES**: Sulfa.

**MEDICATIONS**:
1. Flexeril
2. Motrin
3. Diclofenac
4. Wellbutrin
5. Estratest
6. Lipitor
7. Nasonex

**PAST SURGICAL HISTORY:**
1. Hysterectomy
2. Oophorectomy
3. Surgery for sleep apnea including removal of uvula and part of the soft pallet as well as tonsils.

**SOCIAL HISTORY:** The claimant denies the use of tobacco, alcohol or drugs.

**EDUCATION:** The claimant's last educational level was one year of college.

**OCCUPATIONAL HISTORY:** The claimant last worked in 2005 in maintenance.

**PHYSICIAN:** Pam Scheffeld, N.P.

**REVIEW OF SYSTEMS:** There is no history of shortness of breath, coughing, chest pain, nausea, vomiting, melena, hematochezia or hematemesis.

She describes recurrent epigastric symptoms consistent with GERD that seems to cause pain in the mid back which is diminished with Prilosec.

**VITAL SIGNS:** The claimant's height is 5 ft., 1 ½ in. and weight is 196 pounds with shoes. Visual acuity is 20/20 in the right eye and 20/20 in the left eye, without corrective lenses. Blood pressure is 126/78. The claimant is right-handed. Visual fields are normal by confrontation.

**GENERAL:** The claimant ambulates with a normal gait, which is not unsteady, lurching or unpredictable. The claimant does not require the use of a handheld assistive device. The claimant appears stable at station and comfortable in the supine and sitting positions. Appearance, mood, orientation, and thinking seem appropriate. The claimant's hearing appears to be adequate for normal conversation. Recent and remote memory for medical events is good.

**344**

PAGE 3                          NAILLIEUX, LORENA L.                    Case 1413020

1 of 18 standard fibromyalgia trigger point locations was reported to be tender to standard palpation.

**HEENT:** There is evidence of partial pallet removal and uvulectomy.  Conjunctivae, sclerae are clear.  Pupils are equal, round and reactive to light and accommodation.  The extraocular muscles are intact.  The undilated funduscopic examination reveals no evidence of hypertensive or diabetic retinopathy.

**NECK:** There is no evidence of thyromegaly, palpable masses, lymph-adenopathy, jugular venous distention or hepatojugular reflux.  The carotid arteries are normal and symmetrical bilaterally, without bruits.

**CHEST:** There is symmetrical excursion.  There is no evidence of increased AP diameter.  The lung fields are clear to percussion and auscultation, without wheezes, rales or rhonchi.  The breath sounds are symmetrical bilaterally.  There is no accessory muscle recruitment noted.  There is no chest tenderness to palpation. The claimant is not short of breath with exertion or while lying flat. There is no clubbing or cyanosis noted.

**CARDIOVASCULAR:** Examination of the heart reveals a regular rate.  There is no murmur, gallop or rub appreciated.  The radial, dorsalis pedis and posterior tibial pulses are normal and graded at 2+/4, without bruits.  There is no evidence of peripheral vascular insufficiency or chronic venous stasis changes such as pigmentation or ulceration.  There is no edema or hair loss noted.

**ABDOMEN:** The abdomen is moderately obese and soft with positive bowel sounds.  The abdomen is non-tender.  There is no evidence of organomegaly or masses.  There is no rebound tenderness, guarding, rigidity, or CVA tenderness.

**UPPER EXTREMITIES:** The shoulders, elbows and wrists are non-tender.  There is no redness, warmth, swelling or nodules.

**HANDS:** There is no swelling, atrophy, redness, warmth, or tenderness.  The hands can be fully extended.  A fist can be made with both hands.  All fingers can oppose. There are no Heberden's or Bouchard's nodes, or ulnar deviation.  The claimant is able to write, and pick up coins with either hand without difficulty.  Tinel's sign is negative bilaterally.  Range of motion of the joints of the fingers of both hands is normal.

**LOWER EXTREMITIES:** Examination of the legs reveals no tenderness, redness, warmth, swelling, fluid, laxity or crepitus of the knees, ankles or feet.  There is no calf tenderness, redness, warmth, cord sign or Homans sign.

**CERVICAL SPINE:** Examination of the cervical spine reveals no tenderness over the spinous

PAGE 4                          NAILLIEUX, LORENA L.                    Case 1413020

processes.  There is no evidence of paravertebral muscle spasm.

**DORSOLUMBAR SPINE:** Examination of the dorsolumbar spine reveals normal curvature.
There is no evidence of paravertebral muscle spasm.  There is no tenderness to percussion of the
dorsolumbar spinous processes.  Straight leg raise test is negative in both the sitting and supine
positions. The claimant is able to stand on one leg at a time without difficulty. There is no
discrepancy in leg length. There is no hip joint tenderness, redness, warmth, swelling, or
crepitus.

**NEUROLOGICAL:** Cranial nerves II-XII intact.  There is no evidence of atrophy noted.
Sensory modalities are well preserved including light touch, pinprick and vibration.  The biceps,
triceps, brachioradialis, patellar and Achilles deep tendon reflexes were symmetrical and graded
normally at +2/4 bilaterally. Hoffmann and Babinski's signs are negative.  There is no clonus.
Cerebellar function is intact.  The claimant is able to walk on the heels and toes.  The claimant is
able to perform tandem gait without difficulty.  She squats to two thirds of expected excursion
being limited at the end due to complaints of left knee pain.

**IMPRESSION:**
  1.  Possible fibromyalgia
  2.  GERD
  3.  Possible depression

**SUMMARY:** The claimant is a 46-year-old female who describes symptoms consistent with
fibromyalgia.  Only 1 of 18 trigger point locations are reported as tender today.  Except for
limitation at the knees and hips due to obesity, there was full range of motion of joints tested
today without active inflammation of the joints noted.  Grip strength seemed mildly diminished
bilaterally.  Tinel's sign is negative bilaterally.

Barry Burchett, M.D.
KY License 19127

BB/jjn

**346**

NAILLIEUX, LORENA L.                    Case 1413020

## Range of Motion Values

### EXTREMITY CIRCUMFERENCE MEASUREMENT (in CM):

|              | RIGHT | LEFT |
|--------------|-------|------|
| Mid Arm      | 32    | 31   |
| Mid Forearm  | 24    | 23   |
| Mid Thigh    | 50    | 50   |
| Mid Calf     | 38    | 38   |

### UPPER EXTREMITY MUSCLE STRENGTH:

Right Side    4-5/5
Left Side     4-5/5

UPPER EXTREMITY EFFORT:      GOOD

| GRIP STRENGTH by DYNAMOMETER (in KG): | Finger Squeeze |
|----------------------------------------|----------------|
| Right Hand: 10, 12, 14                 | 4-5/5          |
| Left Hand:   12, 10, 10                | 4-5/5          |

### LOWER EXTREMITY MUSCLE STRENGTH:

Right Side    5/5
Left Side     5/5
LOWER EXTREMITY EFFORT:      GOOD

### SHOULDERS

|                    | NORMAL RANGE | RIGHT | LEFT |
|--------------------|--------------|-------|------|
| Forward Elevation  | 0 ° - 150 °  | 150   | 150  |
| Abduction          | 0 ° - 150 °  | 150   | 150  |
| Internal Rotation  | 0 ° - 80 °   | 80    | 80   |
| External Rotation  | 0 ° - 90 °   | 90    | 90   |

### ELBOWS

|                  | NORMAL RANGE | RIGHT | LEFT |
|------------------|--------------|-------|------|
| Flexion-Extension| 0 ° - 150 °  | 150   | 150  |
| Supination       | 0 ° - 80 °   | 80    | 80   |
| Pronation        | 0 ° - 80 °   | 80    | 80   |

### WRISTS

|                       | NORMAL RANGE | RIGHT | LEFT |
|-----------------------|--------------|-------|------|
| Dorsiflexion-Extension| 0 ° - 60 °   | 60    | 60   |
| Palmar Flexion        | 0 ° - 60 °   | 60    | 60   |
| Radial Deviation      | 0 ° - 20 °   | 20    | 20   |
| Ulnar Deviation       | 0 ° - 30 °   | 30    | 30   |

PAGE 6                          NAILLIEUX, LORENA L.                    Case 1413020

### HIPS

|  | NORMAL RANGE | RIGHT | LEFT |
|---|---|---|---|
| Forward Flexion | 0 ° - 100 ° | 90 | 90 |
| Abduction | 0 ° - 40 ° | 40 | 40 |
| Adduction | 0 ° - 20° | 20 | 20 |
| Internal Rotation | 0 ° - 40 ° | 40 | 40 |
| External Rotation | 0 ° - 40 | 40 | 40 |

### KNEES

|  | NORMAL RANGE | RIGHT | LEFT |
|---|---|---|---|
| Flexion-Extension | 0 ° - 150 ° | 130 | 130 |

### ANKLES/FEET

|  | NORMAL RANGE | RIGHT | LEFT |
|---|---|---|---|
| Dorsiflexion | 0 ° - 20 ° | 20 | 20 |
| Plantar Flexion | 0 ° - 40 ° | 40 | 40 |

### CERVICAL SPINE

|  | NORMAL RANGE |  |  |
|---|---|---|---|
| Extension | 0 ° - 60 ° | 60 |  |
| Flexion | 0 ° - 60 ° | 60 |  |
| Right lateral flexion | 0 ° - 45 ° | 45 |  |
| Left lateral flexion | 0 ° - 45 ° | 45 |  |
| Right rotation | 0 ° -80 ° | 80 |  |
| Left rotation | 0 ° - 80° | 80 |  |

### LUMBAR SPINE

|  | NORMAL RANGE |  |  |
|---|---|---|---|
| Flexion | 0 ° - 90 ° | 90 |  |
| Right lateral flexion | 0 ° - 25 ° | 25 |  |
| Left lateral flexion | 0 ° - 25 ° | 25 |  |

**348**

Form Approved
OMB No. 0960-0413

# PSYCHIATRIC REVIEW TECHNIQUE

| Name | SSN |
|---|---|
| NAILLIEUX, LORENA LYNN | 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 |
| NH (If different from above) | SSN    _   _ |

**I. MEDICAL SUMMARY**

**A. Assessment is from:** _____ **to** _____ 9/10/2008 _____

**B. Medical Disposition(s):**

1. ☐ No Medically Determinable Impairment

2. ☒ Impairment(s) Not Severe

3. ☐ Impairment(s) Severe But Not Expected to Last 12 Months

4. ☐ Meets Listing _____ _____ _____ (Cite Listing)

5. ☐ Equals Listing _____ _____ _____ (Cite Listing)

6. ☐ RFC Assessment Necessary

7. ☐ Coexisting Nonmental Impairment(s) that Requires Referral to Another Medical Specialty

8. ☐ Insufficient Evidence

**C. Category(ies) Upon Which the Medical Disposition is Based:**

1. ☐ 12.02 Organic Mental Disorders

2. ☐ 12.03 Schizophrenic, Paranoid and Other Psychotic Disorders

3. ☒ 12.04 Affective Disorders

4. ☐ 12.05 Mental Retardation

5. ☐ 12.06 Anxiety-Related Disorders

6. ☐ 12.07 Somatoform Disorders

7. ☐ 12.08 Personality Disorders

8. ☐ 12.09 Substance Addiction Disorders

9. ☐ 12.10 Autism and Other Pervasive Developmental Disorders

☐ **These findings complete the medical portion of the disability determination.**

| MC/PC's Signature | Date |
|---|---|
| *Laura Cutler Ph.D.* | 09/10/2008 |
| MC/PC's Printed Name | Code |
| Laura Cutler Ph.D. | **349** |

**II.** | **DOCUMENTATION OF FACTORS THAT EVIDENCE THE DISORDER**

**A. 12.02 Organic Mental Disorders**

☐ Psychological or behavioral abnormalities associated with a dysfunction of the brain ... as evidenced by at least one of the following:

1. ☐ Disorientation to time and place

2. ☐ Memory impairment

3. ☐ Perceptual or thinking disturbances

4. ☐ Change in personality

5. ☐ Disturbance in mood

6. ☐ Emotional lability and impairment in impulse control

7. ☐ Loss of measured intellectual ability of at least 15 IQ points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing, e.g., the Luria-Nebraska, Halstead-Reitan, etc.

☐ A medically determinable impairment is present that does not precisely satisfy the diagnostic criteria above.

Disorder _____

Pertinent symptoms, signs, and laboratory findings that substantiate the presence of this impairment:

☐ Insufficient evidence to substantiate the presence of the disorder (explain in Part IV, Consultant's Notes).

**350**

**B. 12.03 Schizophrenic, Paranoid and Other Psychotic Disorders**

☐ Psychotic features and deterioration that are persistent (continuous or intermittent), as evidenced by at least one of the following:

1. ☐ Delusions or hallucinations

2. ☐ Catatonic or other grossly disorganized behavior

3. ☐ Incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following:

   a. ☐ Blunt affect, or

   b. ☐ Flat affect, or

   c. ☐ Inappropriate affect

4. ☐ Emotional withdrawal and/or isolation

☐ A medically determinable impairment is present that does not precisely satisfy the diagnostic criteria above.

Disorder _____

Pertinent symptoms, signs, and laboratory findings that substantiate the presence of this impairment:

☐ Insufficient evidence to substantiate the presence of the disorder (explain in Part IV, Consultant's Notes).

**351**

**C. 12.04 Affective Disorders**

☐ Disturbance of mood, accompanied by a full or partial manic or depressive syndrome, as evidenced by at least one of the following:

1. ☐ Depressive syndrome characterized by at least four of the following:

   a. ☐ Anhedonia or pervasive loss of interest in almost all activities, or

   b. ☐ Appetite disturbance with change in weight, or

   c. ☐ Sleep disturbance, or

   d. ☐ Psychomotor agitation or retardation, or

   e. ☐ Decreased energy, or

   f. ☐ Feelings of guilt or worthlessness, or

   g. ☐ Difficulty concentrating or thinking, or

   h. ☐ Thoughts of suicide, or

   i. ☐ Hallucinations, delusions or paranoid thinking

2. ☐ Manic syndrome characterized by at least three of the following:

   a. ☐ Hyperactivity, or

   b. ☐ Pressures of speech, or

   c. ☐ Flight of ideas, or

   d. ☐ Inflated self-esteem, or

   e. ☐ Decreased need for sleep, or

   f. ☐ Easy distractibility, or

   g. ☐ Involvement in activities that have a high probability of painful consequences which are not recognized, or

   h. ☐ Hallucinations, delusions or paranoid thinking

3. ☐ Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes)

☒ A medically determinable impairment is present that does not precisely satisfy the diagnostic criteria above

Disorder _NOS_____

Pertinent symptoms, signs, and laboratory findings that substantiate the presence of this impairment (explain in Part IV, Consultant's Notes, if necessary):

☐ Insufficient evidence to substantiate the presence of the disorder (explain in Part IV, Consultant's Notes)

**352**

---

**D. 12.05 Mental Retardation**

---

☐ Significantly subaverage general intellectual functioning with deficits in adaptive functioning
initially manifested during the developmental period; i.e., the evidence demonstrates or supports
onset of the impairment before age 22, with one of the following:

    1. ☐ Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating,
dressing, or bathing) and inability to follow instructions such that the use of standardized measures
of intellectual functioning is precluded*

    2. ☐ A valid verbal, performance, or full scale IQ of 59 or less*

    3. ☐ A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental
impairment imposing an additional and significant work-related limitation of function*

    4. ☐ A valid verbal, performance, or full scale IQ of 60 through 70*

☐ A medically determinable impairment is present that does not precisely satisfy the diagnostic criteria above.

Disorder _____

Pertinent symptoms, signs, and laboratory findings that substantiate the presence of this impairment:

*NOTE: Items 1, 2, 3, and 4 correspond to listings 12.05A, 12.05B, 12.05C, and 12.05D, respectively.

☐ Insufficient evidence to substantiate the presence of the disorder (explain in Part IV, Consultant's Notes).

**353**

**E.  12.06 Anxiety-Related Disorders**

☐  Anxiety as the predominant disturbance or anxiety experienced in the attempt to master symptoms, as evidenced by at least one of the following:

1. ☐  Generalized persistent anxiety accompanied by three of the following:

   a. ☐  Motor tension, or

   b. ☐  Autonomic hyperactivity, or

   c. ☐  Apprehensive expectation,

   d. ☐  Vigilance and scanning

2. ☐  A persistent irrational fear of a specific object, activity or situation which results in a compelling desire to avoid the dreaded object, activity, or situation

3. ☐  Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average of at least once a week

4. ☐  Recurrent obsessions or compulsions which are a source of marked distress

5. ☐  Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress

☐  A medically determinable impairment is present that does not precisely satisfy the diagnostic criteria above.

Disorder  _____

Pertinent symptoms, signs, and laboratory findings that substantiate the presence of this impairment:

☐  Insufficient evidence to substantiate the presence of the disorder (explain in Part IV, Consultant's Notes).

**354**

**F. 12.07 Somatoform Disorders**

☐ Physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms, as evidenced by at least one of the following:

1. ☐ A history of multiple physical symptoms of several years duration beginning before age 30, that have caused the individual to take medicine frequently, see a physician often and alter life patterns significantly

2. ☐ Persistent nonorganic disturbance of one of the following:

    a. ☐ Vision, or

    b. ☐ Speech,or

    c. ☐ Hearing, or

    d. ☐ Use of a limb, or

    e. ☐ Movement and its control (e.g., coordination disturbances, psychogenic seizures, akinesia, dyskinesia), or

    f. ☐ Sensation (e.g., diminished or heightened).

3. ☐ Unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury

☐ A medically determinable impairment is present that does not precisely satisfy the diagnostic criteria above.

Disorder _____

Pertinent symptoms, signs, and laboratory findings that substantiate the presence of this impairment:

☐ Insufficient evidence to substantiate the presence of the disorder (explain in Part IV, Consultant's Notes).

**355**

**G. 12.08 Personality Disorders**

☐ Inflexible and maladaptive personality traits which cause either significant impairment in social or occupational functioning or subjective distress, as evidenced by at least one of the following:

1. ☐ Seclusiveness or autistic thinking

2. ☐ Pathologically inappropriate suspiciousness or hostility

3. ☐ Oddities of thought, perception, speech and behavior

4. ☐ Persistent disturbances of mood or affect

5. ☐ Pathological dependence, passivity, or aggressivity

6. ☐ Intense and unstable interpersonal relationships and impulsive and damaging behavior

☐ A medically determinable impairment is present that does not precisely satisfy the diagnostic criteria above.

Disorder _____

Pertinent symptoms, signs, and laboratory findings that substantiate the presence of this impairment:

☐ Insufficient evidence to substantiate the presence of the disorder (explain in Part IV, Consultant's Notes).

**356**

**H.  12.09 Substance Addiction Disorders**

☐ Behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system.

If present, evaluate under one or more of the most closely applicable listings:

1. ☐ Listing 12.02-Organic mental disorders*

2. ☐ Listing 12.04-Affective disorders*

3. ☐ Listing 12.06-Anxiety-related disorders*

4. ☐ Listing 12.08-Personality disorders*

5. ☐ Listing 11.14-Peripheral neuropathies*

6. ☐ Listing 5.05-Liver damage*

7. ☐ Listing 5.04-Gastritis*

8. ☐ Listing 5.08-Pancreatitis*

9. ☐ Listing 11.02 or 11.03-Seizures*

☐ A medically determinable impairment is present that does not precisely satisfy the diagnostic criteria above.

Disorder _____

Pertinent symptoms, signs, and laboratory findings that substantiate the presence of this impairment:

☐ Insufficient evidence to substantiate the presence of the disorder (explain in Part IV, Consultant's Notes).

*NOTE: Items 1,2,3,4,5,6,7,8, and 9 correspond to listings 12.09A, 12.09B, 12.09C, 12.09D, 12.09E, 12.09F, 12.09G, 12.09H, and 12.09I, respectively.  If items 1, 2, 3, or 4 are checked, only the numbered items in subsections IIA, IIC, IIE, or IIG of the form need be checked.  The first block under the disorder heading in those subsections should not be checked, unless the evidence substantiates the presence of the disorder separate from the substance addiction disorder.

**357**

**I.   12.10 Autistic Disorder and Other Pervasive Developmental Disorders**

☐ Qualitative deficits in the development of reciprocal social interaction, in the development of verbal and nonverbal communication skills, and in imaginative activity. Often there is a markedly restricted repertoire of activities and interests, which frequently are stereotyped and repetitive.

   1. ☐ Autistic disorder, with medically documented findings of all of the following:

      a. ☐ Qualitative deficits in reciprocal social interaction

      b. ☐ Qualitative deficits in verbal and nonverbal communication and in imaginative activity

      c. ☐ Markedly restricted repertoire of activities and interests

   2. ☐ Other pervasive developmental disorders, with medically documented findings of both of the following:

      a. ☐ Qualitative deficits in reciprocal social interaction

      b. ☐ Qualitative deficits in verbal and nonverbal communication and in imaginative activity

☐ A medically determinable impairment is present that does not precisely satisfy the diagnostic criteria above.

Disorder _____

Pertinent symptoms, signs, and laboratory findings that substantiate the presence of this impairment:

☐ Insufficient evidence to substantiate the presence of the disorder (explain in Part IV, Consultant's Notes).

**358**

**III.** | **RATING OF FUNCTIONAL LIMITATIONS**

**A.  "B" Criteria of the Listings**

Indicate to what degree the following functional limitations (which are found in paragraph B of listings 12.02-12.04, 12.06-12.08 and 12.10 and paragraph D of 12.05) exist as a result of the individual's mental disorder(s).

NOTE:    Item 4 below is more than a measure of frequency and duration. See 12.00C4 and also read carefully the instructions for this section.

Specify the listing(s) (i.e., 12.02 through 12.10) under which the items below are being rated _____
12.04

| FUNCTIONAL LIMITATION | DEGREE OF LIMITATION | | | | | |
|---|---|---|---|---|---|---|
| | None | Mild | Moderate | Marked* | Extreme* | Insufficient Evidence |
| 1.  Restriction of Activities of Daily Living | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| | None | Mild | Moderate | Marked* | Extreme* | Insufficient Evidence |
| 2.  Difficulties in Maintaining Social Functioning | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| | None | Mild | Moderate | Marked* | Extreme* | Insufficient Evidence |
| 3.  Difficulties in Maintaining Concentration, Persistence, or Pace | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| | None | One or Two | Three* | Four* or More | | Insufficient Evidence |
| 4.  Episodes of Decompensation, Each of Extended Duration | ☒ | ☐ | ☐ | ☐ | | ☐ |

*Degree of limitation that satisfies the functional criterion.

**359**

**B. "C" Criteria of the Listings**

1. Complete this section if 12.02 (Organic Mental), 12.03 (Schizophrenic, etc.), or 12.04 (Affective) applies and the requirements in paragraph B of the appropriate listing are not satisfied.

NOTE:   Item 1 below is more than a measure of frequency and duration. See 12.00C4 and also read carefully the instructions for this section.

☐ Medically documented history of a chronic organic mental (12.02), schizophrenic, etc. (12.03), or affective (12.04) disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do any basic work activity, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

    1. ☐ Repeated episodes of decompensation, each of extended duration

    2. ☐ A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate

    3. ☐ Current history of 1 or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement.

☒ Evidence does not establish the presence of the "C" criteria

☐ Insufficient evidence to establish the presence of the "C" criteria (explain in Part IV, Consultant's Notes).

2. Complete this section if 12.06 (Anxiety-Related) applies <u>and</u> the requirements in paragraph B of listing 12.06 are not satisfied.

☐ Complete inability to function independently outside the area of one's home

☐ Evidence does not establish the presence of the "C" criterion

☐ Insufficient evidence to establish the presence of the "C" criterion (explain in Part IV, Consultant's Notes).

**360**

**IV.** CONSULTANT'S NOTES

Disability is alleged due to physical and mental limitations, the latter of which are partially credible. Limitations are reported in memory, concentration and handling stress/change. Clmt reported that she can pay attention "as long as needed" and has "good" ability to follow instructions. No history of MH tx. ASCE vendor noted normal mental status. Mental CE findings were generally normative with no signs of significant psychiatric disturbance or mental status limitations; estimated average intelligence. MSS is given great weight.

**361**

Section 223 and section 1633 of the Social Security Act authorize the information requested on this form. The information provided will be used in making a decision on this claim. Completion of this form is mandatory in disability claims involving mental impairments. Failure to complete this form may result in a delay in processing the claim. Information furnished on this form may be disclosed by the Social Security Administration to another person or governmental agency only with respect to Social Security programs and to comply with federal laws requiring the exchange of information between Social Security and another agency.

We may also use the information you give us when we match records by computer. Matching programs compare our records with those of other Federal, State, or local government agencies. Many agencies may use matching programs to find or prove that a person qualifies for benefits paid by the Federal government. The law allows us to do this even if you do not agree to it.

Explanations about these and other reasons why information about you may be used or given out are available in Social Security offices. If you want to learn more about this, contact any Social Security office.

**Paperwork Reduction Act Statement** - This information collection meets the requirements of 44 U. S.C. § 3507, as amended by Section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget control number. We estimate that it will take about 15 minutes to read the instructions, gather the facts, and answer the questions. **SEND OR BRING THE COMPLETED FORM TO YOUR LOCALSOCIALSECURITY OFFICE. To find the nearest office, call 1-800-772-1213.** *Send only comments on our time estimate above to*:  *SSA, 6401 Security Boulevard, Baltimore, MD 21235-6401.*

**362**

## THIS MUST BE THE FIRST PAGE WHEN FAXING OR PAGE: 1 OF 30
## MAILING RECORDS. PLEASE FAX TO 866-818-0912.

ARH TRI CITY MEDICAL CENTER
CUMBERLAND, KY  40823-8106
1137025B

FAX: 866-818-0912
CLAIMANT INFORMATION:

RE: LORENA NAILLIEUX
    PARTRIDGE, KY
CASE#: 1439686
DOB:  07/31/1962
**DMA: Y  PFI: N**

լիսլլիսկլիսկլիսլ.լլիսլակ.ստ.լլիսկ.ստ.լլ
DISABILITY DETERMINATION SERVICES (S20)
PO BOX 8750
LONDON KY 40742-9818



RQID:L00002X65N000              SITE:S20 DR:S
SSN:********* DOCTYPE:0001 RF:D CS:5e23

SUZANNE, Disability Examiner
800-928-8050 **EXT. 4161**
SMD:smd B3

## PLEASE RETURN THIS PAGE WITH THE COPY OF YOUR RECORDS. We pay a
maximum of $10.00 for photocopy of medical records. **WE WILL PAY AN ADDITIONAL $5.00 FOR
RECORDS SENT ELECTRONICALLY (FAXED OR SENT TO SSA WEBSITE).  If you have any questions
about the electronic process call 800-928-8050 ext. 4355.**  To be paid, fill in amount
and revise payment information below if needed.  Allow four weeks for payment.  All
billing issues must be resolved within one year from the date of this letter.

SMD:smd B3

**PAYMENT NAME/ADDRESS/FED TAX ID/TYPE**
APPALACHIAN REGIONAL HEALTHCARE
ARH TRI CITY MEDICAL CENTER
18880 N US HIGHWAY 119
CUMBERLAND, KY 40823-8106
**FEDERAL TAX ID: 52-0795508, BUSINESS TYPE:**

**INVOICE AMOUNT:** $ *15.00*

INVOICE NUMBER: _____
ARH TRI CITY MEDICAL CENTER
Vendor ID #: 1137025B
Serial #: 20081003400765 **DMA: Y**
NAILLIEUX  1439686  **PFI: N**

D0008

## THIS BARCODED PAGE MUST BE THE TOP PAGE.



**MAYS & associates** | SLEEP DISORDERS TESTING

# POLYSOMNOGRAPHY INTERPRETATION

*Faxed 6/26/08*

## PATIENT INFORMATION
Study Date:        06/18/2008
Patient Name:      LORENA L. NAILLIEUX
Date of Birth:     07/31/1962 (45)
Hospital:          Harlan ARH
Physician:         Pamela J. Sheffield, MD

## CLINICAL SUMMARY
This 45-year-old female is 5' 0" tall, weighs 198 pounds and is referred for evaluation of obstructive sleep apnea. The patient has a history of snoring, excessive daytime fatigue, respiratory disturbance and a concern about obstructive sleep apnea. Past medical history includes: obesity, arthritis, GERD and allergies. Patient had UPPP done about 6 years ago and adenoidectomy about 6 years ago. Current medications are: Estratest, Allegra, Nasonex, diclofenac, ibuprofen, and Lipitor.

## REPORT
Sleep efficiency was 94.4% with a total of 5.63 hours of sleep. Basal arterial oxygen saturation was 95.54% with a minimum of 86.00%. Sleep distribution was marked for a decrease in REM sleep and increase in slow wave sleep. This sleep study revealed intermittent snoring along with multiple respiratory related arousals and few hypopneas with rare oxygen desaturations to a minimum of 86.00%. For the entire night, the patient had an apnea/hypopnea index of 2.8 and a respiratory disturbance index of 6.6, which does not meet the criteria for obstructive sleep apnea syndrome but it does suggest the possibility of mild sleep related breathing disorder of unknown clinical significance. The patient had significant periodic leg movements of sleep with an index of 6.2 per hour and a PLMS arousal index of 0.0 per hour, which is not clinically significant arousal index.

## IMPRESSION
This overnight polysomnogram reveals:
1. Intermittent snoring.
2. No evidence of obstructive sleep apnea syndrome, please see above comments.

## DIAGNOSIS
Axis A:  Snoring (786.09)

Axis B:  Baseline PSG (CPT 95810)

6/29/08 p58

Page 2

Study Date:        06/18/2008
Patient Name:      LORENA L. NAILLIEUX
Date of Birth:     07/31/1962 (45)
Hospital:          Harlan ARH
Physician:         Pamela J. Sheffield, MD

RECOMMENDATIONS
For snoring or mild sleep related breathing disorder, encourage weight loss and avoidance of
supine position, and consider ENT evaluation.

Mousab Almusaddy, MD, D,ABSM
06/19/2008

6/29/08 pss

11/14/2008 17:17 FAX     ☑004
08/28/2008 07:19   6865738174    HARH SLEEP CENTER    PAGE 04
Case: 7:16-cv-00193-JMH   Doc #: 12-1   Filed: 12/09/16   Page: 370 of 435 - Page ID#: EXHIBIT NO. 8F
PAGE: 4 OF 30



**MAYS & associates** | SLEEP DISORDERS TESTING

# POLYSOMNOGRAPHY ANALYSIS REPORT

**Baseline Evaluation**

*This polysomnogram consisted of continuous monitoring of EEG, EOG, EMG, ECG, nasal/oral airflow, thoracic and abdominal respiratory effort and body position.*

## PATIENT INFORMATION:

Patient Name:   LORENA L NAILLIEUX
Study Date:   06/18/2008
Date of Birth:   07/31/1962 (45)
Gender: **F**    Height: 5' 0"     Weight: 198 lbs.

**RECORDING TIME:** 23:40:41 to 05:38:11

### SLEEP STAGING STATISTICS

| | MINUTES | | MINUTES | PERCENT OF TST |
|---|---|---|---|---|
| Total Recording Time | 357.5 | N1 Sleep | 20.0 | 5.9 |
| Total Sleep Time | 337.5 | N2 Sleep | 188.5 | 55.9 |
| Sleep Onset Latency | 12.5 | N3 Sleep | 97.5 | 28.9 |
| REM Latency | 200.5 | REM Sleep | 31.5 | 9.3 |
| Sleep Efficiency | 94.4% | | | |

### RESPIRATORY STATISTICS

| | AVERAGE DURATION | TOTAL DURATION | TOTAL EVENTS | SUPINE INDEX | REM INDEX | OVERALL INDEX |
|---|---|---|---|---|---|---|
| Obstructive Apnea | 0.0 sec | 0.0 min | 0 | 0.0 | 0.0 | 0.0 |
| Hypopnea | 30.3 sec | 8.1 min | 16 | 0.0 | 3.8 | 2.8 |
| Central Apnea | 0.0 sec | 0.0 min | 0 | 0.0 | 0.0 | 0.0 |
| Mixed Apnea | 0.0 sec | 0.0 min | 0 | 0.0 | 0.0 | 0.0 |
| Apnea & Hypopnea | 30.3 sec | 8.1 min | 16 | 0.0 | 3.8 | 2.8 |
| AHI = 2.8 | | | | | | |
| RDI = 6.6 | | | | | | |

### OXIMETRY STATISTICS

| Basal Oxygen Saturation = 95.54 | Average Desaturation = 94.59% | Lowest Desaturation = 86.00% |
|---|---|---|
| Total Desaturations > 4% = 34 | | |

### PLMS STATISTICS

| PLMS per hour of NREM sleep = 6.9 | PLMS per hour of REM sleep = 0.0 | Total PLMS Index = 6.2 |
|---|---|---|

### AROUSAL STATISTICS

| | REM | NREM | TOTAL | INDEX |
|---|---|---|---|---|
| Apnea & Hypopnea Related | 0 | 10 | 10 | 1.8 |
| Respiratory Event Related (RERA) | 0 | 21 | 21 | 3.7 |
| Spontaneous | 0 | 0 | 0 | 0.0 |
| PLMS Related | 0 | 0 | 0 | 0.0 |
| Overall Arousal Index = 5.5 | | | | |

6/29/08 p88

Page 2  Polysomnography Report
Patient: LORENA L NAILLIEUX

# GRAPHIC SUMMARY



## Appalachian Regional Healthca

## Request for Consult

MCLIPENA
0224-9373
MSR: 00007551468
85 BARLOW BRANCH
PARTRIDGE
40862                          FC: BC
Cht Loc: TH            FY DOB 07/31/1962
Cht ID: 046537        LOC: THTH
                              PH: 6065894149

06/10/08   12:15P  Apt Type: OV
PAM SHEFFIELD             SHEFA CLITH
BLUE CROSS AND BLU YRP866M55909

To: _Cardiopulmonary_    Date _____
_@ ARH_    Notified: _____  Date & Time: _____

- ☐ Consult with recommendation only
- ☐ Consult with management & follow up
- ☐ Consult for transfer of services

STAT ____ Today ____ Next day ____

Date _June 16_  Time _9pm_

Regarding: Please do Sleep Study.
Thank you. Sleep apnea.
Pam Sheffield ARNP/

**Consultation Report**   K. Kikinima

6/11/08 Spoke c Jodi (ID# AB24874) @ Anthem BCBS
PreCert: Sent to another department
                Kikinima
Called. 888-730-2817 Spoke to: Shawn - No Precert
                Needed.

Signature _____

NAILLIEUX        LORENA        39
0224-9373
MSR:  0000751468                      FC: BC
85 BARLOW BRANCH              KY DOB  07/31/1962
PARTRIDGE                     LOC:  THTH
40862                         PH: 6065894149
Cht Loc: TH
Cht ID:  046537
----------------Appointment---------------
06/10/08     12:15P  Appt Type:  OV
                            SHEPA CLITH
FAM SHEFFIELD
BLUE CROSS AND BLU YR.866M55909

**ARH TRI-CITY MEDICAL CTR**
**18880 US NORTH HWY 119**
**CUMBERLAND, KY. 40823**

Date 6/10/08     Age 45
Time 12:55
Nsg. Dilishin Cma

ALLERGIES  Sulfa _____ SMOKES 1 ☐ PPD ___ Shots UTD ☐ ☐
FOLLOW UP _____ NEW PATIENT ASSESSMENT ____ O2-sat ____ % on room air

**VITAL STATISITICS:**
WT 199.8  HT 5'0"  TEMP 97.8  RR 16  PULSE 04  B/P 122/76

| **CHIEF COMPLAINT:** | GEN:____ WEAKNESS:____ FATIGUE:____ |
|---|---|
| *[handwritten chief complaint]* | CV____ CP:____ PALPITATIONS:____ |
| | RESP:____ SOB:____ COUGH:____ |
| | GI____ N____ V____ D____ |
| | GU:____ DYSURIA____ |
| | NEURO:____ HA____ DIZZINESS____ |
| | MS:____ WNL____ PAIN ☐ on 1:10 |
| | GENERALIZED STIFFNESS____ |

**PHYSICAL EXAM:**
**GEN:** ☑ Well developed well-nourished ☑ alert ☑ no distress ☐ non-toxic ☐ age appropriate behavior
ABNL/OTHER _____
**EYES:** ☐ lids, conjunctiva nl ☐ PERRL irises nl ☐ disc & fund nl
ABNL/OTHER _____
**ENMT:** ☐ ext. ears, nose nl ☐ TM canals nl ☐ hearing grossly intact ☐ nasal exam nl ☐ teeth, gums, palate nl ☐ oropharynx nl
ABNL/OTHER _____
**NECK:** ☐ neck supple, symmetric, no masses ☐ thyroid ☐ no JVD ☐ neck non-tender ☐ full ROM w/o pain
ABNL/OTHER _____
**RESP:** ☑ resp. effort nl ☑ clear to auscultation ☐ percussion nl ☐ palpation of chest nl ☑ chest symmetry & expansion nl
ABNL/OTHER _____
**CV:** ☑ RRR, no murmurs, gallop or rub Pulses: ☐ carotid r.l ☐ abd aorta nl ☐ femoral nl ☐ pedal nl ☐ no edema
ABNL/OTHER _____
**GI:** ☐ no tenderness/mass ☐ liver & spleen nl ☐ no hernias ☐ rectal, no mass ☐ +BS's ☐ non-distended ☐ no rebounding/guarding
ABNL/OTHER _____
**GU:** ☐ scrotal contents nl ☐ penis nl ☐ prostate nl ☐ no CVA tenderness ☐ breast exam nl ☐ rectal exam nl
      ☐ ext genatalia & vaginal nl ☐ urethra nl ☐ bladder nl ☐ uterus nl ☐ adnexa nl
ABNL/OTHER _____
**MUSC:** ☑ Extremities nl ☑ ALL__ RUE__ LUE__ RLE__ LLE__ ☐ back nl __ ☐ pelvis & hips nl ☐ gait station nl ☐ digits nl
ABNL/OTHER _____
**SKIN:** ☑ inspection nl ☐ palpation nl ☐ well-hydrated ☐ wound healing w/o infection ☐ feet nl
ABNL/OTHER _____
**NEURO:** ☐ CN 11-XII intact ☐ DTR'S symmetric ☐ sensory intact ☐ motor strength nl ☐ SLR neg. ☐ coordination nl
ABNL/OTHER _____
**PSYCH:** ☐ judgment/insight nl ☐ oriented x 3 ☐ memory nl ☐ mood nl ☐ no delusions/hallucinations
ABNL/OTHER _____
**LYMPH:** Normal Nodes: ☐ cervical ☐ axillary ☐ inguinal
ABNL/OTHER _____

| **DIAGNOSES:** | **PLAN:** |
|---|---|
| 1. Hypercholesterolemia | ① Discussion of Labs. |
| 2. Neck Pain | ② Lipitor 20 mg daily (#30) 2LF |
| 3. Sleep Apnea | ③ X-Ray C-Spine    ④ Sleep Apnea Studies |
| 4. _____ | Flexeril 10 mg TID 4 7 days |
| 5. _____ | Motrin 800 mg TID 4 7 days |

**FOLLOW UP:** ☑ PRN or Return 3 mo.    Signature *Pam Sheffield*    ARNP 369
1 wk.

NAILLIEUX          LORENA
        0224-9373                    39-9812-7
MSR:  00007565708
85 BARLOW BRANCH                                    FC: BC
PARTRIDGE                        KY DOB  07/31/1962
40862                       LOC:    THTH
Cht Loc: TH                       PH: 6065894149
Cht ID:  048537
-------------------  Appointment--------------
06/18/08    01:00P  Appt Type:  CI
PAM SHEFFIELD                   SHEPA CLITH
BLUE CROSS AND BLU  YRP866M55909

**ARH TRI-CITY MEDICAL CTR**
**18880 US NORTH HWY 119**
**CUMBERLAND, KY. 40823**

Date 6/18/08   Age 45
Time 1:30
Nsg Waugh

ALLERGIES Sulfa ___ SMOKES ← PPD ___ Shots UTD ✓
FOLLOW UP ___ NEW PATIENT ASSESSMENT ___ O2-sat ___ % on room air

**VITAL STATISITICS:**
WT 188   HT 5'   TEMP 99'   RR 20  PULSE 70  B/P 124/74

| CHIEF COMPLAINT: | GEN:___ WEAKNESS:___ FATIGUE:___ |
|---|---|
| | CV:___ CP:___ PALPITATIONS:___ |
| | RESP:___ SOB:___ COUGH:___ |
| | GI___ N___ V___ D___ |
| | GU:___ DYSURIA___ |
| | NEURO:___ HA___ DIZZINESS___ |
| | MS:___ WNL___ PAIN___ on 1:10 |
| | GENERALIZED STIFFNESS___ |

**PHYSICAL EXAM:**
GEN. ☑ Well developed well-nourished ☑ alert ☑ no distress ☐ non-toxic ☐ age appropriate behavior
ABNL/OTHER_____

EYES: ☐ lids, conjunctiva nl ☐ PERRL irises nl ☐ disc & fund nl
ABNL/OTHER_____

ENMT: ☐ ext. ears, nose nl ☐ TM canals nl ☐ hearing grossly intact ☐ nasal exam nl ☐ teeth, gums, palate nl ☐ oropharynx nl
ABNL/OTHER_____

NECK: ☐ neck supple, symmetric, no masses ☐ thyroid ☐ no JVD ☐ neck non-tender ☐ full ROM w/o pain
ABNL/OTHER_____

RESP: ☑ resp. effort nl ☑ clear to auscultation ☐ percussion nl ☐ palpation of chest nl ☑ chest symmetry & expansion nl
ABNL/OTHER_____

CV: ☑ RRR, no murmurs, gallop or rub Pulses: ☐ carotid nl ☐ abd aorta nl ☐ femoral nl ☐ pedal nl ☐ no edema
ABNL/OTHER_____

GI: ☐ no tenderness/mass ☐ liver & spleen nl ☐ no hernias ☐ rectal, no mass ☐ +BS's ☐ non-distended ☐ no rebounding/guarding
ABNL/OTHER_____

GU: ☐ scrotal contents nl ☐ penis nl ☐ prostate nl ☐ no CVA tenderness ☐ breast exam nl ☐ rectal exam nl
     ☐ ext genatalia & vaginal nl ☐ urethra nl ☐ bladder nl ☐ uterus nl ☐ adnexa nl
ABNL/OTHER_____

MUSC: ☑ Extremities nl ☐ ALL__ RUE__ LUE__ RLE__ LLE__ ☐ back nl __ ☐ pelvis & hips nl ☐ gait station nl ☐ digits nl
ABNL/OTHER_____

SKIN: ☑ inspection nl ☐ palpation nl ☐ well-hydrated ☐ wound healing w/o infection ☐ feet nl
ABNL/OTHER_____

NEURO: ☐ CN 11-XII intact ☐ DTR'S symmetric ☐ sensory intact ☐ motor strength nl ☐ SLR neg. ☐ coordination nl
ABNL/OTHER_____

PSYCH: ☑ judgment/insight nl ☐ oriented x 3 ☐ memory nl ☐ mood nl ☐ no delusions/hallucinations
ABNL/OTHER_____

LYMPH: Normal Nodes: ☐ cervical ☐ axillary ☐ inguinal
ABNL/OTHER_____

| DIAGNOSES: | PLAN: |
|---|---|
| 1. Neck Pain | Discussion of X-Rays |
| 2._____ | MRI of C-Spine |
| 3._____ | |
| 4._____ | |
| 5._____ | |

FOLLOW UP: ☑ PRN or Return _____   Signature Pam Sheffield   ARNP 370

NAILLIEUX , LOR_NA
0224-8373
MSR: 00008189748
85 BARLOW BRANCH
PARTRIDGE                    FC: BC
40862                        KY DOB  07/31/1962
Cht Loc: TH           LOC:  THTH
Cht ID:  046537              PH: 6065894149
-------------Appointment------------
08/19/08   09:15A   Appt Type: CI
PAM SHEFFIELD            SHEPA CLITH
BLUE CROSS AND BLU YPP366N55909

**ARH TRI-CITY MEDICAL CTR**
**18880 US NORTH HWY 119**
**CUMBERLAND, KY, 40823**

Date 8/6/08   Age 46
Time 9:40
Nsg. _____ cm

ALLERGIES ___Sulfa___   SMOKES No PPD____ Shots UTD No
FOLLOW UP ____ NEW PATIENT ASSESSMENT ____ O2-sat ____ % on room air

**VITAL STATISITICS:**
WT 197.0 HT 5'0" TEMP 98.0 RR 16 PULSE 68 B/P 110/78

| CHIEF COMPLAINT: | | |
|---|---|---|
| Needs results from sleep study & MRI of neck | GEN: WEAKNESS: FATIGUE: |
| | CV: CP: PALPITATIONS: |
| | RESP: SOB: COUGH: |
| | GI: N V D |
| | GU: DYSURIA |
| | NEURO: HA DIZZINESS |
| | MS: WNL PAIN 0 on 1:10 |
| | GENERALIZED STIFFNESS |

**PHYSICAL EXAM:**
GEN: ☑ Well developed well-nourished ☑ alert ☑ no distress ☐ non-toxic ☐ age appropriate behavior
ABNL/OTHER
EYES: ☐ lids, conjunctiva nl ☐ PERRL irises nl ☐ disc & fund nl
ABNL/OTHER
ENMT: ☐ ext. ears, nose nl ☐ TM canals nl ☐ hearing grossly intact ☐ nasal exam nl ☐ teeth, guns, palate nl ☐ oropharynx nl
ABNL/OTHER
NECK: ☐ neck supple, symmetric, no masses ☐ thyroid nl no JVD ☐ neck non-tender ☐ full ROM w/o pain
ABNL/OTHER
RESP: ☐ resp. effort nl ☑ clear to auscultation ☐ percussion nl ☐ palpation of chest nl ☑ chest symmetry & expansion nl
ABNL/OTHER
CV: ☑ RRR, no murmurs, gallop or rub Pulses: ☐ carotid nl ☐ abd aorta nl ☐ femoral nl ☐ pedal nl ☐ no edema
ABNL/OTHER
GI: ☐ no tenderness/mass ☐ liver & spleen nl ☐ no hernias ☐ rectal, no mass ☐ +BS's ☐ non-distended ☐ no rebounding/guarding
ABNL/OTHER
GU: ☐ scrotal contents nl ☐ penis nl ☐ prostate nl ☐ no CVA tenderness ☐ breast exam nl ☐ rectal exam nl
☐ ext genatalia & vaginal nl ☐ urethra nl ☐ bladder nl ☐ uterus nl ☐ adnexa nl
ABNL/OTHER
MUSC: ☑ Extremities nl __ALL__ RUE__ LUE__ RLE__ LLE__ ☐ back nl __ ☐ pelvis & hips nl ☐ gait station nl ☐ digits nl
ABNL/OTHER
SKIN: ☐ inspection nl ☐ palpation nl ☐ well-hydrated ☐ wound healing w/o infection ☐ feet nl
ABNL/OTHER
NEURO: ☐ CN 11-XII intact ☐ DTR'S symmetric ☐ sensory intact ☐ motor strength nl ☐ SLR neg. ☐ coordination nl
ABNL/OTHER
PSYCH: ☐ judgment/insight nl ☐ oriented x 3 ☐ memory nl ☐ mood nl ☐ no delusions/hallucinations
ABNL/OTHER
LYMPH: Normal Nodes: ☐ cervical ☐ axillary ☐ inguinal
ABNL/OTHER

| DIAGNOSES: | PLAN: |
|---|---|
| 1. LBP | ① W/ hx of LSS   Meds may cause drowsiness |
| 2. Neck Pain | Flexeril 10 mg TID × 7 days |
| 3. | Motrin 800 mg TID × 7 days |
| 4. | ② Discussion of MRI |
| 5. | |

FOLLOW UP: ☑ PRN or Return ____   Signature Pamela Sheffield   ARNP 371

(10)

**ARH TRI-CITY MEDICAL CTR**
**18880 US NORTH HWY 119**
**CUMBERLAND, KY. 40823**

Date 9/15/08    Age 46

Time 3:55

Nsg. _____ cm

ALLERGIES ___sulfa___    SMOKES __no__ PPD    Shots UTD __no__

FOLLOW UP _____ NEW PATIENT ASSESSMENT _____ O2-sat ____ % on room air

**VITAL STATISITICS:**
WT 194.6   HT 5'0"   TEMP 98.4   RR 16   PULSE 104   B/P 122/76

| CHIEF COMPLAINT: | GEN: ___ WEAKNESS: ___ FATIGUE: ___ |
|---|---|
| _Back hurts, Chills_ | CV: ___ CP: ___ PALPITATIONS: ___ |
| _fever. Lesion in throat_ | RESP: ___ SOB: ___ COUGH: ___ |
| _that's sore & 3 days. Unable_ | GI: ___ N ___ V ___ D ___ |
| _to urinate well?_ | GU: ___ DYSURIA ___ |
|  | NEURO: ___ HA ___ DIZZINESS ___ |
|  | MS: ___ WNL ___ PAIN () on 1:10 |
|  | GENERALIZED STIFFNESS ___ |

**PHYSICAL EXAM:**

**GEN:** ☑ Well developed well-nourished ☑ alert ☑ no distress ☐ non-toxic ☐ age appropriate behavior
ABNL/OTHER_____

**EYES:** ☐ lids, conjunctiva nl ☐ PERRL irises nl ☐ disc & fund nl
ABNL/OTHER_____

**ENMT:** ☐ ext. ears, nose nl ☐ TM canals nl ☐ hearing grossly intact ☐ nasal exam nl ☐ teeth, gums palate nl ☐ oropharynx nl
ABNL/OTHER_____

**NECK:** ☐ neck supple, symmetric, no masses ☐ thyroid ☐ no JVD ☐ neck non-tender ☐ full ROM w/o pain
ABNL/OTHER_____

**RESP:** ☑ resp. effort nl ☑ clear to auscultation ☐ percussion nl ☐ palpation of chest nl ☑ chest symmetry & expansion nl
ABNL/OTHER_____

**CV:** ☐ RRR, no murmurs, gallop or rub Pulses: ☐ carotid nl ☐ abd aorta nl ☐ femoral nl ☐ pedal n ☐ no edema
ABNL/OTHER_____

**GI:** ☐ no tenderness/mass ☐ liver & spleen nl ☐ no hernias ☐ rectal, no mass ☐ +BS's ☐ non-distended ☐ no rebounding/guarding
ABNL/OTHER_____

**GU:** ☐ scrotal contents nl ☐ penis nl ☐ prostate nl ☐ no CVA tenderness ☐ breast exam nl ☐ rectal exam nl
     ☐ ext genatalia & vaginal nl ☐ urethra nl ☐ bladder nl ☐ uterus nl ☐ adnexa nl
ABNL/OTHER_____

**MUSC:** ☑ Extremities nl __ALL__ RUE__ LUE__ RLE __ LLE__ ☐ back nl __ ☐ pelvis & hips nl ☐ gait station nl ☐ digits nl
ABNL/OTHER_____

**SKIN:** ☑ inspection nl ☐ palpation nl ☐ well-hydrated ☐ wound healing w/o infection ☐ feet nl
ABNL/OTHER_____

**NEURO:** ☐ CN 11-XII intact ☐ DTR'S symmetric ☐ sensory intact ☐ motor strength nl ☐ SLR neg. ☐ coordination nl
ABNL/OTHER_____

**PSYCH:** ☑ judgment/insight nl ☐ oriented x 3 ☐ memory nl ☐ mood nl ☐ no delusions/hallucinations
ABNL/OTHER_____

**LYMPH:** Normal Nodes: ☐ cervical ☐ axillary ☐ inguinal
ABNL/OTHER_____

| DIAGNOSES: | PLAN: |
|---|---|
| 1. _UTI_ | _U/A_   _Levaquin 500 mg daily_ |
| 2. ___ | _CBC_        _x 14 days_ |
| 3. ___ | _Keflex 1gm_ |
| 4. ___ | |
| 5. ___ | |

FOLLOW UP: ☑ PRN or Return _Fri day_   Signature _Pam Sheffield_   ARNP **372**

ARH TRI-CITY MEDICAL CTR
18880 US NORTH HWY 119
CUMBERLAND, KY. 40823

Marital Status: M S W D

Allergies: _____

Occupation: _____

Lives Alone: Y N Lives with: _____

Hospitalizations/Surgeries

Diagnoses History

Injection site *(R) hip*

Medicine/dose injected *Rocephen 1gm* (Last)

Time injected *4.30* PaP- _____

No reaction after *15* Minutes Mammo- _____

Given by *Willis Cm* Chest X- _____

Psa- _____

Notes _____

**Family History**

Mother_Htn Dm CVA Ca_____

Father_Htn Dm CVA Ca_____

Sister_Htn Dm CVA Ca _____

Brother_Htn Dm CVA Ca_____

Grandmother_Htn Dm CVA Ca _____

Grandfather_Htn Dm CVA Ca.

**Nursing**

**373**

NAILLIEUX , LORENA
0224-9373 39-9812-7
MSR: 00008477044
85 BARLOW BRANCH                    FC: BC
PARTRIDGE                    KY DOB 07/31/1962
40862                        LOC:    THTH
Cht Loc: TH                  PH: 6065894149
Cht ID:  046537
-----------------Appointment----------------
09/19/08   11:15A  Appt Type:  OV
PAM SHEFFIELD            SHEPA CLITH
BLUE CROSS AND BLU  YRP356M55909

**ARH TRI-CITY MEDICAL CTR**
**18880 US NORTH HWY 119**
**CUMBERLAND, KY. 40823**

Date 9/19/08   Age 46

Time 8:00

Nsg. Williams

ALLERGIES ___Sulfa___ SMOKES __no__ PPD ___ Shots UTD __no__

FOLLOW UP _____ NEW PATIENT ASSESSMENT ____ O2-sat ____ % on room air

**VITAL STATISITICS:**
WT 190.2 HT 5'5" TEMP 97.6 RR 16 PULSE 108 B/P 110/64

| CHIEF COMPLAINT: | GEN:___ WEAKNESS:___ FATIGUE:___ |
|---|---|
| Severe sorethroat gr | CV___ CP:___ PALPITATIONS:___ |
| fever at this time. | RESP:___ SOB:___ COUGH:___ |
| | GI___ N___ V___ D___ |
| | GU:___ DYSURIA___ |
| | NEURO:___ HA___ DIZZINESS ø___ |
| | MS:___ WNL___ PAIN X___ on 1:10 |
| | GENERALIZED STIFFNESS___ |

**PHYSICAL EXAM:**

**GEN:** ☑ Well developed well-nourished ☑ alert ☑ no distress ☐ non-toxic ☐ age appropriate behavior
ABNL/OTHER___

**EYES:** ☐ lids, conjunctiva nl ☐ PERRL irises nl ☐ disc & fund nl
ABNL/OTHER___

**ENMT:** ☑ ext. ears, nose nl ☑ TM canals nl ☐ hearing grossly intact ☐ nasal exam nl ☐ teeth, guns, palate nl ☐ oropharynx nl
ABNL/OTHER___ throat erythe & exudate

**NECK:** ☑ neck supple, symmetric, no masses ☐ thyroid ☐ no JVD ☐ neck non-tender ☐ full ROM w/o pain
ABNL/OTHER___

**RESP:** ☑ resp. effort nl ☑ clear to auscultation ☐ percussion nl ☐ palpation of chest nl ☑ chest symmetry & expansion nl
ABNL/OTHER___

**CV:** ☑ RRR, no murmurs, gallop or rub Pulses: ☐ carotid nl ☐ abd aorta nl ☐ femoral nl ☐ pedal nl ☐ no edema
ABNL/OTHER___

**GI:** ☐ no tenderness/mass ☐ liver & spleen nl ☐ no hernias ☐ rectal, no mass ☐ +BS's ☐ non-distended ☐ no rebounding/guarding
ABNL/OTHER___

**GU:** ☐ scrotal contents nl ☐ penis nl ☐ prostate nl ☐ no CVA tenderness ☐ breast exam nl ☐ rectal exam nl
☐ ext genatalia & vaginal nl ☐ urethra nl ☐ bladder nl ☐ uterus nl ☐ adnexa nl
ABNL/OTHER___

**MUSC:** ☑ Extremities nl __ ALL__ RUE__ LUE__ RLE__ LLE__ ☐ back nl __ ☐ pelvis & hips nl ☐ gait station nl ☐ digits nl
ABNL/OTHER___

**SKIN:** ☑ inspection nl ☐ palpation nl ☐ well-hydrated ☐ wound healing w/o infection ☐ feet nl
ABNL/OTHER___

**NEURO:** ☐ CN 11-Xll intact ☐ DTR'S symmetric ☐ sensory intact ☐ motor strength nl ☐ SLR neg. ☐ coordination nl
ABNL/OTHER___

**PSYCH:** ☑ judgment/insight nl ☐ oriented x 3 ☐ memory nl ☐ mood nl ☐ no delusions/hallucinations
ABNL/OTHER___

**LYMPH:** Normal Nodes: ☐ cervical ☐ axillary ☐ inguinal
ABNL/OTHER___

| DIAGNOSES: | PLAN: |
|---|---|
| 1. Pharyngitis | Amoxil 500mg TID #10 days (#30) |
| 2. ___ | Throat culture |
| 3. ___ | DC Levaquin |
| 4. ___ | |
| 5. ___ | |

FOLLOW UP: ☐ PRN or Return ____Monday____   Signature _Pam Sheffield_   ARNP **374**

NAILLIEUX LORENA
0224-9373

39-9  FC: BC
85 BARLOW BRANCH
PARTRIDGE          KY DOB 07/31/1962
40862             LOC: THTH
Cht Loc: TH        PH: 6065894149
Cht ID: 046537
----------------Appointment----------------
09/26/08   10:15A  Appt Type: CI
PAM SHEFFIELD       SHEFA CLITH
BLUE CROSS AND BLU YRP866M55909

**ARH TRI-CITY MEDICAL CTR**
**18880 US NORTH HWY 119**
**CUMBERLAND, KY. 40823**

Date 9-26-08   Age 41
Time 10-30
Nsg Walker MA

ALLERGIES _____Sulfa_____ SMOKES No PPD_____ Shots UTD Y No
FOLLOW UP _____ NEW PATIENT ASSESSMENT____ O2-sat_____ % on room air

**VITAL STATISITICS:**
WT 195   HT 5'0"   TEMP 97.1  RR 16  PULSE 76  B/P 110/62

**CHIEF COMPLAINT:**
_back in leck pain_

| | |
|---|---|
| GEN: | WEAKNESS:___ FATIGUE:___ |
| CV___ CP:___ | PALPITATIONS:___ |
| RESP:___ SOB:___ | COUGH:___ |
| GI___ | N___ V___ D___ |
| GU:___ | DYSURIA___ |
| NEURO:___ HA___ | DIZZINESS___ |
| MS:___ WNL___ | PAIN O__ on 1:10 |
| GENERALIZED STIFFNESS___ | |

**PHYSICAL EXAM:**
GEN: ☑ Well developed well-nourished ☑ alert ☑ no distress ☐ non-toxic ☐ age appropriate behavior
ABNL/OTHER_____

EYES: ☐ lids, conjunctiva nl ☐ PERRL irises nl ☐ disc & fund nl
ABNL/OTHER_____

ENMT: ☐ ext. ears, nose nl ☐ TM canals nl ☐ hearing grossly intact ☐ nasal exam nl ☐ teeth, gums, palate nl ☐ oropharynx nl
ABNL/OTHER_____

NECK: ☐ neck supple, symmetric, no masses ☐ thyroid ☐ no JVD ☐ neck non-tender ☐ full ROM w/o pain
ABNL/OTHER_____

RESP: ☐ resp. effort nl ☐ clear to auscultation ☐ percussion nl ☐ palpation of chest nl ☑ chest symmetry & expansion nl
ABNL/OTHER_____

CV: ☑ RRR, no murmurs, gallop or rub Pulses: ☐ carotid rl ☐ abd aorta nl ☐ femoral nl ☐ pedal nl ☐ no edema
ABNL/OTHER_____

GI: ☐ no tenderness/mass ☐ liver & spleen nl ☐ no hernias ☐ rectal, no mass ☐+BS's ☐ non-distended ☐ no rebounding/guarding
ABNL/OTHER_____

GU: ☐ scrotal contents nl ☐ penis nl ☐ prostate nl ☐ no CVA tenderness ☐ breast exam nl ☐ rectal exam nl
     ☐ ext genatalia & vaginal nl ☐ urethra nl ☐ bladder nl ☐ uterus nl ☐ adnexa nl
ABNL/OTHER_____

MUSC: ☑ Extremities nl __ALL__RUE__LUE__RLE__LLE__ ☐ back nl ___☐ pelvis & hips nl ☐ gait station nl ☐ digits nl
ABNL/OTHER_____

SKIN: ☑ inspection nl ☐ palpation nl ☐ well-hydrated ☐ wound healing w/o infection ☐ feet nl
ABNL/OTHER_____

NEURO: ☐ CN 11-XII intact ☐ DTR'S symmetric ☐ sensory intact ☐ motor strength nl ☐ SLR neg. ☐ coordination nl
ABNL/OTHER_____

PSYCH: ☐ judgment/insight nl ☐ oriented x 3 ☐ memory nl ☐ mood nl ☐ no delusions/hallucinations
ABNL/OTHER_____

LYMPH: Normal Nodes: ☐ cervical ☐ axillary ☐ inguinal
ABNL/OTHER_____

| DIAGNOSES: | PLAN: |
|---|---|
| 1. _Neck Pain_ | * Consult ɫ Neurosurgeon @ |
| 2. _Joint Pain_ | Kingsport |
| 3. | ✓ Rheumatologist Consult |
| 4. | Needs all labs to see if she if has had |
| 5. | an arthritis panel |

FOLLOW UP: ☑ PRN or Return _____ Signature _Pam Sheffield_ ARNP **375**

## Appalachian Regional Healthcare, Inc.
## Request for Consultation

History Unit No.: _4537_

To: _D. Wilson_  Date of Request: _10-14-0_  Time: _____
_1.423.246.793_ Notified: _____  Date & Time: _____

☐ Consult with recommendation only
☐ Consult with management & follow up
☐ Consult for transfer of services
STAT ____ Today ____ Next day ____

Regarding: _Please evaluate/treat for_
_joint pain. Thank you_
_Pain Sheffield ARN/_
_C. Wilkerson LMN_

| Date | Time | Consultation Report |
|------|------|---------------------|
|      |      | TRI-CITY MEDICAL CENTER |
|      |      | 18880 N. US 119 |
|      |      | CUMBERLAND, KY 40823 |
|      |      | 606-589-0130 |

Signature _____  _____

ARH FORM E-I-8 (Rev. 9/06)                    PAGE 1 OF 1

Lorena
Mallieux

## Appalachian Regional Healthcare, Inc.

## Request for Consultation

History Unit No: 46537

To: Dr. Smith    Date of Request: 10-14-08    Time: _____

1-423-246.8061 Notified: _____    Date & Time: _____

☐ Consult with recommendation only
☐ Consult with management & follow up
☐ Consult for transfer of services
STAT _____ Today _____ Next day _____

Regarding:
Please eval + treat for
neck pain. Thank you
Pam Griffield AGNP/
Childers LPN

| Date | Time | Consultation Report |
|------|------|---------------------|

TRI-CITY MEDICAL CENTER
18880 N. US 119
CUMBERLAND, KY 40823
606-589-0130

Faxed all records
10/14/08
Pt will call to apt
Childers cm

Signature _____

11/14/2008 17:19 FAX @016

Case: 7:16-cv-00193-JMH Doc #: 12-1 Filed: 12/09/16 Page: 382 of 435 - Page ID#: 452 **EXHIBIT NO. 8F**
11/10/2008 4:31 PM FROM: 423-246-8278 BRNCPC (606)589-4149 PAGE: 16 OF 30
**PAGE: 16 OF 30**



NEUROSURGEONS
**Ken W Smith, MD**
**Rebekah C Austin, MD**

PROFESSIONAL STAFF
**Monty L Vess, SAC**
**Melissa D Venoy, FNP**
**D Scott Steffey, FNP**
**Carla R Cheek, FNP**
**Melanie S Martino, FNP**
**Emile G Schmidt, Jr, PT**

**2 Sheridan Square**
**Suite 200**
**Kingsport, TN 37660**
Website: www.brncpc.com

Phone: **423-246-8061**
Or: **800-796-7934**
Fax: **423-246-8278**
E-Mail: information@brncpc.com

THIS DOCUMENT HAS NOT BEEN REVIEWED UNTIL SIGNED BY A PHYSICIAN.

| | | | |
|---|---|---|---|
| **PATIENT:** | **NAILLIEUX, LORENA** | **RECORD:** | **33811** |
| **ADDRESS:** | **85 BARLOW BRANCH** | **PHONE:** | **606/589-4149** |
| | **PARTRIDGE, KY 40862** | **INSURANCE:** | **TRIGON** |
| **DOB:** | **JULY 31, 1962** | **AGE:** | **46** |

**CONSULT REQUESTED BY:** **PAM SHEFFIELD FNP**
**PRIMARY CARE ATTENDING PHYSICIAN:** **PAM SHEFFIELD FNP**

November 6, 2008

**CHIEF COMPLAINT:**
Mrs. Lorena Naillieux was seen today in our office for an initial consult regarding cervical pain.

**HISTORY OF PRESENT ILLNESS:**
Mrs. Lorena Naillieux is a 46 year old, right-handed, Caucasian female, who reports a history of cervical pain. She reports a long-standing history of neck pain which worsened in June 2008. She got up one morning and thought she had a crick in her neck. She had cervical stiffness and pain along the left side of her neck into the top of the shoulder. She has neck pain all that time but it is tolerable. With any activity that requires her to use her arms repetitively over her head, she will experience and exacerbation of neck pain lasting approximately four days and feels like a burning sensation along the cervical region and the muscles in her upper back. She attributes some of her pain to the likelihood of arthritis. She has noticed knots on her fingers around the joints and has had joint pain in her hips and elbows and hands. She has diffuse joint stiffness. On occasion, she will experience an electrical jolt in both arms with certain movements of her neck and arms. The pain does not follow a specific pattern and is very abrupt in nature. Pain in her arms is intermittent. The majority of her pain is in the cervical region. Her pain does not limit her overall daily activity but she knows that if she increases her activity that she will pay for it over the following four days. Pain decreases with rest. Pain ranges from a 5 to a 10 out of 10. She denies bowel or bladder dysfunction and specific muscle group weakness.

Due to the worsening of her symptoms, she sought medical attention from her primary care provider. Cervical x-rays were ordered on June 12, 2008. She had a cervical MRI on July 3, 2008. She has been referred to Dr. Wason for evaluation for complaints of widespread joint pain and stiffness. She was referred to our office for cervical stenosis. She has not had physical therapy or received epidural steroid injections. She has not had any specific laboratory studies drawn evaluating for a specific type of arthritis.

**EMPLOYMENT HISTORY:**
She is unemployed a custodian and has applied for disability. Her date last worked was 2005.

**MEDICAL HISTORY:**
She has a history of hypercholesterolemia. She states that she has had a history of arthritis and depression.

**SURGICAL HISTORY:**
Her general surgical history includes cesarean section in 1986 and hysterectomy in 1994.

**378**

11/14/2008 17:19 FAX             ☑017

Case: 7:16-cv-00193-JMH   Doc #: 12-1   Filed: 12/09/16   Page: 383 of 435 - Page ID#: 458    **EXHIBIT NO. 8F**
                                                                             **PAGE: 17 OF 30**

Patient: NAILLIEUX, LORENA    MRNO: 33811    DOB: 07/31/1962  -  Continued

**FAMILY HISTORY:**
The patient's mother died at age 62, secondary to complications of COPD. She had a history of heart disease, hypertension, diabetes, stroke and skin cancer. The patient's father is living at age 66. He is in fair health. High blood pressure is present in her maternal grandparents. Heart disease is present in her maternal grandmother and brother. Stroke history includes her maternal grandmother. Seizures are present in her maternal family. Diabetes is noted in her maternal family. A history of lung cancer is present in her maternal grandfather. A history of stomach cancer is present in her maternal uncle.

**SOCIAL HISTORY:**
The patient is married with two children. She has completed one year of college. The patient does not smoke. She denies the use of alcoholic beverages. She denies other tobacco or drug use.

**THERAPY HISTORY:**
The patient has not undergone any prescription therapies. The patient has not undergone any structured physical therapy. She does not maintain any specific routine exercise program. The patient has not received any Botox, steroid, or trigger point injections.

**REVIEW OF SYSTEMS:**
Integumentary: The patient reports keratosis.
HEENT: The patient reports wearing reading glasses, denies hearing problems or ear pain, denies oral lesions, bleeding gums, or sore tongue, and denies sore throat.
Pulmonary: The patient reports a history of sleep apnea.
Cardiovascular: The patient denies a history of known heart murmur, angina, symptoms of claudication, or orthopnea.
GI: The patient reports regular bowel movements.
GU: The patient denies hematuria, dysuria, frequency, or history of renal calculi.
Musculoskeletal: The patient reports chronic neck pain, joint pain and joint stiffness.
Verbal Numeric Analog Pain Scale: On the initial office visit, the patient's pain rated 5 out of 10.
Neurological: The patient reports history of skull fracture from motorcycle and mild difficulty with word finding since accident.
Endocrine: There is no history of goiter, polyphagia, polydipsia, or polyuria.
Psychiatric: The patient reports depression currently treated.

**RELATED SYSTEMS EXAMINATION:**
Constitutional: Blood pressure 114/78, pulse 72, temperature 98.4 degrees, weight 189.40 lbs, height 60".

General Appearance: The patient is an alert and cooperative female who appears in no acute distress.

Cardiovascular: Radial and pedal pulses are palpable bilaterally. There is no edema of the lower extremities.

Lymphatic: There is no evidence of cervical or supraclavicular lymphadenopathy.

**ADDITIONALLY EXAMINED AREAS:**
Chest: Clear to auscultation with symmetrical expansion.

**MUSCULOSKELETAL EXAMINATION:**
Gait: Gait is nonantalgic.

Inspection and Palpation: Examination of the head and neck revealed mild cervical paraspinous muscle contractions bilaterally. No misalignment, asymmetry, crepitation, tenderness, masses, deformities, or effusions were noted in the spine, ribs and pelvis, right upper extremity, left upper extremity, right lower extremity, and left lower extremity.

Range of Motion: There is no limitation of motion of the head, neck, right upper extremity, left upper extremity, right lower extremity and left lower extremity. Straight leg raise was negative bilaterally.

Stability: There is no evidence of dislocation or ligamentous laxity in the right upper extremity, left upper extremity, right lower extremity and left lower extremity.

**379**

11/14/2008 17:20 FAX                                                                                    ☑018

Case: 7:16-cv-00193-JMH  Doc #: 12-1  Filed: 12/09/16  Page: 384 of 435 - PageID #: 454 **EXHIBIT NO. 8F**
11/10/2008 4:31 PM  FROM: 423-246-8278-BFNCFC  TO: +1 (606) 589-6138  PAGE: 304 OF 009  **PAGE: 18 OF 30**

Patient: NAILLIEUX, LORENA   MRNO: 33811   DOB: 07/31/1962  -  Continued
Muscle Strength and Tone: Strength is 5+, tone is normal, and no atrophy was noted in the head, neck, spine, ribs and pelvis, right upper extremity, left upper extremity, right lower extremity and left lower extremity.

Skin: There is no evidence of rash, lesions, cafe-au-lait spots, or ulcers on the head, neck, trunk, right upper extremity, left upper extremity, right lower extremity and left lower extremity.

## NEUROLOGICAL EXAMINATION:
Coordination: finger-to-nose testing is performed without difficulty and rapid alternating hand movements performed without difficulty.

Sensation: Intact to light touch and pinprick in the upper and lower extremities.

Deep Tendon Reflexes: Biceps 2+/2+, triceps trace / trace, brachioradialis trace / trace, knee jerks 2++ / 2++, ankle jerks 2+/2+. There is no Clonus. Babinski Testing: Resulted in flexion of the toes. Hoffman's is positive subtle bilaterally.

Mental Status
Orientation: The patient is oriented to person, place, and time.
Mood and Affect: Appropriate for age and situation.

## MEDICAL DECISION MAKING:
Personal Review of Radiographic Studies with Interpretation: MRI of the cervical spine without contrast performed at Appalachian Regional Hospital in Harlan, Kentucky on 07/08/2008 was reviewed via disk based DICOM imaging, revealing central disc herniation at C5-6 with associated osteophyte resulting in central stenosis and flattening of the anterior margin of the spinal cord. Vertebral bodies are normal in height and alignment.

Plain films of the cervical spine series performed at Appalachian Regional Hospital in Cumberland, Kentucky on 06/12/2008 were reviewed via disk based DICOM imaging revealing degenerative disc disease at C5-6 with bilateral foraminal narrowing at C5-6, severe on the left secondary to bony spurs from the uncovertebral joints.
Medical Data Review: Medical records from Pam Sheffield FNP were reviewed.

Diagnosis:
1) Cervical spondylosis; without myelopathy  (721.0), C5-6.
2) Cervical HNP; without myelopathy  (722.0), C5-6.
3) Cervical stenosis  (723.0), C5-6, with questionable Lhermitte's phenomenon without physical exam findings of myelopathy.
4) Neck pain  (723.1) arthritic and musculoskeletal in nature.
5) Arthralgia; multiple sites  (719.49).

Impression and Treatment Options: The findings and various treatment options were discussed with the patient, including continued observation and conservative treatment versus surgical intervention. We need to proceed with a cervical myelogram with flexion and extension since she is having the electrical sensations in her arms with head movement. The spinal cord could be buckling with flexion and extension causing abrupt electrical sensations in the arms. She may need anterior cervical discectomy at C5-6 with fusion versus artificial disc placement. Before considering physical therapy, we need to obtain studies that will give us a clearer picture regarding the bony changes and the degree of stenosis with cervical flexion and extension. She has two components with one being arthritis causing some of the pain and musculoskeletal irritation of the trapezial and paracervical muscles. I think it is a good idea to be evaluated by a physician who treats arthritic symptoms. I recommend keeping the appointment with Dr. Wason which was set up by Pam Sheffield, FNP. Since she has not had any specific laboratory studies and we need to obtain laboratory studies prior to the myelogram, I will go ahead in order some of the basic studies so that will be available for review after the myelogram and at her appointment with Dr. Wason. She understands the treatment plan in which is to proceed with recommendations. We will discuss additional treatment options at follow-up appointment.

Risks: We discussed the possibility that the patient may continue to have some degree of pain, weakness, or numbness regardless of treatment option selected. We also discussed the possibility that a surgically amenable lesion may not be identified.

The risks of invasive radiologic procedures including, but not limited to, bleeding with epidural hematoma, infection or
**380**

Patient: NAILLIEUX, LORENA   MRNO: 33811   DOB: 07/31/1962  -  Continued

stroke that would require additional treatment and hospitalization, spinal fluid leak resulting in headache and possibly requiring a blood patch procedure, the potential risk of an allergic reaction to contrast requiring emergency treatment, and the possible need for more than one puncture have been discussed with the patient, idiosyncratic reactions to medications or procedures, and the risks of anesthesia and death. It was noted that the radiologist who performs the procedure is ultimately responsible for fully explaining the risks of the procedure and this brief outline is provided as a courtesy to the patient only. The patient acknowledges understanding to physician and staff and that they should address further questions to the radiologist performing the procedure.

Diagnostic Testing: The patient has agreed to undergo a cervical myelogram and postmyelographic CT scan with flexion and extension at Wellmont Holston Valley Hospital on 11/19/08. The patient will have ANA, B12 / Folate, CBC w/Diff, CMP, HLA-B27 Antigen, RF, Sed Rate, T3, T4 and TSH drawn. The patient was instructed to discontinue Bupropion XL 300 mg 24 hr Tab, Diclofenac Sodium 75 mg Tab and Ibuprofen 800 mg Tab on 11/17/08, prior to her radiographic procedure(s). The patient was instructed to restart Bupropion XL 300 mg 24 hr Tab, Diclofenac Sodium 75 mg Tab and Ibuprofen 800 mg Tab on 11/21/08, after her radiographic procedure(s). The following post-myelogram medication(s) were ordered: (Vistaril 25 mg and Lortab 10 mg).

Therapeutic: Additional therapeutic recommendations will be made following completion and review of the above named studies.

Activity Status: The patient cannot return to work at this time.

Follow-Up: A return appointment has been scheduled for 12/01/2008 @ 09:45 AM to review above ordered studies.

~

Ken W. Smith M.D.
Blue Ridge Neuroscience Center

CRC/KWS/crc

cc:      Pam Sheffield FNP

**ARH**

*The Medical Centers of the Mountains*

Coll 9/15/08 4:25p

Sheffield

# R E S U L T S

```
DATE:09/15/2008                                        TIME:16:32
ID   :   46537
SEQ.#    :     14
STARTUP PASSED

WBC :    3.3    10³/mm³          MCV :     90     fm³
RBC :    4.34   10⁶/mm³          MCH :   30.4     pg
HGB :   13.2    g/dl             MCHC:   33.9     g/dl
HCT :   38.9    %                RDW :   11.6     %
PLT :    178    10³/mm³          MPV :    7.7     fm³

DIFF :
%LYM:   15.9    %                #LYM:    0.5     10³/mm³
%MON:    7.8    %                #MON:    0.2     10³/mm³
%GRA:   76.3    %                #GRA:    2.6     10³/mm³
```

9/15/08 βS

☐BC ☐WM ☐MCD ☐HR ☐HZ ☐MD ☐WH ☐MCO      ☐ _____ CLINIC

APPALACHIAN REGIONAL HEALTHCARE

| | | | | |
|---|---|---|---|---|
| Date and Time Ordered | Ordered By *Sheffield* | | ☐ER | Room No |
| Date and Time Collected 9/15/08 2:56 | Collected By | TYPE COLLECTION ☐ Routine ☐ Cath ☐ Clean Voided | ☐OPD ☐CLINIC ☐ Collect Stat ☐ Do Stat ☐ Preop | |
| Condition of Specimen | | | | |
| ☐ Complete Urinalysis | Provisional Diagnosis | | ☐ Special Handling ☐ Hold for Culture | |

**URINALYSIS**

| TEST | | | | | | NORMALS | ☐ MICROSCOPIC EXAM | | | | TEST | RESULT | NORMALS | HVU | Charge |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ☐ Color and Characteristics | clear | | | | | Yellow to Straw Clear to Hazy | COMPONENT | RESULT | NORMALS | | ☐ Urobilinogen | Norm | 0-1-1 Ehrich Units | | |
| ☐ Specific Gravity | 1.010 | | | | | | ☐ WBC | | 2-3 / hpf | | ☐ Nitrite | neg | Negative | Date and Time Received | |
| ☐ PH | 8.0 | | | | | | ☐ RBC | | 0-3 / hpf | | | | | | |
| ☐ Lab will check appropriate column | ½ | s | 1s | 2s | 3s | 4s | CASTS | | occ hyaline per ipf | | | | | Lab ID Number | |
| ☐ Protein | | ✓ | | | | | Negative | | | | | | | | |
| ☐ Glucose (Qual) | | ✓ | | | | | Negative | BACTERIA | | N/A | ☐ | | | Examiner | |
| ☐ Glucose (Semi-Quan) | | ✓ | | | | | Negative | Epith Cells | | N/A | Pregnancy Test | | N/A | Date and Time Reported | |
| ☐ Acetone | | ✓ | | | | | Negative | CRYSTALS | | N/A | ☐ Titer | | | 9/15/08 | 4:39 |
| ☐ Bile | | ✓ | | | | | Negative | | | | ☐ Protein | | Negative | | |
| ☐ Blood | | ✓ | | | | | Negative | | | | | | | | |

ARH FORM E-1-159 (Rev 2/01)

9/15/08 f55

# Harlan ARH Hospital
### 81 Ball Park Road  •  Harlan, KY 40831
### Phone: 606-573-8100

Patient Name:   NAILLIEUX, LORENA
Patient ID:   J000221013
Ordering MD:   SHEFFIELD, PAMELA J (

Location:   J* CUMBERLAND VAL.PCC
Date of Birth: 07/31/1962
Encounter #   J0826300159

## MICROBIOLOGY RESULTS

**CULT NOSE/THROAT**          *Collected: 09/19/2008 07:00*          *Accn: BM091908171*
   *Specimen:   OTHER-SPECIFY*
   *Source:   throat*
   *Inoculated: 09/21/2008 02:40*
CR  (Final)
     Light Growth normal throat flora

Performed at ARH REFERENCE LABORATORY

9/26/08
JSB

Patient Name:   NAILLIEUX, LORENA
Patient ID:   J000221013
Encounter #:   J0826300159
*Out Patient Clinic Report*

Medical Director: Nandkumar Bathija, MD
Reported: 09/22/2008 23:43
Page:   1 of 1
*This copy to: J* CUMBERLAND VAL.P*  **384**

## Appalachian Regional Healthcare, Inc.

# Request for X-Ray Examination

# 46337

| Patient's Name | (Last) | (First) | (Middle) | Sex | Age | Race |
|---|---|---|---|---|---|---|

| Ward No. | Ambulatory | Wheelchair | Stretcher | Bedside |
|---|---|---|---|---|

| Hospital No. | Address (if APC) |
|---|---|

| Date of Request: 6/13/08 | Height (if for chest) | Weight (if for chest) |
|---|---|---|

**Examination Desired:**

**Relevant Clinical History and Working Diagnosis:**

| This space for technician's use | Ordered By: |
|---|---|
| | Attending Physician |
| 8x10  10x12  11x14  14x17  Misc. | X-Ray File Number |
| | |
| Report of Radiologist | Date of Report |

1 800-676-3083

_____, M.D.
Radiologist

The Radiologist will be pleased to confer with the attending physician with respect to all cases referred to this department. Prepare requests in duplicate. The original will be returned to the chart.

**BOTH SIDES OF THIS SHEET MAY BE USED**

ARH FORM E-I-13 (Rev. 6/06)                                    PAGE 1 OF 1

Tri-City Medical Center
18880 U.S. Highway 119 North
Cumberland, KY 40823

Radiology Report

Patient Name:            NAILLIEUX, LORENA
Encounter Number:      0000046537
Attending Physician:   Sheffield, Pamela
Alternate Physician:
Location:              TH
Date of Exam:         06/10/2008
Dictation Date:       06/12/2008
Dictation Time:       12:03 PM
Job Number:          1783189
History Unit Number:    046537
DOB:                07/31/1962
Payer:              Blue Cross/Blue Shield
Clinical History:      Pain in neck
Transcription Date/Time: 6/12/2008 @ 1:35 PM
Transcriptionist:      kf

COMPLETE CERVICAL SPINE SERIES:
AP, lateral and both oblique views of the cervical spine
were obtained. The vertebral bodies are normal in height
and alignment. Narrowing of the C5-C6 disk interspace is
accompanied by anterior and posterior marginal
osteophytosis. There is also mild encroachment of the
neural foramina bilaterally at C5-C6 and is secondary to
bony spurs arising from the uncovertebral joints of
Luschka. Encroachment is more severe on the left side
compared to the right. The rest of the disk spaces are
well maintained. No prevertebral soft tissue swelling is
seen.

IMPRESSION
1.   Signs of degenerative disk disease involving C5-
    C6 disk interspace are seen.
2.   Encroachment of the neural foramina is seen
    bilaterally at C5-C6, more severe on the left
    compared to the right and is secondary to bony
    spurs arising from the uncovertebral joints of
    Luschka.

Gregory Tiu, MD
Radiologist

Tri-City Medical Center
18880 U.S. Highway 119 North
Cumberland, KY 40823

## Radiology Report

Patient Name:                    NAILLIEUX, LORENA
Encounter Number:                0000046537
Attending Physician:             Sheffield, Pamela
Alternate Physician:
Location:                        TH
Date of Exam:                    06/10/2008
Dictation Date:                  06/12/2008
Dictation Time:                  12:03 PM
Job Number:                      1783189
History Unit Number:             046537
DOB:                             07/31/1962
Payer:                           Blue Cross/Blue Shield
Clinical History:                Pain in neck
Transcription Date/Time: 6/12/2008 @ 1:35 PM
Transcriptionist:                kf


COMPLETE CERVICAL SPINE SERIES:
AP, lateral and both oblique views of the cervical spine
were obtained.  The vertebral bodies are normal in height
and alignment.  Narrowing of the C5-C6 disk interspace is
accompanied by anterior and posterior marginal
osteophytosis.  There is also mild encroachment of the
neural foramina bilaterally at C5-C6 and is secondary to
bony spurs arising from the uncovertebral joints of
Luschka.  Encroachment is more severe on the left side
compared to the right.  The rest of the disk spaces are
well maintained.  No prevertebral soft tissue swelling is
seen.

IMPRESSION
  1.   Signs of degenerative disk disease involving C5-C6
       disk interspace are seen.
  2.   Encroachment of the neural foramina is seen
       bilaterally at C5-C6, more severe on the left
       compared to the right and is secondary to bony
       spurs arising from the uncovertebral joints of
       Luschka.


Gregory Tiu, MD                                    6/14/08 pst
Radiologist

Appalachian Regional Healthcare Harlan
Ball Park Road
Harlan, Kentucky 40831

RADIOLOGY REPORT

PT NAME:  NAILLIEUX,LORENA                45Y F    MR#: 000221013

DOB: 07/31/62                   LOC: *JOP        ACCT #: 0818500145

REL DATE:07/08/08 1510          CI DATE:  07/03/08 1439

SHEFFIELD,PAMELA J                                    (606)848-5451
                              HARLAN, KY  40831

Chk-in #    Order    Exam
2433938     0001     30040    MR C-SPINE W/O CONTRST
                              Ord Diag: 723.1-CERVICALGIA


MRI OF THE CERVICAL SPINE WITHOUT CONTRAST:

Technique:
MR imaging of the cervical spine was carried out through the
use of GE Signa 1.5 Tesla system.  Using spin echo
technique, sagittal images of the cervical spine were
obtained using spin echo T1, fast spin echo T2 and gradient
echo T1 weighted imaging.  Axial images of the cervical
spine were then obtained using gradient echo imaging.

Findings:
Vertebral bodies are normal in height and alignment.
Presence of a moderate size left paracentral cervical disk
herniation is identified compressing the adjacent thecal sac
and the cervical cord.  No other abnormal extradural lesions
are seen.  Cervical cord itself is normal in caliber and
signal intensity.  There appears to be an accompanying bony
spur seen with the herniated nucleus pulposus.

This herniated nucleus pulposus and accompanying bony spur
is seen at the level of C5-6.

IMPRESSION
   1.  Moderate size left paracentral herniated nucleus
       pulposus is seen at the level of C5-6 with an accompanying
       bony spur.  This extradural lesion is also seen compressing
       the adjacent thecal sac and the cervical cord.

FINAL

7/22/08 pss

Appalachian Regional Healthcare Harlan
Ball Park Road
Harlan, Kentucky 40831

RADIOLOGY REPORT

PT NAME:  NAILLIEUX,LORENA          45Y F    MR#: 000221013

DOB: 07/31/62              LOC: *JOP          ACCT #: 0818500145

REL DATE:07/08/08 1510     CI DATE:  07/03/08 1459

SHEFFIELD,PAMELA J                              (606)848-5451
                          HARLAN, KY  40831

Checkin-Exam Code Summary
2433938-30040


Job # 1814043  D: 7/7/08  3:29 pm

     Reading Radiologist- GREGORY Y TIU, M.D., Radiologist
     Releasing Radiologist- GREGORY Y TIU, M.D., Radiologist
     Released Date Time- 07/08/08 1510
     Transcriptionist- EULA GRAY MCHARGUE, Rad. Transcriptionist
------------------------------------------------------------------------

FINAL

APPALACHIAN REGIONAL HEALTHCARE, INC.
Tri-City Medical Center
18880 U.S. Highway 119 North
Cumberland, KY 40823

Radiology Report

Patient Name:                 NAILLIEUX, LORENA
Encounter Number:             0000046537
Attending Physician:          Sheffield, Pamela
Alternate Physician:
Location:                     TH
Date of Exam:                 8/19/2008
Dictation Date:               8/20/2008
Dictation Time:               14:49
Job Number:                   1874441
History Unit Number:          046537
DOB:                          7/31/62
Payer:
Clinical History:
Transcription Date/Time: 8/20/2008 @ 9:32 PM
Transcriptionist:            wm


COMPLETE LUMBAR SPINE SERIES:
AP, lateral and both oblique views of the lumbar spine
were obtained.  Vertebral bodies are normal in height and
alignment.   Mild narrowing of the L3-L4 disk interspace
is seen.    The rest of the disk spaces are well
maintained.  Pedicles are intact.  No defect in the pars
interarticularis was seen.

IMPRESSION:
Mild narrowing of the L3-L4 disk interspace is compatible
with degenerative disk disease.


Gregory Tiu, MD
Radiologist                        8/26/08
                                      pss

390

Appalachian Regional Healthcare Harlan
Ball Park Road
Harlan, Kentucky 40831

RADIOLOGY REPORT

PT NAME:  NAILLIEUX,LORENA                    46Y F    MR#: 000221013

DOB: 07/31/62                    LOC: JOP              ACCT #: 0829800044

REL DATE:10/24/08 1922          CI DATE:  10/24/08 0945

SHEFFIELD,PAMELA J                                     (606)848-5451
                                HARLAN, KY  40831

Chk-in #    Order    Exam
 2547417     0001     30010   MR LUMBAR SPINE W/O CONTRST
                             Ord Diag: 724.2-LUMBAGO


MRI OF THE LUMBAR SPINE WITHOUT CONTRAST:

Technique:
MR imaging of the lumbar spine was carried out with the use
of a GE Signa 1.5 Tesla system.  Sagittal images of the
lumbar spine were obtained using spin echo T1 FLAIR, fast
spin echo T2 and STIR (Short Tau Inversion Recovery)
imaging.  Axial T2 images of the lumbar spine were obtained
through the disc spaces of L3-L4, L4-L5 and L5-S1 disc
interspaces.

Findings:
Vertebral bodies are normal in height and alignment.  No
abnormal bone marrow signals are seen except for the
presence of a vertebral hemangioma identified at the L1
vertebral body.

Loss of normal disc signal intensity at the L3-L4 and L5-S1
disc interspaces are seen.  Mild diffuse bulging annulus at
the L3-L4 disc interspace was identified.  No other abnormal
extradural lesions are seen.  No spinal stenosis or
herniated nucleus pulposus was identified.

IMPRESSION
   1.   Signs of degenerative disc disease at L3-L4 and L5-S1
        disc interspaces are seen.
FINAL

10/31/08 pss

Appalachian Regional Healthcare Harlan
Ball Park Road
Harlan, Kentucky 40831

RADIOLOGY REPORT

PT NAME:  NAILLIEUX,LORENA          46Y F    MR#: 000221013

DOB: 07/31/62                LOC: JOP           ACCT #: 0829800044

REL DATE:10/24/08 1922      CI DATE:  10/24/08 0945

SHEFFIELD,PAMELA J                                  (606)848-5451
                              HARLAN, KY  40831

Checkin-Exam Code Summary
2547417-30010


2.   Mild diffuse bulging annulus seen at the L3-L4 disc
interspace.
3.   No signs of herniated nucleus pulposus or spinal
stenosis are seen.
4.   Presence of a small vertebral hemangioma is seen at the
level of L1.

ADDENDUM:  Presence also of a fat island is identified at
the level of S1.

Job # 1963501     D: 10/24/08 @ 1333

     Reading Radiologist- GREGORY Y TIU, M.D., Radiologist
     Releasing Radiologist- GREGORY Y TIU, M.D., Radiologist
     Released Date Time- 10/24/08 1922
     Transcriptionist- DAVID GILLIAM, Rad. Transcriptionist
------------------------------------------------------------------

FINAL

Form Approved
OMB No. 0960-0413

# PSYCHIATRIC REVIEW TECHNIQUE

| Name | SSN |
|---|---|
| NAILLIEUX, LORENA LYNN | 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 |
| NH (If different from above) | SSN  _ _ - _ _ - _ _ _ _ |

**I.** | **MEDICAL SUMMARY**

**A.** Assessment is from: _____ to _____ 11/20/2008 _____

**B. Medical Disposition(s):**

1. ☐ No Medically Determinable Impairment

2. ☒ Impairment(s) Not Severe

3. ☐ Impairment(s) Severe But Not Expected to Last 12 Months

4. ☐ Meets Listing _____ _____ _____ (Cite Listing)

5. ☐ Equals Listing _____ _____ _____ (Cite Listing)

6. ☐ RFC Assessment Necessary

7. ☐ Coexisting Nonmental Impairment(s) that Requires Referral to Another Medical Specialty

8. ☐ Insufficient Evidence

**C. Category(ies) Upon Which the Medical Disposition is Based:**

1. ☐ 12.02 Organic Mental Disorders

2. ☐ 12.03 Schizophrenic, Paranoid and Other Psychotic Disorders

3. ☒ 12.04 Affective Disorders

4. ☐ 12.05 Mental Retardation

5. ☐ 12.06 Anxiety-Related Disorders

6. ☐ 12.07 Somatoform Disorders

7. ☐ 12.08 Personality Disorders

8. ☐ 12.09 Substance Addiction Disorders

9. ☐ 12.10 Autism and Other Pervasive Developmental Disorders

☐ **These findings complete the medical portion of the disability determination.**

| MC/PC's Signature | Date |
|---|---|
| *Jay Athy Ph.D.* | 11/20/2008 |
| MC/PC's Printed Name | Code |
| Jay Athy Ph.D. | 38  **393** |

Form **SSA-2506-BK** (06-2001) Destroy Prior Editions   ef (6-2005)

| II. | DOCUMENTATION OF FACTORS THAT EVIDENCE THE DISORDER |
|---|---|

**A. 12.02 Organic Mental Disorders**

☐ Psychological or behavioral abnormalities associated with a dysfunction of the brain ... as evidenced by at least one of the following:

   1. ☐ Disorientation to time and place

   2. ☐ Memory impairment

   3. ☐ Perceptual or thinking disturbances

   4. ☐ Change in personality

   5. ☐ Disturbance in mood

   6. ☐ Emotional lability and impairment in impulse control

   7. ☐ Loss of measured intellectual ability of at least 15 IQ points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing, e.g., the Luria-Nebraska, Halstead-Reitan, etc.

☐ A medically determinable impairment is present that does not precisely satisfy the diagnostic criteria above.

Disorder _____

Pertinent symptoms, signs, and laboratory findings that substantiate the presence of this impairment:

☐ Insufficient evidence to substantiate the presence of the disorder (explain in Part IV, Consultant's Notes).

**394**

**B. 12.03 Schizophrenic, Paranoid and Other Psychotic Disorders**

☐ Psychotic features and deterioration that are persistent (continuous or intermittent), as evidenced by at least one of the following:

1. ☐ Delusions or hallucinations

2. ☐ Catatonic or other grossly disorganized behavior

3. ☐ Incoherence, loosening of associations, illogical thinking, or poverty of content of speech if associated with one of the following:

    a. ☐ Blunt affect, or

    b. ☐ Flat affect, or

    c. ☐ Inappropriate affect

4. ☐ Emotional withdrawal and/or isolation

☐ A medically determinable impairment is present that does not precisely satisfy the diagnostic criteria above.

Disorder _____

Pertinent symptoms, signs, and laboratory findings that substantiate the presence of this impairment:

☐ Insufficient evidence to substantiate the presence of the disorder (explain in Part IV, Consultant's Notes).

**395**

**C. 12.04 Affective Disorders**

☐ Disturbance of mood, accompanied by a full or partial manic or depressive syndrome, as evidenced by at least one of the following:

1. ☐ Depressive syndrome characterized by at least four of the following:

    a. ☐ Anhedonia or pervasive loss of interest in almost all activities, or

    b. ☐ Appetite disturbance with change in weight, or

    c. ☐ Sleep disturbance, or

    d. ☐ Psychomotor agitation or retardation, or

    e. ☐ Decreased energy, or

    f. ☐ Feelings of guilt or worthlessness, or

    g. ☐ Difficulty concentrating or thinking, or

    h. ☐ Thoughts of suicide, or

    i. ☐ Hallucinations, delusions or paranoid thinking

2. ☐ Manic syndrome characterized by at least three of the following:

    a. ☐ Hyperactivity, or

    b. ☐ Pressures of speech, or

    c. ☐ Flight of ideas, or

    d. ☐ Inflated self-esteem, or

    e. ☐ Decreased need for sleep, or

    f. ☐ Easy distractibility, or

    g. ☐ Involvement in activities that have a high probability of painful consequences which are not recognized, or

    h. ☐ Hallucinations, delusions or paranoid thinking

3. ☐ Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes)

☒ A medically determinable impairment is present that does not precisely satisfy the diagnostic criteria above

Disorder   NOS

Pertinent symptoms, signs, and laboratory findings that substantiate the presence of this impairment (explain in Part IV, Consultant's Notes, if necessary):

☐ Insufficient evidence to substantiate the presence of the disorder (explain in Part IV, Consultant's Notes)

**396**

**D. 12.05 Mental Retardation**

☐ Significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22, with one of the following:

1. ☐ Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow instructions such that the use of standardized measures of intellectual functioning is precluded*

2. ☐ A valid verbal, performance, or full scale IQ of 59 or less*

3. ☐ A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function*

4. ☐ A valid verbal, performance, or full scale IQ of 60 through 70*

☐ A medically determinable impairment is present that does not precisely satisfy the diagnostic criteria above.

Disorder _____

Pertinent symptoms, signs, and laboratory findings that substantiate the presence of this impairment:

*NOTE: Items 1, 2, 3, and 4 correspond to listings 12.05A, 12.05B, 12.05C, and 12.05D, respectively.

☐ Insufficient evidence to substantiate the presence of the disorder (explain in Part IV, Consultant's Notes).

**397**

**E. 12.06 Anxiety-Related Disorders**

☐ Anxiety as the predominant disturbance or anxiety experienced in the attempt to master symptoms, as evidenced by at least one of the following:

1. ☐ Generalized persistent anxiety accompanied by three of the following:

   a. ☐ Motor tension, or

   b. ☐ Autonomic hyperactivity, or

   c. ☐ Apprehensive expectation,

   d. ☐ Vigilance and scanning

2. ☐ A persistent irrational fear of a specific object, activity or situation which results in a compelling desire to avoid the dreaded object, activity, or situation

3. ☐ Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average of at least once a week

4. ☐ Recurrent obsessions or compulsions which are a source of marked distress

5. ☐ Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress

☐ A medically determinable impairment is present that does not precisely satisfy the diagnostic criteria above.

Disorder _____

Pertinent symptoms, signs, and laboratory findings that substantiate the presence of this impairment:

☐ Insufficient evidence to substantiate the presence of the disorder (explain in Part IV, Consultant's Notes).

**398**

**F. 12.07 Somatoform Disorders**

☐ Physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms, as evidenced by at least one of the following:

1. ☐ A history of multiple physical symptoms of several years duration beginning before age 30, that have caused the individual to take medicine frequently, see a physician often and alter life patterns significantly

2. ☐ Persistent nonorganic disturbance of one of the following:

    a. ☐ Vision, or

    b. ☐ Speech, or

    c. ☐ Hearing, or

    d. ☐ Use of a limb, or

    e. ☐ Movement and its control (e.g., coordination disturbances, psychogenic seizures, akinesia, dyskinesia), or

    f. ☐ Sensation (e.g., diminished or heightened)

3. ☐ Unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury

☐ A medically determinable impairment is present that does not precisely satisfy the diagnostic criteria above.

Disorder _____

Pertinent symptoms, signs, and laboratory findings that substantiate the presence of this impairment:

☐ Insufficient evidence to substantiate the presence of the disorder (explain in Part IV, Consultant's Notes).

**399**

**G. 12.08 Personality Disorders**

☐ Inflexible and maladaptive personality traits which cause either significant impairment in social or occupational functioning or subjective distress, as evidenced by at least one of the following:

1. ☐ Seclusiveness or autistic thinking

2. ☐ Pathologically inappropriate suspiciousness or hostility

3. ☐ Oddities of thought, perception, speech and behavior

4. ☐ Persistent disturbances of mood or affect

5. ☐ Pathological dependence, passivity, or aggressivity

6. ☐ Intense and unstable interpersonal relationships and impulsive and damaging behavior

☐ A medically determinable impairment is present that does not precisely satisfy the diagnostic criteria above.

Disorder _____

Pertinent symptoms, signs, and laboratory findings that substantiate the presence of this impairment:

☐ Insufficient evidence to substantiate the presence of the disorder (explain in Part IV, Consultant's Notes).

**400**

**H. 12.09 Substance Addiction Disorders**

☐ Behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system.

If present, evaluate under one or more of the most closely applicable listings:

1. ☐ Listing 12.02-Organic mental disorders*

2. ☐ Listing 12.04-Affective disorders*

3. ☐ Listing 12.06-Anxiety-related disorders*

4. ☐ Listing 12.08-Personality disorders*

5. ☐ Listing 11.14-Peripheral neuropathies*

6. ☐ Listing 5.05-Liver damage*

7. ☐ Listing 5.04-Gastritis*

8. ☐ Listing 5.08-Pancreatitis*

9. ☐ Listing 11.02 or 11.03-Seizures*

☐ A medically determinable impairment is present that does not precisely satisfy the diagnostic criteria above.

Disorder _____

Pertinent symptoms, signs, and laboratory findings that substantiate the presence of this impairment:

☐ Insufficient evidence to substantiate the presence of the disorder (explain in Part IV, Consultant's Notes).

*NOTE: Items 1,2,3,4,5,6,7,8, and 9 correspond to listings 12.09A, 12.09B, 12.09C, 12.09D, 12.09E, 12.09F, 12.09G, 12.09H, and 12.09I, respectively.  If items 1, 2, 3, or 4 are checked, only the numbered items in subsections IIA, IIC, IIE, or IIG of the form need be checked.  The first block under the disorder heading in those subsections should not be checked, unless the evidence substantiates the presence of the disorder separate from the substance addiction disorder.

**401**

**I.  12.10 Autistic Disorder and Other Pervasive Developmental Disorders**

☐ Qualitative deficits in the development of reciprocal social interaction, in the development of verbal and nonverbal communication skills, and in imaginative activity. Often there is a markedly restricted repertoire of activities and interests, which frequently are stereotyped and repetitive.

    1. ☐ Autistic disorder, with medically documented findings of all of the following:

        a. ☐ Qualitative deficits in reciprocal social interaction

        b. ☐ Qualitative deficits in verbal and nonverbal communication and in imaginative activity

        c. ☐ Markedly restricted repertoire of activities and interests

    2. ☐ Other pervasive developmental disorders, with medically documented findings of both of the following:

        a. ☐ Qualitative deficits in reciprocal social interaction

        b. ☐ Qualitative deficits in verbal and nonverbal communication and in imaginative activity

☐ A medically determinable impairment is present that does not precisely satisfy the diagnostic criteria above.

Disorder _____

Pertinent symptoms, signs, and laboratory findings that substantiate the presence of this impairment:

☐ Insufficient evidence to substantiate the presence of the disorder (explain in Part IV, Consultant's Notes).

**402**

**III.**   **RATING OF FUNCTIONAL LIMITATIONS**

**A.  "B" Criteria of the Listings**

Indicate to what degree the following functional limitations (which are found in paragraph B of listings 12.02-12.04, 12.06-12.08 and 12.10 and paragraph D of 12.05) exist as a result of the individual's mental disorder(s).

NOTE:   Item 4 below is more than a measure of frequency and duration. See 12.00C4 and also read carefully the instructions for this section.

Specify the listing(s) (i.e., 12.02 through 12.10) under which the items below are being rated _____
12.04

| FUNCTIONAL LIMITATION | DEGREE OF LIMITATION | | | | | |
|---|---|---|---|---|---|---|
| | None | Mild | Moderate | Marked* | Extreme* | Insufficient Evidence |
| 1.  Restriction of Activities of Daily Living | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| | None | Mild | Moderate | Marked* | Extreme* | Insufficient Evidence |
| 2.  Difficulties in Maintaining Social Functioning | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| | None | Mild | Moderate | Marked* | Extreme* | Insufficient Evidence |
| 3.  Difficulties in Maintaining Concentration, Persistence, or Pace | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |
| | None | One or Two | Three* | Four* or More | | Insufficient Evidence |
| 4.  Episodes of Decompensation, Each of Extended Duration | ☒ | ☐ | ☐ | ☐ | | ☐ |

*Degree of limitation that satisfies the functional criterion.

**403**

**B. "C" Criteria of the Listings**

1. Complete this section if 12.02 (Organic Mental), 12.03 (Schizophrenic, etc.), or 12.04 (Affective) applies and the requirements in paragraph B of the appropriate listing are not satisfied.

NOTE:   Item 1 below is more than a measure of frequency and duration. See 12.00C4 and also read carefully the instructions for this section.

☐ Medically documented history of a chronic organic mental (12.02), schizophrenic, etc. (12.03), or affective (12.04) disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do any basic work activity, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

   1. ☐ Repeated episodes of decompensation, each of extended duration

   2. ☐ A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate

   3. ☐ Current history of 1 or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement.

☒ Evidence does not establish the presence of the "C" criteria

☐ Insufficient evidence to establish the presence of the "C" criteria (explain in Part IV, Consultant's Notes).

2. Complete this section if 12.06 (Anxiety-Related) applies and the requirements in paragraph B of listing 12.06 are not satisfied.

☐ Complete inability to function independently outside the area of one's home

☐ Evidence does not establish the presence of the "C" criterion

☐ Insufficient evidence to establish the presence of the "C" criterion (explain in Part IV, Consultant's Notes).

**404**

**IV.** CONSULTANT'S NOTES
RECON PRTF AFFIRMS INITIAL LEVEL NON SEVERE PRTF.

Recon mer from ARH Tri City Med Ctr has been reviewed but does not further
reduce/alter initial level prtf which is affirmed.

Please see initial level prtf.

There are no addt medical opin to be add at recon level.

There are no addt sx/limitations from cl to be add at recon level.

Therefore either singularly or in combination, these impairments do not
significanlty limit cl's ability to perform work related activities from a mental
standpoint.  No severe mental impariments exist.

SDM COMPLETED RECON PRTF BUT MENTAL MCS WILL BE SIGNING FORM.

**405**

Section 223 and section 1633 of the Social Security Act authorize the information requested on this form. The information provided will be used in making a decision on this claim. Completion of this form is mandatory in disability claims involving mental impairments. Failure to complete this form may result in a delay in processing the claim. Information furnished on this form may be disclosed by the Social Security Administration to another person or governmental agency only with respect to Social Security programs and to comply with federal laws requiring the exchange of information between Social Security and another agency.

We may also use the information you give us when we match records by computer. Matching programs compare our records with those of other Federal, State, or local government agencies. Many agencies may use matching programs to find or prove that a person qualifies for benefits paid by the Federal government. The law allows us to do this even if you do not agree to it.

Explanations about these and other reasons why information about you may be used or given out are available in Social Security offices. If you want to learn more about this, contact any Social Security office.

**Paperwork Reduction Act Statement** - This information collection meets the requirements of 44 U. S.C. § 3507, as amended by Section 2 of the Paperwork Reduction Act of 1995.  You do not need to answer these questions unless we display a valid Office of Management and Budget control number. We estimate that it will take about 15 minutes to read the instructions, gather the facts, and answer the questions. **SEND OR BRING THE COMPLETED FORM TO YOUR LOCALSOCIALSECURITY OFFICE. To find the nearest office, call 1-800-772-1213.** *Send only comments on our time estimate above to*: *SSA, 6401 Security Boulevard, Baltimore, MD 21235-6401.*

**406**

**EXHIBIT NO: 10F**
OMB NO. 0960-0431
**PAGE: 1 OF 8**

## PHYSICAL RESIDUAL FUNCTIONAL CAPACITY ASSESSMENT

| CLAIMANT: | SOCIAL SECURITY NUMBER: |
|---|---|
| NAILLIEUX, LORENA LYNN | |
| NUMBERHOLDER (IF CDB OR DWB CLAIM): | **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** |

| PRIMARY DIAGNOSIS: | RFC ASSESSMENT IS FOR: |
|---|---|
| DDD C5-C6 | ☒ Current Evaluation    ☐ Date<br>12 Months After Onset: |
| SECONDARY DIAGNOSIS: | ☐ Date Last |
| ARTHRALGIAS | Insured: _____ (Date)    _____ (Date) |
| OTHER ALLEGED IMPAIRMENTS:<br>ARTH, STOMACH, SINUS, LIVER ENZYMES APNE | ☐ Other (Specify): _____ |

**PRIVACY ACT NOTICE:** The information requested on this form is authorized by Section 223 and Section 1633 of the Social Security Act. The information provided will be used in making a decision on this claim. Failure to complete this form may result in a delay in processing the claim. Information furnished on this form may be disclosed by the Social Security Administration to another person or governmental agency only with respect to Social Security programs and to comply with Federal laws requiring the exchange of information between Social Security and other agencies.

**PAPERWORK REDUCTION ACT:** This information collection meets the requirements of 44 U.S.C. § 3507, as amended by Section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget control number. We estimate that it will take about 20 minutes to read the instructions, gather the facts, and answer the questions. *You may send comments on our time estimate above to:* SSA, 6401 Security Blvd., Baltimore, MD 21235-6401. Send only comments relating to our time estimate to this address, not the completed form.

## I. LIMITATIONS:

### For Each Section A - F

 Base your conclusions on **all evidence** in file (clinical and laboratory findings; symptoms; observations, lay evidence; reports of daily activities; etc.).

 Check the blocks which reflect your **reasoned judgment**.

 Describe how the **evidence substantiates your conclusions** (Cite specific clinical and laboratory findings, observations, lay evidence, etc.).

 Ensure that you have:

- Requested appropriate medical source statements regarding the individual's capacities (DI 22505.000ff. and DI 22510.000ff.) and that you have given appropriate **weight to treating source conclusions** (See Section III.).

- Considered and responded to **any alleged limitations imposed by symptoms** (pain, fatigue, etc.) attributable, in your judgment, to a medically determinable impairment. Discuss your assessment of symptom-related limitations in the explanation for your conclusions in A - F below (See also Section II.).

- Responded to all allegations of physical limitations or factors which can cause physical limitations.

 **Frequently** means occurring one-third to two-thirds of an 8-hour workday (cumulative, not continuous). **Occasionally** means occurring from very little up to one-third of an 8-hour workday (cumulative, not continuous).

Continued on Page 2

**407**

Form **SSA-4734-BK** (08-2008)   ef (08-2008)                     Page 1
(Formerly **SSA-4734-U8** Use prior editions)

## A. EXERTIONAL LIMITATIONS

☐ None established. (Proceed to section B.)

1. **Occasionally** lift and/or carry (including upward pulling)
   (maximum) - when less than one-third of the time or less than 10 pounds, explain the amount (time/pounds) in item 6.

   ☐ less than 10 pounds

   ☐ 10 pounds

   ☐ 20 pounds

   ☒ 50 pounds

   ☐ 100 pounds or more

2. **Frequently** lift and/or carry (including upward pulling)
   (maximum) - when less than two-thirds of the time or less than 10 pounds, explain the amount (time/pounds) in item 6.

   ☐ less than 10 pounds

   ☐ 10 pounds

   ☒ 25 pounds

   ☐ 50 pounds or more

3. Stand and/or walk (with normal breaks) for a total of -

   ☐ less than 2 hours in an 8-hour workday

   ☐ at least 2 hours in an 8-hour workday

   ☒ about 6 hours in an 8-hour workday

   ☐ medically required hand-held assistive device is necessary for ambulation

4. Sit (with normal breaks) for a total of -

   ☐ less than about 6 hours in an 8-hour workday

   ☒ about 6 hours in an 8-hour workday

   ☐ must periodically alternate sitting and standing to relieve pain or discomfort. (If checked, explain in 6.)

5. Push and/or pull (including operation of hand and/or foot controls) -

   ☒ unlimited, other than as shown for lift and/or carry

   ☐ limited in upper extremities (describe nature and degree)

   ☐ limited in lower extremities (describe nature and degree)

6. Explain how and why the evidence supports your conclusions in item 1 through 5.
   Cite the specific facts upon which your conclusions are based.
   *RECON RFC DOES NOT AFFIRM INITIAL LEVEL NON SEVERE 416
   East KY Ears Nose & Throat Spec mer from initial level shows; tx for sleep apnea,
   neck pain, sinus problems, sleep study revealed moderate obstructive sleep apnea.

   Mtn Comp Ext Serv initial level mer shows; 6/08 mammogram negative.
   (continued on next page)

Continued on Page 3 **408**

**6. Continue** (NOTE: MAKE ADDITIONAL COMMENTS IN SECTION IV)
ARH Tri City Med Ctr mer from initial level shows; tx to 2008, 7/3/08 mri c spine showed
moderate size left paracentral herniated nucleus pulposus at level of C5-6 with an
accompanying bone spur, this extradural lesion is also seen compressing the adjacent
thecal sac and the cervical cord, also signs of ddd present. Also seen for office visits
to 2008.  6/18/08 sleep study showed; intermittent snoring and no evid of obst sleep
apnea syndrome.

Initial level mer from Michael Boland MD shows; 2006 tx for right upper extremity signs
and sx of multi level neuropathy, emg ncv study showed mild median neuropathy at the
level of the wrist with no evidence of right sided cervical radiculopathy.

Cl sent to asce at initial level on 8/27/08, report shows; height 5'1 1/2, weight 196, va
20/20 bilat without corr lenses, BP 126/78, no evid eod noted, ambulates with normal
gait, does not require assistive handheld device for ambulation, appeared stable at
station and comfortable in supine and sitting positions, had 1 of 18 standord
fibromyalgia trigger points, lungs were clear to ausc, heart showed rrr, upper
extremities exam showed no redness, warmth, swelling or nodules (cont'd on back page)

## B. POSTURAL LIMITATIONS

☐ None established. (Proceed to section C.)

| | Frequently | Occasionally | Never |
|---|:---:|:---:|:---:|
| 1. Climbing - ramp/stairs | ☒ | ☐ | ☐ |
|          - ladder/rope/scaffolds | ☐ | ☒ | ☐ |
| 2. Balancing | ☒ | ☐ | ☐ |
| 3. Stooping | ☒ | ☐ | ☐ |
| 4. Kneeling | ☒ | ☐ | ☐ |
| 5. Crouching | ☒ | ☐ | ☐ |
| 6. Crawling | ☒ | ☐ | ☐ |

7. When less than two-thirds of the time for frequently or less than one-third for occasionally, fully describe and
explain. Also explain how and why the evidence supports your conclusions in items 1 through 6. Cite the
specific facts upon which your conclusions are based.
Due to DDD c spine see A6

Continued on Page 4

409

## C. MANIPULATIVE LIMITATIONS

☒ None established. (Proceed to section D.)

|  | | LIMITED | UNLIMITED |
|---|---|---|---|
| 1. | Reaching all directions (including overhead) | ☐ | ☐ |
| 2. | Handling (gross manipulation) | ☐ | ☐ |
| 3. | Fingering (fine manipulation) | ☐ | ☐ |
| 4. | Feeling (skin receptors) | ☐ | ☐ |

5. Describe how the activities checked "limited" are impaired. Also, explain how and why the evidence supports your conclusions in item 1 through 4. Cite the specific facts upon which your conclusions are based.

## D. VISUAL LIMITATIONS

☒ None established. (Proceed to section E.)

|  | | LIMITED | UNLIMITED |
|---|---|---|---|
| 1. | Near acuity | ☐ | ☐ |
| 2. | Far acuity | ☐ | ☐ |
| 3. | Depth perception | ☐ | ☐ |
| 4. | Accommodation | ☐ | ☐ |
| 5. | Color vision | ☐ | ☐ |
| 6. | Field of vision | ☐ | ☐ |

7. Describe how the faculties checked "limited" are impaired. Also explain how and why the evidence supports your conclusions in items 1 through 6. Cite the specific facts upon which your conclusions are based.

Continued on Page 5
**410**

## E. COMMUNICATIVE LIMITATIONS

☒ None established. (Proceed to section F.)

|  | LIMITED | UNLIMITED |
|---|---|---|
| 1. Hearing ⟶ | ☐ | ☐ |
| 2. Speaking ⟶ | ☐ | ☐ |

3. Describe how the faculties checked "limited" are impaired. Also, explain how and why the evidence supports your conclusions in items 1 and 2. Cite the specific facts upon which your conclusions are based.

## F. ENVIRONMENTAL LIMITATIONS

☐ None established. (Proceed to section II.)

|  | UNLIMITED | AVOID CONCENTRATED EXPOSURE | AVOID EVEN MODERATE EXPOSURE | AVOID ALL EXPOSURE |
|---|---|---|---|---|
| 1. Extreme cold ⟶ | ☒ | ☐ | ☐ | ☐ |
| 2. Extreme heat ⟶ | ☒ | ☐ | ☐ | ☐ |
| 3. Wetness ⟶ | ☒ | ☐ | ☐ | ☐ |
| 4. Humidity ⟶ | ☒ | ☐ | ☐ | ☐ |
| 5. Noise ⟶ | ☒ | ☐ | ☐ | ☐ |
| 6. Vibration ⟶ | ☐ | ☒ | ☐ | ☐ |
| 7. Fumes, odors, dusts, gases, poor ventilation, etc. ⟶ | ☒ | ☐ | ☐ | ☐ |
| 8. Hazards (machinery, heights, etc.) ⟶ | ☒ | ☐ | ☐ | ☐ |

9. Describe how these environmental factors impair activities and identify hazards to be avoided. Also, explain how and why the evidence supports your conclusions in items 1through 8. Cite the specific facts upon which your conclusions are based.
Due to ddd c spine see A6

Continued on Page 6

411

9. Continue (NOTE: MAKE ADDITIONAL COMMENTS IN SECTION IV)

## II. SYMPTOMS

For symptoms alleged by the claimant to produce physical limitations, and for which the following have not previously been addressed in section I, discuss whether:

A. The symptom(s) is attributable, in your judgment, to a medically determinable impairment.

B. The severity or duration of the symptom(s), in your judgment, is disproportionate to the expected severity or expected duration on the basis of the claimant's medically determinable impairment(s).

C. The severity of the symptom(s) and its alleged effect on function is consistent, in your judgment, with the total medical and nonmedical evidence, including statements by the claimant and others, observations regarding activities of daily living, and alterations of usual behavior or habits.

```
Cl stated on initial level app info problems with, "I cannot sit, stand or walk for
long periods of time, I am unable to lift and carry anything heavy due to the
constant pain that I am in".

Cl stated on adl problems with, "lifting, squatting, bending, standing, reaching,
walking, sitting, kneeling, stair climbing and using hands".

These sx.limitations are considered partially credible based on cl's ddd,
arthralgias, medically determinable conditions, file mer and info as a whole.
```

Continued on Page 7

**412**

## III. MEDICAL SOURCE STATEMENT(S)

A. Is a medical source statement(s) regarding the claimant's physical capacities in file?

☐ Yes                                              ☒ No (Includes situations in which there was no source or when the source(s) did not provide a statement regarding the claimant's physical capacities.)

B. If yes, are there medical source conclusions about the claimant's limitations or restrictions which are significantly different from your findings?

☐ Yes                                              ☐ No

C. If yes, explain why those conclusions are not supported by the evidence in file.  Cite the source's name and the statement date.

Continued on Page 8

413

IV. ADDITIONAL COMMENTS:

exam of hands showed no swelling, atrophy, redness, warmth or tenderness, hands could be fully extended, could make a fist bilat, no Herberden's or Bouchard's nodes noted, no ulnar deviation noted, cl was able to write, pick up coins with no problems bilat, ROM of joints of the fingers of both hands was noted as normal, lower extremities exam showed; no tenderness, redness, warmth, swelling, fluid, laxity or crepitis of the knees, ankles or feet noted, c spine exam revealted no evid of muscle spasm, lumbar exam revealted normal curvature, no evid muscle spasm, slar was negative both sitting and supine, no leg length disc noted, neuro was intact with no atrophy noted, sensory modalities were well preserved, cl was able to walk on heels and toes, and perform tandem gait with no problems, could squat 2/3 of way down impression was possible fibromyalgia, gerd, possible depression.

RECON mer from ARH Tri City Med Ctr shows; copy of 9/08 sleep study intermittent snoring, no evid of obs sleep apnea syndrome.  8/19/08 visit for low back pain.  11/6/08 visit to Blue Ridge Neuro Science Center shows; chest clear, BP 114/78, heart rrr, gait in nonantalgic, head and neck exam revealed mild cervical para muscle contractions bilat, no misalignment, asymmetry, crepitation, tenderness, masses, deformities, or effusions noted in the spine, ribs, pelvis, upper or lower extremities.  ROM showed no limitation in head, neck, upper or lower extremities, slr negative bilat, muscle strength and tone 5/5, normal tone, no atrophy, neuro intact, sensation intact.

Recon RFC does not affirm initial level non severe rfc.

SDM COMPLETED THE RECON RFC BUT PHY MCS WILL BE SIGNING IT SINCE IT IS A RECON CASE.

V. SIGNATURE

   A. Signatory's Role

     ☒ Medical Consultant **(MC)**

     OR

     ☐ Single Decisionmaker **(SDM)**

   B.  MC's Statement
       The MC does **not** check this block when the MC's assessment is preliminary, advisory or partial.

     ☒ THESE FINDINGS COMPLETE THE MEDICAL PORTION OF THE DISABILITY DETERMINATION.

| SIGNATURE:<br>*Amanda Lange M.D* | MEDICAL CONSULTANT'S CODE:<br>12 | DATE:<br>12/01/2008 **414** |
|---|---|---|

**Quantum Healthcare of Cumberland**
103 Kingdom Come Rd   Cumberland, KY  40823
(606) 589-5732 Fax:

**Lorena Naillieux**                                         Home (606) 589-6607
Female DOB. 07/31/1962                    14186      Ins. Anthem BCBS *E105187 Grp  00161260

**06/15/2015 - Lab Report: MR LUMBAR SPINE W/O CONTRST**
**Provider: Christopher Lewis**
**Location of Care: All**

```
Patient: LORENA "" NAILLIEUX ""
ID: ST01 000072440
Note: All result statuses are Final unless otherwise noted.

Tests: (1) MR LUMBAR SPINE W/O CONTRST (30010&XRG)
     Procedure- MR LUMBAR SPINE W/O CONTRST

     Reason for Study- BACKACHE NOS

     Findings-

     Moderate broad-based disc herniation L3-L4. Hemangioma L1. Mild to
     moderate DJD. Mild annular bulge at L4-L5. Small central herniation
     L5-S1

     Impression-
     Moderate herniation L3-L4 small central herniation L5-S1

          Reading Radiologist- ROBERT DARRELL BUCK
          Releasing Radiologist- ROBERT DARRELL BUCK
          Released Date Time- 06/15/15 1242
          Transcriptionist- ROBERT DARRELL BUCK
     ------------------------------------------------------------------------
-----

Note: An exclamation mark (!) indicates a result that was not dispersed into
the flowsheet.
Document Creation Date: 06/15/2015 12:40 PM
```

```
     -----------------

The following tests had no related values for dispersal to the flowsheet:

  Report, [No Value Reported], (F)

     -----------------

The following results were not dispersed to the flowsheet:

  Read By, 9652^ROBERT DARRELL BUCK, (F)
  Released By, 9652^ROBERT DARRELL BUCK, (F)
```

**Electronically signed by Christopher Lewis on 06/15/2015 at 4:43 PM**

**Quantum Healthcare of Cumberland**
103 Kingdom Come Rd   Cumberland, KY  40823
(606) 589-5732  Fax

**Lorena Naillieux**
Female  DOB: 07/31/1962                      14186

Home· (606) 589-6607
Ins  Anthem BCBS *E105187 Grp: 00161260

**06/05/2015 - Lab Report: DC HIP BIL (ADULT)**
**Provider: Christopher Lewis**
**Location of Care: All**

```
Patient: LORENA "" NAILLIEUX ""
ID: ST01 000221013
Note: All result statuses are Final unless otherwise noted.

Tests: (1) DC HIP BIL (ADULT) (19060&XRJ)

    TECHNIQUE

    AP neutral and frog-leg views of the right and left hips were obtained.


    FINDINGS

    Femoral heads are normal in shape and configuration.  Shenton's line is
    well maintained.  No focal bony abnormality is identified.  Hip joints
    are well articulated.

    IMPRESSION-

    Normal study.

        Reading Radiologist- GREGORY Y TIU, M.D., Radiologist
        Releasing Radiologist- GREGORY Y TIU, M.D., Radiologist
        Released Date Time- 06/19/15 0939
        Transcriptionist- GREGORY Y TIU, M.D., Radiologist
    ------------------------------------------------------------------------
-----

Note: An exclamation mark (!) indicates a result that was not dispersed into
the flowsheet.
Document Creation Date: 06/19/2015 9:38 AM


    -----------------

The following results were not dispersed to the flowsheet:

  Read By, 6460^Tiu^, (F)
  Report, HIP BILATERAL, (F)
  Released By, 6460^Tiu^M.D.&&Radiologist, (F)
```

**Electronically signed by Christopher Lewis on 06/19/2015 at 6:27 PM**

**Quantum Healthcare of Cumberland**
103 Kingdom Come Rd  Cumberland, KY  40823
(606) 589-5732  Fax

**Lorena Naillieux**
Female  DOB: 07/31/1962

14186

Home: (606) 589-6607
Ins. Anthem BCBS *E105187 Grp. 00161260

**06/05/2015 - Lab Report: DC SHOULDER INT/EXTRN**
**Provider: Christopher Lewis**
**Location of Care: All**

Patient: LORENA "" NAILLIEUX ""
ID: ST01 000221013
Note: All result statuses are Final unless otherwise noted.

Tests: (1) DC SHOULDER INT/EXTRN (19330&XRJ)

    TECHNIQUE

    AP internal and external rotation and glenoid fossa views of the right
    shoulder were obtained.

    FINDINGS

    No fracture or dislocation identified.  No focal bony abnormality is
    seen except for moderate hypertrophy of the AC joint.  No periarticular
    soft tissue calcification is noted.

    IMPRESSION-

    Moderate hypertrophy of the AC joint noted.

        Reading Radiologist- GREGORY Y TIU, M.D., Radiologist
        Releasing Radiologist- GREGORY Y TIU, M.D., Radiologist
        Released Date Time- 06/05/15 1412
        Transcriptionist- GREGORY Y TIU, M.D., Radiologist
    ------------------------------------------------------------------------
-----

Note: An exclamation mark (!) indicates a result that was not dispersed into
the flowsheet.
Document Creation Date: 06/19/2015 9:38 AM

------------------

The following results differed from their previous value:

  Read By   Old Value: 6460^Tiu^   New Value: 6460^GREGORY Y TIU& M.D.
  Released By   Old Value: 6460^Tiu^M.D.&&Radiologist New Value: 6460^GREGORY
Y TIU& M.D.

------------------

The following results were not dispersed to the flowsheet:

  Read By, 6460^GREGORY Y TIU& M.D., (F)
  Report, RIGHT SHOULDER, (F)
  Released By, 6460^GREGORY Y TIU& M.D., (F)

**Lorena Naillieux**                                         Home· (606) 589-6607
Female  DOB: 07/31/1962                      14186            Ins  Anthem BCBS *E105187 Grp: 00161260

**Electronically signed by Christopher Lewis on 06/19/2015 at 6:27 PM**

_____

08/22/14 1214    NAILLIEUX,LORENA                                                000221013

07/31/62    52Y    F    *JOP              J1423400120              08/23/14 0943

08/22/14 1330    4539642    0001    LEWIS,CHRISTOPER D

LEWIS,CHRISTOPER D              PO BOX D                          (606)589-5732
                                CUMBERLAND, KY  40823

LEWIS,CHRISTOPER D FGBJEK

   Chk-in #    Order    Exam
   4539642    0001    19200    DC LUMBAR SPINE W/OBLIQUES
                               Ord Diag: 724.5-BACKACHE NOS


                   Tri-City Medical Center Radiology Report

   COMPLETE LUMBAR SPINE SERIES
   AP, lateral and both oblique views of the lumbar spine were obtained.
   Lumbar vertebral bodies are normal in height and alignment.  Mild
   narrowing of the L3-L4 disc interspace is seen.  The rest of the disc
   spaces are well maintained.  Pedicles are intact.  No defect in the pars
   interarticularis was identified.

   IMPRESSION
   1)    Signs of degenerative disc disease at the L3-L4 disc interspace
         are identified.
   2)    If clinically indicated, followup MRI of the lumbar spine is
         recommended

         Reading Radiologist- GREGORY Y TIU, M.D., Radiologist
         Releasing Radiologist- GREGORY Y TIU, M.D., Radiologist
         Released Date Time- 08/23/14 0943
         Transcriptionist- JAMES EPPERSON, Rad. Transcriptionist
   -------------------------------------------------------------------------



FINAL



**419**

08/22/14 1214    NAILLIEUX,LORENA                                    000221013

07/31/62    52Y    F    *JOP            J1423400120         08/23/14 0944

08/22/14 1330    4539641    0001    LEWIS,CHRISTOPER D

LEWIS,CHRISTOPER D            PO BOX D                     (606)589-5732
                             CUMBERLAND, KY  40823

LEWIS,CHRISTOPER D FGBJEK

  Chk-in #    Order    Exam
   4539641    0001    19180    DC C-SPINE W/OBLIQUES
                              Ord Diag: 723.1-CERVICALGIA


    CERVICAL SPINE SERIES:
    AP, lateral and both obliques views of the cervical spine were obtained.

    The vertebral bodies are normal in height and alignment.  Moderate
    narrowing of the C5-C6 disc space is accompanied by marginal
    osteophytosis.  The rest of the disc spaces are well maintained.  No
    prevertebral soft tissue swelling is seen.  No joint facets were
    identified.  There is mild encroachment of the neural foramina seen
    bilaterally at C5-C6 and is secondary to bone spurs arising from the
    uncovertebral joints of Luschka.

    IMPRESSION
       1.    Signs of degenerative disc disease with disc space narrowing
    are
          seen at C5-C6 disc space and is accompanied by marginal
    osteophytosis.
       2.    Mild encroachment of the neural foramina is seen bilaterally
    at C5-
          C6 and is secondary to small bone spurs arising from the
    uncovertebral
             joints of Luschka.

    ADDENDUM:
    Bone encroachment is more pronounced on the right side compared to the
    left.

          Reading Radiologist- GREGORY Y TIU, M.D., Radiologist
FINAL

**420**

08/22/14 1214    NAILLIEUX,LORENA                                          000221013

07/31/62    52Y    F    *JOP            J1423400120           08/23/14 0944

08/22/14 1330   4539641    0001  LEWIS,CHRISTOPER D

LEWIS,CHRISTOPER D              PO BOX D                      (606)589-5732
                               CUMBERLAND, KY  40823

LEWIS,CHRISTOPER D FGBJEK

  Checkin-Exam Code Summary
  4539641-19180


        Releasing Radiologist- GREGORY Y TIU, M.D., Radiologist
        Released Date Time- 08/23/14 0944
        Transcriptionist- JULIE SKIDMORE, Rad. Transcriptionist
        ------------------------------------------------------------------------


FINAL

Appalachian Regional Healthcare Harlan
Ball Park Road
Harlan, Kentucky 40831

RADIOLOGY REPORT

PT NAME: NAILLIEUX,LORENA                53Y F      MR#: 000221013

DOB: 07/31/62                  LOC: *JOP             ACCT #: 1522500212

REL DATE:08/14/15 1557      CI DATE:  08/13/15 1840

LEWIS,CHRISTOPER D          PO BOX D                 (606)589-5732
                            CUMBERLAND, KY  40823

Chk-in #   Order    Exam
 4911445    0001    30040   MR C-SPINE W/O CONTRST
                            Ord Diag: 723.1-CERVICALGIA


MRI OF THE CERVICAL SPINE WITHOUT CONTRAST:

TECHNIQUE:
MR imaging of the cervical spine was carried out through the
use of GE Signa 1.5 Tesla system.  Using spin echo
technique, sagittal images of the cervical spine were
obtained using spin echo T1, fast spin echo T2 and gradient
echo T1 weighted imaging.  Axial images of the cervical
spine were then obtained using gradient echo imaging.

FINDINGS:
Mild reversal of the cervical curvature is seen. This is
accompanied by narrowing of the C5-C6 disc space. The rest
of the intervertebral discs show normal signal intensity.
Presence of a moderate size central disc herniation or
protrusion is identified at the C5-C6 disc space.
Accompanying bony spur formation is also seen.  No other
abnormal extradural lesions were identified.  Cervical cord
is indented behind the C5-C6 disc space.  No significant
encroachment of the visualized neural foramina is seen.

IMPRESSION:
    1.   Reversal of the mid cervical curvature is accompanied
         by narrowing of C5-C6 disc space representing degenerative
         disc disease.
    2.   Moderate size central disc herniation at C5-C6 with
    surrounding bony osteophyte formation seen indenting the
FINAL

Aug 17 2015 10:18AM JM0457B21 Case 1:16-cv-00403-JMR Doc #: 12-1 Filed: 12/09/16 Page: 427 of 435 - Page ID#: 497 EXHIBIT NO. 12F

PAGE: 5 OF 5

Appalachian Regional Healthcare Harlan
Ball Park Road
Harlan, Kentucky 40831

RADIOLOGY REPORT

PT NAME:  NAILLIEUX,LORENA                53Y F    MR#: 000221013

DOB: 07/31/62                LOC: *JOP           ACCT #: 1522500212

REL DATE:08/14/15 1557       CI DATE:  08/13/15 1840

LEWIS,CHRISTOPER D           PO BOX D                   (606)589-5732
                             CUMBERLAND, KY  40823

Checkin-Exam Code Summary
4911445-30040


    adjacent thecal sac and cervical cord.

        Reading Radiologist- GREGORY Y TIU, M.D., Radiologist
        Releasing Radiologist- GREGORY Y TIU, M.D., Radiologist
        Released Date Time- 08/14/15 1557
        Transcriptionist- CLARICE C BOYDEN, Rad. Transcriptionist
----------------------------------------------------------------------




FINAL

# FREDERIC T. HUFFNAGLE, M.D.
## Board Certified Orthopedic Surgeon

## SOCIAL SECURITY DISABILITY
## MEDICAL ASSESSMENT

Frederic T. Huffnagle, M.D.
720 Chestnut Street
Suite 102
Bowling Green, KY 42101

**PATIENT INFORMATION:**
Date of Evaluation: 01/02/2009
Name: LORENA NAILLIEUX
Date of Birth: 07/31/1962
Social Security Number: 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

**CURRENT MEDICAL SYMPTOMS OR PROBLEMS:**  Low back pain and pain in both legs, her cervical spine and her shoulder.

**HISTORY OF PRESENT ILLNESS:**  She has had years and years of neck pain. She has seen many different doctors.  Her most successful physician encounter was with Dr. Smith, a neurosurgeon in Tennessee.  He examined her thoroughly and extensively on November 6, 2008.  He felt that she had cervical spondylosis and a herniated cervical disc, which were causes for her neck pain.  He did not feel she should return to physical work and he felt that anterior cervical discectomy and fusion should be done at the C5-6 level.  This has not been undertaken as of yet.

She also has new lesions on her left shoulder, her right ankle, and other portions of the body, which have recently erupted and may well be basal cell carcinoma.

**GENERAL MEDICAL HISTORY:**  Positive for degenerative arthritis, question of fibromyalgia, and gastric reflux.  She has numerous allergies.  She has had a previous fracture involving the left arm, depression and anxiety, and intestinal problems with irritable bowel syndrome.

**PAST SURGICAL HISTORY:**  She has had a hysterectomy and oophorectomy in the past, previous C-sections, and a fracture of the left arm treated surgically.

**424**

Case: 7:16-cv-00193-JMH Doc #: 12-1 Filed: 12/09/16 Page: 429 of 435 - Page ID#: 499
01/05/2009 09:13 6158331845 GE MEDICAL

EXHIBIT NO. 13F
PAGE: 2 OF 8

# FREDERIC T. HUFFNAGLE, M.D.
## Board Certified Orthopedic Surgeon

January 2, 2009
RE: Lorena Naillieux
Page Two

**MEDICATIONS:**
1. She takes Prozac 20 mg from Dr. Wade Baker.
2. Wellbutrin 300 mg from Dr. Baker.
3. Diclofenac from Dr. Sheffield.
4. Motrin 800 mg.
5. Allegra.

**SOCIAL HISTORY:** She is married. She does not smoke. She has finished 12 years of education and was trained as a dental assistant.

**WORK STATUS:** She had been working as a janitor at Nashville Oceanic.

**REVIEW OF SYSTEMS:**
General: She has chills and night sweats.
Head/Neck: Negative.
Cardiovascular: Irregular heartbeat, swelling in the feet and legs.
Respiratory: Negative.
Gastrointestinal:
Endocrine: Negative.
Skin: She has several lesions, which are new, involving her right leg, her shoulder, and numerous parts on her body.
Hematologic/Oncologic: Negative.
Bone/Joints: Swelling, joint pain, and pain in multiple joints.
Genitourinary: Negative.
Neurological: She has anxiety, depression, and sleep disturbance.

**PREVIOUS TESTS:** She has had positive CAT scans and myelograms. An MRI was done without contrast at Appalachian Regional Hospital in Harlan, Kentucky and shows a ventral disc herniation at C5-6. She also had plain films, which showed degenerative changes at C5-6 with bilateral foraminal narrowing. A cervical myelogram showed subtle decreased filling of the C6 nerve root sleeve

**425**

## FREDERIC T. HUFFNAGLE, M.D.
## Board Certified Orthopedic Surgeon

January 2, 2009
RE: Lorena Naillieux
Page Three

bilaterally and a CAT scan post myelogram was carried out and it was noted there was a calcified central disc herniation with moderate cord compression as well as changes at C6-7.

**PREVIOUS TREATMENT:** She has had no physical therapy, chiropractic care, injections, or psychological consultation.

**PHYSICAL EXAMINATION:** Height is 5 feet and weight is 130 pounds. She has a normal gait. She can walk on her heels and her toes. She has lumbar flexion of 45 degrees, extension -3 degrees, 15 degrees right and 15 degrees left lateral bending. In the cervical region she has 15 degrees of flexion, 15 degrees extension, 15 degrees right lateral bending and 15 degrees right lateral bending. The biceps reflexes are 1+ bilaterally. The left triceps reflex is absent and the left radial reflex is absent. The right biceps and triceps reflex are 1+. Knees and ankles are 2+ bilaterally. The Jamar test is 15 kg on the left and 30 kg on the right. The right and left calves are 15-½ inches in circumference. She has decreased sensation involving the left ulnar nerve distribution. She has a lesion on her left shoulder the size of a 5-cent piece, which appears to be a basal cell growth. She also has a lesion on the posterior aspect of her left heel of a similar nature.

**IMPRESSION:**
1. Cervical radiculitis with stenosis and nerve root compression at the C5-6 level.
2. Chronic low back pain.
3. Basal cell carcinoma.

**DISCUSSION:** This woman is a candidate for anterior discectomy and fusion. However, there is no guarantee at this stage that this will solve all her pain problems. Her pain situation is real and requires treatment.

The opinions rendered in this case are the opinions of the evaluator. These opinions are based upon reasonable medical probability. This evaluation has been conducted on the basis of the medical examination and documentation as provided

**426**

# FREDERIC T. HUFFNAGLE, M.D.
## Board Certified Orthopedic Surgeon

January 2, 2009
RE: Lorena Naillieux
Page Four

with the assumption that the material is true and correct. If more information becomes available at a later date, an additional service/report/reconsideration may be requested. Such information may or may not change the opinions rendered in this evaluation. This opinion is based on a clinical assessment, examination, and documentation. This opinion does not constitute, per se, a recommendation for specific claims or administrative functions to be made or enforced.

If additional information is needed in this case, please do not hesitate to contact me.

Sincerely,

Frederic T. Huffnagle, M.D.
Diplomate, American Board of Orthopaedic Surgeons
Fellow, North American Spine Society

FTH/kb

**EXHIBIT NO. 13F**
**PAGE: 5 OF 8**

# PHYSICAL MEDICAL ASSESSMENT

| Printed Name of Individual | Social Security Number |
|---|---|
| LORENA NAILLIEUX | 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 |

Instructions on completion of this form:  The purpose of this form is to determine the above individual's ability to do work-related activities on a day-to-day basis in a regular work setting.  Therefore, please give provide using this form an assessment that is based on your examination of the above individual of how the above individual's physical capabilities are affected by the impairment(s) that he or she may have.  In rendering your assessment you should consider the above individual's medical history, the chronicity or lack of chronicity of findings, and the expected duration of any work-related limitations, but do not consider in rendering this assessment the above individual's age, sex, or work experience.

For each activity shown below:

    (1)  Please check the appropriate block;
    (2)  Respond to the questions concerning the individual's ability to perform the activities; and
    (3)  Identify the particular medical findings (i.e., physical exam findings, laboratory test results, history, symptoms including pain) which support your assessment of any limitations that the above individual may have.  If the above individual does not have any limitations in a category or categories please indicate this as well.

Note:   It is important that you relate any particular findings to any assessed limitation(s) in the above individual's capacity.  In fact, the usefulness of your assessment depends in large part on the extent to which you do this.

---

I.  Are LIFTING/CARRYING affected by impairment(s)?  NO ( )     YES ( **X** )

If the answer is "Yes" please provide the number of pounds the individual can lift and/or carry:

Maximum occasionally is defined as from very little up to 1/3 of an 8-hour work day.  **5-10 pound**

Maximum frequently is defined as from 1/3 to 2/3 of an 8-hour work day.                **5 pounds**

---

II. Are STANDING/WALKING affected by impairment(s)?  NO ( )     YES ( **X** )

If the answer is "Yes" please provide how many hours in an 8-hour work day can the individual stand and/or walk:

Total in an 8-hour work day: **1-2 hours**

Without interruption: **30 minutes**

---

**428**

III. Is SITTING affected by impairment(s)?  NO ( )     YES ( **X** )

If the answer is "Yes" how many hours in an 8-hour work day can the individual sit:

Total in an 8-hour work day: **4-5 hours**

Without interruption: **15-20 minutes**

IV.   How <u>often</u> can the above individual perform
the following POSTURAL ACTIVITIES?

Please indicate your responses with a checkmark in the appropriate spaces below:

| ACTIVITY | NEVER | OCCASIONALLY | FREQUENTLY | CONSTANTLY |
|----------|-------|--------------|------------|------------|
| **Climbing** | X | | | |
| **Balancing** | | X | | |
| **Stooping** | | X | | |
| **Crouching** | | X | | |
| **Kneeling** | | | X | |
| **Crawling** | | X | | |

"Never" is defined as not ever.
"Occasionally" is defined as an activity which exists up to 1/3 of the time.
"Frequently" is defined as an activity which exists from 1/3 to 2/3 of the time.
"Constantly" is defined as an activity condition which exists 2/3 or more of the time.

**429**

V.  How <u>often</u> can the above individual perform the following
PHYSICAL/COMMUNICATIVE FUNCTIONS?

Please indicate your responses with a checkmark in the appropriate spaces below:

## PHYSICAL FUNCTIONS

| ACTIVITY | NEVER | OCCASIONALLY | FREQUENTLY | CONSTANTLY |
|---|---|---|---|---|
| Reaching | | X | | |
| Handling | | X | | |
| Feeling | | | X | |
| Pushing/Pulling | | X | | |

"Never" is defined as not ever.
"Occasionally" is defined as an activity which exists up to 1/3 of the time.
"Frequently" is defined as an activity which exists from 1/3 to 2/3 of the time.
"Constantly" is defined as an activity which exists 2/3 or more of the time.

## COMMUNICATIVE FUNCTIONS

| ACTIVITY | NEVER | OCCASIONALLY | FREQUENTLY | CONSTANTLY |
|---|---|---|---|---|
| Seeing | | | | X |
| Hearing | | | | X |
| Speaking | | | | X |

"Never" is defined as not ever.
"Occasionally" is defined as an activity which exists up to 1/3 of the time.
"Frequently" is defined as an activity which exists from 1/3 to 2/3 of the time.
"Constantly" is defined as an activity which exists 2/3 or more of the time.

3

**430**

EXHIBIT NO. 13F
PAGE: 8 OF 8

VI.    Indicate how <u>often</u> the above individual
       can be exposed to the following
       ENVIRONMENTAL ACTIVITIES/CONDITIONS

Please indicate your responses with a checkmark in the appropriate spaces below:

| ACTIVITY | NEVER | OCCASIONALLY | FREQUENTLY | CONSTANTLY |
|---|---|---|---|---|
| Heights | | X | | |
| Moving Machinery | X | | | |
| Temperature Extremes | | X | | |
| Chemicals | | | X | |
| Dust | | | X | |
| Noise | | | X | |
| Fumes | | | X | |
| Humidity | | | X | |
| Vibration | X | | | |

"Never" is defined as not ever.
"Occasionally" is defined as an activity or condition which exists up to 1/3 of the time.
"Frequently" is defined as an activity or condition which exists from 1/3 to 2/3 of the time.
"Constantly" is defined as an activity or condition which exists 2/3 or more of the time.

VII.   Please discuss any other work-related activities which are affected by the individual's
       impairment(s), and indicate how the activities are affected. Please provide any additional
       medical findings that support this assessment. Please provide any additional comment(s)
       here.

       Please see my attached orthopedic evaluation report for supporting explanation.

1/2/09
Date

FREDERIC T. HUFFNAGLE, M.D.
BOARD CERTIFIED ORTHOPEDIC SURGEON

431